UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE FACEBOOK, INC., IPO SECURITIES AND DERIVATIVE LITIGATION | MDL No. 12-2389 (RWS)<br><br>**ECF Case**<br><br>This document relates to the Consolidated Securities Action:<br><br>No. 12-cv-4081   No. 12-cv-4763<br>No. 12-cv-4099   No. 12-cv-4777<br>No. 12-cv-4131   No. 12-cv-5511<br>No. 12-cv-4150   No. 12-cv-7542<br>No. 12-cv-4157   No. 12-cv-7543<br>No. 12-cv-4184   No. 12-cv-7544<br>No. 12-cv-4194   No. 12-cv-7545<br>No. 12-cv-4215   No. 12-cv-7546<br>No. 12-cv-4252   No. 12-cv-7547<br>No. 12-cv-4291   No. 12-cv-7548<br>No. 12-cv-4312   No. 12-cv-7550<br>No. 12-cv-4332   No. 12-cv-7551<br>No. 12-cv-4360   No. 12-cv-7552<br>No. 12-cv-4362   No. 12-cv-7586<br>No. 12-cv-4551   No. 12-cv-7587<br>No. 12-cv-4648 |

**LEAD PLANITIFFS' MEMORANDUM OF LAW IN OPPOSITION TO CORNECK AND STRICKER'S MOTION FOR SEVERANCE**

Court-appointed Lead Plaintiffs the North Carolina Department of State Treasurer on behalf of the North Carolina Retirement Systems, Banyan Capital Master Fund Ltd., Arkansas Teacher Retirement System, and the Fresno County Employees' Retirement Association (collectively, "Lead Plaintiffs") submit this memorandum of law in opposition to the Motion for Severance filed by Lawrence Corneck and Eugene Stricker (together, the "Exchange Act Plaintiffs").

## I.  INTRODUCTION

In an order dated December 6, 2012 (the "Consolidation Order"), the Court consolidated numerous actions asserting securities law claims arising from Facebook's initial public offering (the "IPO"), including actions asserting claims under the Securities Act of 1933 (the "Securities Act") and actions filed by the Exchange Act Plaintiffs asserting claims under the Securities Exchange Act of 1934 (the "Exchange Act").  *See* ECF No. 52.  The Court appointed Lead Plaintiffs to prosecute all appropriate securities claims arising from the IPO, and specifically held that Lead Plaintiffs have the authority to "determin[e] . . . which claims to assert in the consolidated complaint."  *Id*. at 23 (emphasis added).  Pursuant to the Court's holding, Lead Plaintiffs, after substantial research and deliberation, decided to assert only Securities Act claims on behalf of the Class and, on February 28, 2013, filed their Consolidated Class Action Complaint (the "Complaint") asserting those claims.  Six weeks later, the Exchange Act Plaintiffs filed the instant motion in which they contend that, because Lead Plaintiffs asserted only Securities Act claims on behalf of the Class, the Exchange Act actions should now be severed from the Consolidated Securities Action, and the Exchange Act Plaintiffs should be permitted to assert the Exchange Act claims in a separate class action for which they should be appointed lead plaintiffs.  *See* ECF No. 78 ("Mot.") at 1-6.  Their attempt to dismantle the Court-

established structure for this litigation contravenes the Consolidation Order, the PSLRA, and well-established Second Circuit law. It should be rejected.

First, as noted above, this Court has already held that consolidation of the Securities Act claims and Exchange Act claims is proper, and that Lead Plaintiffs have the authority to determine which claims to assert – or not assert – on behalf of the Class. The fact that Lead Plaintiffs acted in accordance with the Court's Consolidation Order provides no basis to now allow the Exchange Act Plaintiffs to bring a separate class action relating to the IPO. Significantly, the Exchange Act Plaintiffs fail to address the Court's holding that Lead Plaintiffs have the sole authority to determine what claims to pursue on behalf of the Class – and that failure is fatal to their motion.

Second, consistent with the Court's holding, it is well-established that a lead plaintiff has the sole authority to determine what claims to pursue on behalf of the class. The Second Circuit has held that the PSLRA's lead plaintiff provisions are a mandate by Congress to vest the lead plaintiff with authority "to exercise control over the litigation as a whole." *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 83 n.13 (2d Cir. 2004). Relying on this authority, both then-District Judge Chin and Judge Castel have recently rejected attempts by litigants to do precisely what the Exchange Act Plaintiffs seek to do here. *See In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.* (hereinafter "*BoA I*"), 2010 WL 1438980, at *1-2 (S.D.N.Y. Apr. 9, 2010) (Chin, J.); *In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.* (hereinafter "*BoA II*"), 2011 WL 4538428, at *2 (S.D.N.Y. Sept. 29, 2011) (Castel, J.). As these courts held, to allow litigants to bring a separate class action simply because a lead plaintiff makes a strategic decision not to include certain claims would nullify the provisions of the PSLRA that centralize decision-making authority in the lead plaintiff, and would create a multiplicity of class actions with different leadership structures related to a single series of events.

2

Third, the Exchange Act Plaintiffs will suffer no prejudice by not being permitted to bring a separate class action based on the same facts at issue in the Consolidated Securities Action.  To the extent they wish to pursue Exchange Act claims against Defendants, they are free to file an individual action.  *See, e.g.*, *BoA II*, 2011 WL 4538428, at *1-2.

As explained in greater detail below, the Exchange Act Plaintiffs' Motion for Severance should be denied.

## II. **ARGUMENT**

As noted above, the Exchange Act Plaintiffs argue that, because Lead Plaintiffs made the strategic decision to assert only Securities Act claims in the Consolidated Securities Action, they should be permitted to bring a separate class action asserting Exchange Act claims stemming from the Facebook IPO, for which they should be appointed lead plaintiffs.  *See* Mot. at 1-6.  They are wrong.

By way of brief background, at the lead plaintiff appointment stage of this litigation, the Court received extensive briefing from the parties and heard oral argument on the issue of whether the Securities Act claims and the Exchange Act claims should be combined into a single consolidated class action.  *See, e.g.*, ECF Nos. 41, 66 and 77 filed in No. 12-cv-4081; ECF Nos. 7, 23, and 24 filed in No. 12-cv-4215.  The Exchange Act Plaintiffs repeatedly argued that the two sets of claims should not be consolidated, and that they should be permitted to bring their Exchange Act claims in a separate class action for which they should be appointed lead plaintiffs.  *See* ECF Nos. 7 and 24 filed in No. 12-cv-4215.  After carefully considering these arguments, the Court rejected them in its detailed, 53-page Consolidation Order, consolidated the Securities Act and Exchange Act claims into a unified action, and appointed Lead Plaintiffs to control the prosecution of all securities claims arising from the Facebook IPO.  *See* Consolidation Order at 21-40.

In holding that the Exchange Act claims and Securities Act claims should be consolidated, the Court reasoned that both sets of claims "involve putative class actions that seek relief on behalf of similar classes, asserted against some of the same defendants, arising out of the same series of events, and assert claims under federal securities laws." *Id*. at 23.  Thus, the Court held that there was no reason to allow two separate class actions to proceed under different leadership structures, explaining that "[t]o reject consolidation would unnecessarily create two distinct and parallel securities litigation cases with different plaintiffs and different leadership." *Id*.  Further, while the Exchange Act Plaintiffs contend that the "plain language" of the Consolidation Order supposedly states that the Exchange Act claims "were to be included" in any consolidated complaint (Mot. at 1), the Court specifically held that the decision to bring those claims – or not to bring them – was solely within Lead Plaintiffs' authority: "[T]he determination of which claims to assert in the consolidated complaint will be determined by the Court-appointed lead plaintiff, who is charged with acting in the best interest of all class members." *Id*.  The Exchange Act Plaintiffs never moved for reconsideration of the Court's decision.

On February 28, 2013, Lead Plaintiffs filed the Complaint, which, as noted above, did not include Exchange Act claims, and instead only asserted Securities Act claims.  That was an appropriate exercise of the decision-making authority vested in the Lead Plaintiffs by the PSLRA, and it cannot be undermined by a litigant who disagrees with that decision.  *See, e.g.*, *Hevesi*, 366 F.3d at 83 n.13 (holding that the purpose of the PSLRA's lead plaintiff provisions is to "empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole").  Indeed, contrary to what the Exchange Act Plaintiffs contend, the fact that the Exchange Act claims were consolidated with the Securities Act claims did not require Lead Plaintiffs to assert the Exchange Act claims, and Lead Plaintiffs' decision not to

4

bring those claims does not give these litigants the right to undermine that decision by bringing their own class action.  As courts have uniformly held, the PSLRA gives the court-appointed lead plaintiffs the sole authority to make strategic decisions on behalf of the class, including determining what claims to bring, the appropriate length of the class period, the particular securities to include in the class, and the defendants to name.  *See, e.g.*, *BoA II*, 2011 WL 4538428, at *2.  To hold otherwise, and to allow a litigant to bring its own class action asserting claims that the lead plaintiff chose not to bring, would nullify the purpose of the lead plaintiff provisions of the PSLRA, invite lawyer-driven litigation, and interfere with the Lead Plaintiffs' ability and authority to manage the class action litigation.  *Id.*[1]

The recent decisions by Judge Chin and Judge Castel in the Bank of America litigation are directly on point, and make clear that the Exchange Act Plaintiffs' arguments here are without merit.  In *BoA I*, the lead plaintiffs initially elected to sue only on behalf of stock holders, and not to bring claims on behalf of options holders and bondholders.  *See* 2010 WL 1438980, at *1-2.  After the lead plaintiffs filed their consolidated complaint, several individual plaintiffs sought to file separate class actions asserting claims on behalf of options holders and bondholders.  *Id.*  Then-District Judge Chin, relying on *Hevesi*, held that these plaintiffs could not maintain separate class actions, reasoning:

> [I]n a securities class action, a lead plaintiff is empowered to control the management of the litigation as a whole, and it is within the lead plaintiff's authority to decide what claims to assert on behalf of the class. . . . Lead Plaintiffs have the authority to decide what claims to assert on behalf of securities holders. Permitting other plaintiffs to bring additional class actions now, with additional lead plaintiffs and additional lead counsel, would interfere with Lead Plaintiffs' ability and authority to manage the Consolidated Securities Actions.

---

[1] Thus, for example, if Corneck and Stricker's argument was accepted, it could result in a situation where, if a lead plaintiff chose not to name a particular defendant, a litigant who disagreed with that decision could bring its own class action against that particular defendant.  Similarly, if a litigant disagreed with a lead plaintiff's decision regarding the length of a class period, that litigant could bring its own class action asserting claims for a different class period.  Such a situation obviously contravenes the PSLRA.

*Id*. at *2.

After Judge Chin's decision, the lead plaintiffs later included certain options claims in an amended consolidated complaint, but the claims were largely dismissed on standing grounds. *See In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig*., 2011 WL 3211472, at *14 (S.D.N.Y. July 29, 2011). Lead plaintiffs then decided, for strategic reasons, not to add a named plaintiff with standing to bring the options claims that had been dismissed, thus finally determining not to assert those options claims. Another plaintiff then sought to bring a separate class action on behalf of the options holders whose claims were no longer being prosecuted, arguing that he should now be permitted to do so because lead plaintiffs had decided not to pursue those claims. *See BoA II*, 2011 WL 4538428.

Judge Castel, to whom the case had been transferred after Judge Chin's appointment to the Second Circuit, also rejected the options plaintiff's attempt to bring a separate class action. As the court held, "[s]uch tactical decisions [about which claims to assert] are the prerogative of a lead plaintiff. . . . Such a decision is within the lead plaintiff's prerogative 'to exercise control over the litigation as a whole.'" *Id*. (quoting *Hevesi*, 366 F.3d at 82, n.13). Judge Castel further reasoned that if the options holders were permitted to bring a separate class action, such a result would not only contravene the PSLRA, but lead to a landscape in which:

> any consolidated securities fraud class action [would] carry with it a corresponding ecosystem of separate class actions seeking relief on behalf of securities holders whose claims vary from the lead plaintiffs. [The options plaintiff's] approach invites the type of lawyer-driven litigation that the PSLRA seeks to avoid, and would likely promote near-endless skirmishes about securities holders who fall outside a class definition . . . .

*Id*. at *2. Following Judge Castel's opinion in *BoA II*, the options plaintiff sought leave to file an interlocutory appeal. *See In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig*., 2012 WL 1308993 (S.D.N.Y. Apr. 16, 2012). Judge Castel denied this request on the ground that it is

6

settled law that a litigant may not assert a separate class action to bring claims that the lead plaintiff has determined not to pursue on a class basis. *Id*. at *2.

Similarly, here, to allow the Exchange Act Plaintiffs to bring their own separate class action for the Exchange Act claims would render the PSLRA's lead plaintiff provisions meaningless. Such a result would allow the Exchange Act Plaintiffs to usurp Lead Plaintiffs' authority to control the litigation as a whole and nullify their decision to bring only Securities Act claims on behalf of the Class. It would also invite other litigants to file any number of class actions asserting claims that vary in some way from the claims that Lead Plaintiffs have chosen to assert, whereas the Court has appointed Lead Plaintiffs to assert appropriate claims related to the IPO in a single unified action.

The Exchange Act Plaintiffs will suffer no prejudice if they are not permitted to bring their own separate class action. The Exchange Act Plaintiffs remain free to pursue their Exchange Act claims through an individual action – a fact which permits them to obtain a ruling on the merits of their claims and thus avoids any potential prejudice, as both Judges Chin and Castel held. *See BoA I*, 2010 WL 1438980, at *1-2; *BoA II*, 2011 WL 4538428, at *2. While the Exchange Act Plaintiffs argue that they will suffer prejudice unless they are permitted to bring a separate class action because "discovery [on their Exchange Act claims] cannot even begin until the allegations in the Consolidated Complaint are finally adjudicated" (Mot. at 6), filing an individual suit will provide them access to any discovery taken by Lead Plaintiffs in the Consolidated Securities Action, at the same time that Lead Plaintiffs receive it.

Remarkably, the Exchange Act plaintiffs ignore the Second Circuit's decision in *Hevesi*, as well as Judge Chin's and Judge Castel's decisions in the Bank of America litigation. Instead, they rely on an Eighth Circuit decision, *Horizon Asset Management Inc. v. H & R Block, Inc.*, 580 F.3d 755 (8th Cir. 2009), which is clearly inapposite. In *Horizon*, the Eighth Circuit held

7

that it was error for the district court to appoint a single lead plaintiff to pursue both securities claims against the company and derivative claims seeking recovery on behalf of the same company.  *Id*. at 769.  As the Eight Circuit concluded, the lead plaintiff faced a conflict in pursuing both sets of claims at once, and this conflict forced it to abandon the derivative claims.  *Id*.  Accordingly, at most, *Horizon* stands for the proposition that a single lead plaintiff cannot be appointed to pursue both direct securities claims against a company and derivative claims on behalf of the same company.  This holding has no relevance here, where Lead Plaintiffs were appointed to pursue direct claims only, faced no potential conflict of interest in deciding which direct claims to pursue, and chose to pursue only Securities Act claims for strategic reasons – a determination that this Court has held was squarely within their authority to make.

For the foregoing reasons, Lead Plaintiffs respectfully request that the Exchange Act Plaintiffs' Motion for Severance be denied.

Dated: May 3, 2013
    New York, New York

| **LABATON SUCHAROW LLP** | **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP** |
|---|---|
| By: /s/ *James W. Johnson*<br>    Thomas A. Dubbs<br>    James W. Johnson<br>    Louis Gottlieb<br><br>140 Broadway<br>New York, NY 10005<br>Tel: (212) 907-0700<br>Fax: (212) 818-0477 | By: /s/ *Steven B. Singer*<br>    Steven B. Singer<br>    John J. Rizio-Hamilton<br><br>1285 Avenue of the Americas<br>New York, NY 10019<br>Tel: (212) 554-1400<br>Fax: (212) 554-1444 |

*Court-Appointed Co-Lead Counsel for the Class*