**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE FACEBOOK, INC. IPO SECURITIES
AND DERIVATIVE LITIGATION

MDL No. 12-2389 (RWS)

---

This document relates to:  NASDAQ Actions

---

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR AN
ORDER PARTIALLY LIFTING THE PSLRA DISCOVERY STAY AND FOR LEAVE
TO AMEND THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

---

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................ 1

RELEVANT FACTS ......................................................................................... 5

ARGUMENT ..................................................................................................... 9

    I.      THE PSLRA'S DISCOVERY STAY SHOULD BE PARTIALLY
           LIFTED ............................................................................................... 9

           A.      The NASDAQ Claimant Group's Discovery Request Does Not Frustrate
                       The PSLRA's Objectives Of Discouraging Frivolous Actions And
                       Preventing "Fishing Expeditions" ........................................................ 10

           B.      The NASDAQ Claimant Group's Discovery Request Is Sufficiently
                       Particularized .......................................................................... 13

           C.      NASDAQ Will Not Be Unduly Burdened By Producing Documents
                       Already Produced To The SEC ............................................................. 13

           D.      The NASDAQ Claimant Group Will Suffer Undue Prejudice If The
                       Requested Discovery Is Not Produced .................................................. 14

    II.     THE PSLRA DISCOVERY STAY DOES NOT APPLY TO THE
           SEPARATELY INITIATED NASDAQ NEGLIGENCE ACTIONS ................. 16

           A.      The SEC Documents Are Particularly Relevant To The Negligence
                       Actions ..................................................................................... 18

           B.      The SEC Documents Are Necessary For The Negligence Actions To
                       Formulate Strategy For Discovery And Settlement ................................. 18

    III.    LEAD PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND
           THE CAC ......................................................................................... 19

CONCLUSION ................................................................................................ 21

i

# TABLE OF AUTHORITIES

**Cases**

*AEP Energy Servs. Gas Holding Co. v. Bank of Am. N.A.*,
  626 F.3d 699 (2d Cir. 2010) ................................................... 20

*Block v. First Blood Assocs.*,
  988 F.2d 344 (2d Cir.1993) ................................................... 20

*Foman v. Davis*,
  371 U.S. 178 (1962)................................................................ 20

*In re Bank of Am. Corp. Sec., Derivative, and Emp't Ret.*
  *Income Sec. Act (ERISA) Litig.*,
  No. 09 MDL 2058 (DC), 2009 WL 4796169 (S.D.N.Y. Nov. 16, 2009)......................... passim

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
  No. 05-md-1725, 2007 WL 518626 (E.D. Mich. Feb. 15, 2007) ................................. 11, 12, 13

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
  No. H-01-3624, 2002 WL 31845114 (S.D. Tex. Aug. 16, 2002)....................................... 12, 14

*In re FirstEnergy Corp. Sec. Litig.*,
  229 F.R.D. 541 (N.D. Ohio 2004) ................................................. 12, 16

*In re Grand Casinos, Inc. Sec. Litig.*,
  988 F. Supp. 1270 (D. Minn. 1997) ................................................. 9

*In re LaBranche Sec. Litig.*,
  333 F. Supp. 2d 178 (S.D.N.Y. 2004) ....................................... 2, 15, 16

*In re Lernout & Hauspie Sec. Litig.*,
  214 F. Supp. 2d 100 (D. Mass. 2002)................................................. 11

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
  220 F.R.D. 246 (D. Md. 2004)......................................................... 14

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  MDL No. 02-1335-B,
  2003 WL 23830479 (D.N.H. Jan. 29, 2003)............................. 13, 17, 18

*In re Worldcom, Inc. Sec. Litig.*,
  234 F. Supp. 2d 301 (S.D.N.Y. 2002) ......................................... 11, 12

*Phillips v. Kidder, Peabody & Co.*,
    No. 87 Civ. 4936 (DLC),
    1994 WL 570072 (S.D.N.Y. Oct. 13, 1994) .......................................................................... 20

*Seippel v. Sidley, Austin, Brown & Wood LLP*,
    No. 03 Civ. 6942 (SAS),
    2005 WL 388561 (S.D.N.Y. Feb. 17, 2005) .................................................................. 10, 12

*Singer v. Nicor Inc.*,
    No. 02 C 5168, 2003 WL 22013905 (N.D. Ill. Apr. 23, 2003) ............................................. 12

*Sokolski v. Trans Union Corp.*,
    178 F.R.D. 393 (E.D.N.Y.1998) ......................................................................................... 20

*Tobias Holdings, Inc. v. Bank United Corp.*,
    177 F. Supp. 2d 162 (S.D.N.Y. 2001) ................................................................................. 17

*Vacold LLC v. Cerami*,
    No. 00 Civ. 4024 (AGS),
    2001 WL 167704 (S.D.N.Y. Feb. 16, 2001) ....................................................................... 11

*Waldman v. Wachovia Corp.*,
    No. 08 Civ. 2913 (SAS),
    2009 WL 86763 (S.D.N.Y. Jan. 12, 2009) ....................................................... 10, 12, 13, 14

**Statutes**

15 U.S.C. § 78u-4(b)(3)(B) ..................................................................................................... 9, 14

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 .............................. 10

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679 ............................................... 10

**Rules**

Fed. R. Civ. P. 15(a)(2) ............................................................................................................ 19, 20

EC.52483.1

Lead Plaintiffs, also referred to herein as the NASDAQ Claimant Group, respectfully submit this Memorandum of Law in Support of Lead Plaintiffs' Motion For an Order Partially Lifting the Discovery Stay imposed under Section 21D(b)(3)(B) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(3)(B) (the "PSLRA"), and for leave to amend the Consolidated Amended Class Action Complaint ("CAC").[1]

## PRELIMINARY STATEMENT

The NASDAQ Claimant Group respectfully requests that this Court enter an order partially lifting the discovery stay imposed by the PSLRA to obtain limited discovery consisting of documents and testimony that The NASDAQ Stock Market LLC and NASDAQ Execution Services, LLC (collectively, "NASDAQ"), and any of their affiliates, parents, subsidiaries, agents and/or employees, provided to the Securities and Exchange Commission ("SEC" or "Commission") in connection with the SEC's investigation into the May 18, 2012 initial public offering ("IPO") of Facebook, Inc. ("Facebook").  Lead Plaintiffs further request that the Court grant them leave to subsequently file a Second Consolidated Amended Class Action Complaint incorporating all relevant facts adduced from the requested discovery materials.  The NASDAQ Claimant Group is confident this limited discovery will contain critical additional factual support for the Class's allegations that, in connection with the Facebook IPO, NASDAQ, *inter alia*:  (i) failed to disclose material information in violation of the federal securities laws; and (ii) acted negligently under state-law.[2]

---

[1] Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the CAC, filed on April 30, 2013 (Docket No. 95).

[2] On June 7, 2013, Lead Counsel informed NASDAQ's counsel that Lead Plaintiffs sought to obtain the documents NASDAQ had compiled, reviewed and produced to the SEC in connection with the Commission's investigation into the Facebook IPO.  Lead Counsel also informed NASDAQ's counsel that it was their belief that the CAC could be amended on the basis of the factual findings in the SEC Order (defined below).  On June 17, 2013, NASDAQ's

On May 29, 2013, the SEC issued a Cease-and-Desist Order (the "Cease-and-Desist Order") charging NASDAQ with numerous violations of the federal securities laws arising from its unlawful actions in connection with the Facebook IPO.[3]  NASDAQ simultaneously agreed to settle the SEC's securities law charges by paying a $10 million penalty – the largest penalty ever assessed against a national exchange.  The Cease-and-Desist Order sets forth detailed factual findings relating to NASDAQ's undisclosed system design limitations and reckless conduct that resulted in substantial damages to investors in the Facebook IPO.  The SEC's findings are based upon a year-long investigation into the Facebook IPO failure, including a detailed review and analysis of documents and information provided by NASDAQ to the Commission.  Just as these discovery materials were indispensible to the SEC's investigation and resulting Cease-and-Desist Order, a review and analysis of these same materials is necessary for Lead Plaintiffs to fully develop their claims on behalf of the Class.

As detailed below, this Court has previously held that the PSLRA discovery stay should be partially lifted in cases where a party has produced documents to government regulators that resulted in a settlement – directly on-point with the issues before this Court.  *See In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178 (S.D.N.Y. 2004) (Sweet, J.) (lifting the PSLRA stay as to documents produced in government investigations that led to a settlement with regulators).  Moreover, district courts within the Second Circuit routinely lift the PSLRA discovery stay when:

---

counsel refused:  (i) to provide Lead Plaintiffs with the documents produced to the SEC; (ii) to consent to Lead Plaintiffs' request to amend the CAC; and (iii) to stay the current deadline for defendants to file their motion to dismiss.

[3] A copy of the SEC Order entitled, "Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Section 19(h)(1) and 21C of the Securities Exchange Act of 1934, Making Findings and Imposing Sanctions and a Cease-and-Desist Order," is attached as Exhibit A to the accompanying Affidavit of Vincent R. Cappucci ("Cappucci Aff.").

EC.52483.1

(i)        the request for discovery does not frustrate the PSLRA's objectives of discouraging frivolous actions and preventing "fishing expeditions";

(ii)       the documents and information sought are limited and sufficiently "particularized";

(iii)      the requested discovery will not unduly burden the party from which such discovery is sought; and

(iv)      *either* the plaintiffs will suffer undue prejudice unless the stay is lifted *or* the discovery is needed to preserve evidence.

Lead Plaintiffs' request for particularized discovery easily satisfies all four of these standards.  First, Lead Plaintiffs' limited discovery requests do not run afoul of Congress's objectives in enacting the PSLRA discovery stay as Lead Plaintiffs are neither engaged in a "fishing" expedition nor seeking to extort a settlement in a strike suit.  Second, Lead Plaintiffs seek only particularized discovery of a narrowly defined universe of documents.  Third, the production of these materials will not unduly burden NASDAQ given that the requested documents have already been compiled, reviewed, and produced to the SEC.  Finally, Lead Plaintiffs and the Class will suffer undue prejudice without the requested discovery.  Absent such discovery, Lead Plaintiffs will be unable to make informed decisions on behalf of the Class concerning litigation strategy, and will remain the only major interested party not in possession of these critical discovery materials.  Moreover, it would be manifestly unfair to deprive Lead Plaintiffs of these materials when, in fact, NASDAQ produced these documents to the SEC for the purpose of settling and finally resolving its federal securities law violations.  (*See* Argument, Section I, *infra*.)

Furthermore, the PSLRA discovery stay is inapplicable to the Negligence Plaintiffs' request for production of the SEC materials.  None of the consolidated NASDAQ Negligence Actions allege any claims of fraud.  Similarly, the consolidated Securities Action does not allege

any claims of negligence.  In this regard, the PSLRA discovery stay is extraneous to the Negligence Class's request for production of the SEC materials – and courts have routinely permitted early discovery in consolidated cases involving both federal securities law and other claims.  (*See* Argument, Section II, *infra*.)

Lead Plaintiffs also seek leave to amend the CAC based upon the Cease-and-Desist Order and the requested discovery sought herein.  Specifically, Lead Plaintiffs respectfully request that the Court enter an order requiring NASDAQ to produce the limited discovery within 30 days after entry of such order and, thereafter, provide Lead Plaintiffs 60 days to file an amended pleading.[4]  To this end, the NASDAQ Claimant Group is seeking to amend the CAC in good faith to ensure that the Class's operative pleading has the benefit of the underlying evidentiary materials NASDAQ already produced to the SEC.  Moreover, such amendment will not unduly prejudice defendants.  Given that the requested discovery materials were the basis for the SEC's determination that NASDAQ violated the federal securities laws in connection with the same factual circumstances underling this action, it is clear that these materials will provide substantial factual support for the Class's claims against NASDAQ.  (*See* Argument, Section III, *infra*.)

Alternatively, should the Court decide not to grant Lead Plaintiffs' request for limited discovery, Lead Plaintiffs respectfully request 30 days after the Court's denial of their application for relief from the PSLRA stay to file a Second Consolidated Amended Class Action Complaint based on the new information contained in the Cease-and-Desist Order.

For the reasons summarized above and discussed more fully below, the NASDAQ Claimant Group respectfully requests that its Motion be granted.

---

[4] In the interest of judicial efficiency, the current briefing schedule as set forth in the February 25, 2013 Scheduling Stipulation and Order (Docket No. 68) should be suspended until the Court has decided the instant Motion.

EC.52483.1

**RELEVANT FACTS**

On April 30, 2013, the NASDAQ Claimant Group filed the CAC alleging that, *inter alia*, Defendants made material misstatements and omissions concerning the capability of NASDAQ's technology and electronic trading platforms despite being fully-aware that these systems were experiencing significant problems rendering them incapable of executing the highly-anticipated Offering.  Defendants also put NASDAQ's commercial interests ahead of the integrity of the market by touting NASDAQ's purported capabilities and recklessly moving forward with the Facebook IPO despite knowing of the enormous risks facing market participants.  Defendants' wrongful conduct ultimately caused Class Members damages in excess of $500 million.[5]

On May 29, 2013, one month after Lead Plaintiffs filed their CAC, the SEC issued the Cease-and-Desist Order in the administrative proceeding against NASDAQ in connection with the Facebook IPO.  The Cease-and-Desist Order was the result of a thorough investigation by the Commission into the facts and circumstances surrounding NASDAQ's system failures and reckless decisions which caused substantial losses to investors on the day of the IPO.  In the course of its investigation, the SEC obtained documents and information from NASDAQ and conducted interviews and depositions of NASDAQ officials and employees.  Based upon the documents and information provided by NASDAQ, the SEC concluded that NASDAQ had violated both the federal securities laws and its own rules.

In response to NASDAQ's unprecedented misconduct detailed in the Cease-and-Desist Order, the SEC:  (i) ordered NASDAQ to cease and desist from further violations of the Exchange Act and its own rules; (ii) censured NASDAQ; (iii) required NASDAQ to comply with numerous remedial undertakings; and (iv) sanctioned NASDAQ with a civil monetary penalty of

---

[5] Pursuant to the Court's February 25, 2013 Scheduling Stipulation and Order, Defendants have until July 2, 2013 to file any motions to dismiss the CAC.  As of the time of this motion, Defendants have yet to file a motion to dismiss.

5

$10 million.  (Cease-and-Desist Order at 19-20.)  The $10 million penalty is the largest ever imposed on a securities exchange in United States history.

The SEC's findings provide substantial factual support for Lead Plaintiffs' claims that NASDAQ failed to disclose material information, and acted recklessly, in connection with the Facebook IPO.  In this regard, the Cease-and-Desist Order details how "[t]he design limitation that led to [NASDAQ's system problems], *and the decisions made by NASDAQ in response to those problems*, directly resulted in many of [NASDAQ's] securities laws violations."  (Cease-and-Desist Order at 4, ¶ 11 (emphasis added).)  Daniel M. Hawke, Chief of the SEC Enforcement Division's Market Abuse Unit, highlighted that the Facebook IPO failure was not the result of mere "technical glitches," but rather, it was the foreseeable result of NASDAQ's reckless decision-making in light of known system design limitations:

> Our focus in this investigation was on the design limitation in NASDAQ's system and the exchange's decision-making after that limitation came to light.  *Too often in today's markets, systems disruptions are written off as mere technical 'glitches' when it's the design of the systems and the response of exchange officials that cause us the most concern.*

(SEC Press Release, dated May 29, 2013, at 1 ("SEC Release") (emphasis added).)[6]

Like the SEC investigation, Lead Plaintiffs' ongoing investigation is focused on NASDAQ's undisclosed system limitations and reckless misconduct in connection with the Facebook IPO.  As alleged in the CAC, and as stated by the SEC, "[w]hen initiating an IPO, an exchange has an obligation to ensure that its systems, processes and contingency planning are robust and adequate to manage the IPO without disruption to the market."  (Cease-and-Desist Order at 2, ¶ 2.)  The SEC also states that NASDAQ failed to meet this obligation due to both "a design limitation in NASDAQ's IPO Cross system" and "decisions made by NASDAQ in

---

[6] A copy of the SEC Press Release is attached as Exhibit B to the Cappucci Aff.

6

response to trading disruptions that resulted from the design limitation" which "led to further

downstream systems issues." (*Id.* at 2, ¶ 3.)  Among other factual findings that provide new

information supporting Lead Plaintiffs' allegations in the CAC, the Cease-and-Desist Order

details that:

- NASDAQ's design limitation in its IPO Cross system created a "repeated cycle of validation checks and recalculations" of orders entered prior to the execution of the Cross, known as a "loop."  The loop prevented "NASDAQ's systems from:  (i) completing the cross; (ii) reporting the price and volume of the executions of the cross (a report known as the 'bulk print'); and (iii) commencing normal secondary market trading." (*See id.* at 4, ¶ 10);

- NASDAQ conducted wholly inadequate stress testing of its systems prior to the IPO as its tests "limited the total number of orders that could be received in the test security to 40,000 orders.  On May 18, 2012, NASDAQ members entered over 496,000 orders into the Facebook IPO cross." (*See id.* at 4, ¶ 12);

- Upon learning that the Cross did not execute at the then-scheduled time of 11:00 a.m., NASDAQ OMX's Chief Executive Officer, Defendant Robert Greifeld, and "several members of NASDAQ's senior leadership team convened a "Code Blue" conference call to discuss the situation."  Despite a myriad of known problems with NASDAQ's IPO Cross Application, "NASDAQ determined not to halt Facebook trading because, in view of the participants on the Code Blue call, continuous trading was operating normally, with active trading on NASDAQ and other exchanges."  Moreover, these participants "decided that 'extraordinary market activity' was not occurring" to justify halting trading. (*See id.* at 7 and 10, ¶¶ 21, 32);

- At approximately 11:05 a.m., NASDAQ knew that its IPO Cross system was experiencing problems with the system's validation check process which prevented the commencement of secondary market trading.  NASDAQ and its executives then made the *ad hoc* decision to switch to an untested failover backup system in an attempt to execute the Cross which they knew would not take into account certain cancellations of orders.  NASDAQ failed to disclose that "it had not tested for this situation leading up to the Facebook IPO" and typically only uses "failovers as duplicates of its existing systems (for example, when there is a power outage), rather than as the vehicle for launching a new, modified version of those systems." (*See id.* at 6, ¶¶ 22-23);

- In making the reckless decision to switch to an untested backup system to force the execution of the Cross, NASDAQ knew, but failed to disclose to its members, that NASDAQ's "members who had entered cancellations during the time between the start of the price/volume calculation and the issuance of the bulk print" would have orders that "had not been successfully cancelled, even though NASDAQ's system

7

had, immediately upon submission, acknowledged these members' cancellations." (*See id.* at 7, ¶ 24 n.4);

- "Within seconds of the release of the bulk print at 11:30:09 a.m., NASDAQ learned of an additional problem concerning the Facebook IPO. Based on telephone complaints from its members and its own monitoring of its trading systems, NASDAQ determined that confirmations were not being delivered to members that placed orders into the cross. This meant that NASDAQ members that placed marketable orders in Facebook before 11:30:09 a.m. were not able to determine whether their orders had been included in the cross and, therefore did not know what position they held in Facebook securities." NASDAQ failed to timely disclose this material information to market participants. (*See id.* at 9, ¶ 29);

- At approximately 11:30 a.m., when the Cross executed and the bulk print was released, "certain NASDAQ executives, including its Senior Vice President and Chief Economist ("Chief Economist"), noticed the approximately 6.3 million share difference between the final indicative volume total (82 million) and the actual volume in the print (75.7 million). This discrepancy indicated to NASDAQ's Chief Economist that there was still a problem with the cross, and that some cross eligible orders may not have been handled properly in the cross but NASDAQ did not address this issue during the minutes and hours following the cross. In addition, NASDAQ could have run a real-time status check of its applications, which would have indicated that the cross executed at 11:30 a.m. did not include any orders entered after 11:11 a.m." (*See id.* at 8, ¶ 27);

- "At 12:01 p.m., the chief executive of a large market making broker-dealer sent an email to NASDAQ's Chief Executive Officer. The email stated that 'since NASDAQ is still unable to send out reports we are all trading blind. Should you stop trading for some period of time so we can all catch up and actually understand our exposure?'" Despite NASDAQ's knowledge that its system failures were causing the market to "trad[e] blind," "NASDAQ never revisited its 11:35 a.m. decision to not halt Facebook trading," nor did it disclose the true extent of its system problems to market participants. (*See id.* at 10, ¶¶ 34-35);

- As a result of NASDAQ's reckless decision to switch to an untested backup system, NASDAQ's systems "prevented accurate quoting data from being delivered to NASDAQ's proprietary feed ('Prop Feed') and the Securities Information Processor quotation data feed . . . ." Following the cross, the Prop Feed showed a stale, crossed quote (bid price higher than ask price) for Facebook on the 'top of book' because orders from the cross were still appearing in the Prop Feed." (*See id.* at 9, ¶ 31); and

- Of the more than 38,000 marketable Facebook orders placed between 11:11 a.m. and 11:30:09 a.m. that were not included in the Cross, "approximately 13,000 were released into the secondary market at 1:49:49 (the other 'stuck' orders were canceled). The release of these approximately 13,000 orders in the secondary market at approximately 1:50 p.m. altered the composition of the resting order book in

8

Facebook (across all public markets)," causing "a 93-cent decrease in Facebook's share price between 1:50 p.m. and 1:51 p.m." (*See id.* at 11, ¶ 39).

Given that the SEC's investigation focused on the very matters that are at the core of the CAC – undisclosed design flaws in NASDAQ's systems and NASDAQ's reckless conduct in connection with the Facebook IPO – Lead Plaintiffs believe that the materials produced by NASDAQ to the SEC are highly relevant to each of the Class's claims.  Accordingly, the NASDAQ Claimant Group seeks only the limited discovery of documents that NASDAQ has already compiled, reviewed, and produced to the SEC in connection with its investigation and resulting Cease-and-Desist Order.

## ARGUMENT

## I.    THE PSLRA'S DISCOVERY STAY SHOULD BE PARTIALLY LIFTED

The PSLRA discovery stay is far from absolute.  Indeed, the statute allows the Court to lift the stay under appropriate circumstances:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, *unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party*.

15 U.S.C. § 78u-4(b)(3)(B) (emphasis added); *In re Bank of Am. Corp. Sec., Derivative, and Emp't Ret. Income Sec. Act (ERISA) Litig.*, No. 09 MDL 2058 (DC), 2009 WL 4796169, at *1 (S.D.N.Y. Nov. 16, 2009) (noting that courts have modified the PSLRA discovery stay when doing so would not frustrate Congress's purposes in enacting the statute); *In re Grand Casinos, Inc. Sec. Litig.*, 988 F. Supp. 1270, 1272 (D. Minn. 1997) ("If . . . Congress had intended an absolute stay on discovery, then Congress would not have authorized a judicial reprieve from such a stay, when a reprieve is needed.").

9

Both the language of the PSLRA and the decisions of numerous federal courts that have interpreted the PSLRA recognize that district courts have the discretion to lift the stay when:

(i)     the request for discovery does not frustrate the PSLRA's objectives of discouraging frivolous actions and preventing "fishing expeditions";

(ii)    the documents and information sought are limited and sufficiently "particularized";

(iii)   the requested discovery will not unduly burden the party from which such discovery is sought; and

(iv)    *either* the plaintiffs will suffer undue prejudice unless the stay is lifted *or* the discovery is needed to preserve evidence.

*See, e.g.*, *Bank of Am.*, 2009 WL 4796169, at *1-2; *Waldman v. Wachovia Corp.*, No. 08 Civ. 2913 (SAS), 2009 WL 86763, at *2 (S.D.N.Y. Jan. 12, 2009); *Seippel v. Sidley, Austin, Brown & Wood LLP*, No. 03 Civ. 6942 (SAS), 2005 WL 388561, at *1 (S.D.N.Y. Feb. 17, 2005).

The facts and circumstances presented in this action satisfy each of the foregoing standards necessary for this Court to order a partial lifting of the PSLRA discovery stay.

A.      **The NASDAQ Claimant Group's Discovery Request Does Not Frustrate The PSLRA's Objectives Of Discouraging Frivolous Actions And Preventing "Fishing Expeditions"**

The PSLRA's legislative history reveals that Congress included the discovery stay provision in the statute in order to remedy two perceived abuses.  First, Congress enacted the discovery stay to prevent plaintiffs from bringing "strike suits" in which "[t]he cost of discovery often forces innocent parties to settle frivolous securities class actions."  H.R. Conf. Rep. No. 104-369, at 37 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 736 (the "Conference Report").  Second, Congress sought to prevent plaintiffs from filing "frivolous lawsuits" initiated only to conduct costly "fishing expedition" discovery in the hopes of finding a sustainable claim.  *See* S. Rep. No. 104-98, at 14 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 693) (the "Senate Report");

10

*see also In re WorldCom, Inc. Sec. Litig.,* 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002). Neither of Congress's concerns in enacting the PSLRA discovery stay is even remotely implicated here.

Here, the Cease-and-Desist Order underscores the non-frivolous nature of the claims asserted in the CAC.  Specifically, the SEC found that NASDAQ violated the federal securities laws due to its reckless conduct and known system limitations, and other facts that are wholly supportive of Lead Plaintiffs' claims in connection with the Facebook IPO.  As George S. Canellos, Co-Director of the SEC's Division of Enforcement, stated, "[the SEC] action against NASDAQ tells the tale of how poorly designed systems and hasty decision-making not only disrupted one of the largest IPO's in history, but produced serious and pervasive violations of fundamental rules governing our markets."  (SEC Release at 1.)  The SEC conducted a thorough investigation into the same wrongdoing complained of by the NASDAQ Claimant Group, demonstrating "that this is not a frivolous securities class action brought against innocent parties."  *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, No. 05-md-1725, 2007 WL 518626, at *8 (E.D. Mich. Feb. 15, 2007) (internal quotation omitted).  Moreover, the NASDAQ Claimant Group seeks only the limited discovery of documents that NASDAQ has already compiled, reviewed, and produced to the SEC in connection with its investigation.

Accordingly, Lead Plaintiffs are neither imposing costly discovery requests upon NASDAQ nor attempting to gather information to support frivolous claims.  As such, partially lifting the PSLRA discovery stay will in no way frustrate Congress's objectives in enacting the statute.  *See, e.g.*, *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 106 (D. Mass. 2002) (permitting limited discovery where "[n]either of the perceived abuses addressed by Congress is present"); *Vacold LLC v. Cerami*, No. 00 Civ. 4024 (AGS), 2001 WL 167704, at *7 (S.D.N.Y. Feb. 16, 2001) (modifying the discovery stay where the request "does not implicate a concern

that plaintiffs are seeking discovery to coerce a settlement or to support a claim not alleged in the Complaint").

When Congress's objectives in enacting the PSLRA are not at issue, courts in this District and elsewhere routinely lift the stay to allow plaintiffs to obtain copies of documents and testimony produced in parallel government investigations.  *See, e.g.*, *Bank of Am.*, 2009 WL 4796169, at *3; *Waldman*, 2009 WL 86763, at *2; *Delphi*, 2007 WL 518626, at *8; *Seippel*, 2005 WL 388561, at *1; *LaBranche*, 333 F. Supp. 2d at 181; *In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004); *Singer v. Nicor Inc.*, No. 02 C 5168, 2003 WL 22013905, at *2 (N.D. Ill. Apr. 23, 2003); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. H-01-3624, 2002 WL 31845114, at *1 (S.D. Tex. Aug. 16, 2002); *WorldCom*, 234 F. Supp. 2d at 306.

In *Seippel*, this Court explained that:

> Courts have modified the discovery stay in cases involving concurrent investigations by governmental agencies when doing so would not frustrate Congress' purposes in enacting the PSLRA.  In such cases, courts have lifted the stay as to documents which have already been produced to the government, on the ground that the cost of such discovery to defendants is minimal, as the documents have already been compiled for production, while plaintiffs would suffer severe prejudice if discovery in their case is delayed while government investigations and other lawsuits proceed ahead of them.

2005 WL 388561, at *1 (alteration in original omitted) (footnote omitted) (internal quotation marks omitted).  The same rationale should apply here – especially given the fact that this Court and others have held that settlements with governmental agencies justify lifting the PSLRA discovery stay.  *See, e.g.*, *Waldman*, 2009 WL 86763 at *2; *LaBranche*, 333 F. Supp. 2d at 181.

12

### B.     The NASDAQ Claimant Group's Discovery Request Is Sufficiently Particularized

The NASDAQ Claimant Group requests that NASDAQ produce the following:

(a)      all documents produced to the SEC in the course of the Commission's investigation and deliberation leading to the issuance of the Cease-and-Desist Order relating to the Facebook IPO; and

(b)      all transcripts or recordings of, or documents related to, investigative testimony, depositions, or interviews taken during the course of the SEC's investigation and deliberation leading to the issuance of the Cease-and-Desist Order relating to the Facebook IPO.

Lead Plaintiffs' limited requests consist of a "clearly defined universe of documents" and easily meet the PSLRA's particularity requirement as they seek only *copies* of documents NASDAQ has already produced to the SEC.  *Bank of Am.*, 2009 WL 4796169, at *3 (citing *WorldCom*, 234 F. Supp. 2d at 301); *see also Waldman*, 2009 WL 86763, at *1 ("It is undisputed that the discovery plaintiffs request is sufficiently particularized, as it is limited to a set of documents already provided to state and federal regulators."); *Delphi*, 2007 WL 518626, at *4-5 (requested discovery was sufficiently particularized as it was confined to those materials already assembled and produced in response to governmental investigations); *FirstEnergy*, 229 F.R.D. at 545 ("The Lead Plaintiff's request is limited to the closed universe of materials that [defendant] has already produced for government investigators and the federal grand jury."); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, MDL No. 02-1335-B, 2003 WL 23830479, at *4 (D.N.H. Jan. 29, 2003) (noting that "discovery is 'particularized' because it is limited to the discovery documents that have already been produced to others . . .").

### C.     NASDAQ Will Not Be Unduly Burdened By Producing Documents Already Produced To The SEC

It is well-established that partially lifting the PSLRA discovery stay with respect to documents that defendants have "already found, reviewed and organized" imposes no real

13

burden upon such defendants.  *Bank of Am.*, 2009 WL 4796169, at *2 (citations omitted); *see also Waldman*, 2009 WL 86763, at *2 ("burden is slight when a defendant has 'already found, reviewed and organized the documents'") (citing *LaBranche*, 333 F. Supp. 2d at 183); *Enron*, 2002 WL 31845114, at *1.  Here, the NASDAQ Claimant Group is seeking only those documents that NASDAQ has already compiled, reviewed, and produced to the SEC in connection with its investigation relating to the Facebook IPO.  Accordingly, "the burden of making another copy for [plaintiffs] will be slight."  *Bank of Am.*, 2009 WL 4796169, at *3; *see also In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004) (where defendants had already produced documents and other materials to governmental and regulatory bodies, "the burden of producing the materials" to class plaintiffs "should be slight, considering that the defendants have previously produced them to other entities").

### D.   The NASDAQ Claimant Group Will Suffer Undue Prejudice If The Requested Discovery Is Not Produced

The PSLRA's discovery stay may be lifted to "prevent undue prejudice."  15 U.S.C. § 78u-4(b)(3)(B).  Courts have construed this requirement to mean "improper or unfair treatment amounting to something less than irreparable harm."  *Bank of Am.*, 2009 WL 4796169, at *2 (citing cases).  "Courts have found undue prejudice where plaintiffs would be unable to make informed decisions about their litigation strategy in a rapidly shifting landscape because they are the only major interested party without documents forming the core of their proceedings."  *Id.* (citing *WorldCom*, 234 F. Supp. 2d at 305; *LaBranche*, 333 F. Supp. 2d at 182).

In the instant action, the NASDAQ Claimant Group will be unduly prejudiced given that, absent the requested discovery, it will be the only major interested party not in possession of critical documents and information directly supporting the NASDAQ Claimant Group's claims. As previously discussed, the SEC's investigation into the same facts and circumstances that form

14

the basis of this action, including its review of the documents and information sought herein, led

to a settlement requiring NASDAQ to:  (i) cease and desist from committing or causing further

violations of the federal securities laws and SEC rules and regulations; (ii) undertake a variety of

remedial measures to prevent such wrongdoing from occurring in the future; and (iii) pay a $10

million penalty to settle the SEC's asserted violations of federal securities laws.  Without access

to the same documents and materials produced by NASDAQ to the SEC, the NASDAQ

Claimant Group will be prejudiced by its inability to make informed decisions about its litigation

strategy, especially where, as here, there have been significant developments in parallel

proceedings.

This Court's decision in *In re LaBranche Securities Litigation.*, 333 F. Supp. 2d 178

(S.D.N.Y. 2004) (Sweet, J.) is directly on-point.  There, the SEC and the New York Stock

Exchange ("NYSE") conducted extensive investigations into the same alleged wrongdoing that

also formed the basis of a securities class action.  *Id.* at 180.  As a result of those investigations,

defendant agreed to pay more than $63.5 million to settle the SEC and NYSE's claims.  *Id.* at

181.  The Court recognized that, as a result of the PSLRA discovery stay, the lead plaintiffs in

the securities class action "will be the only interested party without access to those documents

and will be prejudiced by their inability to make informed decisions about their litigation strategy

in a rapidly shifting landscape."  *Id.* at 183.  The Court lifted the discovery stay to allow

production of documents previously produced to the government regulators:

> The Lead Plaintiffs must now determine their litigation strategy,
> principally whether or not to seek an early settlement to benefit the
> class without further expense.  The requested discovery is essential
> to determine that strategy and to assist in formulating an
> appropriate settlement demand.  The Lead Plaintiffs will suffer
> undue prejudice in having to defer such decisions.  The Defendants
> have not demonstrated any burden imposed by complying now
> with the inevitable discovery.

15

*Id.* at 184.[7]   The same reasoning should apply here as it is clear that the NASDAQ Claimant

Group and Class Members will suffer undue prejudice if the PSLRA discovery stay remains in

place for the reasons articulated by this Court in *LaBranche.*

For all of the foregoing reasons, the NASDAQ Claimant Group respectfully requests that

the Court grant its motion to partially lift the PSLRA discovery stay.

## II.   THE PSLRA DISCOVERY STAY DOES NOT APPLY TO THE SEPARATELY INITIATED NASDAQ NEGLIGENCE ACTIONS

Even if this Court declines to partially lift the PSLRA discovery stay, it should

nevertheless permit the NASDAQ Negligence Plaintiffs to receive the requested discovery, as

their separately-initiated claims rest exclusively on state law and are accordingly not constrained

by the PSLRA.  "The PSLRA, by its terms, is limited to actions filed under the federal securities

laws and does not apply outside this context."  *See FirstEnergy,* 219 F.R.D. at 584.  Initially, the

NASDAQ Negligence Actions Plaintiffs filed their own, separate complaints alleging only state-

law based negligence claims.  While the Court consolidated the NASDAQ Negligence Actions

with the NASDAQ Securities Action pursuant to its December 6, 2012 Opinion and Order (ECF

No. 52), it did so due to the commonality of facts and circumstances underlying both sets of

claims.  In so doing, the Court also acknowledged the NASDAQ Negligence Parties' articulation

of the differences between the cases (including "the elements of the claims, pleading standards,

burdens of proof, procedural requirements under the PSLRA, and factual discovery") and

appointed separate lead counsel for the NASDAQ Securities Action and the NASDAQ

Negligence Actions.  (ECF No. 52 at 6, 42, 50-51.)

---

[7] In granting lead plaintiffs' motion to lift the PSLRA stay, the *LaBranche* Court distinguished cases in which courts have denied motions to modify the stay where defendants had not yet entered into a settlement with a governmental agency, as compared to the situation in *LaBranche* where there had been "an *actual* settlement."  *Id.* at 183 (emphasis in original).

16

While the CAC alleges both securities and state-law claims, the PSLRA discovery stay does not apply to the NASDAQ Negligence Actions.  In similar circumstances, several courts have permitted early discovery in consolidated cases involving both federal securities law and other claims.  For example, in *Tobias Holdings, Inc. v. Bank United Corp*., 177 F. Supp. 2d 162 (S.D.N.Y. 2001), the court ruled that the PSLRA discovery stay did not apply to the non-securities based claims being alleged in a single complaint.  The *Tobias* court recognized that, like here, "[c]onceptually, the claims can be split into two groups:  the federal securities fraud claims which are subject to the automatic stay and the state law claims which are not."  *Id.* at 165.  Accordingly, while this Court explicitly acknowledged that the two sets of claims arose out of the "same set of facts," the Court nevertheless noted that the state claims were "separate and distinct claims" and permitted discovery to proceed as to those claims.  *Id.*

Similarly, in *In re Tyco International, Ltd. Multidistrict Litig,* different cases seeking relief under the federal securities laws, ERISA, and state-law based claims were consolidated in one MDL proceeding.  2003 WL 23830479, at *3.  In rejecting defendants' motion to stay discovery on the non-PSLRA claims, the Court reasoned that:

> The ERISA and Derivative Actions were filed as separate lawsuits by different counsel on behalf of different plaintiffs.  The claims asserted in those actions are not frivolous and defendants do not claim that plaintiffs' counsel are working together to thwart the stay provision.  Absent evidence of collusion, I will not stay discovery in the ERISA and Derivative Actions merely because they have been consolidated with the Securities Actions for pretrial purposes.

*Id.* at *3.  In doing so, the Court acknowledged that permitting discovery to proceed on the non-PSLRA claims may enable the PSLRA plaintiffs to benefit indirectly from that discovery, but found this immaterial as "any interest that the defendants have in delaying discovery does not override the legitimate interest that the plaintiffs in the ERISA and Derivative Actions have in

obtaining an expeditious resolution of their claims." *Id.*  Indeed, for purposes of efficiency, the Court ultimately concluded even the PSLRA plaintiffs could have access to the materials produced. *Id.*

Accordingly, even if this Court denies this motion insofar as it seeks to lift the PSLRA stay, it should nevertheless permit discovery to proceed on the non-PSLRA claims.

### A.      The SEC Documents Are Particularly Relevant To The Negligence Actions

The direct relevance of the SEC documents to the allegations made by the Negligence Plaintiffs and Classes can be seen in the factual findings in the Cease-and-Desist Order.  The SEC's findings more than amply support the allegations of negligent conduct in the CAC, and add additional detail and texture to those allegations.  Moreover, the SEC findings contain entirely new factual revelations not previously known to the plaintiffs.  Indeed, the SEC findings demonstrate that the SEC's investigation penetrated deeply into the facts surrounding NASDAQ's system failures, and the reckless decisions made, during the course of the Facebook IPO and aftermarket trading.  The investigative materials have obvious relevance and extreme importance to the development of the Negligence Plaintiffs' claims.  The Negligence Plaintiffs respectfully refer the Court to the Cease-and-Desist Order and SEC Release attached as exhibits to the Cappucci Aff., and the Relevant Facts, *supra*, for the specific findings presented in the Cease-and-Desist Order.

### B.      The SEC Documents Are Necessary For The Negligence Actions To Formulate Strategy For Discovery And Settlement

The SEC documents are necessary for the Negligence Actions to formulate an efficient, least-cost discovery plan and to analyze the strength of the case in order to evaluate whether and at what point an early resolution could be achieved that maximizes the potential recovery to the class and avoids the costs of a protracted litigation.

18

As noted above, the SEC documents have already been searched, compiled and produced to the SEC by the defendants.  They can quickly be produced again to the Negligence Plaintiffs. Production and review of the documents and SEC investigative testimony will permit both the Negligence Plaintiffs and Defendants to avoid unnecessary duplicative work in the course of discovery.  It will also permit the Negligence Plaintiffs to limit and tailor future document discovery to pinpoint requests for documents identified or suggested by the SEC production, but not contained therein.  Production of the SEC investigatory transcripts of testimony will allow plaintiffs to reduce the number and length of depositions, to hone the deposition questions to the most relevant and important matters, and to eliminate entirely the need for some depositions that the SEC transcripts indicate are not likely to reveal new, relevant information.

Analysis of the SEC documents is also necessary to allow the Negligence Plaintiffs to make a thorough and informed analysis of the strength of the allegations of negligent conduct. That analysis, in turn, will inform the plaintiffs' strategy regarding whether an early settlement demand may be in the best interests of the Class, in terms of maximizing the benefit to the Class and minimizing the cost of litigation.

Finally, the factual allegations in the CAC are based primarily upon publicly available information.  The SEC documents will enable the Negligence Plaintiffs to delve into fact sources not previously available and to amend the CAC based upon this new information.  The Court, in turn, will benefit insofar as any dispositive motions will be decided on the basis of the most fully-developed factual record available at this juncture.

## III.     LEAD PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND THE CAC

Rule 15 of the Federal Rules of Civil Procedure governs the right to amend pleadings, and states that "leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2).

The Supreme Court has stated that absent undue delay, bad faith, undue prejudice, or futility, the "mandate" under Rule 15(a)(2) to freely grant leave to amend "is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also AEP Energy Servs. Gas Holding Co. v. Bank of Am. N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) ("'The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.'") (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir.1993)).  Generally, amendments are favored because they "tend to facilitate a proper decision on the merits."  *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 396 (E.D.N.Y.1998) (internal quotation marks) (citations omitted). In instances where plaintiffs discover new facts relating to and supporting claims asserted in an earlier pleading, courts routinely permit amendment on the basis of this new information.  *See, e.g.*, *Phillips v. Kidder, Peabody & Co.*, No. 87 Civ. 4936 (DLC), 1994 WL 570072, at * 4 (S.D.N.Y. Oct. 13, 1994) ("[C]ourts consistently grant motions to amend where it appears that the new facts and allegations are developed during discovery, are closely related to the original claim, and are foreshadowed in earlier pleadings.") (citing cases).

        The NASDAQ Claimant Group submits that an amendment of the CAC is unquestionably warranted here given that the requested discovery is expected to supply significant additional factual support for Lead Plaintiffs' claims.[8]  *See id.*; *Sokolski*, 178 F.R.D. at 396.  As discussed above, given that the SEC's factual findings directly support Lead Plaintiffs' allegations and should be included in any amended pleading, Lead Plaintiffs should have the opportunity to review the materials upon which these findings were based and include any relevant evidence in their operative pleading.  Accordingly, the requested amendment will ensure that this Court is presented with an operative pleading that accurately and completely reflects the

---

[8] Lead Plaintiffs respectfully refer the Court to the Cease-and-Desist Order and SEC Release attached to the Cappucci Aff. filed concurrently herewith, as well as to the Relevant Facts, *supra*, for further detailed factual allegations that would be added to any amended pleading.  (*See* Exhibits A & B to Cappucci Aff.)

evidence to which Lead Plaintiffs are entitled.  Moreover, any amendment will not be unduly prejudicial to Defendants as such amendment will contain factual allegations based on materials that NASDAQ has already produced to the SEC and, as detailed above, providing such materials places no burden on NASDAQ.

Based upon the foregoing, Lead Plaintiffs respectfully request that the Court enter an order directing NASDAQ to produce the limited discovery sought herein within 30 days after entry of such order and, thereafter, provide Lead Plaintiffs 60 days to file a Second Consolidated Amended Class Action Complaint.  Alternatively, should the Court decide not to grant this request for limited discovery, Lead Plaintiffs respectfully request 30 days after entry of the Court's order denying Lead Plaintiffs' request for discovery to file a Second Consolidated Amended Class Action Complaint on the basis of, *inter alia*, the new factual findings set forth in the Cease-and-Desist Order. Should the Court grant Lead Plaintiffs' alternative request, Lead Plaintiffs will submit a revised briefing schedule.

## **CONCLUSION**

For all of the foregoing reasons, the NASDAQ Claimant Group respectfully requests that the Court grant its motion: (i) to partially lift the PSLRA discovery stay and order NASDAQ to produce the limited discovery sought herein, and (ii) to grant Lead Plaintiffs leave to amend the CAC by entering the [Proposed] Order submitted concurrently herewith.  Alternatively, should the Court deny Lead Plaintiffs' request for limited discovery, Lead Plaintiffs respectfully request that the Court grant leave solely for the purpose of amending the CAC.[9]

---

[9] For the Court's convenience, Lead Plaintiffs are submitting a second [Proposed] Order granting the above-referenced alternative relief.

21

Dated:  June 25, 2013                              Respectfully Submitted,


                                                   */s/ Vincent R. Cappucci*
                                                   Vincent R. Cappucci, Esq.
                                                   Jordan A. Cortez, Esq.
                                                   Evan T. Raciti, Esq.
                                                   Marc X. LoPresti, Esq. (Of Counsel)
                                                   **ENTWISTLE & CAPPUCCI LLP**
                                                   280 Park Avenue, 26th Floor West
                                                   New York, NY 10017
                                                   Telephone:  (212) 894-7200
                                                   Facsimile:  (212) 894-7272

                                                   ***Lead Counsel for NASDAQ
                                                   Securities Actions***

                                                   */s/ Douglas G. Thompson, Jr.*
                                                   Douglas G. Thompson, Jr., Esq.
                                                   Michael G. McLellan, Esq.
                                                   **FINKELSTEIN THOMPSON LLP**
                                                   1077 30th Street, Suite 150
                                                   Washington, D.C. 20007
                                                   Telephone: (202) 337-8000
                                                   Facsimile: (202) 337-8090

                                                   */s/ Christopher Lovell*
                                                   Christopher Lovell, Esq.
                                                   Victor E. Stewart, Esq.
                                                   **LOVELL STEWART HALEBIAN
                                                   JACOBSON LLP**
                                                   61 Broadway, Suite 501
                                                   New York, NY 10006
                                                   Telephone: (212) 608-1900
                                                   Facsimile: (212) 719-4677

                                                   ***Co-Lead Counsel for NASDAQ Negligence
                                                   Actions***


                                                   22

Jacob H. Zamansky, Esq.
Edward H. Glenn, Jr., Esq.
Kevin D. Galbraith, Esq.
**ZAMANSKY & ASSOCIATES LLC**
50 Broadway, 32nd Floor
New York, New York 10004
Telephone: (212) 742-1414
Facsimile:  (212) 742-1177

Kevin I. Goldberg, Esq.
**GOLDBERG, FINNEGAN & MESTER,
LLC**
1010 Wayne Avenue, Suite 950
Silver Spring, Maryland 20910
Telephone:  (301) 589-2999
Facsimile:  (301) 589-2644

Marvin A. Miller, Esq.
Andrew Szot, Esq.
**MILLER LAW LLC**
115 South LaSalle Street, Suite 2910
Chicago, Illinois 60603
Telephone:  (312) 332-3400
Facsimile:  (312) 676-2675

Vincent DiTommaso
**DITOMMASO LUBIN**
17W 220 22nd Street, Suite 410
Oakbrook Terrace, Illinois 60181
Telephone:  (630) 333-0000
Facsimile:  (630)  333-0333

Thomas J. McKenna, Esq.
Gregory D. Egleston, Esq.
**GAINEY MCKENNA & EGLESTON**
440 Park Avenue South, 5th Floor
New York, New York 10016
Telephone:  (212) 983-1300
Facsimile:  (212) 983-0380

23

Richard J. Schager, Jr., Esq.
Andrew R. Goldenberg, Esq.
**STAMELL & SCHAGER, LLP**
One Liberty Plaza, 35/F
New York, New York 10006
Telephone:  (212) 566-4054
Facsimile:  (212) 566-4061

*Additional Counsel for NASDAQ Negligence Actions*

24