**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE FACEBOOK, INC. IPO SECURITIES
AND DERIVATIVE LITIGATION

MDL No. 12-2389 (RWS)

This document relates to:  NASDAQ Actions

---

**REPLY MEMORANDUM IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR AN
ORDER PARTIALLY LIFTING THE PSLRA DISCOVERY STAY AND FOR LEAVE
TO AMEND THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

---

EC.52686.1

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 2

I.      THE PSLRA DISCOVERY STAY SHOULD BE PARTIALLY LIFTED ...................... 2

      A.      Lead Plaintiffs' Limited Discovery Request Does Not Frustrate The PSLRA's Legislative Purposes And Lead Plaintiffs Will Suffer Undue Prejudice If The Discovery Stay Is Not Lifted ................................................................................ 2

      B.      The PSLRA Discovery Stay Does Not Apply To The Negligence Actions ........... 6

      C.      Absent the Requested Discovery, Lead Plaintiffs Will Be Further Prejudiced in Responding to Fact-Based Arguments in Defendants' Motion to Dismiss ............ 8

II.     DEFENDANTS ARE NOT AFFORDED SRO IMMUNITY FROM THE CLAIMS ASSERTED IN THE CAC ................................................................................ 9

      A.      Defendants NASDAQ OMX, Greifeld, And Ewing Are Not Afforded SRO Immunity In Connection With The Allegations Giving Rise to Lead Plaintiffs' Federal Securities Claims ...................................................................................... 9

      B.      Defendants NASDAQ OMX And NASDAQ LLC Are Not Immune From The Allegations Giving Rise to Lead Plaintiffs' Negligence Claims ........................ 11

      C.      Defendants' Assertion of Immunity Does Not Create An Absolute Stay of Discovery ............................................................................................................ 13

III.    LEAD PLAINTIFFS' REQUEST FOR LEAVE TO AMEND THE CAC SHOULD BE GRANTED ........................................................................................... 14

CONCLUSION ...................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*380544 Canada, Inc. v. Aspen Tech., Inc.*,
   No 07 Civ. 1204 (JFK), 2007 WL 2049738 (S.D.N.Y. July 18, 2007) ..................................... 5

*Austin Mun. Sec., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
   757 F.2d 676 (5th Cir. 1985) ................................................................................................. 14

*Brigham v. Royal Bank of Canada*,
   No. 08 Civ. 4431 (WHP), 2009 WL 935684 (S.D.N.Y. Apr. 7, 2009) ..................................... 5

*D'Alessio v. N.Y. Stock Exch., Inc.*,
   258 F.3d 93 (2d Cir. 2001) .................................................................................................... 11

*DL Capital Group v. NASDAQ Stock Mkt, Inc.*,
   409 F.3d 93 (2d Cir. 2005) .................................................................................................... 11

*Foman v. Davis*,
   371 U.S. 178 (1962)............................................................................................................... 15

*Gardner v. Major Auto Cos.*,
   No. 11-cv-1664 (FB), 2012 WL 1230135 (E.D.N.Y. Apr. 12, 2012) ...................................... 7

*Granger v. Marek*,
   583 F.2d 781 (6th Cir. 1978) ................................................................................................. 11

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982)............................................................................................................... 14

*In re Asyst Tech., Inc. Derivative Litig.*,
   No C-06-4669 EDL, 2008 WL 916883 (N.D. Cal. Apr. 3, 2008) ............................................ 5

*In re Bank of Am. Corp. Sec., Derivative, and ERISA Litig.*,
   No. 09 MDL 2058 (DC), 2009 WL 4796169 (S.D.N.Y. Nov. 16, 2009).............................. 3, 4

*In re LaBranche Sec. Litig.*,
   333 F. Supp. 2d 178 (S.D.N.Y. 2004) ................................................................................. 3, 4

*In re NYSE Specialists Sec. Litig.*,
   503 F.3d 89 (2d Cir. 2007) ............................................................................................... 11, 12

*In re Refco, Inc.*
   No 05 Civ. 8626 (GEL), 2006 WL 2337212 (S.D.N.Y. Aug. 8, 2006)..................................... 5

*In re Smith Barney Transfer Agent Litig.*,
   No. 05 Civ. 7583 (WHP), 2006 WL 1738078 (S.D.N.Y. June 26, 2006) .............................. 5, 7

*In re Spectranetics Corp. Sec. Litig.*,
   No. 08-cv-2048, 2009 WL 3346611 (D. Colo. Oct. 14, 2009)...................................................5

*In re Sunrise Senior Living, Inc.*,
   584 F. Supp. 2d 14 (D.D.C. 2008).......................................................................................5

*In re Trump Hotel Shareholder Derivative Litig.*,
   No. 96-7820, 1997 WL 442135 (S.D.N.Y. Aug. 5, 1997).........................................................7

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
   MDL No. 02-1335-B, 2003 WL 23830479 (D.N.H. Jan. 29, 2003) ....................................6, 8

*In re WorldCom, Inc. Sec. Litig.*,
   234 F. Supp. 2d 301 (S.D.N.Y. 2002) ...............................................................................3, 5

*Jacobs v. City of Chicago*,
   215 F.3d 758 (7th Cir. 2000) .............................................................................................11

*Kassover v. UBS A.G.*,
   No. 08 CIV. 2753 (LMM) (KNF), 2008 WL 5395942 (S.D.N.Y. Dec. 19, 2008)....................7

*Kuriakose v. Fed. Home Loan Mortg. Co.*,
   674 F. Supp. 2d 483 (S.D.N.Y. 2009) ..................................................................................5

*Mandelbaum v. NYMEX*,
   894 F. Supp. 676 (S.D.N.Y. 1995) .....................................................................................11

*Maxey by Maxey v. Fulton*,
   890 F.2d 279 (10th Cir. 1989) ...........................................................................................14

*NECA-IBEW Pension Trust Fund v. Bank of Am. Corp.*,
   No. 10 Civ. 440 (LAK) (HBD), 2011 WL 6844456 (S.D.N.Y. Dec. 29, 2011)........................5

*Opulent Fund, L.P. v. The NASDAQ Stock Market, Inc.*,
   No. C-07-03683 RMW, 2007 WL 3010573  (N.D. Cal. Oct. 12, 2007) ....................10, 12, 13

*Rampersad v. Deutsche Bank Secs., Inc.*,
   381 F. Supp. 2d 131 (S.D.N.Y. 2003) ..................................................................................8

*Singer v. Nicor*,
   No. 02 C 5168, 2003 WL 22013905 (N.D. Ill. Apr. 23, 2003) .................................................5

*Tobias Holdings, Inc. v. Bank United Corp.*,
   177 F. Supp. 2d 162 (S.D.N.Y. 2001) ...............................................................................7, 8

*Union Central Life Insurance Co. v. Ally Financial, Inc.*,
   No. 11 Civ. 2890 (GBD) (JCF), 2012 WL 3553052 (S.D.N.Y. Aug. 17, 2012).......................8

*Waldman v. Wachovia Corp.*,
   No. 08 Civ. 2913 (SAS), 2009 WL 86763 (S.D.N.Y. Jan. 12, 2009).........................................4

*Walker v. Gibson*,
   604 F. Supp. 916 (N.D. Ill. 1985) ..........................................................................11

*Weissman v. Nat'l Ass'n of Sec. Dealers*,
   500 F.3d 1293 (11th Cir. 2007) .......................................................................10, 12

## Rules

Fed. R. Civ. P. 15(a)(2)................................................................................................15

## S.E.C. Adjudications

*NASDAQ Market LLC & NASDAQ Execution Services, LLC, Cease-and-Desist Order*,
   Rel. No. 69655 (S.E.C. May 29, 2013)............................................................passim

*Nasdaq Stock Market LLC, Order Granting Approval of a
   Proposed Rule Change to Amend Rule 4626 – Limitation of Liability*,
   Rel. No. 69216, 2013 WL 1191418 (S.E.C. Mar. 22, 2013) ......................................6

*Nasdaq Stock Market, LLC, Findings, Opinion, and Order of the Comm'n*,
   Rel. No. 53128, 2013 WL 92913 (S.E.C. Jan. 13, 2006) ......................................10

Lead Plaintiffs respectfully submit this Reply Memorandum of Law in Further Support of their Motion for an Order Partially Lifting the PSLRA Discovery Stay and for Leave to Amend the Consolidated Amended Class Action Complaint ("CAC").[1]

## PRELIMINARY STATEMENT

Following a year long investigation into the facts and circumstances underlying the instant action, the SEC issued a Cease-and-Desist Order containing factual findings directly relevant to the claims pled by Lead Plaintiffs and imposing significant remedial undertakings on NASDAQ in connection with its egregious mishandling of the Facebook IPO.  In its settlement with the SEC, NASDAQ further agreed to pay the landmark sum of $10 million and was censured by the Commission.  The SEC, in announcing entry of the Cease-and-Desist Order, stated that its "action against NASDAQ tells the tale of how poorly designed systems and hasty decision-making not only disrupted one of the largest IPOs in history, but produced serious and pervasive violations of fundamental rules governing our markets."  (SEC Release at 1.)  The wide-sweeping reforms and governance changes which NASDAQ undertook as part of the SEC settlement evidence a complete absence of internal controls and processes which were necessary to ensure the reliability of its exchange technology prior to the Facebook IPO.[2]

Defendants now argue that Lead Plaintiffs will not suffer undue prejudice absent an opportunity to review the limited discovery produced to the SEC, notwithstanding the fact that:  (i)

---

[1] Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in Lead Plaintiffs' opening brief, filed on June 25, 2012 ("Pl. Br."), ECF No. 118.

[2] In response to the Facebook IPO failure, NASDAQ has undertaken to, *inter alia*:  (i) "enhance its technology change process by . . . expanding and formalizing participation by stakeholders across NASDAQ – including technology, business, legal, and regulatory personnel – in the product development lifecycle to promote greater transparency and communication, and enhanced supervision, in the design, deployment, project management, and approval phases"; (ii) "deploy new standardized global change management software to provide . . . enhanced risk management capability and expedited incident response/management"; (iii) "dedicate a system and performance engineering team to daily monitoring and analysis of system performance, and will establish a new quality assurance organization. . . ."; and (iv) "make technical changes to its IPO/Halt Crosses, and to its Opening and Closing Crosses, designed to prevent a recurrence of the persistent recalculation problem that affected the Facebook IPO." *NASDAQ Market LLC & NASDAQ Execution Services, LLC, Cease-and-Desist Order*, Rel. No. 69655, at 17-19 (S.E.C. May 29, 2013) ("Cease-and-Desist Order").

the documents underlying the Cease-and-Desist Order are highly relevant to, and provide further support for, the claims asserted in this action; (ii) the Class is – and will continue to be – the only interested party unable to evaluate critical evidence relevant to its case; and (iii) Defendants have now squarely raised the SEC's Cease-and-Desist Order as a lynchpin of the arguments contained in their motion to dismiss.  The risk of undue prejudice is further amplified by the rapidly shifting landscape surrounding this action.  Defendants have filed a motion to dismiss that raises new factual assertions on the basis of the SEC's Cease-and-Desist Order.  In addition, the claims process arising out of NASDAQ's $62 million Accommodation Proposal is ongoing, and the amount of compensation (if any) that Class Members will receive through the claims process remains unsettled.  In this regard, the limited discovery sought herein is necessary for Lead Plaintiffs to make informed litigation decisions on behalf of the Class in light of NASDAQ's settlement with the SEC and the uncertainty surrounding the ongoing claim process.

Independent of the PSLRA, Defendants also attempt to create an absolute discovery stay based solely upon their assertion of immunity.  However, as discussed below, this argument lacks precedential support, especially given that Lead Plaintiffs are not seeking to commence anything approaching "broad-ranging discovery" proceedings, and Defendants cannot legitimately assert SRO immunity.  Accordingly, Lead Plaintiffs respectfully request that the Court enter an order partially lifting the PSLRA stay, and further grant leave to amend the CAC on the basis of this discovery.

## <u>ARGUMENT</u>

## I.    THE PSLRA DISCOVERY STAY SHOULD BE PARTIALLY LIFTED

### A.    Lead Plaintiffs' Limited Discovery Request Does Not Frustrate The PSLRA's Legislative Purposes And Lead Plaintiffs Will Suffer Undue Prejudice If The Discovery Stay Is Not Lifted

As set forth in Lead Plaintiff's opening brief, the PSLRA's automatic stay was enacted "to minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that

corporate defendants will settle those actions rather than bear the high cost of discovery, or that the plaintiff will find during discovery some sustainable claim not alleged in the complaint." *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) (citations omitted).  Courts have therefore partially lifted the discovery stay in securities class actions involving investigations by governmental agencies resulting in settlements when, as here, doing so would not frustrate Congressional purposes in enacting the PSLRA, and where plaintiff's requests were particularized, reasoning that such discovery would prevent "'undue prejudice to that party.'" *See, e.g., In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 181 (S.D.N.Y. 2004) (Sweet, J.) (citation omitted).

In their opposition brief ("Opp. Br."), Defendants contend that Lead Plaintiffs will not be unduly prejudiced if the limited discovery is withheld.[3]  However, absent an opportunity to review the materials Defendants have already produced to the SEC, the Class "will be the only interested party without access to those documents and will be prejudiced by their inability to make informed decisions about their litigation strategy in a rapidly shifting landscape." *LaBranche*, 333 F. Supp. 2d at 183.  Not only has NASDAQ recently reached a $10 million settlement with the SEC (the largest ever paid by a national exchange), but the claims process with respect to NASDAQ's $62 million Accommodation Proposal is ongoing, and its final outcome for Class Members, including to what extent Class Members are afforded compensation under the Proposal, is far from certain.[4]  In short, the litigation landscape facing Class Members is extraordinarily fluid and the discovery sought herein is necessary for Lead Plaintiffs to make informed litigation decisions on behalf of the

---

[3] Defendants do not dispute that Lead Plaintiffs' limited discovery request is both sufficiently particularized and that the production of these materials will not unduly burden NASDAQ given that the requested materials have already been reviewed, compiled, and produced to the SEC.  *See, e.g., In re Bank of Am. Corp. Sec., Derivative, and ERISA Litig.*, No. 09 MDL 2058 (DC), 2009 WL 4796169, at *3 (S.D.N.Y. Nov. 16, 2009) (requested discovery was sufficiently particularized, as it was a "clearly defined universe of documents" already provided to regulators).

[4] The Accommodation Proposal, as approved by the SEC, only provides compensation to NASDAQ members and is uncertain as to whether non-members, including retail investors, will ultimately receive compensation for their losses (the Class consists of both NASDAQ members and their customers).  FINRA's review of the members' claims submissions, including their trading data, is ongoing and the SEC has yet to approve payment to any NASDAQ member.  (*See id.* at *6.)

Class.

The facts of this case are analogous to those underlying the Court's decision in *LaBranche*. In *LaBranche*, defendant settled actions brought by the SEC and NYSE arising out of the same facts and circumstances pled by the PSLRA plaintiffs. 333 F. Supp. 2d at 183. The Court lifted the PSLRA discovery stay, finding that plaintiffs were the only interested party without access to the requested documents and were therefore "prejudiced by their inability to make informed decisions about their litigation strategy in this rapidly shifting landscape." *Id.* Moreover, the Court distinguished certain cases denying motions to modify the PSLRA stay, emphasizing that there had been no settlement with government regulators in those cases, as compared to *LaBranche*, where "there has been an *actual* settlement." *Id.* at 183 (emphasis in original).

Equally applicable here is the Court's reasoning in *Waldman v. Wachovia Corp.*, No. 08 Civ. 2913 (SAS), 2009 WL 86763 (S.D.N.Y. Jan. 12, 2009). As in the instant matter, defendant in *Waldman* reached settlements with certain governmental regulators. Thereafter, lead plaintiffs moved to partially lift the PSLRA discovery stay to obtain documents produced to regulators in order to assess the adequacy of the regulatory settlements on their claims. In granting the motion, the Court held that "***lead plaintiffs must determine whether to continue with this case despite the settlement reached between defendants and the SEC, which will afford some compensation to the plaintiff class***. The unavailability of documents plaintiffs have requested places a burden on their ability to make that determination." *Id.* at *2 (citations omitted); *see also Bank of America*, 2009 WL 4796169, at *3 (lifting stay because plaintiffs would be "unduly prejudiced" without limited discovery and "less able to make informed decisions about litigation strategy").[5]

---

[5] Although Defendants argue that Lead Plaintiffs need to show exceptional circumstances such as "extraordinary legal or financial conditions that could prevent plaintiffs from obtaining meaningful relief if the stay is not lifted," (Opp. Br. at 9), Judge Chin in *Bank of America* specifically rejected any requirement that plaintiffs demonstrate exceptional circumstances "to the extent it implies that something more than 'undue prejudice' is required." *Id.* 2009 WL 4796169, at *2.

Each of the cases cited by Defendants is factually distinguishable from the proceedings before this Court.[6]  (*See* Opp. Br. at 9-10.)  For example, in *In re Refco, Inc.* No 05 Civ. 8626 (GEL), 2006 WL 2337212, at *2-*3 (S.D.N.Y. Aug. 8, 2006), Judge Lynch concluded that the mere existence of settlement discussions between the defendant and third parties did not create a risk of undue prejudice.  Here, however, NASDAQ has actually settled regulatory actions arising from the same facts and circumstances underlying the Class's claims.[7]

Similarly, Defendants' contention that no "rapidly shifting landscape" exists in the instant case is wholly misplaced.[8]  Not only has NASDAQ entered an "*actual* settlement" with regulators, but Defendants are in the midst of undertaking a complex claims process in connection with the Accommodation Proposal.  *See Nasdaq Stock Market LLC, Order Granting Approval of a Proposed Rule Change to Amend Rule 4626 – Limitation of Liability*, Rel. No. 69216, 2013 WL 1191418

---

[6] Defendants rely on cases where the defendants had produced documents to, **but had not settled with**, regulatory officials, and plaintiffs failed to provide any other compelling assertion of undue prejudice.  In *Kuriakose v. Fed. Home Loan Mortg. Co.*, 674 F. Supp. 2d 483 (S.D.N.Y. 2009), *In re Spectranetics Corp. Sec. Litig.*, No. 08-cv-2048, 2009 WL 3346611 (D. Colo. Oct. 14, 2009), and *380544 Canada, Inc. v. Aspen Tech., Inc.*, No 07 Civ. 1204 (JFK), 2007 WL 2049738 (S.D.N.Y. July 18, 2007), the courts found no undue prejudice where there were ongoing governmental investigations but recognized that *LaBranche* would mandate a different result if there had been an "actual" settlement in place.  *See also NECA-IBEW Pension Trust Fund v. Bank of Am. Corp.*, No. 10 Civ. 440 (LAK) (HBD), 2011 WL 6844456, at *3 (S.D.N.Y. Dec. 29, 2011) (SEC enforcement action was ongoing and SEC action was "substantially different" from the instant litigation and "cannot be considered parallel"); *In re Sunrise Senior Living, Inc.*, 584 F. Supp. 2d 14, 18 (D.D.C. 2008) (SEC investigation "occurring contemporaneously" with private securities action); *In re Asyst Tech., Inc. Derivative Litig.*, No C-06-4669 EDL, 2008 WL 916883, at *3 (N.D. Cal. Apr. 3, 2008) (government agencies closed their investigations finding no wrongdoing).

[7] Defendants' reliance on *Brigham v. Royal Bank of Canada*, No. 08 Civ. 4431 (WHP), 2009 WL 935684 (S.D.N.Y. Apr. 7, 2009) and *In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583 (WHP), 2006 WL 1738078 (S.D.N.Y. June 26, 2006) also misses the mark.  In *Brigham*, the court determined that there was no undue prejudice because the settlements defendant entered into with the SEC and state regulators allowed lead plaintiff and class members to have their shares repurchased in full.  2009 WL 935684 at *1-*2.  In *Smith Barney*, plaintiffs failed to identify any "prejudice" other than "the routine delay arising from the PSLRA stay."  2006 WL 1738078 at *3.

[8] Defendants rely on *WorldCom* for the proposition that the factual circumstances there exemplify a "rapidly shifting landscape" which would justify lifting the PSLRA stay.  (*See* Opp. Br. at 11-12.)  In *WorldCom*, however, the court's rationale for ordering discovery mirrors precisely the circumstances in this action.  While the individual nuances there may have been *additional* factors weighing in favor of lifting the stay, they were hardly *necessary* factors.  Indeed, courts have recognized that any factual distinctions in *WorldCom* and other cases do not necessarily foreclose a finding that plaintiffs will be unduly prejudiced if the stay is not lifted.  *See, e.g.*, *Singer v. Nicor*, No. 02 C 5168, 2003 WL 22013905, at *2 (N.D. Ill. Apr. 23, 2003) ("[E]ven if Nicor is not bankrupt, the concerns expressed by the *Enron* and *WorldCom* courts are valid and present in this case.  Plaintiffs here may well be unfairly disadvantaged if they do not have access to the documents that the governmental and other agencies already have, during the pendency of the motion to dismiss.").

(S.E.C. Mar. 22, 2013) ("Accommodation Approval Order").  This ongoing claims process will undoubtedly have a significant impact on the substantive rights of Class Members, including to what extent they are afforded compensation for the losses attributable to Defendants' wrongdoing. Among other things, the Accommodation Proposal requires NASDAQ members who decide to accept compensation to execute and deliver "a release of all claims by the member or its affiliates against Nasdaq or its affiliates for losses that arise out of, are associated with, or relate in any way to the Facebook IPO Cross."  *Id.* at *9.  Given the uncertainty and the preliminary stage of the Accommodation Proposal's claim process, Class Members will be unduly prejudiced without access to the materials that form the basis of NASDAQ's Accommodation Proposal.[9]

### B.    The PSLRA Discovery Stay Does Not Apply To The Negligence Actions

Defendants argue that the Negligence Plaintiffs seek discovery to "improperly . . . circumvent the PSLRA discovery stay."  (Opp. Br at 16.)  However, the PSLRA does not apply to state-law claims, and the Negligence Actions and the Securities Actions were originally "filed as separate lawsuits by different counsel on behalf of different plaintiffs."  *In re Tyco Int'l, Ltd. Multidistrict Litig.*, MDL No. 02-1335-B, 2003 WL 23830479, at *3 (D.N.H. Jan. 29, 2003).  While this Court consolidated the two sets of actions (over the Negligence Parties' objections), it found it "appropriate to have a co-lead plaintiff designated in this district whose losses focus on the alleged negligent failure of NASDAQ" while appointing separate co-lead counsel to pursue securities claims. (ECF No. 52 at 48, 49.)  The Negligence Plaintiffs never pled, nor intended to plead, federal securities claims; their claims exist alongside the securities claims only because this Court found convenience and efficiency militated in favor of a single consolidated complaint.  There is

---

[9] Defendants also ignore several other factors contributing to the "rapidly shifting landscape":  (i) UBS AG, a NASDAQ member, has instituted FINRA arbitration against NASDAQ in connection with the Facebook IPO; and (ii) Facebook has stated in court filings that the cause of investor losses arose out of NASDAQ's misconduct.  *See* Mot. to Transfer, *In re Facebook, Inc. IPO Sec., Derivative & ERISA Litig.*, MDL No. 2389 (J.P.M.L. June 14, 2012), ECF No. 1.  As these parallel proceedings move forward, defendants will undoubtedly be subject to discovery demands.

accordingly no "circumvention" of the PSLRA:  the Negligence Plaintiffs "distinguished their theories of liability from those of the Exchange Act plaintiffs," and "have not made frivolous claims in order to bypass PSLRA's discovery stay provision." *Kassover v. UBS A.G.*, No. 08 CIV. 2753 (LMM) (KNF), 2008 WL 5395942, at *3 (S.D.N.Y. Dec. 19, 2008) (permitting discovery on state claims).  Indeed, the Negligence Plaintiffs seek only a ***subset*** of the full-blown discovery to which they are entitled.[10]

Defendants' efforts to distinguish *Tobias Holdings, Inc. v. Bank United Corp.*, 177 F. Supp. 2d 162 (S.D.N.Y. 2001) oversimplify that case.  *Tobias* permitted discovery on "separate and distinct [state law] claims that cannot be summarily dismissed," even though they were pled alongside federal claims.  *Id.* at 166.  The *Tobias* court did rely on its diversity jurisdiction over the state claims in so ruling, but only to acknowledge it had "independent jurisdiction – diversity of citizenship – requiring it to hear" them.  *Id.* at 168.  This independent jurisdiction rendered the state claims independent from the federal claims, so that the Court did not need to "rely on pendent or supplemental jurisdiction to hear [the] non-federal claims."  *Id.* at 167 n.5.  The same is true here because the Court has independent jurisdiction over the negligence claims under CAFA.  (CAC ¶ 43.)[11]  Nothing limits the principles in *Tobias* to cases solely involving diversity jurisdiction.  *Id.* Thus, "permitting discovery to proceed here would not represent an impermissible 'end run' around the PSLRA's automatic stay provisions."  *Id.* at 167.

---

[10] None of the cases Defendants cite involve separate cases consolidated solely for efficiency.  In *Smith Barney*, the court held it impermissible for a single lead plaintiff to circumvent the PSLRA stay "by including non-securities claims in a complaint."  2006 WL 1738078, at *3.  Similarly, in *In re Trump Hotel Shareholder Derivative Litig.*, No. 96-7820, 1997 WL 442135 (S.D.N.Y. Aug. 5, 1997), plaintiff pled federal claims alongside state claims, requiring a stay.  *Id.* at *2.  However, the *Trump Hotel* court acknowledged "the PSLRA has no application to actions in which only state law claims are alleged." *Id.*  *Gardner v. Major Auto Cos.*, No. 11-cv-1664 (FB), 2012 WL 1230135 (E.D.N.Y. Apr. 12, 2012), also involved plaintiffs asserting federal and state claims in a single action.

[11] Defendants assert this Court additionally has federal subject matter jurisdiction pursuant to this Court's opinion denying remand in the *Zack* action pending in this MDL.  (ECF No. 132.)  While the Negligence Plaintiffs do not concede this point, the relevant question remains whether this Court possesses independent subject matter jurisdiction over the negligence claims, or whether it must rely solely on supplemental jurisdiction .  *Tobias*, 177 F. Supp. 2d at 169 n.4.  Defendants' argument acknowledges that this Court possesses independent jurisdiction.

Even the cases Defendants cite criticizing *Tobias* recognize the holding is not so narrow.

*Union Central Life Insurance Co. v. Ally Financial, Inc*., No. 11 Civ. 2890 (GBD) (JCF), 2012 WL

3553052 (S.D.N.Y. Aug. 17, 2012) concluded that the *Tobias* holding meant "'the PSLRA

discovery stay does not apply to non-fraud state law claims . . . unrelated to a plaintiff's federal

securities fraud claims." *Id.* at *3 (alteration in original) (quotations marks omitted).[12]  Defendants

additionally argue *Tyco* involved "prudence – not the PSLRA."  (Opp. Br. at 16.)  But the *Tyco*

defendants tacitly conceded that the PSLRA did not apply to state law claims, instead arguing

prudence counseled in favor of a stay.  *Id.* 2003 WL 23830479, at *1.  Thus, Defendants' argument

that the Negligence Plaintiffs seek to "circumvent" the stay ignores the facts, and the cases they cite

are inapposite.

> **C.      Absent the Requested Discovery, Lead Plaintiffs Will Be Further Prejudiced in
>           Responding to Fact-Based Arguments in Defendants' Motion to Dismiss**

Although not fully before this Court at this juncture, Defendants' motion to dismiss is

premised on numerous fact-based arguments to which the requested discovery is directly relevant.

For example, Defendants assert that the Cease-and-Desist Order confirms that all of Defendants'

actions and inactions fall within the boundaries of their regulatory duties subject to SRO immunity.

(*See, e.g.*, MTD Br. at 2) (the Cease-and-Desist Order addresses "precisely the kinds of regulatory

functions for which an SRO has immunity").  Thus, Defendants' motion to dismiss puts the facts

underlying the Cease-and-Desist Order squarely at issue, and Lead Plaintiffs will be further unduly

prejudiced in responding to Defendants' threshold immunity arguments without the requested

discovery.

Moreover, as set forth herein and discussed more fully in Plaintiffs' opening brief,

---

[12] Defendants' additional cases also involve circumstances where the state-law claims mirror the federal claims.  *See Rampersad v. Deutsche Bank Secs., Inc*., 381 F. Supp. 2d 131, 134 (S.D.N.Y. 2003) (plaintiffs state claims "essentially mirror his federal securities claim"); *Union Cent.*, 2012 WL 3553052, at *4 (state claims "are not separate and distinct from their Exchange Act claims, but rather are closely intertwined.").

Defendants do not premise their motion to dismiss *exclusively* on SRO immunity grounds, but also argue that the federal securities claims must be dismissed based on substantive pleading issues relating to falsity (*see, e.g.,* MTD Br. at 47 ("market system status messages made by NASDAQ on the day of the Facebook IPO . . . were also factually true")), scienter (*see, e.g.,* MTD Br. at 54 ("the system issues NASDAQ experienced in the Facebook IPO were unanticipated")), and loss causation (*see, e.g.,* MTD Br. at 54 ("after NASDAQ's systems issues were corrected and trading resumed normally, the price of Facebook stock did not rebound, but continued to decline")).[13]  Having opened the door by asserting substantive non-immunity arguments for dismissal, Defendants have waived any discovery stay arguments which are solely grounded in their immunity defenses, to the extent that the Court, for purposes of this motion, assumes these defenses are available.

## II.    DEFENDANTS ARE NOT AFFORDED SRO IMMUNITY FROM THE CLAIMS ASSERTED IN THE CAC

### A.    Defendants NASDAQ OMX, Greifeld, And Ewing Are Not Afforded SRO Immunity In Connection With The Allegations Giving Rise to Lead Plaintiffs' Federal Securities Claims

As Defendants implicitly concede in their motion to dismiss the CAC, Defendant NASDAQ OMX (the employer of Defendants Greifeld and Ewing) is not registered as an SRO under the Exchange Act, but instead, is the for-profit, publicly-traded parent company of NASDAQ LLC – the "[SRO] registered as a national securities exchange under Section 6 of the Exchange Act." (MTD Br. at 3).  Indeed, in approving the registration of NASDAQ LLC as a national securities exchange, the SEC explicitly noted that NASDAQ OMX "***will not itself carry out regulatory functions***" and that its corporate documents "include certain provisions that are designed to maintain the independence of [NASDAQ LLC's] self-regulatory function from [NASDAQ OMX]." *Nasdaq Stock Market, LLC, Findings, Opinion, and Order of the Comm'n,* Rel. No. 53128, 2013

---

[13] Contrary to Defendants' assertion, the SEC confirmed that at 1:49 p.m. on the day of the IPO, NASDAQ released approximately 3 million shares of sell orders into the market causing a $0.93 per share decrease in the price of Facebook stock between 1:50 and 1:51 pm. (*See* Cease-and-Desist Order at 11.)

WL 92913, at *9 (S.E.C. Jan. 13, 2006) (emphasis added).  Given that Defendants NASDAQ OMX, Greifeld and Ewing (the "Securities Defendants") do not possess SRO status under the Exchange Act, they cannot claim to be protected by its immunity.[14]

Even assuming, *arguendo*, that the Securities Defendants were registered as SROs, the defense of immunity would still not apply as the Securities Defendants' alleged wrongdoing was in connection with NASDAQ OMX's for-profit commercial interests as a publicly-traded company. As detailed in the CAC, the Securities Defendants made material statements and omissions of fact concerning the capability and reliability of NASDAQ OMX's technology and trading platforms in its SEC public filings (CAC ¶¶ 168-80), on NASDAQ OMX's website (CAC ¶¶ 181-83), and during NASDAQ OMX's May 10, 2012 Investor Day Conference (CAC ¶¶ 184-89).[15]  Like similar statements made by other publicly-traded companies, these statements were intended to "serve [NASDAQ OMX's] private business interests, such as its efforts to increase trading volume and company profit."  *Weissman v. Nat'l Ass'n of Sec. Dealers*, 500 F.3d 1293, 1296 (11th Cir. 2007). Given that the Securities Defendants were "acting in [NASDAQ OMX's] own interest as a private entity . . . absolute immunity from suit ceases to obtain."  *Id.* at 1297; *see also Opulent Fund, L.P. v. The NASDAQ Stock Market, Inc.*, No. C-07-03683 RMW, 2007 WL 3010573, at *4 (N.D. Cal. Oct. 12, 2007) ("'[W]hen conducting private business, [an SRO] remains subject to liability.'" (second alteration in original).)[16]  Thus, in addition to the fact that the Securities Defendants are not

---

[14] Similarly, Defendants' contention that Lead Plaintiff First New York Securities LLC is bound by the arbitration clause in its Membership Agreement with NASDAQ LLC is of no moment with respect to its claims against the Securities Defendants.

[15] Notably, the Securities Defendants' material omissions were made in the context of the largest, most highly-anticipated IPO in the history of NASDAQ LLC and the third largest in U.S. history.  *See* Cease-and-Desist Order at 2 ("The Facebook IPO was widely anticipated to be among the largest in history, with huge numbers of institutional and retail investors expressing interest in participating."); (CAC ¶ 1).

[16] *See also Weissman*, 500 F.3d at 1296 (When entities "are not acting in the exercise of their *purely* governmental functions, but are performing duties that pertain to the exercise of those private franchises, powers, and privileges which belong to them for their own corporate benefit, . . . then a different rule of liability is applied and they are generally held responsible for injuries arising from their negligent acts or their omissions to the same extent as a private corporation under like circumstances." (emphasis added) (second alteration in original).).

registered as SROs, their wrongdoing arises from material omissions made in a commercial context where immunity does not exist.

### B.    Defendants NASDAQ OMX And NASDAQ LLC Are Not Immune From The Allegations Giving Rise to Lead Plaintiffs' Negligence Claims

Defendants assert that they are immune from suit under the "'rare and exceptional'" court-made doctrine of SRO immunity, which exempts SROs from liability for functions performed pursuant to delegated government authority.  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 96 (2d Cir. 2007) (citations omitted).  Courts examine SRO immunity on a case-by-case basis, *DL Capital Group v. NASDAQ Stock Mkt, Inc.*, 409 F.3d 93, 97 (2d Cir. 2005), and a party asserting it bears the burden of demonstrating it applies.  *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 104 (2d Cir. 2001).  The defense involves a fact-based inquiry and dismissal at the pleading stage is inappropriate.[17]

In this Circuit, SRO immunity originated from the performance of quasi-judicial activities in SRO disciplinary proceedings.  *See Mandelbaum v. NYMEX*, 894 F. Supp. 676 (S.D.N.Y. 1995) (holding an exchange entitled to absolute immunity when engaged in the quasi-judicial function of a disciplinary proceeding).  Outside of that context, courts apply a "function" test, granting immunity solely when an exchange is:  (i) exercising adjudicatory or quasi-adjudicatory monitoring, enforcement, and oversight powers; and (ii) engaging in "conduct consistent with the quasi-governmental powers delegated to it pursuant to the Exchange Act and the regulations and rules promulgated thereunder."  *D'Alessio*, 258 F.3d at 106.  Thus, SRO immunity bars suits against an exchange based on its performance of activities involving functions expressly delegated by the SEC.  *See, e.g.*, *NYSE Specialists*, 503 F.3d at 97.  In all cases, the critical inquiry is "whether the

---

[17] *See Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3, 775 (7th Cir. 2000) (immunity usually depends on the facts of the case and "when defendants do assert immunity it is essential to consider facts in addition to those in the complaint"); *Walker v. Gibson*, 604 F. Supp. 916, 920 (N.D. Ill. 1985) (immunity "is a fact-based issue that often requires the consideration of evidence before it may be determined") *citing Granger v. Marek*, 583 F.2d 781, 785-86 (6th Cir. 1978).

plaintiff's allegations concern the exercise of powers within the bounds of the government functions delegated" to the SRO.  *Id.* at 98.  No court has ever granted an SRO immunity:  (i) for regulated profit-making business activities; (ii) where it was regulating itself (as opposed to a third party); or (iii) because it was required to comply with governmental regulations.  *Cf. Weissman,* 500 F.3d at 1298-99 (no immunity for claims arising from marketing and advertising); *Opulent Fund*, 2007 WL 3010573, at *5 (no immunity for mispricing index).

      Defendants' immunity argument confounds the performance of a regulated activity – the operation of a stock exchange – with the performance of a delegated regulatory function.[18]  Any immunity NASDAQ enjoys exists not because its activities are regulated, but only because it has, in addition to its regulated business, been specifically delegated certain non-business, regulatory oversight functions that otherwise would be performed by the SEC.  Its immunity is strictly limited to its performance of those regulatory functions.  As the court stated in *Opulent Fund*:

> That the SEC approved the pricing formula against which Nasdaq's conduct will be judged does not automatically convert Nasdaq's conduct into an immunized "regulatory function." SEC approval of a rule imposing a duty on an SRO is not the *sine qua non* of SRO immunity; engaging in regulatory conduct is. Here, Nasdaq's actions do not partake of the same "regulatory" character as suspending trading, banning traders, or carrying out disciplinary actions.

2007 WL 3010573, at *5.

      Thus, the proper analysis focuses upon the particular failures alleged in the CAC, all of which occurred in the context of the business function of facilitating an IPO.  The negligence claims in the CAC center on NASDAQ's failure to properly execute and confirm trade orders for Facebook stock placed by Class Members prior to the opening of trading on the day of the IPO.  The operation of a stock exchange, the facilitation of new listings and IPOs, and the design, testing and

---

[18] In the Accommodation Approval Order, the SEC critically emphasized that it was not determining whether "regulatory immunity should apply to Nasdaq in connection with its actions related to the Facebook IPO" or "whether Nasdaq or any other person may have violated the federal securities laws or any other laws" in connection with the Facebook IPO. *Id.* at *9.

implementation of a pre-opening cross system are not regulatory functions that the SEC would otherwise itself perform, and are not functions delegated to NASDAQ Exchange LLC by the SEC. Execution, processing and confirmation of trade orders are quintessentially business functions of a for-profit exchange.

It is one thing to say that an exchange disciplining a member firm is acting in a delegated regulatory capacity, where discipline and enforcement are traditional, core regulatory functions. But it is another thing altogether to say that accurate and timely trade execution and confirmation functions performed in connection with the NASDAQ designed and implemented IPO cross system are delegated regulatory functions, when the SEC has never engaged, and is not authorized by Congress in the Exchange Act to engage, in those business aspects of exchange operation.  As the court in *Opulent Fund* phrased it, "mere 'market facilitation' is not regulatory conduct."  2007 WL 3010573, at *5.  Defendants' immunity arguments stretch the limited concept of SRO immunity too far, and this Court should enter an order granting Lead Plaintiffs' request for pinpointed discovery of the SEC documents.

## C.    Defendants' Assertion of Immunity Does Not Create An Absolute Stay of Discovery

Defendants also contend that they are deserving of blanket protection from even the most limited discovery procedure solely on the basis of their purported SRO immunity.  (*See* Opp. Br. at 16).  However, contrary to Defendants' contention, the mere assertion of immunity "does not completely eviscerate the Plaintiffs' right to conduct discovery," *McCabe v Macaulay*, 450 F. Supp. 2d 928, 935 (N.D. Iowa 2006), nor does it create an absolute stay on discovery during the pendency of a motion to dismiss.  This is especially true where, as here, Lead Plaintiffs are only requesting a narrow set of discovery materials that have already been produced to a third-party, and where Defendants' pending motion to dismiss cites facts contained in the Cease-and-Desist Order not previously available to Lead Plaintiffs.

13

In support of their argument, Defendants cite cases that do not concern a stay on discovery, but rather, stand for the unremarkable proposition that a denial of immunity is subject to interlocutory appeal.  (Opp. Brief at 16-17).  Lacking precedential support, Defendants grossly overextend the landmark decision upon which all of Defendants' cases rely, *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  According to the Supreme Court:  "One of the purposes of the *Harlow* qualified immunity standard is to protect public officials from the '***broad-ranging discovery***' that can be 'peculiarly disruptive of effective government.'"  *Anderson v Creighton*, 483 U.S. 635, 646 n.6 (1987) (emphasis added).  As the Tenth Circuit noted, "*Harlow* [and] *Mitchell* [*v. Forsyth*, 472 U.S. 511 (1985)] . . . make clear that qualified immunity does not shield government officials from all discovery, but only from discovery which is either ***avoidable*** or ***overly broad***."  *Maxey by Maxey v. Fulton*, 890 F.2d 279, 292 (10th Cir. 1989) (alteration in original) (citation omitted).  While "[o]fficials protected by absolute immunity need not face the rigors of full discovery . . .  [s]uch officials . . . ***are not excused from all discovery***."  *Austin Mun. Sec., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 757 F.2d 676, 687 (5th Cir. 1985).

In the instant matter, the requested discovery materials are narrowly defined and do not constitute anything like the "broad-ranging discovery" contemplated by the *Harlow* Court.  Indeed, the production of these documents will pose little to no burden on Defendants given that the same materials have already been produced to the SEC.  In this regard, Defendants cannot plausibly contend that providing Lead Plaintiffs with a copy of documents already found, reviewed, and organized will be "peculiarly disruptive of effective government."

## III.    LEAD PLAINTIFFS' REQUEST FOR LEAVE TO AMEND THE CAC SHOULD BE GRANTED

As detailed in Lead Plaintiffs' opening brief, the SEC's factual findings in the Cease-and-Desist Order are directly relevant to, and supportive of, the claims asserted in this action.  Given the highly relevant nature of the requested discovery – *i.e.*, the materials which formed the basis of the

SEC's findings resulting in the imposition of fines, penalties, and extensive remedial undertakings – Lead Plaintiffs request an opportunity to file an amended pleading within 60 days after such discovery is produced in order to present a full factual record to the Court prior to its consideration of any motion to dismiss.  Alternatively, should the Court decide not to grant Lead Plaintiffs' request for limited discovery, Lead Plaintiffs request 30 days to amend the CAC based upon the new information contained in the Cease-and-Desist Order.[19]

Finally, Defendants' contention that any amendment "would be futile because no newly pled facts would change the Court's analysis of defendants' threshold legal defenses" is unavailing. (Opp. Br. at 18.)  Defendants' assertion ignores the fact that the Court has not yet ruled on their motion to dismiss.  Moreover, as discussed above, the requested discovery and SEC Cease-and-Desist Order are highly relevant to Lead Plaintiffs' claims.  Defendants' argument fails to justify a deviation from the well-established rule that leave to amend "shall be freely given."  Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## CONCLUSION

For all of the foregoing reasons, the NASDAQ Claimant Group respectfully requests that the Court grant its motion: (i) to partially lift the PSLRA discovery stay and order NASDAQ to produce the limited discovery sought herein, and (ii) to grant Lead Plaintiffs leave to amend the CAC by entering the [Proposed] Order previously submitted to the Court.

---

[19] Numerous examples of new facts relevant to claims asserted against Defendants are set forth in detail in Lead Plaintiffs' Memorandum of Law in support of its motion to lift the discovery stay.  (*See* Pl. Br. at 5-9, 19-21.)

Dated:  July 22, 2013                        Respectfully Submitted,

*/s/ Vincent R. Cappucci*
Vincent R. Cappucci, Esq.
Jordan A. Cortez, Esq.
Evan T. Raciti, Esq.
Marc X. LoPresti, Esq. (Of Counsel)
**ENTWISTLE & CAPPUCCI LLP**
280 Park Avenue, 26th Floor West
New York, NY 10017
Telephone:  (212) 894-7200
Facsimile:  (212) 894-7272

***Lead Counsel for NASDAQ
Securities Actions***

*/s/ Douglas G. Thompson, Jr.*
Douglas G. Thompson, Jr., Esq.
Michael G. McLellan, Esq.
**FINKELSTEIN THOMPSON LLP**
1077 30th Street, Suite 150
Washington, D.C. 20007
Telephone: (202) 337-8000
Facsimile: (202) 337-8090

*/s/ Christopher Lovell*
Christopher Lovell, Esq.
Victor E. Stewart, Esq.
**LOVELL STEWART HALEBIAN
JACOBSON LLP**
61 Broadway, Suite 501
New York, NY 10006
Telephone: (212) 608-1900
Facsimile: (212) 719-4677

***Co-Lead Counsel for NASDAQ Negligence
Actions***

Jacob H. Zamansky, Esq.
Edward H. Glenn, Jr., Esq.
Kevin D. Galbraith, Esq.
**ZAMANSKY & ASSOCIATES LLC**
50 Broadway, 32nd Floor
New York, New York 10004
Telephone: (212) 742-1414
Facsimile:  (212) 742-1177

Kevin I. Goldberg, Esq.
**GOLDBERG, FINNEGAN
  & MESTER, LLC**
1010 Wayne Avenue, Suite 950
Silver Spring, Maryland 20910
Telephone:  (301) 589-2999
Facsimile:  (301) 589-2644

Marvin A. Miller, Esq.
Andrew Szot, Esq.
**MILLER LAW LLC**
115 South LaSalle Street, Suite 2910
Chicago, Illinois 60603
Telephone:  (312) 332-3400
Facsimile:  (312) 676-2675

Vincent DiTommaso
**DITOMMASO LUBIN**
17W 220 22nd Street, Suite 410
Oakbrook Terrace, Illinois 60181
Telephone:  (630) 333-0000
Facsimile:  (630)  333-0333

Thomas J. McKenna, Esq.
Gregory D. Egleston, Esq.
**GAINEY MCKENNA & EGLESTON**
440 Park Avenue South, 5th Floor
New York, New York 10016
Telephone:  (212) 983-1300
Facsimile:  (212) 983-0380

Richard J. Schager, Jr., Esq.
Andrew R. Goldenberg, Esq.
**STAMELL & SCHAGER, LLP**
One Liberty Plaza, 35/F
New York, New York 10006
Telephone:  (212) 566-4054
Facsimile:  (212) 566-4061

***Additional Counsel for NASDAQ Negligence
Actions***