# LOVELL STEWART HALEBIAN JACOBSON LLP

61 Broadway, Suite 501
New York, New York 10006
www.lshllp.com

Telephone
212.608.1900

Facsimile
212.719.4775

October 22, 2013

**BY ECF AND FACSIMILE**
Honorable Robert W. Sweet
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *In re Facebook, Inc. IPO Securities and Derivatives Litig.*, MDL No. 12-2389

Dear Judge Sweet:

The Negligence Plaintiffs ("Plaintiffs") respectfully request leave to submit this reply to Mr. Kastenberg's letter of October 15, 2013.

Prefatorily, the gaping hole in Defendants' motion to dismiss continues to be their absence of any argument that could make their antecedent negligence of the parent, NASDAQ OMX, immune from its negligent design and negligent testing of its for-profit technology by which it operated its highly profitable stock exchange. Instead, Defendants conclusorily state, without any explanation whatsoever, that the antecedent negligence in designing software and testing it is somehow a regulatory function. Katsenberg Letter, p. 2.

Such conclusory assertion is contrary to the detailed allegations of the Complaint. ¶¶ 55, 82, 89-91 (the NASDAQ OMX parent delivers trading, clearing, exchange technology solutions and many other related functionalities as part of its highly successful for-profit technology business that earned $184 million in 2012); ¶¶ 102-03, 120-21, 249-53, 255-61 ( NASDAQ negligently failed to make the necessary expenditures to fully develop and test the design and functionality of its trading platform to ensure that it would work properly with an IPO of the known size and expected market interest of the Facebook IPO). It is contrary to the implication of the Securities and Exchange Commission ("SEC") Order.[1] *See* SEC Order p. 18 (new remedial measures require that the NASDAQ subsidiary shall, in the future, be involved in the design and testing of technology software).

Such conclusory assertion is also contrary to the common sense that the Securities Exchange Commission ("SEC") does **not** design computerized programs or test same in order to

---

[1] Securities and Exchange Commission Order, *In the Matter of the NASDAQ Stock Market, LLC, et al*, Admin. Proc. File No. 3-15339, Exchange Act Release No. 69655 (May 29, 2013), *available at* http://www.sec.gov/litigation/admin/2013/34-69655.pdf ("SEC Order").

operate a stock exchange. Accordingly, the SEC did not delegate any of its regulatory powers to the NASDAQ parent to design and test technology software.

Finally, such conclusory assertion is wholly unsupported by Defendants in Mr. Kastenberg's letter or otherwise. Although Plaintiffs believe they have overwhelmingly demonstrated that Defendants have failed to carry their movants' burden at this stage, to any extent the Court finds otherwise, then Plaintiffs should be granted leave to amend with the benefit of the SEC Order (as well as the documents that Defendants produced to the SEC).

Leaving aside the gaping hole in Defendants' attempt to satisfy their movants' burden relating to antecedent negligence, Defendants fare no better in the remainder of their arguments which attempt to distinguish the *DL Capital* case[2] or to use Defendants' reading of *DL Capital* in combination with NASDAQ OMX By-Law Article XII.

Mr. Kastenberg states that "[i]n a similar context, the Second Circuit affirmed the dismissal of claims against a non-SRO affiliate of NASD and one of its officers on SRO immunity grounds in *DL Capital*." With all due respect, Plaintiffs submit that *DL Capital* does not involve "a similar context." The facts in *DL Capital* (the events happened on December 5, 2003) and the Second Circuit decision (decided May 26, 2005) both occurred **before** the 2006 creation of the current corporate structure, in which NASDAQ OMX is the holding company and NASDAQ Stock Market, is a subsidiary and a registered SRO and national stock exchange. The SEC approved the registration of the NASDAQ Stock Market **and** the NASDAQ OMX By-laws, including Article XII, on January 13, 2006. Findings, Opinion, and Order of the Comm'n, Exch. Act Rel. No. 53,128 (Jan. 13, 2006), 71 Fed. Reg. 3,550, 3552 (Jan. 23, 2006) Exhibit D to Affidavit of Vincent R. Cappucci [Dkt. No. 147].

The relationships that existed at the time of the events and decision in *DL Capital* were materially different. The defendants in *DL Capital* were Nasdaq Stock Market, Inc. ("Nasdaq"), and one of its officers. Nasdaq was, at the time, a for-profit subsidiary of the NASD, a registered SRO. The NASD had specifically "delegated some of its regulatory powers and responsibilities as an SRO to Nasdaq." 409 F.3d 93, 95. Thus, "the NASD has in Rule 11890, a rule approved by the SEC, authorized Nasdaq to cancel any . . . transaction where such transaction is 'clearly erroneous' or cancelation is necessary for the maintenance of a fair and orderly market . . .." *Id.*

The Facebook situation is the converse of *DL Capital*, where the NASD parent was an SRO and had by specific rule delegated the regulatory trade-cancellation function to the non-SRO Nasdaq subsidiary. The Second Circuit analyzed the case as a delegation of regulatory function by NASD to Nasdaq:

> To be sure, as plaintiff correctly had argued, Nasdaq is a for-profit corporation and Nasdaq is not independently registered as an SRO and **enjoys the authority to cancel trades only because the NASD, as an SRO, has empowered it to do so**. However, neither of these facts provides a

---

[2] *DL Capital Group v. NASDAQ Stock Market*, 409 F.3d 93 (2d Cir. 2005) ("*DL Capital*").

justification for depriving Nasdaq of absolute immunity when **it is performing regulatory duties delegated to it by the NASD, especially given the fact that the SEC has explicitly blessed the NASD–Nasdaq " 'chain' of regulatory responsibilities" as consistent with the Exchange Act.** *Id.* at n.4. (Emphasis added.)

Here, of course, the shoe is on the other foot. The parent, NASDAQ OMX, is not an independently registered SRO, and the subsidiary, the NASDAQ Stock Market, has not empowered the parent with any delegated regulatory authority. Far from explicitly blessing a NASDAQ Stock Market - NASDAQ OMX "chain of regulatory responsibilities," the SEC has made clear that there is to be maintained a strict separation and independence of regulatory functions as between the parent and the subsidiary. *See* Letter of Christopher Lovell, dated October 11, 2013, at 3-5 [Dkt. No. 158].

*DL Capital* may also be clearly distinguished because in *DL Capital* the subject matter of the alleged wrongdoing was the manner of implementing an existing, SEC-approved NASD rule regarding the ability to break "clearly erroneous" trades. As the court noted, "[b]ecause the decision to cancel trades – and the concomitant announcement of that decision – is the type of governmental function deserving immunity, Nasdaq is entitled to absolute immunity in this case." *Id.* Here, plaintiffs are not contesting the manner of implementing any existing SEC-approved NASDAQ Rule.

At oral argument, Mr. Kastenberg provided a copy of Rule 11890, the Rule involved in *DL Capital*, and argued that "the rules contemplate that NASDAQ will make discretionary regulatory decisions when there are system problems." Tr. at 16. But the argument is too broad and general, as Rule 11890 clearly is confined to decisions to cancel trades that are "clearly erroneous" under specific guidelines, such as degree of deviation from market prices, and to provide NASDAQ with a practical and SEC-approved method to correct obvious trading data and reporting errors during the course of the trading day. This case is not about Rule 11890 or the breaking of clearly erroneous trades, nor did the SEC's detailed Order regarding NASDAQ's conduct during the Facebook IPO ever mention Rule 11890. The Negligence Plaintiffs do not allege damage proximately caused by NASDAQ's cancellation of or failure to cancel any "clearly erroneous" trades. The only allegations in the complaint regarding cancellation of trades at all are that the system failures caused NASDAQ not to honor proper and timely trade cancellation orders placed by customers, a subject unrelated to retroactively cancelling a trade because it was clearly erroneous when entered.

Accordingly, Defendants' argument that NASDAQ OMX and its officers enjoy the protections of delegated regulatory function immunity should be rejected.

Thank you very much.

Respectfully submitted,

/s/ Christopher Lovell                              /s/ Douglas Thompson

Honorable Robert W. Sweet
October 22, 2013

Christopher Lovell					Douglas G. Thompson Jr. Esq.


Co-Lead Counsel for the Negligence Plaintiffs