# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE FACEBOOK, INC., IPO SECURITIES :      MDL NO. 12-2389
AND DERIVATIVE LITIGATION      :

**This document relates to the Consolidated NASDAQ Actions:**

| | |
|---|---|
| No. 12-cv-4054 | No. 12-cv-4600 |
| No. 12-cv-4200 | No. 12-cv-4716 |
| No. 12-cv-4201 | No. 12-cv-5549 |
| No. 12-cv-4315 | No. 12-cv-5630 |
| No. 12-cv-4403 | No. 12-cv-6882 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO AMEND AND CERTIFY ORDER ENTERED DECEMBER 16, 2013 FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

William A. Slaughter (PA Bar No. 30637)*
Stephen J. Kastenberg (PA Bar No. 70919)*
Paul Lantieri III (PA Bar No. 88160)*
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: 215.665.8500
Fax: 215.864.8999
slaughter@ballardspahr.com
kastenberg@ballardspahr.com
lantierip@ballardspahr.com

*Attorneys for Defendants*
*The NASDAQ OMX Group, Inc., The NASDAQ Stock Market LLC, Robert Greifeld, and Anna M. Ewing*

*Admitted pro hac vice*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...........…………………………………………………………ii

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT......................................................................................................... 2

        A.      This Court's Opinion Involves Controlling Questions of Law that Should Be Certified under Section 1292(b) .......................................................... 3

        B.      There Are Substantial Grounds for a Difference of Opinion on Controlling Questions of Law ....................................................................................... 4

                1.      The Economic Loss Doctrine.................................................... 4

                2.      The *Affiliated Ute* Presumption ................................................ 7

        C.      An Immediate Appeal Will Materially Advance this Litigation ............................ 8

III.    CONCLUSION..................................................................................................... 11

DMEAST #18203128 v1

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*532 Madison Avenue Gourmet Foods, Inc.* v. *Finlandia Center, Inc.*,
  750 N.E.2d 1097 (N.Y. 2001)............................................................................3, 5

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972).....................................................................................2, 7, 8

*Blue Chip Stamps* v. *Manor Drug Stores*, 421 U.S. 723 (1975)........................................9

*Caleb & Co.* v. *E.I. DuPont de Nemours & Co.*,
  599 F. Supp. 1468 (S.D.N.Y. 1984) (Sweet, J.)........................................................8

*DuPont* v. *Brady*,
  828 F.2d 75 (2d Cir. 1987)...............................................................................7

*Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011)...............................4

*Harsco Corp.* v. *Segui*, 91 F.3d 337 (2d Cir. 1996)................................................7

*Klinghoffer* v. *S.N.C. Achille Lauro*,
  921 F.2d 21 (2d Cir. 1990)............................................................................3, 4

*In re Lloyd's America Trust Fund Litigation*,
  Civ. No. 96-1262, 1997 WL 458739 (S.D.N.Y. Aug. 12, 1997) (Sweet, J.).........................3, 4

*In re Smith Barney Transfer Agent Litigation*,
  290 F.R.D. 42 (S.D.N.Y. 2013) ..........................................................................8

*In re World Trade Center Disaster Site Litigation*,
  503 F.3d 167 (2d Cir. 2007)..........................................................................1, 9

*Milliken & Co.* v. *Consolidated Edison Co.*, 644 N.E.2d 268 (N.Y. 1994)..........................5, 6

*Morse/Diesel, Inc. v. Trinity Industries, Inc.*,
  664 F. Supp. 91 (S.D.N.Y. 1987) .........................................................................6

*Sommer* v. *Federal Signal Corp.*, 79 N.Y.2d 540 (N.Y. 1992) ......................................6

*Titan Group, Inc.* v. *Faggen*, 513 F.2d 234 (2d Cir. 1975) ........................................7

*Verizon N.Y., Inc. v. Optical Communications Group, Inc.*,
  936 N.Y.S.2d 86 (N.Y. App. Div. 2011) ..................................................................6

*Wilson* v. *Comtech Telecommunications Corp.*,
  648 F.2d 88 (2d Cir. 1981)............................................................................7, 8

DMEAST #18203128 v1

*Yamaha Motor Corp., U.S.A.* v. *Calhoun*,
    516 U.S. 199 (1996)..................................................................................................2

## STATUTES

15 U.S.C. § 78f(b).......................................................................................................5

28 U.S.C. § 1292(b) ........................................................................................ *passim*

## OTHER

Wright, Miller & Cooper, *Federal Practice and Procedure* .....................................1, 2, 3

DMEAST #18203128 v1

I.        INTRODUCTION

Defendants, The NASDAQ OMX Group, Inc., The NASDAQ Stock Market LLC, Robert Greifeld, and Anna M. Ewing, respectfully request that the Court alter or amend its Opinion and Order entered on December 16, 2013, which denied in part the defendants' motion to dismiss the complaint, to include a certification for interlocutory appeal under 28 U.S.C. § 1292(b).

This is an exceptional case that presents important questions regarding the potential liability of a national securities exchange to investors with whom the exchange has no direct relationship.  Defendants will shortly be filing an appeal as of right from the Court's ruling on the scope of immunity for self-regulatory organizations (SROs).  In that appeal, the Second Circuit will likely also have pendent jurisdiction over the Court's disposition of other related issues raised in the motion to dismiss, including whether the economic loss doctrine bars the negligence claim against Defendants and whether investors can be presumed to rely on NASDAQ's failure to correct statements about its own technology.  Because the filing of the notice of appeal on immunity will result in a stay of further proceedings in this Court, *see In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 169-70 (2d Cir. 2007), judicial efficiency would be best served if the Second Circuit is given the opportunity to review all of those issues together at this stage of the litigation.  Accordingly, Defendants file this Section 1292(b) petition to eliminate any potential doubt as to the immediate appealability of those additional issues.

Each of the issues raised in the motion to dismiss, if resolved in Defendants' favor, would end or materially advance this litigation.  And where, as here, one issue already is indisputably going up on appeal, Section 1292(b) certification can serve as "insurance" to eliminate any risk that the court of appeals may lack jurisdiction to hear all the issues under Section 1291. 16  Wright, Miller & Cooper, *Federal Practice and Procedure* § 3929.1, at 474

1

(2012) (Wright & Miller). In these circumstances, certification "permits a co operative and precise means of framing the desirable scope of appeal, free from the perplexities of pendent appeal jurisdiction." *Id*. at 475-76. Proceeding to trial in this case without first obtaining an appellate ruling on t he defendants' threshold challenges risks years of wasteful litigation. Discovery would be complex, time-consuming and expensive.

In short, this case presents precisely the types of legal questions that, due to their importance and for the sake of efficiency, should be resolved by an appellate court sooner rather than later. In order to ensure such expeditious resolution, and in order to assist the Second Circuit by affording it the opportunity to consider those issues free of any potential jurisdictional complications, this Court should grant Section 1292(b) certification.

## II.     ARGUMENT

Section 1292(b) provides for certification of an order for interlocutory appeal when the court determines: "[1] that such order involves a controlling question of law [2] as to which there is a substantial ground for difference of opinion and [3] that an immediate appeal from [that] order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). In order to certify its order, the court need only identify a single issue that meets this test. *See*, *e.g.*, *Yamaha Motor Corp., U.S.A.* v. *Calhoun*, 516 U .S. 199, 2 04-05 (1996). This standard is amply met with respect to at least two issues: (1) whether the economic loss doctrine bars negligence claims by investors to recover damages from a stock exchange with whom they have no direct relationship, and (2) whether the presumption of reliance established in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), applies where a claim under Rule 10b-5 is based on an alleged duty to correct earlier statements.

DMEAST #18203128 v1

**A.      This Court's Opinion Involves Controlling Questions of Law that Should Be Certified under Section 1292(b)**

A controlling question of law exists for purposes of Section 1292(b) if (1) reversal of this Court's decision could result in dismissal of the action; (2) reversal of the decision, even though not resulting in dismissal, could significantly affect the conduct of the action; or (3) the issue has precedential value for a large number of cases. *See Klinghoffer* v. *S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990); *In re Lloyd's Am. Trust Fund Litig.*, Civ. No. 96-1262, 1997 WL 458739, a t *4 ( S.D.N.Y. Aug. 12, 1997)  (Sweet, J.); 16 Wright & Miller, *supra*, § 3930, at 495-500.

Here, each of the issues easily meets at least the second and third of these standards, and, in combination, would meet the first as well.  Reversal on both the economic loss rule and the *Affiliated Ute* presumption would end the case.  Moreover, settling all the threshold legal issues at the outset could significantly affect the conduct of the case even if it does not end the case entirely.  Both the negligence and securities aspects of this case promise to consume substantial resources, and both carry the threat of very significant damages liability.  Eliminating either one of those portions of the case now would significantly narrow the issues before the Court and would save substantial time and effort on the part of both the Court and the litigants.

Finally, both the economic loss doctrine and the application of the *Affiliated Ute* presumption have very significant potential precedential value.  In one of its most important economic-loss rule cases, the New York Court of Appeals recognized that, "[i]n drawing lines defining actionable duty, courts must . . . a  lways be mindful of the consequential, and precedential, effects of their decisions."  *532 Madison Ave. Gourmet Foods, Inc.* v. *Finlandia Ctr., Inc.*, 750 N.E.2d 1097, 1101 (N.Y. 2001).  Similarly, presumptions of reliance provide the foundation for the hundreds of securities class actions filed every year, which could never

3

receive class treatment if individualized proof of reliance were required. *See Erica P. John Fund, Inc.* v. *Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011).

And although there has not been a substantial amount of litigation by retail investors against exchanges in recent years, that is undoubtedly due to the expansive application of SRO immunity by the Second Circuit and other courts. If immunity is applied narrowly as in this Court's opinion, however, one may easily foresee very substantial numbers of such cases. Millions of investors suffer losses every day. It is not difficult to imagine exchanges added to the list of typical defendants in investor lawsuits on the authority of this Court's rulings, if those rulings stand unreviewed.

**B.      There Are Substantial Grounds for a Difference of Opinion on Controlling Questions of Law**

The second prong of Section 1292(b)—the existence of substantial grounds for a difference of opinion—is satisfied when (1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit. *Klinghoffer*, 921 F.2d at 25; *In re Lloyd's*, 1997 WL 458739, at *6. This Court, of course, need not conclude that its decision was incorrect in order to determine that substantial grounds exist for a difference of opinion. The issues concerning the applicability of the economic loss doctrine and the *Affiliated Ute* presumption both satisfy this standard.

**1.      The Economic Loss Doctrine**

As this Court recognized in its opinion, New York courts have not specifically addressed the application of the economic loss doctrine to negligence claims brought by members of the investing public against a national securities exchange. Opinion & Order 63. If the doctrine does not apply, NASDAQ and other national exchanges could become exposed to potentially crushing liability, and the potential for such exposure would have immediate, far-

DMEAST #18203128 v1

reaching consequences for the costs and the structure of the nation's capital markets.  This is precisely the type of open, substantial, and controlling legal question that is appropriate for Section 1292(b) certification.

It is undisputed that none of the negligence plaintiffs has a direct relationship with NASDAQ.  In numerous cases, the New York Court of Appeals has considered claims against similarly situated defendants, whose negligence could foreseeably injure the public at large, and concluded that no duty was owed because of the need to "limit the legal consequences of wrongs to a controllable degree."  *See, e.g.*, *532 Madison Gourmet Foods*, 750 N.E.2d at 1101-03; *Milliken & Co.* v. *Consol. Edison Co.*, 644 N.E.2d 268, 270 (N.Y. 1994) (internal quotation marks omitted).  In its opinion in this case, the Court reasoned that NASDAQ's potential liability is not indeterminate because it can ascertain, after-the-fact, the identity of harmed investors.  *See* Opinion & Order 65.  There is serious reason to doubt that supposition.[1]  But even if it is valid, the same after-the-fact identification was possible in the many cases in which New York courts have applied the economic loss doctrine, yet that fact did not dissuade those courts from applying the doctrine.  What matters is not the class of plaintiffs who actually suffered harm in this case, but the class to whom the purported duty is owed—the "class of *potential* plaintiffs" within the "orbit of duty."  *See Milliken*, 644 N.E.2d at 271 (emphasis added) (internal quotation marks omitted).  Here, that class is limitless.

Under the national market system established by the Exchange Act and regulated by the SEC, a stock exchange is separated from investors by broker-dealers, who are required to be members of the exchange.  *See* Exchange Act Section 6(b), 15 U.S.C. § 78f(b) (2006).

---

[1]  Even if harmed investors and their losses can be ascertained in this case (and, given plaintiffs' theories, it is not clear that they can be), future cases governed by this Court's ruling may present substantially different situations in which the existence and magnitude of losses would be hopelessly indeterminate.

5

NASDAQ is in contractual privity with its members, and it controls the degree of its liability to those members by SEC-approved rule and by contract. *See* Opinion & Order 30. In turn, NASDAQ-member broker-dealers have contractual relationships with their customers, and thus they, too, control their potential liability contractually. The Court's ruling in this case has the effect of allowing precisely what the New York of Appeals has eschewed—permitting plaintiffs "to leapfrog duties, over directly juridically related parties," in order to impose a potentially limitless duty on a party with which they have no direct relationship. *Milliken*, 644 N.E.2d at 271.

In its opinion, the Court relied on *Sommer* v. *Federal Signal Corp.*, 79 N.Y.2d 540 (N.Y. 1992). *See* Opinion & Order 64, 66. But that case addressed whether a building owner in direct contractual privity with the defendant fire alarm company could bring negligence claims in addition to breach-of-contract claims; it did not hold that any duty could have been imposed absent a contractual relationship. In addition, subsequent cases have recognized that *Sommer* involved physical damage, and "the Court of Appeals has declined to extend *Sommer* to cases involving only economic harm." *Verizon N.Y., Inc.* v. *Optical Commc'ns Group, Inc.*, 936 N.Y.S.2d 86, 90 (N.Y. App. Div. 2011).

In sum, there are substantial grounds for disagreeing with the Court's conclusion that the economic loss doctrine does not apply here. The Second Circuit should be given the opportunity, at this early stage of the litigation, to determine whether that conclusion was correct. *See Morse/Diesel, Inc.* v. *Trinity Indus., Inc.*, 664 F. Supp. 91, 95 (S.D.N.Y. 1987) (certifying economic loss issue under Section 1292(b)), *rev'd on other grounds*, 859 F.2d 242 (2d Cir. 1988).

DMEAST #18203128 v1

## 2.     The *Affiliated Ute* Presumption

There also is a substantial basis for a difference of opinion regarding the application of the *Affiliated Ute* presumption of reliance to the remaining securities claim against the defendants.  The nub of the securities claim upheld by the Court is that, before the Facebook offering, NASDAQ made statements concerning its technology and systems that it had a duty to update or correct.  Opinion & Order 70-73.  Although there is no allegation that any plaintiff read and relied on these statements, the Court held that reliance could be presumed based on *Affiliated Ute Citizens of Utah* v. *United States*, 406 U.S. 128 (1972).

In *Affiliated Ute*, the Supreme Court held that proof of reliance is not required under Rule 10b-5 where the claim is based on "primarily a failure to disclose."  406 U.S. at 153.  The Court determined that *Affiliated Ute* applies here because the securities plaintiffs' claim is "based not on [NASDAQ's] pre-Class Period statements" but rather on "material omissions."  Opinion & Order 85.  The Second Circuit has recognized, however, that labeling a case as turning on omissions, as opposed to affirmative misstatements, is "of little help."  *See Wilson* v. *Comtech Telecomm. Corp.*, 648 F.2d 88, 93 (2d Cir. 1981).  What is important in applying *Affiliated Ute* is that case's rationale:  a presumption of reliance is justified only in situations in which "reliance as a practical matter is impossible to prove."  *Id*.

That rationale does not apply in this case.  Reliance is impossible to prove when, as in *Affiliated Ute*, "no positive statements exist."  *Wilson*, 648 F.2d at 93; *see also Harsco Corp.* v. *Segui*, 91 F.3d 337, 342 n.5 (2d Cir. 1996) (stating that *Affiliated Ute* applies where there is "total non-disclosure"); *DuPont* v. *Brady*, 828 F.2d 75, 78 (2d Cir. 1987) (same); *Titan Group, Inc.* v. *Faggen*, 513 F.2d 234, 239 (2d Cir. 1975) (same).  Here, however, plaintiffs plead specific statements that they allege were (or became) false in light of NASDAQ's alleged systems problems.  *See* Consol. Am. Compl. ¶¶ 168-188.  Because it is not impossible to prove

7

that plaintiffs relied on those statements, *Affiliated Ute* does not apply.  *See Caleb & Co.* v. *E.I. DuPont de Nemours & Co.*, 599 F. Supp. 1468, 1474-75 (S.D.N.Y. 1984) (Sweet, J.).

In its opinion, the Court reasoned that plaintiffs do not "base[]" their claim on the affirmative statements, but rather plead those statements merely "in order to demonstrate that Defendants had a duty to correct or update these material statements." Opinion & Order 85.  The Second Circuit, however, rejected that distinction in *Wilson*.  A duty to disclose can arise from a fiduciary (or similar) relationship, as in *Affiliated Ute* itself, *see* 406 U.S. at 153; from a statute or regulation, as in *In re Smith Barney Transfer Agent Litigation*, 290 F.R.D. 42, 48 (S.D.N.Y. 2013); or, as alleged here, from prior affirmative statements that become misleading in the absence of the omitted information.  In *Wilson*, the Second Circuit held that, in the last situation, *Affiliated Ute* does not apply.  648 F.2d at 93-94.  Because it is not impossible for a plaintiff to prove reliance on t he continued truthfulness of affirmative statements, the Second Circuit reasoned, the rationale of *Affiliated Ute* is not implicated.  *Id*.  In short, a duty to update or correct and the *Affiliated Ute* presumption are mutually exclusive.  To the extent that *Smith Barney* or any other case could be read to suggest, notwithstanding *Wilson*, that the *Affiliated Ute* presumption may apply in a duty-to-update case, it merely underscores the need for the Second Circuit's intervention.

## C.      An Immediate Appeal Will Materially Advance this Litigation

There can be no serious doubt that resolution of the questions presented here may materially advance the ultimate termination of the litigation.  S ection 1292(b) was enacted to address precisely the situation presented here:  *i.e.*, where an immediate appeal may result in the termination of claims that would otherwise result in complicated discovery and a lengthy trial. Reversal of the Court's order with respect to both the economic loss doctrine and the *Affiliated*

8

*Ute* presumption would end the litigation in its entirety.  And reversal on either issue would significantly decrease the amount of discovery and the length and complexity of the trial.

Both the negligence and securities claims in this case carry the prospect of very substantial pretrial proceedings and a lengthy and complex trial.  The two claims also clearly entail many separate considerations.  The negligence claim, as upheld by the Court, will focus on the design and testing of NASDAQ's systems, particularly in the days leading up t o the Facebook IPO.  That claim will require discovery from NASDAQ's technology staff and, in all likelihood, expert witnesses in the relevant field of technology.  The securities claim, on the other hand, focuses on statements made by NASDAQ in SEC filings, earnings calls, and investor presentations.  The relevant witnesses will likely be NASDAQ's top officers and others involved in the process of preparing the relevant statements.  The securities claim is also likely to require expert testimony of a completely different sort from the negligence claim.  It has long been recognized that securities class-action litigation is uniquely burdensome and "presents a danger of vexatiousness different in degree and in kind from that which accompanies litigation in general." *Blue Chip Stamps* v. *Manor Drug Stores*, 421 U.S. 723, 739 (1975).

Importantly, because of the presence of the immunity issue, an interlocutory appeal would not impede the progress of this litigation.  As noted above, defendants intend to file a notice of appeal of the Court's decision.  That notice of appeal indisputably will be effective at least as to the SRO immunity defense because, as the Court recognized, SRO immunity is absolute and protects NASDAQ not only from liability but also from the burdens of litigation. *See* Opinion & Order 32-33.  The denial of such absolute immunity is immediately appealable as of right, and the filing of the notice of appeal will result in a stay of further proceedings in this Court. *See In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d at 169-70.  It would materially

DMEAST #18203128 v1

advance the outcome of this litigation if the Second Circuit also has the opportunity to review this Court's economic-loss doctrine and *Affiliated Ute* (and other securities law) rulings at the same time that it reviews this Court's immunity ruling; indeed, the Second Circuit may well do so anyway under the doctrine of pendent jurisdiction even if the motion for Section 1292(b) certification is denied.

Plenary interlocutory review of this Court's denial of defendants' motion to dismiss could prevent years of burdensome discovery and litigation. This Court should not undertake the laborious process of supervising and adjudicating such exceptionally complex proceedings in a case in which the resolution of any of several crucial threshold issues by the Second Circuit could quickly and easily dispose of all or some of the claims, particularly when the Second Circuit will already be considering at least one case-dispositive issue on interlocutory appeal. Instead, this Court should aid the Second Circuit by affording it the opportunity—free from any potential jurisdictional complications—to decide whether to also hear the economic loss doctrine and securities issues discussed above. Under the circumstances of this case, where an interlocutory appeal will certainly occur and the only open question involves its scope, the third prong of the test for Section 1292(b) certification is soundly met.

DMEAST #18203128 v1

### III.    CONCLUSION

For the reasons stated above, this Court should grant this motion and amend its

Opinion and Order of December 16, 2013, to include a certification for interlocutory appeal

under Section 1292(b).

Respectfully submitted,

/s/ Stephen J. Kastenberg
William A. Slaughter* (Pa. ID 30637)
Stephen J. Kastenberg* (Pa. ID 70919)
Paul Lantieri III* (Pa. ID 88160)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
Tel:  215.665.8500
Fax:  215.864.8999
slaughter@ballardspahr.com
kastenberg@ballardspahr.com
lantierip@ballardspahr.com

*Attorneys for Defendants, The
NASDAQ OMX Group, Inc., The
NASDAQ Stock Market LLC, Robert
Greifeld, and Anna M. Ewing*

* Admitted *pro hac vice*

Dated:  December 30, 2013

11