**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE FACEBOOK, INC. IPO SECURITIES AND DERIVATIVE LITIGATION | MDL No. 12-2389 (RWS) |
| This document relates to:  NASDAQ Actions | |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO AMEND AND CERTIFY ORDER ENTERED DECEMBER 16, 2013 FOR
INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

EC.54277.1

**<u>TABLE OF CONTENTS</u>**

I.      PRELIMINARY STATEMENT ................................................................................. 1

II.     ARGUMENT ......................................................................................................... 4

        A.      The Strict Legal Standard Governing Motions For Interlocutory Appeals Pursuant
                To 28 U.S.C. § 1292(b) ............................................................................ 4

        B.      Defendants Fail To Present "Exceptional Circumstances" Necessary To Grant
                Interlocutory Appeal ................................................................................ 6

        C.      This Court's Application Of The Economic Loss Doctrine And The *Affiliated Ute*
                Presumption Presents No "Substantial Grounds For A Difference Of Opinion" ... 7

                1.      The Economic Loss Doctrine .................................................... 9

                2.      The *Affiliated Ute* Presumption of Reliance ............................ 13

        D.      The Court's December 16 Order Additionally Does Not Involve Any Controlling
                Questions of Law ................................................................................... 16

        E.      An Immediate Appeal Would Not Materially Advance The Ultimate Termination
                Of The Litigation .................................................................................. 18

III.    CONCLUSION ..................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*,
   96 N.Y.2d 280 (2001). ................................................................................... 12

*Affiliated Ute Citizens of Utah v. United States*,
   406 U.S. 128 (1972) ............................................................................. passim

Ahrenholz v. Bd. of Trs. of Univ. of Illinois,
   219 F.3d 674 (7th Cir. 2000) ......................................................................... 16

*Americans United for Separation of State v. Prison Fellowship Ministries*,
   No. 4:03-CV-90074, 2005 WL 6772870 (S.D. Iowa July 11, 2005) ......................... 7

*Banco Multiple Santa Cruz, S.A. v. Moreno*,
   888 F. Supp. 2d 356 (E.D.N.Y. 2012) .................................................. 11, 12

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ............................................................................. 14, 17

*Cal. Pub. Emp. Ret. Sys. V. WorldCom, Inc.*,
   368 F.3d 86 (2d Cir. 2004) ............................................................................. 5

*Clifton v. Eubank*,
   No. Civ. A. 00-K-2555,
   2007 WL 465621 (D. Colo. Feb. 8, 2007) ....................................................... 7

*Consol. Edison, Inc. v. Ne. Util.*,
   318 F. Supp. 2d 181 (S.D.N.Y. 2004) .................................................... 6, 20

*Coopers & Lybrand v. Livesay*,
   437 U.S. 463 (1978) ....................................................................................... 6

*Genentech, Inc. v. Novo Nordisk A/S*,
   907 F. Supp. 97 (S.D.N.Y. 1995) ................................................................. 17

*Gottesman v. General Motor Corp.*,
   268 F.2d 194 (2d Cir. 1959) ........................................................................... 6

*Gravatt v. Gen. Star Indem. Co.*,
   No. 98 Civ. 6670 RWS, 1999 WL 212681 (S.D.N.Y. Apr. 13, 1999) ..................... 8

*Greenes v. Vijax Fuel Corp.*,
   No. 02 Civ. 0450 PKC, 2004 WL 1516804 (S.D.N.Y. July 7, 2004) ....................... 4

*Grund v. Del. Charter Guarantee & Trust Co.*,
   788 F. Supp. 2d 226 (S.D.N.Y. 2011)............................................................... 12

*Gulino v. Bd. of Educ.*,
   234 F. Supp. 2d 324 (S.D.N.Y. 2002).................................................................. 6

*Harriscom Svenska AB v. Harris Corp.*,
   947 F.2d 627 (2d Cir. 1991)............................................................................... 16

*Hecht v. Andover Assoc. Mgmt. Corp.*,
   910 N.Y.S.2d 405, 2010 WL 1254546 (N.Y. Sup. Ct. Mar. 12, 2010) .................. 12

*Hill v. City of New York*,
   45 F.3d 653 (2d Cir. 1995)................................................................................. 15

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
   227 F.3d 8 (2d Cir. 2000) .................................................................................. 12

*In re Adelphia Commc'ns Corp.*,
   Nos. 02-41729 REG, 07 Civ. 9999(NRB),
   2008 WL 361082, at *1 (S.D.N.Y. Feb. 7, 2008).......................................... 2, 5, 15

*In re Ambac Fin. Grp. Sec. Litig.*,
   693 F. Supp. 2d 241 (S.D.N.Y. 2010)......................................................... 1, 5, 15

*In re Beacon Assocs. Litig.*,
   745 F. Supp. 2d 386 (S.D.N.Y. 2010)............................................................. 3, 14

*In re Bernard L. Madoff Inv. Sec. LLC*,
   No. 11 MC 0012 (KMW), 2011 WL 3897970, at *7 (S.D.N.Y. Aug. 31, 2011).................... 15

*In re Blech Sec. Litig.*,
   No. 94 Civ. 7696 (RWS), 2003 WL 134988, at *2 (S.D.N.Y. Jan. 13, 2003)........................ 17

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   288 F.R.D. 26 (S.D.N.Y. 2012) ......................................................................... 17

*In re Flor*,
   79 F.3d 281 (2d Cir. 1996)................................................................................... 8

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96 Civ. 1262 (RWS), 1997 WL 458739 (S.D.N.Y. Aug. 12, 1997).................. 8

*In re Manhattan Inv. Fund Ltd.*,
   288 B.R. 52 (S.D.N.Y. 2002).............................................................................. 6

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
   399 F. Supp. 2d 320 (S.D.N.Y. 2005).................................................................. 8

*In re Pall Corp.*,
No. 07-CV-3359 (JS) (ARL), 2009 WL 4282081 (E.D.N.Y. Nov. 24, 2009) ......................... 8

*In re Parmalat Sec. Litig.*,
2008 WL 3895539, at *8 (S.D.N.Y. Aug. 21, 2008) ................................................. 13

*In re World Trade Ctr. Disaster Site Litig.*,
469 F. Supp. 2d 134 (S.D.N.Y. 2007) ........................................................... 5, 6

*In re WorldCom, Inc.*,
No. M-47 HB, 2003 WL 21498904 (S.D.N.Y. June 30, 2003). ................................. 8, 16

*Isra Fruit Ltd. v. Agrexco Agric. Export Co.*,
804 F.2d 24 (2d Cir. 1986) .................................................................. 19

*J&R Elecs. Inc. v. Bus. & Decision N. Am., Inc.*,
No. 12 Civ. 7497(PKC), 2013 WL 5203134, at *7 (S.D.N.Y. Sept. 16, 2013) ...................... 16

*Kimmell v. Schaefer*,
675 N.E.2d 450 (N.Y. 1996) ................................................................ 16

*King County, Wash. v. IKB Deutsche Industriebank AG*,
863 F. Supp. 2d 317 (S.D.N.Y. 2012) ........................................................ 15

*Koehler v. Bank of Bermuda Ltd.*,
101 F.3d 863 (2d Cir. 1996) .................................................................. 5

*Landon v. Kroll Lab. Specialists, Inc.*,
22 N.Y.3d 1 (2013). ......................................................................... 11

*Landon v. Kroll Lab. Specialists, Inc.*,
91 A.D.3d 79 (N.Y. App. Div. 2011),
*aff'd*, 22 N.Y.3d 1 (2013) ........................................................... 9, 10, 11

*Levitt v. J.P. Morgan Securities, Inc.*,
710 F.3d 454 (2d Cir. 2013) ................................................................. 14

*Lidle v. Cirrus Design Corp.*,
No. 08-cv-1253-BSJ-HBP, 2010 WL 4345733 (S.D.N.Y. Oct. 29, 2010) .......................... 5

*Litzler v. CC Invs., L.D.C.*,
362 F.3d 203 (2d Cir. 2004) .................................................................. 5

*Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009) ................................................................. 17

*Milliken & Co. v. Consol. Edison Co. of N.Y., Inc.*,
84 N.Y.2d 469, 477 (1994) .................................................................. 10

*Mills v. Everest Reinsurance Co.*,
    771 F. Supp. 2d 270 (S.D.N.Y. 2009) ................................................................ 8

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Group, PLC*,
    709 F.3d 109 (2d Cir. 2013) ........................................................................... 17

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.*,
    165 F. Supp. 2d 514 (S.D.N.Y. 2001) .............................................................. 16

*Primavera Familienstifung v. Askin*,
    139 F. Supp. 2d 567 (S.D.N.Y. 2001) ........................................................ 18, 20

*Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*,
    381 F.3d 717, 728 (7th Cir. 2004) .................................................................... 1

*Small v. City of New York*,
    304 F. Supp. 2d 401 (E.D.N.Y. 2004) ............................................................... 7

*Sommer v. Fed. Signal Corp.*,
    79 N.Y.2d 540, 553 (1992) .............................................................................. 9

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
    552 U.S. 148 (2008) ................................................................................. 13, 14

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
    531 F.3d 190 (2d Cir. 2008) ............................................................................ 5

*Transp. Workers Union of Am., Local 100 v. NYC Transit Auth.*,
    358 F. Supp. 2d 347 (S.D.N.Y. 2005) ....................................................... 4, 8, 19

*Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of N.Y.*,
    734 F. Supp. 2d 368 (S.D.N.Y. 2010) .............................................................. 16

*Trustees of Columbia Univ. v. Gwathmey Siegel & Assocs. Architects*,
    601 N.Y.S.2d 116 (App. Div. 1993) ................................................................... 9

*Von Bulow by Auersperg v. Von Bulow*,
    No. 85 CIV. 5553 (JMW), 1986 WL 7781, at *1 (S.D.N.Y. July 8, 1986) ................. 9

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche, LLP*,
    549 F.3d 100 (2d Cir. 2008) ............................................................................ 5

*Wausau Bus. Ins. Co. v. Turner Constr. Co.*,
    151 F. Supp. 2d 488 (S.D.N.Y. 2001) ......................................................... 12, 17

*Weissman v. Nat' Ass'n of Sec. Dealers*, *Inc.*,
    500 F.3d 1293 (11th Cir. 2007) ...................................................................... 18

*Westwood Pharms.v. Nat'l Fuel Gas Distrib.,*
    964 F.2d 85 (2d Cir. 1992)............................................................................ 19

*Wilson v. Comtech Telecomms. Corp.,*
    648 F.2d 88 (2d Cir. 1981).................................................................. 3, 13, 14

**Statutes**

28 U.S.C. § 1292(b) ........................................................................... passim

Lead Plaintiffs respectfully submit this memorandum of law in opposition to the motion to amend and to certify this Court's Opinion and Order entered on December 16, 2013 (the "December 16 Order") for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) filed by defendants The NASDAQ OMX Group, Inc., The NASDAQ Stock Market LLC (collectively, "NASDAQ"), Robert Greifeld, and Anna M. Ewing (collectively with NASDAQ, the "Defendants").[1]

## I.    PRELIMINARY STATEMENT

Defendants ask this Court to certify the December 16 Order for purposes of soliciting appellate review on two issues decided by this Court:  (1) whether the economic loss doctrine bars Lead Plaintiffs' common law negligence claims; and (2) whether Lead Plaintiffs can utilize the presumption of reliance established in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), based upon Defendants' alleged material omissions made during the Class Period.  (Def. Br. at 2.)  As detailed below, Defendants can neither demonstrate that the necessary "exceptional circumstances" exist for certification under 28 U.S.C. § 1292(b), nor can they meet the strict statutory requirements governing interlocutory review.

Certification of a non-final order pursuant to 28 U.S.C. § 1292(b) is an extraordinary procedure only granted in "exceptional circumstances." *In re Ambac Fin. Grp. Sec. Litig.*, 693 F. Supp. 2d 241, 282 (S.D.N.Y. 2010).  Interlocutory appeal is not intended as a "second bite at the apple" that allows the moving party to reargue issues that the court has already addressed and rejected.  *Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*, 381 F.3d 717, 728 (7th Cir. 2004). Not surprisingly, courts in the Second Circuit overwhelmingly deny requests for interlocutory appeal, recognizing that "interlocutory appeals are strongly disfavored in federal practice," and

---

[1] Citations to Defendants' Memorandum of Law in Support of Motion to Amend and Certify Order Entered December 16, 2013 for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) will be referred to herein as "Def. Br."

movants cannot invoke the appellate process "as a vehicle to provide early review [even] of difficult rulings in hard cases." *In re Adelphia Commc'ns Corp.*, Nos. 02-41729 REG, 07 Civ. 9999 (NRB), 2008 WL 361082, at *1 (S.D.N.Y. Feb. 7, 2008)  (citations omitted).

Unable to demonstrate that this action presents a rare, exceptional case justifying a departure from the basic policy of postponing appellate review until after entry of a final judgment, Defendants have resorted to a bootstrapping of their instant application to a prospective appeal of this Court's decision partially denying Defendants' assertion of self-regulatory organization ("SRO") immunity.  The question of whether Defendants are entitled to an immediate appeal of the issue of SRO immunity is not presently before this Court, and Plaintiffs intend to oppose any such appeal if and when it is filed.  The plain language of Section 1292(b) offers no relief to its strict requirements in the presence of a Section 1291 appeal, just as none is found in the legislative history or judicial authority pertaining to certification under Section 1292(b).  Not surprisingly, Defendants do not cite a single case where a district court certified other dispositive matters under Section 1292(b) when faced with a concurrent appeal of an immunity determination.

Defendants also erroneously contend that there is a "substantial difference of opinion" with respect to the application of the economic loss doctrine.  However, this issue is well-settled under New York law.  Given that NASDAQ's relationship with the Class was "so close as to approach that of privity," this Court correctly held that Defendants owed a "focused duty" to protect Class Members from the foreseeable "catastrophic consequences" of NASDAQ's system failures.  (December 16 Order at 62-66.)  Neither Defendants' motion to dismiss nor their instant motion identifies any conflicting authority that creates a genuine doubt as to whether this Court correctly applied the economic loss doctrine.  Instead, Defendants simply repeat their argument

that there is "no direct relationship" between a securities exchange and investors who trade on that exchange. (Def. Br. at 1.) Defendants, however, blatantly overlook the practical reality that exchange members and other broker-dealers act as mere conduits for investors, and the lack of a contractual relationship does not sever the direct relationship between investors and exchanges.

Application of the *Affiliated Ute* presumption of reliance is similarly well-settled in the Second Circuit. Defendants misconstrue the Second Circuit's opinion in *Wilson v. Comtech Telecomms. Corp.*, 648 F.2d 88 (2d Cir. 1981) to argue that there is a "substantial difference of opinion" as to whether the *Affiliated Ute* presumption applies to material omissions made when a duty to disclose information arises from prior statements. (Def. Br. at 7-8.) However, as detailed below, neither *Wilson* nor any other decision within the Second Circuit forecloses the application of the *Affiliated Ute* presumption based upon how a defendant's duty to disclose arose. Rather, the Supreme Court and Second Circuit have repeatedly held that the presumption applies whenever there is an omission of a material fact by a defendant with a duty to disclose – irrespective of how that duty emerged. In fact, this Court has previously held that the *Affiliated Ute* presumption of reliance is properly pled in cases where a defendant's omission arises from a failure to correct and/or update a prior material representation. *See In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386 (S.D.N.Y. 2010) (holding that where a "[defendant] was under a duty to update or correct [a prior material representation] . . . Plaintiffs are entitled to the *Affiliated Ute* presumption of reliance on this omission").

Additionally, Defendants can neither demonstrate that these issues implicate controlling questions of law nor can they show that an immediate appeal would materially advance the ultimate termination of this litigation. First, this Court's analysis of both the economic loss doctrine and the *Affiliated Ute* presumption of reliance involved fact-specific inquiries

inappropriate for interlocutory appeal.  Second, neither dismissal of the negligence claim nor the securities claim alone would independently change the conduct of this action as both claims arise out of the same catastrophic failure of NASDAQ's system and trading platforms.  Finally, this Court has already granted Plaintiffs leave to amend the Consolidated Amended Class Action Complaint ("CAC") to incorporate certain new facts – and such ability to amend would likely survive any appeal.  Accordingly, Defendants cannot meet the strict standards required for certification under Section 1292(b).

At bottom, Defendants can neither demonstrate that there are "exceptional circumstances" sufficient to justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment, nor satisfy the statutory requirements of Section 1292(b).  Accordingly, Defendants instant motion should be denied.

## II.     ARGUMENT

### A.     The Strict Legal Standard Governing Motions For Interlocutory Appeals Pursuant To 28 U.S.C. § 1292(b)

A party seeking an interlocutory appeal bears the burden of meeting *three independent* statutory criteria set forth in 28 U.S.C. § 1292(b):  (1) the order must involve a dispute over a "controlling question of law;" (2) "as to which there is a substantial ground for difference of opinion;" and (3) for which an immediate appeal "may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *Greenes v. Vijax Fuel Corp.*, No. 02 Civ. 0450 PKC, 2004 WL 1516804, at *2 (S.D.N.Y. July 7, 2004).  "[E]ven where the three legislative criteria of section § 1292(b) appear to be met, district courts retain 'unfettered discretion to deny certification' if other factors counsel against it."  *Transp. Workers Union of Am., Local 100 v. NYC Transit Auth.*, 358 F. Supp. 2d 347, 351 (S.D.N.Y. 2005).

Interlocutory appeal of a non-final order under 28 U.S.C. § 1292(b) is an extraordinary procedure only granted in "exceptional circumstances." *Ambac*, 693 F. Supp. 2d at 281; *Lidle v. Cirrus Design Corp.*, No. 08-cv-1253-BSJ-HBP, 2010 WL 4345733, at *1 (S.D.N.Y. Oct. 29, 2010) ("[T]he power to grant an interlocutory appeal must be strictly limited to the precise conditions stated in the law. . . . [O]nly exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment."). For this reason, courts in this Circuit overwhelmingly deny requests for interlocutory appeal, recognizing that "interlocutory appeals are strongly disfavored in federal practice," and "[m]ovants cannot invoke the appellate process 'as a vehicle to provide early review of difficult rulings in hard cases.'"[2] *Adelphia*, 2008 WL 361082, at *1 (citations omitted); *see also In re World Trade Ctr. Disaster Site Litig.*, 469 F. Supp. 2d 134, 144 (S.D.N.Y. 2007) ("[F]ederal practice strongly disfavors discretionary interlocutory appeals . . . [as they] prolong judicial proceedings, add delay and expense to litigants, burden appellate courts, and present issues for decisions on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions.") (quoting *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865-66 (2d Cir. 1996)).

Notably, "the Second Circuit has held that challenges to the sufficiency of a pleading are not generally the appropriate subjects of interlocutory review, as 'a reversal [on interlocutory appeal] at most could lead only to a remand for repleading, with possibilities of further interlocutory appeals thereafter.'" *In re Manhattan Inv. Fund Ltd.*, 288 B.R. 52, 56 (S.D.N.Y.

---

[2] Not surprisingly, there have been only four cases since 1995 in which the Second Circuit has entertained a Section 1292(b) appeal in cases asserting federal securities law violations and these actions have presented very narrow issues for appeal which only highlight the "exceptional circumstances" necessary for 1292(b) certification. *See W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche, LLP*, 549 F.3d 100 (2d Cir. 2008); *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190 (2d Cir. 2008); *Litzler v. CC Invs., L.D.C.*, 362 F.3d 203 (2d Cir. 2004); *Cal. Pub. Emp. Ret. Sys. V. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004).

2002) (quoting *Gottesman v. General Motor Corp.*, 268 F.2d 194, 196 (2d Cir. 1959)).  Indeed, a

piecemeal appeal on issues that could later be corrected via amendment impedes judicial

efficiency, rather than advancing it, and runs counter to the underlying purpose of Section

1292(b).  *Consol. Edison, Inc. v. Ne. Util.*, 318 F. Supp. 2d 181, 196 (S.D.N.Y. 2004), *reversed

in part on other grounds*, 426 F.3d 524 (2d Cir. 2005).

> ### B.    Defendants Fail To Present "Exceptional Circumstances" Necessary To Grant Interlocutory Appeal

Defendants must demonstrate that "exceptional circumstances" exist to warrant

interlocutory appeal under Section 1292(b).  *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474-

75 (1978).  The Second Circuit has "repeatedly cautioned" that the "use of this certification

procedure should be strictly limited because only exceptional circumstances [will] justify a

departure from the basic policy of postponing appellate review until after the entry of a final

judgment."  *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996).  Given the need to identify such

circumstances, "the district judge has 'unfettered discretion to deny certification of an order for

interlocutory appeal even when a party has demonstrated that the criteria of 28 U.S.C. § 1292(b)

are met.'" *World Trade Ctr.*, 469 F. Supp. 2d at 144 (quoting *Gulino v. Bd. of Educ.*, 234 F.

Supp. 2d 324, 325 (S.D.N.Y. 2002)).

Defendants state in only the `most conclusory fashion that this is an "exceptional case"

(Def. Br. at 1), but make no specific arguments as to why this is so.  Contrary to Defendants'

assertion, there is simply nothing extraordinary about the Court granting, in part, and denying, in

part, a motion to dismiss.  Defendants conspicuously seek an end-run around the strict standards

of Section 1292(b) by asserting that they have an "appeal as of right" from the Court's ruling on

SRO immunity pursuant to 28 U.S.C § 1291, and that this appeal would allegedly stay the

proceedings in this Court.[3]  (Def. Br. at 1.)  Putting aside the validity of Defendants' assertion, an appeal under Section 1291 does not negate a party's obligations to comply with the requirements of Section 1292(b).  In fact, Defendants fail to cite a single case where a district court certified other dispositive matters under Section 1292(b) when faced with a concurrent appeal of an immunity determination, and courts traditionally decline such requests.  *See, e.g.*, *Clifton v. Eubank*, No. Civ. A. 00-K-2555, 2007 WL 465621, at *2 (D. Colo. Feb. 8, 2007) (declining to certify other issues alongside immunity issue, as "such an expansion of appellate rights should not be granted lightly and is not warranted here."); *Americans United for Separation of State v. Prison Fellowship Ministries*, No. 4:03-CV-90074, 2005 WL 6772870, at *1 (S.D. Iowa July 11, 2005) (declining Section 1292(b) certification despite pending immunity appeal); *Small v. City of New York*, 304 F. Supp. 2d 401, 403 (E.D.N.Y. 2004) (denying defendants' motion to certify interlocutory appeals of plaintiffs' claims to accompany appellate review of their qualified immunity defense as "accepting [defendants'] argument would allow the qualified immunity exception to the final judgment rule to swallow the rule itself").

Granting Defendants' motion would needlessly and prematurely involve the Second Circuit in issues which this Court has broad discretion to determine, and which certainly do not rise to the extraordinary threshold required by Section 1292(b).

### C.   This Court's Application Of The Economic Loss Doctrine And The *Affiliated Ute* Presumption Presents No "Substantial Grounds For A Difference Of Opinion"

Not only do Defendants fail to demonstrate that "exceptional circumstances" exist justifying interlocutory review, Defendants also do not satisfy the three independent statutory criteria of 28 U.S.C. § 1292(b).  Under Section 1292(b), a party seeking certification bears the

---

[3] Contrary to Defendants' assertion, any purported right of appeal under Section 1291 does not automatically stay the proceedings in this Court.  Such a stay would have to be ordered by either this Court or the Second Circuit.

burden of showing "genuine doubt as to the correct applicable legal standard." *In re WorldCom, Inc.*, No. M-47 HB, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003).  Defendants' boilerplate assertion that this Court's December 16 Order was in error does not come close to meeting the strict standards of Section 1292(b) and amounts to nothing more than "[a] mere claim that a district court's decision was incorrect" which "does not suffice to establish substantial ground for a difference of opinion." *In re Pall Corp.*, No. 07-CV-3359 (JS) (ARL), 2009 WL 4282081, at *2 (E.D.N.Y. Nov. 24, 2009) (quoting *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 1997 WL 458739, at *5 (S.D.N.Y. Aug. 12, 1997)); *Mills v. Everest Reinsurance Co.*, 771 F. Supp. 2d 270, 273 (S.D.N.Y. 2009) ("[S]imply because a question is particularly difficult does not mean that there is a difference of opinion.").  A "party that offers only arguments rejected on the initial motion does not meet the second requirement of § 1292(b)." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 399 F. Supp. 2d 320, 324 (S.D.N.Y. 2005) (citations omitted).

This Court has emphasized that "[c]ertification is to be reserved for the exceptional case in which the law is fundamentally uncertain." *Transp. Workers*, 358 F. Supp. 2d at 354.  The "mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate substantial ground for difference of opinion." *Flor,* 79 F.3d 284; *see also Gravatt v. Gen. Star Indem. Co.*, No. 98 Civ. 6670 RWS, 1999 WL 212681, at *7 (S.D.N.Y. Apr. 13, 1999) (Sweet, J.) ("The existence of little or no case law on an issue does not amount to a substantial difference of opinion.").  Rather, "'[i]t is the duty of the district judge . . . to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a ***substantial*** ground for dispute.'" *Flor*, 79 F.3d at 284 (emphasis in original).

As addressed below, there is no "substantial ground for a difference of opinion" concerning this Court's application of the economic loss doctrine or the *Affiliated Ute* presumption of reliance.

### 1.     The Economic Loss Doctrine

Defendants wrongly contend there is "a substantial ground for difference of opinion" with respect to this Court's determination that the economic loss doctrine does not bar Plaintiffs' negligence claim.  (Def. Br. at 4-6.)  Under New York law, a plaintiff may recover economic damages in tort where:  (i) a focused duty flows to a definable and manageable class comprised of individuals with a relationship so close as to approach that of privity, *see Landon v. Kroll Lab. Specialists, Inc.* (*Landon I*), 91 A.D.3d 79, 86 (N.Y. App. Div. 2011), *aff'd*, 22 N.Y.3d 1 (2013); or where (ii) "the nature of the performance called for is affected with a significant public interest and 'failure to perform the service carefully and competently can have catastrophic consequences.'" *Trustees of Columbia Univ. v. Gwathmey Siegel & Assocs. Architects*, 601 N.Y.S.2d 116, 119 (App. Div. 1993) (citing *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 553 (1992)).  Relying on this well-established law, this Court concluded that, because NASDAQ's relationship with Class Members was "so close as to approach that of privity," Defendants possessed a "focused duty" to protect Plaintiffs and the Class from the foreseeable "catastrophic consequences" of NASDAQ's system failures.  (December 16 Order at 62-66.).[4]

Defendants challenge this Court's holding by repeating the same arguments made in their motion to dismiss the CAC, arguing that New York courts "eschew . . . permitting plaintiffs 'to leapfrog duties, over directly juridically related parties.'"  (*Compare* Def. Br. at 5-6 (arguing

---

[4] Defendants affirmatively argue that there is no conflicting authority on this issue, conceding that New York courts have not specifically spoken to the precise question at issue here.  (Def. Br. at 4.)  Given that "there is no conflicting authority on this narrow issue," there can be "no 'substantial grounds for difference of opinion.'"  *Von Bulow by Auersperg v. Von Bulow*, No. 85 CIV. 5553 (JMW), 1986 WL 7781, at *1 (S.D.N.Y. July 8, 1986).

*Sommer* "did not hold that any duty could have been imposed absent a contractual relationship") *with* Def. Reply Memorandum, ECF No. 153 at 22 ("Here, there is no contractual relationship between the plaintiffs and NASDAQ that could give rise to such a duty of care.").)[5]   However, as fully detailed in Lead Plaintiffs' opposition to Defendants' motion to dismiss the CAC (*see* Plaintiffs' Opposition Memorandum, ECF No. 147, at 59-64), the fact that Class Members did not have a contractual relationship with NASDAQ does not negate the exchange's duty to protect these Class Members against economic losses caused by NASDAQ's system failures.  As this Court noted, "brokers act merely as agents of their customers, who are the real parties in interest and assume the full risk of economic loss from any system failures."  (December 16 Order at 64-65.)  All investors' pre-market orders for the Facebook IPO were entered into NASDAQ's system creating a relationship of privity between the Class and the exchange.

Defendants also challenge this Court's finding that Defendants owed a duty of care to a "settled and particularized" class because the Court purportedly failed to consider that the "class of *potential* plaintiffs . . . is limitless."  (Def. Br. at 5.)  Defendants' argument is unavailing.  Far from determining that NASDAQ owed a duty of care to the "public at large" which is "limitless" (*id.*), this Court's holding limited NASDAQ's duty of care to a definable group of investors who entered orders with NASDAQ for Facebook stock on the day of the IPO and who suffered specific economic harm:  *i.e.*, the catastrophic consequences of NASDAQ's system failures in connection with the Facebook IPO.[6]  (December 16 Order at 64-66.)  Accordingly, NASDAQ

---

[5] Defendants rely on *Milliken & Co. v. Consol. Edison Co. of N.Y., Inc.* for this point, but that case expressly noted that the duty at issue was an unlimited liability to "noncontractually related consumers of a utility's service or product" for attenuated economic damages – there, "lost profits, overhead expenses, and out-of-pocket expenses" from a power outage.  84 N.Y.2d 469, 477, 644 N.E.2d 268, 271 (1994).  Here, the scope of NASDAQ's duty of care is limited to the well-defined group of investors who placed orders with NASDAQ for Facebook IPO and the economic damages are quantifiable.

[6] This Court's holding accords with New York law, particularly in light of the significant public interests implicated by NASDAQ's initiation of initial public offerings.  *See, e.g.*, *Landon I*, 91 A.D.3d at 88.  ("The burden . . . liability

owes a duty of care not to a "limitless" set of "potential plaintiffs," but to a circumscribed Class whose members are easily ascertainable from brokerage records.

Moreover, this Court's application of the economic loss doctrine is consistent with recent precedent from the New York Court of Appeals.  *See Landon v. Kroll Lab. Specialists, Inc.* (*Landon II*), 22 N.Y.3d 1 (2013).  There, the court upheld negligence claims "notwithstanding the absence of a contractual relationship," determining that there are "certain circumstances where a duty of care is assumed to certain individuals outside the contract" and that "such a duty may arise 'where the contracting party, in failing to exercise reasonable care in the performance of [its] duties, launche[s] a force or instrument of harm.'" *Id.* at 6.  Mirroring this Court's reasoning, the *Landon II* court determined that the "alleged harm to plaintiff was not remote or attenuated," and that plaintiff was "directly harmed" by defendants' negligence.  *Id.* at 2; *see also Landon*, 91 A.D.3d at 86 ("[T]he [New York] Court of Appeals has recognized the existence of tort duties in situations where the relationship between the parties was so close as to approach that of privity even where purely economic injuries have been alleged.") (internal citations omitted).[7]

The instant matter, like *Landon II*, is wholly distinguishable from the cases that Defendants cite, all of which involve plaintiffs whose involvement in a particular event, "while foreseeable, is nevertheless fortuitous, and the particular type of economic injury that they might

would impose, whatever the magnitude, must nevertheless be weighed against the societal benefits resulting from the imposition of the alleged legal duty"); *see also Banco Multiple Santa Cruz, S.A. v. Moreno*, 888 F. Supp. 2d 356, 374 (E.D.N.Y. 2012) (duty to process withdrawal requests in a non-negligent manner existed when "MetLife holds itself out as a secure financial institution, and the public has an interest in seeing contracts governing large monetary investments performed with reasonable care").

[7] Moreover, the intermediate appellate court decision in *Landon* explicitly relied on the principles articulated in *Sommer*.  *Landon I*, 91 A.D.3d at 79.  Specifically, the court focused on economic harm, including "the loss of current employment, the forfeiture of retirement benefits and pension . . . and the elimination of prospective employment opportunities." *Id.* at 192-93.

suffer [is] hopelessly unpredictable." *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 291 (2001).  Here, the "particular type of economic injury" suffered is eminently predictable, and NASDAQ's relationship with Plaintiffs, stemming from their trade orders in the Facebook IPO, is anything but "fortuitous."  Accordingly, Defendants' argument amounts to little more than a claim that this Court incorrectly applied the proper legal standard to the facts presented in this matter.  *See Wausau Bus. Ins. Co. v. Turner Constr. Co.*, 151 F. Supp. 2d 488, 491 (S.D.N.Y. 2001) ("Substantial ground for a difference of opinion requires more than a claim that the court's ruling was wrong.").

Defendants also contend that this Court erred in applying *Sommer*, arguing *Sommer* only applies to cases involving physical damage.  (Def. Br. at 6.)  However, Defendants overlook the fact that courts within the Second Circuit have relied upon *Sommer* in upholding negligence claims against financial entities and other parties in circumstances not involving physical damage, *see Banco Multiple*, 888 F. Supp. 2d at 358, and have otherwise upheld negligence claims in other circumstances involving solely economic harm.  *Id.* at 370-72 (citing cases).[8] The Second Circuit has done the same.  *See, e.g.*, *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 18 (2d Cir. 2000) (rejecting logic of courts that "have applied the economic loss rule to bar recovery where the only loss claimed is economic in nature").

As such, this Court's application of the economic loss doctrine is well-supported by and consistent with New York law, and there is no "substantial ground for difference of opinion" as to whether this Court applied the correct legal standard in the December 16 Order.

---

[8] *See also Grund v. Del. Charter Guarantee & Trust Co.*, 788 F. Supp. 2d 226, 247 (S.D.N.Y. 2011) *on reconsideration on other grounds*, 09 CIV. 8025, 2011 WL 3837146 (S.D.N.Y. Aug. 30, 2011) (Sweet, J.) (denying motion to dismiss negligence claim under New York law against trustee of retirement accounts where retirement accounts were invested in fund which proved to be a Ponzi scheme); *Hecht v. Andover Assoc. Mgmt. Corp.*, 910 N.Y.S.2d 405 (Table), 2010 WL 1254546 (N.Y. Sup. Ct. Mar. 12, 2010) (economic loss doctrine did not bar negligence claims against investment advisor recommending Bernie Madoff's firm as investment manager).

### 2.    The *Affiliated Ute* Presumption of Reliance

Defendants' contention that this Court's application of the *Affiliated Ute* presumption of reliance satisfies the "substantial grounds" requirement of Section 1292(b) is likewise unfounded.  Under the *Affiliated Ute* doctrine, reliance is presumed in securities fraud actions "involving primarily a failure to disclose."  *Affiliated Ute*, 406 U.S. at 153.  To benefit from this presumption, all that is required is for a plaintiff to allege "an omission of a material fact by one with a duty to disclose."  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008).  Courts within the Second Circuit have long recognized that the *Affiliated Ute* presumption of reliance applies in cases where the gravamen of a complaint's allegations concerns material omissions.  *Wilson*, 648 F.2d at 93; *see also In re Parmalat Sec. Litig.*, 2008 WL 3895539, at *8 (S.D.N.Y. Aug. 21, 2008) (applying *Affiliated Ute* presumption of reliance "where the alleged omissions played an independent, or at least interdependent, role in the alleged fraud").  As further detailed below, the Court's application of the *Affiliated Ute* presumption of reliance is wholly consistent with this precedent.

Misconstruing the Second Circuit's holding in *Wilson*, Defendants again repeat the argument that Lead Plaintiffs cannot utilize the *Affiliated Ute* presumption of reliance because the alleged omissions at issue arose from Defendants' failure to update and/or correct their prior material representations.[9]  (Def. Br. at 7-8.)  Putting aside the fact that Defendants are repeating and rehashing the same arguments that they have already made to this Court (*see* Def. Reply Memorandum, ECF No. 153, at 34-36), the Second Circuit and Supreme Court have continuously reaffirmed that "an omission of a material fact by a defendant with a duty to

---

[9] The "CAC's federal securities allegations are not based on Defendants' pre-Class Period statements . . . but on the material omissions concerning NASDAQ's known system problems, which Defendants had a duty to disclose.  The affirmative statements are identified in order to demonstrate that Defendants had a duty to correct or update these material statements in the days leading up to the Facebook IPO."  (December 16 Order at 85.)

disclose establishes a rebuttable presumption of reliance upon the omission by investors to whom the duty was owed." *Levitt v. J.P. Morgan Securities, Inc.*, 710 F.3d 454, 465 (2d Cir. 2013) (citing *Affiliated Ute*, 406 U.S. at 153-54); *see also Stoneridge*, 552 U.S. at 159.  In fact, this Court has specifically held that a plaintiff is entitled to plead the *Affiliated Ute* presumption of reliance where, as here, a defendant's material omission arose from a duty to update and/or correct prior representations.  *See Beacon*, 745 F. Supp. 2d at 412-13 (holding that where a "[defendant] was under a duty to update or correct [a prior material representation] . . . Plaintiffs are entitled to the *Affiliated Ute* presumption of reliance on this omission").

Defendants mischaracterize the Second Circuit's decision in *Wilson*, a direct securities fraud action which preceded *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), as standing for the proposition that "a duty to update or correct and the *Affiliated Ute* presumption are mutually exclusive." (Def. Br. at 8.)  Contrary to Defendants' contention, *Wilson* does not distinguish between different types of omissions cases based upon how a defendant's duty to disclose arose.  In *Wilson*, the plaintiff-appellant appealed the District Court's judgment *after a trial*, and the Second Circuit found that the plaintiff could not rely on the *Affiliated Ute* presumption of reliance given the developed factual record that had been established following the conclusion of discovery.  *Id.* at 93.  In this regard, *Wilson* stands for the unremarkable proposition that a presumption of reliance (under either *Basic* or *Affiliated Ute*) can be rebutted by specific evidence obtained during fact discovery.

Unlike in *Wilson*, the parties in the instant matter have not had an opportunity to conduct any discovery or to develop a factual record.  Moreover, Lead Plaintiffs specifically allege in the CAC their reliance on "the integrity of NASDAQ's technology and trading platforms, including its IPO Cross system, as represented by Defendants in NASDAQ's SEC filings, press

conferences, analyst conference calls and conferences, press releases, public statements, and other publications disseminated by and/or concerning NASDAQ."  (CAC, pg. 1; *see also* CAC ¶¶ 189, 337.)  Thus, the facts, allegations, and procedural posture of *Wilson* are fully distinguishable from the instant matter.

Defendants' mere disagreement with this Court's application of *Wilson* does not constitute "a substantial ground for difference of opinion."  *See, e.g.*, *Ambac*, 693 F. Supp. 2d at 285 (declining to certify denial of dismissal because "Defendants' . . . argument, while artfully phrased, is at bottom simply a disagreement with our conclusion");  *King County, Wash. v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 317, 324 (S.D.N.Y. 2012) (denying Section 1292(b) certification of an order denying in part the dismissal of federal securities claims where defendants "cite the same cases and make the same arguments they did in their memoranda of law supporting their motions to dismiss"); *Adelphia*, 2008 WL 361082, at *1 ("Movants cannot invoke the appellate process as a vehicle to provide early review of difficult rulings in hard cases.") (citations omitted).  Moreover, a "denial of a motion to dismiss for failure to state a claim is neither a final decision, nor a basis for interlocutory review . . . and is not, standing alone, immediately appealable." *Hill v. City of New York*, 45 F.3d 653, 663 (2d Cir. 1995); *see also In re Bernard L. Madoff Inv. Sec. LLC*, No. 11 MC 0012 (KMW), 2011 WL 3897970, at *7 (S.D.N.Y. Aug. 31, 2011) ("[C]hallenges to the sufficiency of pleadings are generally inappropriate for interlocutory review.").

Accordingly, Defendants have failed to demonstrate that there is "a substantial ground for difference of opinion" regarding the application of the *Affiliated Ute* presumption of reliance within the Second Circuit.

EC.54277.1

15

### D.   The Court's December 16 Order Additionally Does Not Involve Any Controlling Questions of Law

A Section 1292(b) appeal also requires "a 'pure' question of law that the reviewing court 'could decide quickly and cleanly without having to study the record.'" *WorldCom*, 2003 WL 21498904, at *10 (quoting *Ahrenholz v. Bd. of Trs. of Univ. of Illinois*, 219 F.3d 674, 676-77 (7th Cir. 2000)); *see also Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir. 1991) (Section 1292(b) "allows certification only of 'question[s] of law,'" not issues of fact).

This Court's determination that the economic loss doctrine does not bar Plaintiffs' negligence claims involves questions of fact inappropriate for interlocutory appeal.  As the New York Court of Appeals has emphasized, "[a]lthough the existence of a duty is an issue of law for the courts . . . once the nature of the duty has been determined as a matter of law, whether a particular defendant owes a duty to a particular plaintiff is a question of fact." *Kimmell v. Schaefer*, 675 N.E.2d 450, 453 (N.Y. 1996).  Consistent with New York law, this Court determined in its December 16 Order that Defendants owed a duty of care to Plaintiffs because of the existence of a relationship "so close as to approach that of privity."  (December 16 Order at 64); *see also Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of N.Y.*, 734 F. Supp. 2d 368, 378, 380 (S.D.N.Y. 2010).  The determination of whether such a "special relationship" exists is highly fact-specific, *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 526 (S.D.N.Y. 2001), and accordingly cannot constitute a controlling question of *law.  Cf. J&R Elecs. Inc. v. Bus. & Decision N. Am., Inc.*, No. 12 Civ. 7497(PKC), 2013 WL 5203134, at *7 (S.D.N.Y. Sept. 16, 2013) ("With a full factual record, the issue of a special relationship may be ripe at the summary judgment stage.").

Defendants' argument concerning the Court's application of the *Affiliated Ute* presumption of reliance similarly implicates factual questions and does not involve controlling

questions of law.  Whether the *Affiliated Ute* presumption of reliance applies depends upon the materiality of the alleged omissions.  Courts within the Second Circuit uniformly hold that determinations of materiality are "inherently fact-specific."  *See, e.g.*, *N.J. Carpenters Health Fund v. Royal Bank of Scotland Group, PLC*, 709 F.3d 109, 126 (2d Cir. 2013) ("[Q]uestions of materiality are 'inherently fact-specific.'") (quoting *Basic*, 485 U.S. 224, 236 (1988)); *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009) ("In order to determine whether a misleading statement is material, courts must engage in a fact-specific inquiry.").  As such, the *Affiliated Ute* analysis is inextricably intertwined with the fact-specific inquiry of materiality and, consequentially, does not involve pure questions of law.  *See, e.g.*, *In re Blech Sec. Litig.*, No. 94 Civ. 7696 (RWS), 2003 WL 134988, at *2 (S.D.N.Y. Jan. 13, 2003) (Sweet, J.) (when controlling issues are factual, rather than legal, certification not available) (citing *Genentech, Inc. v. Novo Nordisk A/S*, 907 F. Supp. 97, 99 (S.D.N.Y. 1995)).

Here, not only do Defendants present issues that involve significant factual determinations inappropriate for interlocutory appeal, they also fail to establish that either issue implicates a controlling question of law.  The Second Circuit would have to reverse this Court's application of both the economic loss doctrine and the *Affiliated Ute* presumption of reliance to "significantly affect the conduct of this action."  *Wausau*, 151 F. Supp. 2d at 491 (Sweet, J.) (emphasis added).  This Court has already noted the "commonality of facts and circumstances underlying [the negligence and securities] claims" given that both claims arise out of the same catastrophic failure of NASDAQ's system and trading platforms.  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 42 (S.D.N.Y. 2012).  Accordingly, if either claim survives on appeal, the proceedings in this Court will not be materially affected.

Finally, Defendants' argument that the December 16 Order may have "potential precedential value" because, absent appellate review, the Order may encourage securities exchanges to be added as defendants in "investor lawsuits" is speculative.  (Def. Br. at 3-4.)  In *Primavera Familienstifung v. Askin*, this Court rejected substantially the same argument as Defendants make herein.  139 F. Supp. 2d 567, 573 (S.D.N.Y. 2001) (Sweet, J.).  There, the Court denied certification under Section 1292(b) despite the defendants' argument that the ruling at issue "will encourage shareholders to file suits that, it is implied, would not have ensued otherwise, and the precedent represented by this Court's decision will impact those cases."  *Id.*[10] The Court further noted that  "[e]ven assuming *arguendo* that [Defendants'] dramatic characterization of this Court's ruling were correct, it is rather speculative to say that the ruling has precedential value for a large number of cases when those cases have yet to be brought."  *Id.* Based upon the Court's reasoning in *Primavera*, Defendants can only speculate that the December 16 Order will have any precedential value.

For these reasons, Defendants cannot demonstrate that the December 16 Order involves controlling questions of law for certification purposes under Section 1292(b).

### E.      An Immediate Appeal Would Not Materially Advance The Ultimate Termination Of The Litigation

In order to certify the December 16 Order under Section 1292(b), this Court must find that an immediate appeal would also "materially advance the ultimate termination of the litigation."  Defendants contend that they satisfy this requirement by arguing that "an interlocutory appeal would not impede the progress of this litigation [because of the presence of the immunity issue]." (Def. Br. at 9.)  Defendants' argument is misplaced.  The Second Circuit

---

[10] Tellingly, no such barrage of cases followed the Eleventh Circuit's opinion denying SRO immunity in *Weissman v. Nat' Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293 (11th Cir. 2007).

strictly construes this requirement, holding that it is not enough that an interlocutory appeal will not impede the litigation; *the appeal must actually advance it. See, e.g.*, *Isra Fruit Ltd. v. Agrexco Agric. Export Co.*, 804 F.2d 24, 26 (2d Cir. 1986) (denying certification where determination on appeal would result in no "appreciable saving of time"); *see also Transp. Workers*, 358 F. Supp. 2d at 350 (noting that the objective of advancing the ultimate termination of the litigation is not met if the appeal would not "advance the time for trial or . . . shorten the time required for trial"). Indeed, Defendants have not demonstrated that their application herein would materially advance this litigation other than on their unremarkable and typical arguments that reversal of a lower court's decision on appeal will conclude the litigation. The decisional authority in this Circuit does not permit Defendants' approach.

Further, Defendants cannot improperly circumvent the "materially advance" prong of Section 1292(b) by pointing to their stated intention to file an appeal of the SRO immunity issue under Section 1291. As discussed above, the requirements of Section 1292(b) are independent of those of Section 1291, and Defendants offer no authority to the contrary. The mere fact that Defendants intend to file a Section 1291 appeal has no bearing on the likelihood that an interlocutory appeal of the economic loss doctrine and *Affiliated Ute* presumption will "materially advance the ultimate termination of this litigation" under Section 1292(b).

Additionally, an interlocutory appeal will not materially advance the ultimate termination of litigation where, as here, many of the same factual issues will still have to be litigated even assuming that one of the claims in the action is dismissed on appeal. *See, e.g.*, *Westwood Pharms.v. Nat'l Fuel Gas Distrib.*, 964 F.2d 85, 88 (2d Cir. 1992) (cautioning against the certification of questions in cases where "many of the same factual issues . . . would still have to be litigated"); *Isra Fruit*, 804 F.2d at 25-26 (2d Cir. 1986) (denying certification where

remaining claims in the lawsuit were closely related).  Given the substantial factual overlap underlying both the securities and negligence claims, discovery for both claims, particularly in the initial stages of this action, will be nearly identical.  If either of Plaintiffs' two claims is not fully dismissed on appeal, the proceedings underlying this litigation will continue to advance in substantially the same manner as if an interlocutory appeal never occurred, leading to precisely the type of situation that Section 1292(b) was designed to avoid.

Finally, were this Court to certify the December 16 Order, the Second Circuit would undoubtedly grant Plaintiffs leave to amend the CAC just as this Court has so ordered in its December 16 Order.  Thus, Plaintiffs would have an opportunity to cure any defects identified on appeal, and certification of either issue would not advance this litigation to conclusion.  A piecemeal appeal on issues that could later be corrected via amendment impedes judicial efficiency, rather than advancing it, and runs counter to the underlying purpose of Section 1292(b).  *Consol. Edison*, 318 F. Supp. 2d at 196 ("Section 1292(b) was not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation") (internal citation omitted); *see Primavera*, 139 F. Supp. 2d at 570.

## III.   CONCLUSION

For the reasons set forth above, this Court should deny Defendants' motion to amend and to certify this Court's Opinion and Order entered on December 16, 2013 for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) in its entirety.

Dated:  January 21, 2014

Respectfully Submitted,

*/s/ Vincent R. Cappucci*

Vincent R. Cappucci, Esq.
Jordan A. Cortez, Esq.
Evan T. Raciti, Esq.
**ENTWISTLE & CAPPUCCI LLP**
280 Park Avenue, 26th Floor West
New York, NY 10017
Telephone:  (212) 894-7200
Facsimile:  (212) 894-7272

***Lead Counsel for NASDAQ
Securities Actions***

*/s/ Douglas G. Thompson, Jr.*

Douglas G. Thompson, Jr., Esq.
Michael G. McLellan, Esq.
**FINKELSTEIN THOMPSON LLP**
1077 30th Street, Suite 150
Washington, D.C. 20007
Telephone: (202) 337-8000
Facsimile: (202) 337-8090

*/s/ Christopher Lovell*

Christopher Lovell, Esq.
Victor E. Stewart, Esq.
**LOVELL STEWART HALEBIAN
JACOBSON LLP**
61 Broadway, Suite 501
New York, NY 10006
Telephone: (212) 608-1900
Facsimile: (212) 719-4677

***Co-Lead Counsel for NASDAQ Negligence
Actions***

EC.54277.1

21

Jacob H. Zamansky, Esq.
Edward H. Glenn, Jr., Esq.
Kevin D. Galbraith, Esq.
**ZAMANSKY & ASSOCIATES LLC**
50 Broadway, 32nd Floor
New York, New York 10004
Telephone: (212) 742-1414
Facsimile: (212) 742-1177

Kevin I. Goldberg, Esq.
**GOLDBERG, FINNEGAN**
 **& MESTER, LLC**
1010 Wayne Avenue, Suite 950
Silver Spring, Maryland 20910
Telephone: (301) 589-2999
Facsimile: (301) 589-2644

Marvin A. Miller, Esq.
Andrew Szot, Esq.
**MILLER LAW LLC**
115 South LaSalle Street, Suite 2910
Chicago, Illinois 60603
Telephone: (312) 332-3400
Facsimile: (312) 676-2675

Vincent DiTommaso
**DITOMMASO LUBIN**
17W 220 22nd Street, Suite 410
Oakbrook Terrace, Illinois 60181
Telephone: (630) 333-0000
Facsimile: (630) 333-0333

Thomas J. McKenna, Esq.
Gregory D. Egleston, Esq.
**GAINEY MCKENNA & EGLESTON**
440 Park Avenue South, 5th Floor
New York, New York 10016
Telephone: (212) 983-1300
Facsimile: (212) 983-0380

Richard J. Schager, Jr., Esq.
Andrew R. Goldenberg, Esq.
**STAMELL & SCHAGER, LLP**
One Liberty Plaza, 35/F
New York, New York 10006
Telephone:  (212) 566-4054
Facsimile:  (212) 566-4061

***Additional Counsel for NASDAQ Negligence
Actions***