IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE FACEBOOK, INC., IPO SECURITIES AND DERIVATIVE LITIGATION | : MDL NO. 12-2389 : |

This document relates to the
Consolidated NASDAQ Actions:

| | |
|---|---|
| No. 12-cv-4054 | No. 12-cv-4600 |
| No. 12-cv-4200 | No. 12-cv-4716 |
| No. 12-cv-4201 | No. 12-cv-5549 |
| No. 12-cv-4315 | No. 12-cv-5630 |
| No. 12-cv-4403 | No. 12-cv-6882 |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO AMEND AND CERTIFY ORDER ENTERED DECEMBER 16, 2013 FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

William A. Slaughter (PA Bar No. 30637)*
Stephen J. Kastenberg (PA Bar No. 70919)*
Paul Lantieri III (PA Bar No. 88160)*
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: 215.665.8500
Fax: 215.864.8999
slaughter@ballardspahr.com
kastenberg@ballardspahr.com
lantierip@ballardspahr.com

*Attorneys for Defendants
The NASDAQ OMX Group, Inc., The
NASDAQ Stock Market LLC, Robert
Greifeld, and Anna M. Ewing*

*Admitted pro hac vice

## **TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES ...................................................................................................... ii

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................... 3

    A. This Court's Opinion Involves Controlling Questions of Law that Should Be Certified under Section 1292(b) ..................................................................... 3

    B. There Are Substantial Grounds for a Difference of Opinion on Controlling Questions of Law ................................................................................................. 6

        1. The Economic Loss Doctrine .................................................................. 6

        2. *Affiliated Ute* Presumption ...................................................................... 9

III. CONCLUSION .............................................................................................................. 11

# TABLE OF AUTHORITIES

*Page(s)*

### CASES

*532 Madison Avenue Gourmet Foods, Inc. v. Finlandia Center, Inc.*,
  750 N.E. 2d 1097 (N.Y. 2001)..................................................................................3, 9

*Abell v. Potomac Insurance Co.*, 858 F.2d 1104 (5th Cir. 1988),
  *vacated on other grounds sub nom.*, *Fryar v. Abell*, 492 U.S. 914 (1988)......................... 10-11

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*,
  Civ. No. 08-7508, 2013 WL 837536 (S.D.N.Y. Mar. 6, 2013) ....................................................7

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972)......................................................................................................1

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
  387 F. Supp. 2d 265 (S.D.N.Y. 2004)..................................................................................7

*Bradley v. Jusino*,
  Civ. No. 04-8411, 2009 WL 1403891 (S.D.N.Y. May 18, 2009) ..............................................2

*Brown v. Bullock*,
  294 F.2d 415 (2d Cir. 1961) (en banc)..................................................................................5

*EM Ltd. v. Republic of Argentina*,
  Civ. No. 06-7792, 2010 WL 9034625 (S.D.N.Y. Apr. 16, 2010), *vacated and remanded sub nom.*, *NML Capital, Ltd. v. Banco Cent. de la Republica Argentina*,
  652 F.3d 172, 184 (2d Cir. 2011)....................................................................................... 2-3

*Harriscom Svenska AB v. Harris Corp.*,
  947 F.2d 627 (2d Cir. 1991)..................................................................................................2

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
  227 F.3d 8 (2d Cir. 2000) ................................................................................................. 8-9

*In re Beacon Associates Litigation*,
  745 F.Supp.2d 386 (S.D.N.Y. 2010)....................................................................................10

*In re IBM Corp. Securities Litigation*,
  163 F.3d 102 (2d Cir. 1998)...............................................................................................10

*In re Lloyd's American Trust Fund Litigation*,
  Civ. No. 96-1262, 1997 WL 458739 (S.D.N.Y. Aug. 12, 1997)................................................4

*In re Parmalat Securities Litigation*,
  MDL No. 14-1653, 2008 WL 3895539 (S.D.N.Y. Aug. 21, 2008).........................................10

*In re Prudential Insurance Co. of America Sales Practice Litigation*,
 975 F. Supp. 584 (D.N.J. 1997) ..................................................................................6

*Isra Fruit Ltd. v. Agrexco Agricultural Export Co.*,
 804 F.2d 24 (2d Cir. 1986)...........................................................................................4

*Joseph v. Wiles*,
 223 F.3d 1155 (10th Cir. 2000) ............................................................................ 10-11

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In
 Amministrazione Straordinaria*, 921 F.2d 21 (2d Cir. 1990) ......................... 3, 5, 6-7

*Landon v. Kroll Laboratory Specialists, Inc.*,
 22 N.Y.3d 1 (N.Y. 2013) .............................................................................................8

*Larsen v. Senate*,
 152 F.3d 240 (3d Cir. 1998)........................................................................................2

*Levitt v. J.P. Morgan Securities, Inc.*,
 710 F.3d 454 (2d Cir. 2013)......................................................................................10

*Mamani v. Berzain*,
 654 F.3d 1148 (11th Cir. 2011) ..................................................................................2

*Marisol by Forbes v. Giuliani*,
 104 F.3d 524 (2d Cir. 1996)........................................................................................4

*Murray v. Metro Life Insurance Co.*,
 583 F.3d 173 (2d Cir. 2009)........................................................................................3

*PAB Aviation, Inc. v. United States*,
 169 Fed. Appx. 61 (2d Cir. 2006)...............................................................................9

*Palmer v. Sanderson*,
 9 F.3d 1433 (9th Cir. 1993) ........................................................................................2

*Praxair, Inc. v. Florida Power & Light Co.*,
 64 F.3d 609 (11th Cir. 1995) ......................................................................................2

*Romano v. Kazacos*,
 609 F.3d 512 (2d Cir. 2010)........................................................................................8

*Securities Investor Protection Corp. v. BDO Seidman, L.L.P.*,
 746 N.E.2d 1042 (N.Y. 2001).....................................................................................8

*Sissoko v. Rocha*, 440 F.3d 1145 (9th Cir. 2006),
 *withdrawn on other grounds*, 509 F.3d 947 (9th Cir. 2007).......................................2

*Stewart v. Donges*,
　915 F.2d 572 (10th Cir. 1990) ..................................................................................2

*Strauss v. Belle Realty Co.*,
　482 N.E.2d 34 (N.Y. App. Div. 1983) ......................................................................5

*Travelers Casualty & Surety Co. v. Dormitory Authority*,
　734 F. Supp. 2d 368 (S.D.N.Y. 2010) .................................................................. 7-8

*Weber v. United States*,
　484 F.3d 154 (2d Cir. 2007) ................................................................................ 6-7

*Westwood Pharmaceuticals v. National Fuel Gas Distribution, Corp.*,
　964 F.2d 85 (2d Cir. 1992) .......................................................................................4

*Wilson v. Comtech Telecommunications Corp.*,
　648 F.2d 88 (2d Cir. 1981) ................................................................................ 9-10

## OTHER SOURCES

7 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 22:60 (4th ed. 2002) ...................................................................................................................... 5-6

16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3929 (3d ed. 2012).........................................................1

16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3929.1 (3d ed. 2012)......................................................2

16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3930 (3d ed. 2012)..................................................... 2, 4

THOMAS LEE HAZEN, TREATISE ON THE LAW OF SECURITIES REGULATION § 12.10[4] (6th ed. 2009) ................................................................................................................11

I.      INTRODUCTION

Plaintiffs' opposition to defendants' motion fails to come to grips with most of the reasons why it is both legally proper and eminently sensible for the Court to certify its December 16 order for appellate review. Although there is no requirement in Section 1292(b) that a case be "exceptional" to merit certification,[1] this case is in fact exceptional. For the first time, a national securities exchange may face potential classwide negligence liability to investors for trading losses, despite having no direct relationship with those investors. The magnitude of such potential liability is enormous—tens of billions of dollars of transactions take place on such national securities exchanges every day—and may have far-reaching consequences for the nation's financial markets and cost of capital. Equally significantly, and also for the first time, a national securities exchange may face potential classwide securities-fraud liability to investors in a listed security based on statements plaintiffs never heard or read and that did not concern the security they purchased. The Court reached this result based on controversial interpretations of the economic loss doctrine and the presumption of reliance set forth in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). Even if defendants were not already pursuing an appeal as of right on the issue of immunity, the Court's partial denial of defendants' motion to dismiss would be the paradigm of an order deserving immediate review under Section 1292(b).

Particularly in light of defendants' forthcoming appeal as of right, however, there is no doubt that immediate appellate review of the issues presented would serve the interest of judicial efficiency that is at the heart of Section 1292(b). Certification would allow the Second

---

[1] *See* 16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3929, at 433-37 (3d ed. 2012) (Wright & Miller) (noting that "[t]he statute is not limited by its language to 'exceptional' cases" and "even a casual survey of the hundreds of appeals decided under § 1292(b) suggests that it is often used in cases that do not meet the 'exceptional' test," and concluding that "[t]he flexible approach to § 1292(b) is far superior to blind adherence to a supposed need to construe strictly any permission to depart from the final-judgment rule").

1

Circuit to consider the issues presented free of any potential jurisdictional complications. And reversal on those issues would end this litigation and save this Court the significant expenditure of resources that would be required to shepherd this case through discovery and trial. Moreover, because of defendants' appeal as of right on the immunity issue, there is no risk that certifying the remaining issues would generate an unnecessary additional appeal.[2] Nor would certification of these issues for immediate appeal delay proceedings in this Court, because the immunity appeal will divest this Court of jurisdiction to proceed with discovery in any event. *See, e.g.*, *Bradley v. Jusino*, Civ. No. 04-8411, 2009 WL 1403891 (S.D.N.Y. May 18, 2009) (Sweet, J.). *See also Stewart v. Donges*, 915 F.2d 572, 573 (10th Cir. 1990). Efficiency and common sense thus dictate that the Second Circuit be afforded the opportunity to determine which issues it will consider in the upcoming appeal.

The leading commentators affirm the wisdom of this approach. *See* 16 Wright & Miller, *supra*, § 3929.1, at 475-76. Plaintiffs complain that defendants cited no cases granting Section 1292(b) certification of issues raised concurrently with immunity. But as plaintiffs are surely aware, many courts—including the Second Circuit—have followed precisely that approach in similar circumstances.[3] We respectfully submit that the case for certification here is

---

[2] *See Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir. 1991); Wright & Miller, *supra*, § 3930 at 507-08.

[3] *See, e.g.*, *Barbera v. Smith*, 836 F.2d 96, 97-98 (2d Cir. 1987) (where defendants "appeal[ed] as of right from the denial of their claims of immunity," granting review of whether relief could be granted on certain claims, including negligence); *Mamani v. Berzain*, 654 F.3d 1148, 1151 & n.3 (11th Cir. 2011) (where denial of immunity appealed, granting review of political question issue and whether plaintiffs stated a claim); *Sissoko v. Rocha*, 440 F.3d 1145, 1154 n.11 (9th Cir. 2006) (where denial of immunity appealed, granting review of other issues), *withdrawn on other grounds*, 509 F.3d 947 (9th Cir. 2007); *Larsen v. Senate*, 152 F.3d 240, 245 (3d Cir. 1998) (where immunity appealed, granting review of whether defendant judge had property interest in his position); *Praxair, Inc. v. Fla. Power & Light Co.*, 64 F.3d 609, 611 (11th Cir. 1995) (where immunity appealed, granting review of cross-appeal challenging denial of summary judgment); *Palmer v. Sanderson*, 9 F.3d 1433, 1434 (9th Cir. 1993) (where immunity appealed, granting review of vicarious liability issue); *see also EM Ltd. v. Republic of Argentina*, Civ. No. 06-7792, 2010 WL 9034625 (S.D.N.Y. Apr. 16, 2010) (certifying § 1292(b) appeal where §§ 1291 and 1292(a)(1) immunity appeal had been separately taken), *vacated and remanded sub nom.*,

overwhelming. In order to assist the Second Circuit by eliminating any potential jurisdictional complications, this Court should grant Section 1292(b) certification.

## II. ARGUMENT

### A. This Court's Opinion Involves Controlling Questions of Law that Should Be Certified under Section 1292(b)

Contrary to plaintiffs' assertions, the issues presented in defendants' petition are indisputably questions of law, not fact. The New York courts have made unmistakably clear that "[t]he existence and scope of a tortfeasor's duty is, of course, a legal question for the courts." *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 750 N.E.2d 1097, 1101 (N.Y. 2001). This Court did not resolve any questions of fact in holding that the economic loss doctrine does not apply here, nor could it have done so on a motion to dismiss; to the contrary, it assumed the facts alleged by plaintiffs and held that the doctrine is inapplicable as a matter of law. So too with regard to the *Affiliated Ute* presumption. Defendants seek certification of the Court's ruling that, as a matter of law, the presumption applies despite plaintiffs' allegations of affirmative misstatements. That threshold legal ruling was not a fact-specific finding on the materiality of allegedly omitted information, and defendants do not seek certification of any issue of materiality.

In addition, the economic loss and the *Affiliated Ute* issues are "controlling" for purposes of Section 1292(b) because their resolution in defendants' favor would terminate the litigation.[4] Plaintiffs argue that neither of the two issues is controlling because a reversal on only

---

*NML Capital, Ltd. v. Banco Cent. de la Republica Argentina*, 652 F.3d 172, 184 (2d Cir. 2011) (electing to hear the case on § 1292(b) grounds).

[4] The Second Circuit has explained that an issue need not result in termination of the litigation in order to be controlling, *see Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990), and it has granted review even of entirely procedural issues, *see, e.g.*, *Murray v. Metro Life Ins. Co.*, 583 F.3d 173, 176 (2d Cir. 2009) (disqualification of counsel).

one would not terminate the entire case. That approach, however, is contrary to law and logic. In analyzing the potential efficiency savings from an interlocutory appeal, courts proceed on the assumption that the appeal will succeed, not that it will fail. *See In re Lloyd's Am. Trust Fund Litig.*, Civ. No. 06-1262, 1997 WL 458739, at * 7 (S.D.N.Y. Aug. 12, 1997) (Sweet, J.) ("An immediate appeal may materially advance the ultimate termination of the litigation *when reversal could result in dismissal of the action.*") (emphasis added). Section 1292(b) requires only that an appeal "may" materially advance the ultimate end of the case, and the key inquiry is whether the appeal "offers an *opportunity*" to accomplish that result, Wright & Miller, *supra*, § 3930, at 509 (emphasis added). That defendants raise two issues rather than one does not alter the requisite analysis; to gauge whether an interlocutory appeal could materially advance the litigation, the Court should assume that the appeal will be successful on both issues presented.

Under the correct analysis, granting review unquestionably could materially advance the ultimate termination of this case. If defendants succeed on appeal, the case will be over, and the massive expenditure of time and resources that would have been devoted to discovery and trial will be saved. That efficiency, of course, is precisely the goal that Section 1292(b) seeks to achieve. *See Marisol by Forbes v. Giuliani*, 104 F.3d 524, 529 (2d Cir. 1996) (describing "the ultimate efficiency goals of § 1292(b)"); *In re Lloyd's*, 1997 WL 458739 at *4, * 7; Wright & Miller, *supra*, § 3930 at 499 (explaining that certification is called for "if interlocutory reversal might save time for the district court, and time and expense for the litigants"). The situation presented here thus is unlike those in *Westwood Pharms. v. Nat'l Fuel Gas Distrib., Corp.*, 964 F.2d 85, 88 (2d Cir. 1992), and *Isra Fruit Ltd. v. Agrexco Agric. Export Co.*, 804 F.2d 24, 25-26 (2d Cir. 1986), in which even complete success on appeal by the petitioner would have left many of the same issues to be litigated in the district court.

Moreover, even if the Court were to assume success only on one of the two issues presented, defendants' petition would still meet the required standard. Reversal on either the economic loss doctrine or the *Affiliated Ute* presumption would meaningfully simplify this large and complex case. The negligence and securities claims in this case involve different plaintiffs, different defendants, and different classes. Moreover, litigating those claims will require, among other things, different class certification proceedings and analysis; different discovery; different experts; different summary judgment proceedings; and different trial logistics and jury instructions. Eliminating either claim would make for a substantial gain in efficiency.

The Court's rulings also have far-reaching precedential consequences that further support certification. *See Klinghoffer*, 921 F.2d at 24 (courts should consider the "the system-wide costs and benefits of allowing the appeal"); *Brown v. Bullock*, 294 F.2d 415, 417 (2d Cir. 1961) (Friendly, J.) (en banc) (explaining that § 1292(b) certification was warranted in part because the issue "was likely to have precedential value for a large number of other suits . . . pending in the Southern District"). Plaintiffs quibble with the proposition that the rulings will spawn new litigation against exchanges, but do not mention the order's serious potential ramifications for already commonplace forms of litigation. The economic loss doctrine is a critical defense not only for exchanges but also for utilities and other providers of public services. *See, e.g.*, *Strauss v. Belle Realty Co.*, 482 N.E.2d 34 (N.Y. App. Div. 1983). Broadening the scope of potential liability for public-service providers raises serious policy concerns. And a broad interpretation of the *Affiliated Ute* presumption would affect a significant number of the hundreds of class actions brought under Rule 10b-5 every year. As one commentator has noted, "[i]n efforts to obtain the benefit of *Affiliated Ute* in cases where there have been affirmative misstatements, plaintiffs commonly plead the existence of both

misstatements and failure to disclose . . . ." 7 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 22:60 at 273 (4th ed. 2002). Courts generally have rejected these "repeated[]" efforts to "alleg[e] omissions that were really only the converse of affirmative misrepresentations." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 975 F. Supp. 584, 606 n.18 (D.N.J. 1996). If allowed to stand, however, this Court's ruling could affect all of those cases.

Finally, plaintiffs' argument that a further amendment of the complaint to include the SEC's findings concerning the Facebook IPO would moot the need for immediate appellate review misses the mark. The SEC's findings do not contain any new information about the relationship between NASDAQ and the plaintiff class, nor do they relate to NASDAQ's public statements or any alleged reliance on them. As a result, none of those findings could alter the applicability of the economic loss doctrine or the *Affiliated Ute* presumption.

### B. There Are Substantial Grounds for a Difference of Opinion on Controlling Questions of Law

Plaintiffs' arguments in defense of the Court's order only accentuate the existence of substantial grounds for a difference of opinion. While plaintiffs chide defendants for repeating arguments raised in the motion to dismiss, that practice is unavoidable in a Section 1292(b) petition and is hardly a factor weighing against certification. Even if this Court believes that its decision was correct, it should recognize that substantial grounds exist for a difference of opinion and that certification is therefore warranted.

#### 1. The Economic Loss Doctrine

Plaintiffs attempt to create the impression that the novelty of the economic-loss issue as applied to a securities exchange (*see* Opinion & Order 63) renders that issue unsuitable for certification. In fact, the Second Circuit has made clear that issues that are "difficult and of

first impression" do qualify for immediate review under Section 1292(b). *Klinghoffer*, 921 F.2d at 25. *See also Weber v. United States*, 484 F.3d 154, 159 (2d Cir. 2007) ("Congress also sought to assure the prompt resolution of knotty legal problems."). And in any event, many additional factors beyond the novelty of the issue favor an immediate appeal.

On the merits, there is at least a substantial ground for difference of opinion about the Court's holding that the duty it imposed on NASDAQ is limited to a "settled and particularized" class of potential plaintiffs. Even assuming that the group of investors who entered orders for Facebook stock on May 18, 2012, is "definable" in hindsight, the Court's ruling established a duty that may be argued to run to *anyone* who places *any* order at *any* time in any of thousands of listed securities. Nor does plaintiffs' invocation of cases relating to "catastrophic consequences" cabin the duty, as the Court's ruling and its analysis in support of that ruling admit of no such limitation.

Plaintiffs emphasize that the Court determined that NASDAQ has a relationship to class members "so close as to approach privity," but the invocation of that concept itself is disputable. The case cited by the Court for the "approaching privity" standard—*Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*, Civ. No. 08-7508, 2013 WL 837536, at *3 (S.D.N.Y. Mar. 6, 2013)—involved negligent misrepresentation, a cause of action for which New York courts have developed special rules. *See, e.g.*, *EED Holdings v. Palmer Johnson Acq. Corp.*, 387 F. Supp. 2d 265, 280-81 (S.D.N.Y. 2004) (Sweet, J.). Indeed, courts consider "a claim for negligent misrepresentation under a 'functional equivalent of privity' theory" to be "the *sole exception* to the economic loss doctrine." *Travelers Cas. & Sur. Co. v. Dormitory Auth.*, 734 F. Supp. 2d 368, 378 (S.D.N.Y. 2010) (emphasis added); *see also id.* at 379-80. Accordingly, New York courts have declined to apply the "approaching privity" standard outside the negligent

misrepresentation context. *See, e.g., id.* at 382 & n.21, 388. Plaintiffs here do not assert a negligent misrepresentation claim, nor could they do so without triggering the preemptive effect of the Securities Litigation Uniform Standards Act. *See Romano v. Kazacos*, 609 F.3d 512 (2d Cir. 2010). The "approaching privity" standard therefore does not apply.

Moreover, even under that standard, plaintiffs' claim is wanting. A plaintiff seeking to invoke the "approaching privity" exception to the economic loss doctrine "faces a heavy burden" to establish three factors that are "applied strictly." *Id*. at 380-81 (internal quotation marks omitted). Those factors include "reliance by a known party" and conduct "linking" the defendant to the plaintiff. *Id*. at 380. As NASDAQ had no knowledge of or direct relationship with investors, plaintiffs' allegations fail to meet those requirements. *See Sec. Investor Protection Corp. v. BDO Seidman, L.L.P.*, 746 N.E.2d 1042, 1048 (N.Y. 2001) (determining that there was insufficient "linking" where the parties' relationship did not put the plaintiff in a position "significantly different from anyone else in the . . . investing public"). Plaintiffs' reliance on *Landon v. Kroll Lab. Specialists, Inc.*, 22 N.Y.3d 1 (N.Y. 2013), is misplaced. In that case, the New York Court of Appeals held only that the plaintiff's allegation of negligent drug testing could proceed where his claimed injuries were loss of his freedom and resulting emotional and psychological harm. *Id.* at 6-8. The Court of Appeals did not address any claim for economic damages and did not even mention the economic loss doctrine.

Similarly, plaintiffs' contention that *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8 (2d Cir. 2000), rejected the logic of the economic loss doctrine is incorrect. That case addressed whether the owners of power plants who were in contractual privity with an engineering firm could bring a tort claim against the firm in addition to breach of contract claims. *Id.* at 11-12. In answering that question in the affirmative, the Second Circuit held only

that the economic loss doctrine permits recovery "in the limited class of cases involving liability for the violation of a professional duty." *Id.* at 18. Nothing in *Hydro Investors* suggests approval of a negligence claim outside the context of professional malpractice or approval of a negligence claim seeking to recover economic losses on behalf of plaintiffs who have no direct contractual relationship with the defendant. More recently, the Second Circuit has reiterated that "[u]nder New York law, it is clear that a plaintiff may recover for 'financial losses' caused by a defendant's negligence only if he has also 'suffered personal injury or property damage,' a phrase that we understand to refer to tangible property damage." *PAB Aviation, Inc. v. United States*, 169 Fed. Appx. 61, 62 (2d Cir. 2006) (quoting *532 Madison Ave.*, 750 N.E.2d at 291-92).

Finally, the policy underlying the economic loss doctrine—avoiding unlimited and potentially crushing liability for parties who provide services that could foreseeably injure members of the public—supports certification. Exposing exchanges to additional and amorphous potential liability for negligence has important potential consequences for the nation's economic system. The Second Circuit should be given the opportunity to review the Court's holding at this stage of the litigation if it so chooses.

### 2. *Affiliated Ute* Presumption

There is also a substantial ground for difference of opinion as to the applicability of the *Affiliated Ute* presumption here. Plaintiffs cannot distinguish *Wilson v. Comtech Telecomm. Corp.*, 648 F.2d 88 (2d Cir. 1981). Contrary to plaintiffs' contention, the Second Circuit's conclusion in *Wilson* was not that the defendant had successfully rebutted the *Affiliated Ute* presumption; the court held that the presumption did not apply, on the ground that the plaintiff's claim—like plaintiffs' claim here—rested on an alleged duty to update prior affirmative statements. The court stated that, "[i]f we assume, as [the plaintiff] argues, that appellees had a duty to correct the projections once new information made them inaccurate, then,

perforce, those statements were still current . . . and [the plaintiff] must demonstrate that he relied on them." *Wilson*, 648 F.2d at 93-94.[5] Because the plaintiff failed to adduce evidence of actual reliance, his claim failed. Here, where plaintiffs do not even allege actual reliance, *Wilson* dooms their claim.

Other Second Circuit cases likewise make clear that the *Affiliated Ute* presumption applies only in cases of "total non-disclosure," and thus that the complaint's allegations of many allegedly false or misleading statements rule out applying the presumption here. (*See* Mem. at 7 (citing cases).) Confronted with those cases, plaintiffs simply have nothing to say. Tellingly, the only Second Circuit case cited by plaintiffs on this point is *Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454 (2d Cir. 2013), in which the Second Circuit *reversed* a district court for improperly invoking the *Affiliated Ute* presumption. *Levitt* certainly does not support plaintiffs' position.

At best, plaintiffs identify two district court opinions from within this circuit (*In re Beacon Assocs. Litig.*, 745 F.Supp.2d 386 (S.D.N.Y. 2010) and *In re Parmalat Sec. Litig.*, MDL No. 14-1653, 2008 WL 3895539 (S.D.N.Y. Aug. 21, 2008)) that they argue support the Court's decision. Defendants submit that if these cases are read to support the ruling here, they cannot be squared with Second Circuit precedent. Nor are they consistent with the holdings of most other courts, which agree with the Second Circuit that the presumption may be invoked only where "the defendant has failed to disclose *any information whatsoever* relating to material facts about which the defendant has a duty to the plaintiff to disclose." *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1119 (5th Cir. 1988) (emphasis added), *vacated on other grounds sub nom. Fryar*

---

[5] Although the *Wilson* court referred to a "duty to correct," the duty at issue—to correct statements that were accurate when made but later became misleading—is now known as the "duty to update." *In re IBM Corp. Sec. Litig.*, 163 F.3d 102, 109 (2d Cir. 1998).

*v. Abell*, 492 U.S. 914 (1988). *See also, e.g.*, *Joseph v. Wiles*, 223 F.3d 1155, 1162-64 (10th Cir. 2000). Even assuming that a small minority of courts arguably have adopted a broader reading of *Affiliated Ute*, *see* THOMAS LEE HAZEN, TREATISE ON THE LAW OF SECURITIES REGULATION § 12.10[4], at 124 & July 2013 Pocket Part at 33 (6th ed. 2009), any such variation from the majority view only supports the case for certification, because it illustrates the existence of a substantial ground for a difference of opinion.

### III.   CONCLUSION

For the reasons stated above and in defendants' initial memorandum, the Court should grant the motion for certification and amend its Opinion and Order of December 16, 2013, to include a certification for interlocutory appeal under Section 1292(b).

Date: January 30, 2014

Respectfully submitted,

/s/ Stephen J. Kastenberg
William A. Slaughter (PA Bar No. 30637)*
Stephen J. Kastenberg (PA Bar No. 70919)*
Paul Lantieri III (PA Bar No. 88160)*
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: 215.665.8500
Fax: 215.864.8999
slaughter@ballardspahr.com
kastenberg@ballardspahr.com
lantierip@ballardspahr.com

*Attorneys for Defendants
The NASDAQ OMX Group, Inc., The
NASDAQ Stock Market LLC, Robert
Greifeld, and Anna M. Ewing*

*Admitted pro hac vice