UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

IN RE FACEBOOK, INC., IPO SECURITIES AND
DERIVATIVE LITIGATION,

OPINION & ORDER
MDL No. 12-2389

------------------------------------X


A P P E A R A N C E S:


        Attorneys for the NASDAQ Securities Actions
        ENTWISTLE & CAPPUCCI LLP
        280 Park Avenue
        26th Floor West
        New York, NY 10017
        By:  Vincent R. Cappucci, Esq.
             Jordan A. Cortez, Esq.
             Evan T. Raciti, Esq.
             Marc X. LoPresti, Esq.


        Attorneys for the NASDAQ Negligence Parties
        FINKELSTEIN THOMPSON LLP
        1050 30th Street NW
        Washington, DC 20007
        By:  Michael G. McLellan, Esq.
             Douglas G. Thompson, Jr., Esq.

        LOVELL STEWART HALEBIAN JACOBSON LLP
        61 Broadway Suite 501
        New York, NY 10006
        By:  Christopher Lovell, Esq.
             Victor E. Stewart, Esq.

        ZAMANSKY & ASSOCIATES LLC
        50 Broadway, 32nd Floor
        New York, NY 10004
        By:  Jacob H. Zamansky, Esq.
             Edward H. Glenn, Jr., Esq.
             Kevin D. Galbraith, Esq.

GOLDBERG, FINNEGAN & MESTER, LLC
1010 Wayne Avenue, Suite 950
Silver Spring, Maryland 20910
By:  Kevin I. Goldberg, Esq.

MILLER LAW LLC
115 South LaSalle Street, Suite 2910
Chicago, IL 60603
By:  Marvin A. Miller, Esq.
     Andrew Szot, Esq.

DITOMMASO LUBIN
17W 220 22nd Street, Suite 410
Oakbrook Terrace, IL 60181
By:  Vincent DiTommaso

GAINEY MCKENNA & EGLESTON
440 Park Avenue South, 5th Floor
New York, NY 10016
By:  Thomas J. McKenna, Esq.
     Gregory D. Egleston, Esq.

STAMELL & SCHAGER, LLP
One Liberty Plaza, 35/F
New York, NY 10006
By:  Richard J. Schager, Jr., Esq.
     Andrew R. Goldenberg, Esq.


Attorneys for NASDAQ Defendants
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
By:  William A. Slaughter, Esq.
     Paul Lantieri, III, Esq.
     Stephen J Kastenberg, Esq.

1

**Sweet, D.J.**

Pursuant to the transfer order from the United States Judicial Panel on Multidistrict Litigation (the "MDL Panel"), entered on October 4, 2012, 41 actions stemming from the May 18, 2012 initial public offering ("IPO") of Facebook, Inc. ("Facebook") are presently before this Court.

The instant motion relates to the class actions against the NASDAQ Stock Market LLC (the "Exchange"), its parent, the NASDAQ OMX Group, Inc. ("NASDAQ OMX," and collectively with the Exchange, "NASDAQ"), Robert Greifeld, NASDAQ OMX's Chief Executive Officer ("Greifeld"), and Anna M. Ewing, NASDAQ OMX's highest-ranking technology officer ("Ewing") (collectively, "Defendants").  Defendants move the Court to alter or amend the Opinion and Order entered on December 16, 2013 (the "December 16 Opinion"), which denied in part Defendant' motion to dismiss the complaint, to include a certification for interlocutory appeal under 28 U.S.C. § 1292(b).

For the reasons set forth below, Defendants' motion is denied.

2

## Prior Proceedings & Facts

Familiarity with the general background of this case and prior litigation between the parties is assumed and set forth in the December 16 Opinion. *In re Facebook, Inc., IPO Securities and Derivative Litigation*, 2013 WL 6621024 (S.D.N.Y. Dec. 16, 2013). Certain facts and allegations are repeated in part as relevant to the issues presented by the instant motion.

On June 25, 2013, the NASDAQ Claimant Group moved this Court for an order partially lifting the discovery stay imposed under Section 21D(b)(3)(B) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(3)(B) (the "PSLRA"), to obtain limited discovery consisting of documents and testimony that NASDAQ, and any of their affiliates, parents, subsidiaries, agents and/or employees, provided to the SEC in connection with the SEC's investigation into the May 18, 2012 initial public offering ("IPO") of Facebook, and for leave to amend the Consolidated Amended Class Action Complaint ("CAC"), incorporating relevant facts adduced from the requested discovery materials or alternatively from the SEC Order.

On July 2, 2013, Defendants filed a motion to dismiss

3

Plaintiffs' negligence and federal securities claims alleged in the CAC.  These motions were heard and marked fully submitted on October 3, 2013.

In the December 16 Opinion, Defendants' motion to dismiss was denied in part and granted in part; Plaintiffs' request to lift the PSLRA discovery stay was rendered moot by the Opinion; and Plaintiffs' motion to amend was granted in part and denied in part.

On December 30, 2013, Defendants advised the Court of their intention to appeal the Court's Order entered December 16, 2013, pursuant to 28 U.S.C. § 1291, insofar as that Order addressed NASDAQ's immunity from the claims asserted by Plaintiffs.  As noted in the December 16 Opinion, the immunity rulings are appealable as of right under the collateral order doctrine and divest the Court of jurisdiction while the appeal is pending.  *See, e.g.*, *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Bradley v. Jusino*, 2009 WL 403891 (S.D.N.Y. May 18, 2009).  Defendants simultaneously advised the Court of their intention to file a motion pursuant to 28 U.S.C. § 1292(b) to certify other aspects of the Court's December 16, 2013 decision for interlocutory appeal.  To avoid any possibly uncertainty over the Court's ability to hear the 28 U.S.C. § 1292(b) motion,

Defendants requested an extension of time to file the 28 U.S.C. § 1291 till February 14, 2013 so that the 28 U.S.C. § 1292(b) motion could be considered.

Defendants filed their 28 U.S.C. § 1292(b) motion on December 30, 2013.  This motion was heard and marked fully submitted on February 3, 2013.

## I. The Applicable Standard

Section 1292(b) provides for certification of an order for interlocutory appeal when the court determines: "(1) that such order involves a controlling question of law (2) as to which there is a substantial ground for difference of opinion and (3) that an immediate appeal from [that] order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  "These three prerequisites create a significant hurdle to certification, and the barrier is only elevated by the mandate that section 1292(b) be 'strictly limited' because 'only exception circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *McNeil v. Aguilos*, 820 F. Supp. 77, 79 (S.D.N.Y. 1993) (Sotomayor, J.).  "[E]ven

5

where the three legislative criteria of section § 1292(b) appear to be met, district courts retain 'unfettered discretion to deny certification' if other factors counsel against it." *Transp. Workers Union of Am., Local 100 v. NYC Transit Auth.*, 358 F. Supp. 2d 347, 351 (S.D.N.Y. 2005) (internal citations omitted). The proponents of an interlocutory appeal have the burden of showing that all three of the substantive criteria are met. *See Casey v. Long Island R.R.*, 406 F.3d 142, 146 (2d Cir. 2005).

The Second Circuit has held that "interlocutory appeals are strongly disfavored in federal practice," and movants cannot invoke the appellate process "as a vehicle to provide early review [even] of difficult rulings in hard cases," *In re Adelphia Commc'ns Corp.*, 2008 WL 361082, at *1 (S.D.N.Y. Feb. 7, 2008). District Courts must accordingly "exercise great care in making a § 1292(b) certification," *Wausau Bus. Ins. Co.*, 151 F.Supp.2d at 491-92 (citing *Westwood Pharm., Inc. v. Nat'l Fuel Gas Dist. Corp.,* 964 F.2d 85, 89 (2d Cir.1992)), ensuring that § 1292(b) "be strictly construed." *Wausau Bus. Ins. Co. v. Turner Constr. Co.,* 151 F.Supp.2d 488, 491 (S.D.N.Y. 2001) (internal quotations marks and citations omitted); *see also In re Ambac Fin. Grp. Sec. Litig.*, 693 F. Supp. 2d 241, 282 (S.D.N.Y. 2010) (certification of a non-final order pursuant to 28 U.S.C. § 1292(b) is an extraordinary procedure only granted

6

in "exceptional circumstances."); *Lidle v. Cirrus Design Corp.*,
2010 WL 4345733, at *1 (S.D.N.Y. Oct. 29, 2010) ("[T]he power to
grant an interlocutory appeal must be strictly limited to the
precise conditions stated in the law. . . . [o]nly exceptional
circumstances will justify a departure from the basic policy of
postponing appellate review until after the entry of a final
judgment.").

## II.  Defendants' Fail to Satisfy the High Threshold Required for Certification of an Order for Interlocutory Appeal

Defendants maintain that a certification for
interlocutory appeal is appropriate with respect to two issues
in the December 16 Opinion: (1) whether the economic loss
doctrine bars Plaintiffs' common law negligence claims; and (2)
whether Plaintiffs' federal securities claim is entitled to the
presumption of reliance established in *Affiliated Ute Citizens
of Utah v. United States*, 406 U.S. 129 (1972).

As an initial matter, this is not an "exceptional"
case.  The Second Circuit regularly denies interlocutory appeals
at such preliminary stages where, as here, the appeal "at most
could lead only to a remand for repleading, with possibilities
of further interlocutory appeals thereafter.'"  *In re Manhattan
Inv. Fund Ltd.*, 288 B.R. 52, 56 (S.D.N.Y. 2002); *see also*

7

*Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*, 381 F.3d 717, 728 (7th Cir. 2004) (interlocutory appeal is not intended as a "second bite at the apple" that allows the moving party to reargue issues that the court has already addressed and rejected).  Further, though a motion for certification may not be used to simply "repeat arguments made in a motion to dismiss," Defendants' motion consists entirely of assertions and precedent unsuccessfully raised in connection with their initial briefs.  *S.E.C. v. Gruss*, 2012 WL 3306166, at *4 (S.D.N.Y. Aug. 13, 2012).  Regardless, Defendants fail to satisfy the required elements under § 1292(b).

> A. *Defendants Fail to Present "Exceptional Circumstances" Necessary to Grant Interlocutory Appeal or Show that an Immediate Appeal Would Materially Advance the Ultimate Termination of the Litigation*

Although advancement of the litigation is the third of the statutory criteria, "[c]ourts place particular weight on . . . whether immediate appeal will materially advance the ultimate termination of the litigation."  *Transp. Workers*, 385 F. Supp. 2d at 350; *see also Lerner v. Millenco, L.P.*, 23 F.Supp.2d 345, 347 (S.D.N.Y. 1998) ("The Court of Appeals has emphasized the importance of the third consideration in determining the

8

propriety of an interlocutory appeal."); *Koehler,* 101 F.3d at
865-66 ("The use of § 1292(b) is reserved for those cases where
an intermediate appeal may avoid protracted litigation.").  It
is also under this criterion that Defendants' motion most
clearly falters.

Defendants contend that "there can be no serious doubt
that resolution of the questions presented here may materially
advance the ultimate termination of the litigation" because if
both claims were dismissed on appeal the litigation would end,
and because their § 1291 immunity appeal as of right means that
the § 1292(b) appeal will not cause any additional delays.
(Def. Br. at 8.)

As an initial matter, Defendants are incorrect that a
dismissal on appeal on both issues would end the multidistrict
litigation.  Plaintiffs have made their intention and been
granted leave to amend the CAC to reflect the findings of the
SEC opinion and the underlying evidence supporting those
findings.  Defendants' § 1292(b) motion could, at most, "lead
only to a remand for repleading, with possibilities of further
interlocutory appeals thereafter.'"  *In re Manhattan Inv. Fund
Ltd.*, 288 B.R. 52, 56 (S.D.N.Y. 2002) (citing *Gottesman v.
General Motors Corp.,* 268 F.2d 194, 196 (2d Cir.1959)).

9

In any event, obtaining reversal of an opinion denying a motion to dismiss would almost *always* result in dismissal. If this were sufficient to justify interlocutory review, then such orders would be commonplace.  Instead, as noted, such review is strictly reserved for exceptional cases, and is especially rare in preliminary stages of the litigation.  This is particularly true for interlocutory review of a motion to dismiss in a securities class action; the Second Circuit has routinely denied § 1292(b) motions at the preliminary stages of a litigation and only four times in the last thirteen years entertained a Section 1292(b) appeal from an order denying a motion to dismiss in a federal securities class action[1].

---

[1] The four times the Second Circuit has granted review, it has almost exclusively been limited to threshold issues such as jurisdiction, standing and statues of limitations: *W.R. Huff. Asset Mgmt. Co. v. Deloitte & Touche*, LLP, 549 F.3d 100 (2d Cir. 2008) (appeal of an investment adviser's standing to assert claims on behalf of clients); *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190 (2d Cir. 2008) (appeal concerning pleading of scienter against a corporate defendant); *Litzler v. CC Invs., L.D.C.*, 362 F.3d 203 (2d Cir. 2004) (appeal concerning the statute of limitations under Section 16 of the Securities Exchange Act of 1934); *Fed Hous. Fin. Agency v. UBS Americas Inc.*, 712 F.3d 136 (2d Cir. 2013) (reviewing the Federal Housing Finance Agency's standing to bring claims on behalf of Fannie Mae and Freddie Mac and the timeliness of its claims). Similarly, in *In re Lloyd's American Trust Fund Litigation*, 1997 WL 458739, at *6, (S.D.N.Y. Aug. 12, 1997), this Court held that although as "a general matter, rulings on the sufficiency of pleadings are not appropriate for interlocutory review, . . . [o]rders involving enforcement of a forum selection clause have been held to present controlling questions of law that are the proper subject of certification for appeal." *Id.* (citing *Gottesman*, 268 F.2d at 196).  Because in that case "reversal of the opinion as to the enforceability of the forum selection clauses would result in dismissal of this action in favor of the English forum," interlocutory appeal was determined to be appropriate.  These cases are distinguishable from the instant motion where both challenged issues by Defendants pertain to substantive matters based on an undeveloped record, not on threshold matters.

Focusing on the "the institutional efficiency" of the federal court system, as the "the chief concern[] underlying Section 1292(b)," *SEC v. Credit Bancorp, Ltd.,* 103 F.Supp.2d 223, 227 (S.D.N.Y. 2000), allowing interlocutory review on an undeveloped record at the motion to dismiss stage of a complex multidistrict class action would serve only to impede institutional efficiency by "prolong[ing] judicial proceedings, add[ing] delay and expense to litigants, burden[ing] appellate courts, and present[ing] issues for decisions on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions." *In re World Trade Ctr. Disaster Site Litig.,* 469 F. Supp. 2d 134, 144 (S.D.N.Y. 2007) (quoting *Koehler v. Bank of Bermuda Ltd.,* 101 F.3d 863, 865-66 (2d Cir. 1996)); *see also In re Automotive Parts Antitrust Litigation,* No. 12-md-02311, 2013 WL 4784682, at *4 (E. D. Mich. Sept. 06, 2013) ("Moreover, the Court recognizes that judicial economy interests weigh against an interlocutory appeal. This multi-district litigation involves numerous other Defendants and allegations of price-fixing of numerous automotive component parts. The Court finds that affording the appellate court the opportunity to address all of the issues at one time at the conclusion of the litigation will facilitate a speedier resolution of this matter than reviewing a portion of the

11

litigation at this time."); *SEC v. Gruss*, 2012 WL 3306166, at *2
(S.D.N.Y. Aug. 13, 2012) ("It does not normally advance the
interests of sound judicial administration or efficiency to have
piecemeal appeals that require two (or more) three-judge panels
to familiarize themselves with a given case, instead of having
the trial judge, who sits alone and is intimately familiar with
the whole case, revisit a portion of the case if he or she has
erred in part and that portion is overturned following the
adjudication of the whole case."); *cf. Trans. Workers*, 385 F.
Supp. 2d at 350 (allowing interlocutory appeal on an issue of
first impression where the court "heard evidence and issued a
final decision, on a full factual record").   In contrast,
denying certification at such early stages avoids needless and
unnecessary delay and expense, while a factually complete record
is fully developed. *See, e.g., Mills v. Everest Reinsurance Co.*,
771 F. Supp. 2d 20, 273 ("Courts have frowned upon allowing an
interlocutory appeal of a denial of summary judgment. Instead,
courts prefer to let the trial resolve the outstanding
issues."); *Maryland Cas. Co. v. W.R. Grace & Co.*, 128 F.3d 794,
797-98 (2d Cir. 1997) (dismissing interlocutory appeal because
trial would resolve many outstanding issues); *Parkinson v. April
Industries, Inc.*, 520 F.2d 650, 654 & n. 3 (2d Cir. 1975)
("[T]rial judges are constantly confronted with interlocutory
decisions, which, if erroneous, may create unnecessary and time-

12

consuming consequences. . . . For example, an order denying a
motion for summary judgment . . . [is] not immediately
appealable even though the entry of an erroneous order may
require additional expense and effort on the part of both
litigants and the district court.").

Further, in this case, because both the negligence and
federal securities claims allege similar facts and arise out of
the same underlying factual event, discovery will significantly
overlap.  Thus, if either of the two claims is not fully
dismissed on appeal, the litigation will continue to advance in
substantially the same manner as if the interlocutory appeal had
never occurred and will not be affected in either complexity or
scope.  *See Westwood Pharms. V. Nat'l Fuel Gas Distrib.*, 964
F.2d 85, 88 (2d Cir. 1992) (cautioning against the certification
of questions in cases where "many of the same factual issues . .
. would still have to be litigated"); *Isra Fruit Ltd.*, 804 F.2d
at 26 (where two issues are "closely related," even if one "were
dismissed at this stage in the litigation, there is scant basis
for believing that trial of the latter claims would be concluded
with any appreciable saving of time."); *Sussman v. I.C. System,
Inc.,* 2013 WL 5863664, at *3 (S.D.N.Y. Oct. 30, 2013) (despite
parties disagreeing on whether discovery will overlap, court
held that in light of the overlapping factual allegations

13

underlying plaintiff's [two claims], discovery as to the claims is likely to overlap). As the Second Circuit has noted, it is "quite unlikely" that an immediate appeal will materially advance the termination of the litigation where discovery as to the challenged claims "appears likely to overlap to a considerable extent." *Isra Fruit Ltd.,* 804 F.2d at 25-26. Instead, Plaintiffs "may well benefit from the economies of coordinated discovery and other pretrial proceedings conducted in the multidistrict class action." *In re NASDAQ Market Makers Antitrust Litigation,* 938 F. Supp. 232, 234-35 (S.D.N.Y. 1996).

Defendants' second contention, that because their § 1291 motion stays the litigation interlocutory appeal would not *delay* the proceedings, similarly misconstrues the statute's third prong. It is not sufficient that an interlocutory appeal will not impede the litigation, "[a]n immediate appeal is considered to advance the ultimate termination of the litigation if that 'appeal promises to *advance* the time for trial or to *shorten* the time required for trial.'" *Trans. Workers*, 385 F. Supp. 2d at 350 (quoting *In re Oxford Health Plans, Inc.,* 182 F.R.D. 51 (S.D.N.Y. 1998) (quoting 16 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3930 p. 432 (2d ed. 1996)) (emphasis added); *see also Isra Fruit Ltd. v. Agrexco Agric. Export Co.*, 804 F.2d 24, 26 (2d Cir. 1986) (denying

14

certification where determination on appeal would result in "no appreciable saving of time"). Defendants do not explain how their § 1291 motion would advance or further the litigation with the addition of the interlocutory appeal, or cite any authority for such a proposition[2]. To allow Defendants' blanket contention that because a § 1291 motion exists, interlocutory appeal is automatically appropriate "would allow the qualified immunity exception to the final judgment rule to swallow the rule itself." *Small v. City of New York*, 304 F. Supp. 2d 401, 403 (E.D.N.Y. 2004).

In sum, a piecemeal appeal on issues that could later be corrected via amendment serves to impede judicial efficiency, rather than advance it, and runs counter to the underlying purpose of Section 1292(b). *Consol. Edison, Inc. v. Ne. Util.*, 318 F. Supp. 2d 181, 196 (S.D.N.Y. 2004); *see also Koehler,* 101 F.3d at 865 ("it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals."). To avoid such piecemeal litigation and delay, institutional efficiency will be best served here by ensuring development of the case through a full factual on which any appellate rulings might later be based. Accordingly, Defendants' request for certification fails

---

[2] Defendants do not cite a single case where a district court certified other dispositive matters under Section 1292(b) when faced with a concurrent appeal of an immunity determination

to meet the stringent "burden of persuading the court . . . that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *DiCola v. Am. Steamship Owners Mut. Protection & Indem. Assoc., Inc. (In re Prudential Lines, Inc.),* 59 F.3d 327, 332 (2d Cir. 1995) (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 475, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)) (internal quotation marks omitted).

As § 1292(b) requires that each of the three criteria be satisfied, denial of the motion would be appropriate even if the second and third criteria were not met. *See German,* 896 F.Supp. at 1398. However, certain observations and assessments regarding the remaining two criteria will be made in turn.

B. *The December 16 Order does not Involve Controlling Questions of Law*

Under § 1292(b)'s first criterion, an issue is "'controlling' if reversal of the district court's order would terminate the action,", or if the certified issue has precedential value for a large number of cases. *Klinghoffer v. S.N.C. Achille Lauro,* 921 F.2d 21, 24 (2d Cir. 1990) (citing J. Moore & B. Ward, 9 Moore's Federal Practice ¶ 110.22[2], at 268 (1990) (collecting cases)); *see also In re Oxford Health Plans,*

16

*Inc.,* 182 F.R.D. 51, 54-55 (S.D.N.Y. 1998).

First, reversal even on both issues would not
terminate the action. "Although technically the question of
whether there is a controlling issue of law is distinct from the
question of whether certification would materially advance the
ultimate termination of the litigation, in practice the two
questions are closely connected." *SEC v. Credit Bancorp, Ltd.,*
103 F.Supp.2d 223, 227 (S.D.N.Y. 2000) (citing *Duplan Corp. v.
Slaner,* 591 F.2d 139, 148 n. 11 (2d Cir. 1978)); *Public Interest
Research Group of New Jersey, Inc. v. Hercules, Inc.,* 830
F.Supp. 1549, 1557 (D.N.J. 1993); Charles A. Wright, Arthur R.
Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3930
(1996)). As previously discussed relating to the third
criterion, Plaintiffs will still amend the CAC even upon
dismissal, and if either claim survives on appeal, given the
overlap in discovery of the two issues, the proceedings will not
be materially affected in complexity or scope. *See Pereira v.
Cogan,* 265 B.R. 32, 34 (S.D.N.Y. 2001) (noting that
certification is "inappropriate when the 'remaining claims in
the lawsuit [are] closely related, and no appreciable savings in
time would be realized by an appeal'") (quoting *Isra Fruit Ltd.
v. Agrexco Agric. Export Co.,* 804 F.2d 24, 25-26 (2d Cir.
1986)); cf. *ABN Amro Verzekeringen BV v. Geologistics Ams.,*

17

*Inc.,* Nos. 01 Civ. 5661(DC), 02 Civ. 1238(DC), 2003 WL 21543529, at *3 (S.D.N.Y. Jul. 9, 2003) (holding that certification would speed the ultimate resolution of the matter where plaintiffs represented to the court that they would not pursue any of their claims if the Second Circuit affirmed the court's decision).

Second, Defendants maintain that both issues have significant precedential value, given the abundance of securities class actions and the importance to defendants of the protection of the economic loss doctrine and the narrowness of the presumption of reliance. *See, e.g., 532 Madison Ave. Gourmey Foods, Inc. v. Finlandia Ctr., Inc.* , 750 N.E.2d 1097, 1101 (N.Y. 2001) ("[i]n drawing laws defining actionable duty, courts must . . . always be mindful of the consequential, and precedential, effects of their decisions."); *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2185 (2011) (noting the presumption of reliance as the foundation for securities class actions).

Precedential value is not "per se sufficient to meet the 'controlling issue of law' standard." *SEC v. Credit Bancorp, Ltd.,* 103 F.Supp.2d 223, 227 (S.D.N.Y. 2000) (citing *Klinghoffer,* 921 F.2d at 24 (observing that precedential value is factor to be taken into account but is not requirement);

18

*Oxford,* 182 F.R.D. at 54 (observing that some district courts have held that precedential value alone renders issue "controlling" but disagreeing with that view and holding it to be only a factor)). As the Court explained in *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990), cited by Defendants, though the "impact that an appeal will have on other cases is a factor" that may be considered, it is not and need not be the decisive factor. *Id.* (noting that the legislative history of Section 1292(b) "clearly shows that [the court's discretion in permitting interlocutory appeals] encompasses denial of a properly certified appeal—which by definition includes a controlling question of law—for any reason, including docket congestion" regardless of precedential impact).

Here, even considering Defendants' assertions, the allegation that "millions of investors" who "suffer losses daily" would likely add exchanges as defendants based on the December 16 Opinion is unsupported. (Defendant Memorandum of Law, "Def. Br."; at 3-4.) "[A]ssuming arguendo that [Defendants'] characterization of this Court's ruling were correct, it is rather speculative to say that the ruling has precedential value for a large number of cases when those cases have yet to be brought." *Primavera Familienstifung v.* Askin, 139 F. Supp. 2d 567, 573 (S.D.N.Y. 2001). Taken together with

19

the concerns for institutional efficiency, the potential
precedential impact is "insufficient to warrant 1292(b)
certification in light of the circumstances of this case."   SEC,
103 F.Supp.2d at 227.

Independently, relating to the economic loss doctrine,
Section 1292(b)'s first criterion requires a "pure question of
law that the reviewing court could decide quickly and cleanly
without having to study the record."   *In re WorldCom, Inc.*, 2003
WL 21498904, at *10 (S.D.N.Y. June 30, 2003) (internal citations
omitted).

The determination that the economic loss doctrine does
not bar Plaintiffs' negligence claims involves questions of fact
inappropriate for interlocutory appeal.   As the New York Court
of Appeals explains, "[a]lthough the existence of a duty is an
issue of law for the courts . . . once the nature of the duty
has been determined as a matter of law, whether a particular
defendant owes a duty to a particular plaintiff is a question of
fact."   *Kimmel v. Schaefer*, 675 N.E.2d 450, 453 (N.Y. 1996).
The December 16 Opinion applied the legal principle of when
defendants owe a duty to plaintiffs to the facts presented in
the CAC, and held that such a duty existed based on the
existence of a relationship "so close as to approach that of

20

privity," as well as the foreseeable catastrophic consequences involved.   (December 16 Opinion at 64); *see also Travelers Cas. & Sur. Co. v. Dormitory Auth. State of N.Y.*, 734 F. Supp. 2d 368, 378-80 (S.D.N.Y. 2010); *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 536 (determinations of whether "special relationships" exist are "generally not susceptible to resolution at the pleadings stage."); *cf. J&R Elecs. Inc. v. Bus. & Decision N. Am., Inc.*, 2013 WL 5203134, at *7 (S.D.N.Y. Sept. 16, 2013) ("With a full factual record, the issue of a special relationship may be ripe at the summary judgment stage."). Interlocutory appeal cannot be used for securing early resolution of disputes concerning whether the trial court properly applied the law to the facts. *Abortion Rights Mobilization, Inc. v. Regan*, 552 F.Supp. 364, 366 (S.D.N.Y. 1982). Whether such a relationship will ultimately be established will depend on the development of the factual record, subject to further amendment, and highlights why § 1292(b) motions are "a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Koehler,* 101 F.3d at 865; *see also Link v. Mercedes-Benz of North America, Inc.,* 550 F.2d 860, 863 (3d Cir. 1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

As such, Defendants fail to establish the existence of

21

a controlling question of law.

> C. *The December 16 Opinion's Application of the Economic Loss Doctrine and the Affiliated Ute Presumption Presents no "Substantial Grounds for a Difference of Opinion"*

To adequately plead the second prong of Section 1292(b), the existence of substantial grounds for a difference of opinion, a party seeking certification bears the burden of showing "genuine doubt as to the correct applicable legal standard." *In re WorldCom, Inc.*, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003).

With respect to the economic loss doctrine, Defendants contend that the second criterion is met because (1) there are substantial grounds for disagreeing with the Court's conclusion that the economic loss doctrine does not apply here, and (2) the issue is one of first impression.  (Def. Br. at 6.)

First, Defendants assert that the December 16 Opinion incorrectly created a duty to Plaintiffs, despite contradicting New York law holding the need to "limit the legal consequences of wrongs to a controllable degree," *see 532 Madison Gourmey Foods*, 750 N.E. 2d at 1101-03, and that *Sommer v. Fed Signal Corp.*, 79 N.Y.2d 540, 553 (1992) and corresponding precedent,

22

upon which the December 16 Opinion relies, only applies to physical damage and not economic harm. *Id.*

Defendants misconstrue the Court's holding, as well as the applicable law.

Under New York law, a plaintiff may recover economic damages in tort where: (1) a focused duty flows to a definable and manageable class comprised of individuals with a relationship so close as to approach that of privity, *see Landon v. Kroll Lab. Specialists, Inc.* (*Landon* I)[3], 91 A.D.3d 79, 86 (N.Y. App. Div. 2011), *aff'd*, 22 N.Y.3d 1 (2013); or where (2) "the nature of the performance called for is affected with a significant public interest and 'failure to perform the service carefully and competently can have catastrophic consequences.'"

---

[3] Defendants maintain that reliance on *Landon* I is misplaced, because there the court "held only that the plaintiff's allegation of negligent drug testing could proceed where his claimed injuries were loss of his freedom and resulting emotional and psychological harm." (Defendant Reply Brief, "Reply Br."; at 8.) However, *Landon* I specifically explicates the standard for duty:

> "A tort obligation is a duty imposed by law to avoid causing injury to others" *New York Univ. v Continental Ins. Co.*, 87 NY2d at 316. Accordingly, "the liability to make reparation for an injury rests not upon the consideration of any reciprocal obligation, but upon an original moral duty enjoined upon every person so to conduct himself [or herself], or exercise his [or her] own rights as not to injure another" *Rich v New York Cent. & Hudson Riv. R.R. Co.*, 87 NY 382, 398 (1882) ; *see New York Univ. v. Continental Ins. Co.*, 87 NY2d at 316; *Havas v. Victory Paper Stock Co.*, 49 NY2d 381, 386 (1980); *see also Heaven v. Pender*, 11 QBD 503, 509 (1883).

*Landon* I at 83. That the court in *Landon* I applied the standard to a different set of facts does not make reliance on the standard articulated "misplaced".

23

*Trustees of Columbia Univ. v. Gwathmey Siegel & Assocs.*
*Architects*, 601 N.Y.S.2d 116, 119 (App. Div. 1993) (citing
*Sommer v. Fed Signal Corp.*, 79 N.Y.2d 540, 553 (1992)).

Applying this established law, the December 16 Opinion
held that because NASDAQ's relationship with Class Members was
"so close as to approach that of privity," Defendants possessed
a "focused duty" to protect Plaintiffs and the Class from the
foreseeable "catastrophic consequences" of NASDAQ's system
failures. (December 16 Opinion at 62-66.)

Creating a duty without a direct relationship or
contractual obligation is not, as Defendants seem to suggest,
unusual or exceptional[4]. New York precedent has often upheld
negligence claims "notwithstanding the absence of a contractual
relationship," for instance in cases where, as here, "the
contracting party, in failing to exercise reasonable care in the
performance of [its] duties, launche[s] a force or instrument of
harm." *Landon v. Kroll Lab. Specialists, Inc.*, (*Landon* II), 22
N.Y.3d 1 (2013); *see also Landon*, 91 A.D.3d at 86 ("The New York

---

[4] That NASDAQ requires its broker-dealers to be members of the exchange, with
a contractual membership, does not negate the ability for NASDAQ to ever
acquire a duty to members outside of the exchange. *See* Exchange Act Section
6(b), 15 U.S.C. § 78f(b) (2006). To hold as such would go against the basic
tenets of tort law. *See Rich v New York Cent. & Hudson Riv. R.R. Co.*, 87 NY
382, 398 (1882) ("the liability to make reparation for an injury rests not
upon the consideration of any reciprocal obligation, but upon an original
moral duty enjoined upon every person so to conduct himself [or herself], or
exercise his [or her] own rights as not to injure another").

Court of Appeals has [further] recognized the existence of tort duties in situations where the relationship between the parties was so close as to approach that of privity even where purely economic injuries have been alleged.").

Further, far from creating a "limitless" class "with no direct relationship", or reasoning that "NASDAQ's potential liability is not indeterminate because it can ascertain, after-the-fact, the identity of harmed investors," (Def. Br. at 5), the December 16 Opinion carefully identified a definable group of investors who entered orders with NASDAQ for Facebook stock on the day of the IPO and who suffered specific economic harm as a consequence of NASDQ's system failure in connection with the IPO. (December 16 Opinion at 64-66.) Though Defendants maintain that the "catastrophic consequences" analysis cannot be used to "cabin the duty" created by the December 16 Opinion, the Opinion specifically details such a limitation. The Opinion states that the duty was formed as a combination of the established relationship so close as to approach that of privity between NASDAQ and the investors, *as well as* the fact that a "failure of exchange systems to handle investor trade orders 'carefully and competently' has obvious 'catastrophic consequences.'" (December 16 Opinion at 66 (citing *Sommer*, 79 N.Y.2d at 552-53).) The Opinion elaborates that the duty was "[b]ased on

25

[established] precedent and the relationships involved, as well as the definite and foreseeable nature of Plaintiffs' losses by NASDAQ." (*Id.*)

Similarly, Defendants' contention that reliance on *Sommer* is inappropriate because subsequent cases have limited *Sommer*, and exceptions to the economic loss doctrine more generally, to physical harm is inapposite. The Second Circuit has relied upon *Sommer* in upholding negligence claims against financial entities and other parties in circumstances not involving physical damage, *see Banco Multiple*, 888 F. Supp. 2d at 358, and has otherwise upheld negligence claims in circumstances involving solely economic harm. *Id.* at 370-72 (citing cases); *see also Hecht v. Andover Assoc. Mgmt. Corp.*, 910 N.Y.S. 2d 405, 2010 WL 1254546 (N.Y. Sup. Ct. Mar. 12, 2010) (economic loss doctrine did not bar negligence claims against investment advisor recommending Bernie Madoff's firm as investment manager); *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 18 (2d Cir. 2000) (rejecting logic of courts have "have applied the economic loss rule to bar recovery where the only loss claimed is economic in nature" and extending to cases involving a "professional duty")[5]. As such, Defendants

---

[5] Defendants contend that *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 18 (2d Cir. 2000), does not suggest approval of a negligence claim outside the context of professional malpractice. (Reply Br. at 9.) To the

fail to show that the Court's analysis in any way conflicts with well-establish New York law pertaining to the economic loss doctrine.

Second, Defendants cite the December 16 Opinion's holding that "New York courts have not specifically addressed the applicability of the economic loss doctrine in the context of negligence claims asserted against a securities exchange by members of the investing public," to demonstrate that the issue is one of first impression. (December 16 Opinion at 63.) As discussed, that established law has not been applied to a unique set of facts does not create an issue of first impression; if it did, virtually any case might qualify. Though the economic loss doctrine has not been applied in this specific context, the law is clear: As the December 16 Opinion goes on to specify, "the Court of Appeals has instituted a [well-established] 'duty

---

contrary, *Hydro Investors, Inc.* extends situations in which the economic loss doctrine should not bar liability in order to ensure appropriate recovery:

> While we recognize that some cases have applied the economic loss rule to bar recovery where the only loss claimed is economic in nature, *see County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 62 (2d Cir. 1984), and still others have applied that rule to professional malpractice cases, *see Joseph v. David M. Schwarz/Architectural Servs., P.C.*, 957 F.Supp. 1334, 1339-40 (S.D.N.Y. 1997), the better course is to recognize that the rule allows such recovery in the limited class of cases involving liability for the violation of a professional duty. To hold otherwise would in effect bar recovery in many types of malpractice actions.

*Hydro Investors, Inc.*, 227 F.3d at 18.  Similarly here, the December 16 Opinion determined that a focused duty was owed resounding in the foreseeable consequences of NASDAQ's systems failures based on the facts presented.

analysis' to determine whether a 'plaintiff's negligence claims based on economic loss alone fall beyond the scope of the duty owed them by defendants.'" (*Id.* citing *Finlandia*, 750 N.E.2d at 1101; *see also King County v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288 (S.D.N.Y. 2012) (adopting the duty analysis, or whether defendant had a duty to protect the plaintiff, in determining the applicability of the economic loss doctrine).)

Even if the instance were one of first impression, Second Circuit precedent shows "that the fact that an issue presents a question of first impression is insufficient to render the issue grounds for substantial difference of opinion." *Sussman*, 2013 WL 5863664, at *3 (quoting *Sec. & Exchange Comm'n v. Gruss,* No. 11 Civ. 2420(RWS), 2012 WL 3306166, at *3 (S.D.N.Y. Aug.13, 2012) (citing *In re Flor,* 79 F.3d 281, 284 (2d Cir.1996))); *see also Williston v. Eggleston,* 410 F.Supp.2d 274, 277 (S.D.N.Y. 2006) (holding that "[s]imply because a question of law has not been authoritatively addressed" "by either the Supreme Court or the Second Circuit . . . does not make the question grounds for a substantial difference of opinion").

Ultimately, Defendants do not establish or even contend that New York law is unsettled on this issue.  Instead, repeating their same arguments from the motion to dismiss,

28

Defendants assert that the December 16 Opinion incorrectly applied the law to the specified facts creating an instance of "first impression" necessary for review. *See Sussman*, 2013 WL 5863664, at *3 ("A party that offers only arguments rejected on the initial motion does not meet the second requirement of § 1292(b).")  That an application of legal principles is a matter of first impression to a unique set of facts, or that Defendants may differ in their view of the correct application of such legal principles, does not create a "substantial difference of opinion." *See supra* I.(A); *see also Von Bulow by Auersperg v. Bon Bulow*, 1986 WL 7781, at *1 (S.D.N.Y. July 8, 1986) (given that "there is no conflicting authority on this narrow issue," there can be "no substantial grounds for difference of opinion."); *see also Wasau Bus. Ins. Co. v. Turner Constr. Co.*, 151 F. Supp. 2d 488, 491 (S.D.N.Y. 2001) ("A mere claim that the district court's ruling was incorrect does not demonstrate a substantial ground for a difference of opinion.").

Defendants also maintain that there is a substantial basis for a difference of opinion regarding the December 16 Opinion's application of the *Affiliated Ute* presumption of reliance to the remaining securities claim. (Def Br. at 7.)  In *Affiliated Ute*, the Supreme Court held that proof of reliance is not required under Rule 10b-5 where the claim is based on

29

"primarily a failure to disclose."  406 U.S. at 153.

Defendants maintain that the Court incorrectly applied
*Affiliated Ute* because Plaintiffs "plead specific statements
that they allege were (or became) false in light of NASDAQ's
alleged system problems," and that these statements were plead
"in order to demonstrate that Defendants had a duty to correct
or update."  (Def. Br. at 7.)  According to Defendants,
*Affiliated Ute* is therefore inappropriate because *Wilson v.
Comtech Telecomm. Corp.*, 648 F.2d 88, 93 (2d Cir. 1981) holds
that a when a duty arises from prior affirmative statements that
become misleading in the absence of omitted information,
*Affiliated Ute* does not apply.  (*Id.* ("In short, a duty to
update or correct and the *Affiliated Ute* presumption are
mutually exclusive.").)  Recognizing precedent to the contrary,
Defendants maintain that to the extent *In re Smith Barney
Transfer Agent Litigation*, 290 F.R.D. 42, 48 (S.D.N.Y. 2013)
(applying the *Affiliated Ute* presumption based on a duty to
disclose) and other district case law can be read to suggest
that the *Affiliated Ute* presumption *may* apply in a duty to
correct case, this only underscores the need for Second Circuit
review.

Wilson creates no such limitation on the *Affiliated*

30

*Ute* presumption, and does not establish any distinction between different types of omissions cases based upon how a defendant's duty arose.  To the contrary, *Wilson* explicates the various contexts in which *Affiliated Ute* may be applied:

> To characterize this, for purposes of establishing reliance, as either an omission or a misrepresentation case is to beg the question. In many instances, an omission to state a material fact relates back to an earlier statement, and if it is reasonable to think that that prior statement still stands, then the omission may also be termed a misrepresentation. The labels by themselves, therefore, are of little help. What is important is to understand the rationale for a presumption of causation in fact in cases like *Affiliated Ute*, in which no positive statements exist: reliance as a practical matter is impossible to prove.

*Wilson*, 648 F.2d  at 93 (citing 3 A. Bromberg & L. Lowenfels, Securities Fraud & Commodities Fraud s 8.6(1), at 209 ("In nondisclosure cases, reliance has little if any rational role"); Note, The Reliance Requirement in Private Actions Under SEC Rule 10b-5, 88 Harv.L.Rev. 584, 590 (1975)).  Applying the applicable law to the facts presented, the court in *Wilson* determined that plaintiffs' claims arose primarily from defendants' initial statements, and not on any independent omissions.  *Wilson*, 648 F.2d at 93-94.  Because the fully developed record following trial showed, and plaintiffs acknowledged, that plaintiffs did not rely on the initial statements underlying the claim, the court determined that the presumption of reliance did not apply.

31

*Id.*

   Such facts are distinguishable where, as here, Plaintiffs' securities claims are grounded primarily in material omissions, and not on the former positive statements. Further, though the record is undeveloped, Plaintiffs specifically allege in their CAC reliance on "the integrity of NASDAQ's technology and trading platforms, including its IPO Cross system, as represented by Defendants in NASDAQ's SEC filings, press conference, analyst conference calls and conferences, press releases, public statements, and other publications disseminated by and/or concerning NASDAQ."  (CAC ¶¶ 189, 337.)

   Defendants acknowledge that, aside from *Wilson*, courts in this district have held that the *Affiliated Ute* presumption of reliance is appropriate where, as here, a defendant's material omission arose from a duty to update and/or correct prior representations. *See In re Beacon Assocs. Litig.*, 754 F. Supp. 2d 386, 412-13 (S.D.N.Y. 2010) (holding that where a defendant "was under a duty to update or correct [a prior misrepresentation] . . . Plaintiffs are entitled to the *Affiliated Ute* presumption of reliance on this omission"); *see also Levitt v. J.P. Morgan Securities, Inc.*, 710 F.3d 454, 465

32

(2d Cir. 2013)[6] (citing *Affiliated Ute*, 406 U.S. at 153-54) (affirming that "an omission of a material fact by a defendant with a duty to disclose establishes a rebuttable presumption of reliance upon the omission by investors to whom the duty was owed."); *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008) (same).  In *In re Parmalat Sec. Litig.*, 2008 WL 3895539 (S.D.N.Y. Aug. 21, 2008) the defendants, similar to NASDAQ, maintained that "the *Affiliated Ute* presumption d[id] not apply" because affirmative misrepresentations existed, and as such the case was not one "involving primarily a failure to disclose."  *Id.* at *8.  The court in *In re Parmalat* clarified that,

> [D]efendants overstate the limitations of the applicability
> of the *Affiliated Ute* presumption.  While it is not
> available where the omissions served only to "exacerbate[ ]
> the misleading nature of the affirmative statements," it
> does apply where the alleged omissions played an
> independent, or at least interdependent, role in the
> alleged fraud.  *See, e.g., Fogarazzo v. Lehman Bros., Inc.,*
> 232 F.R.D. 176, 186-87 & nn. 85, 87 (S.D.N.Y.2005);
> *WorldCom,* 219 F.R.D. 267, 298 (S.D.N.Y.2003) ("While the
> omissions and misrepresentations are alleged to be
> interdependent in their significance and effect, it remains
> true that the description of the relationship at issue here
> was omitted from the analyst reports, that the description
> of WorldCom's financial condition was not a description of

---

[6] Defendants maintain that *Levitt v. J.P. Morgan Securities, Inc.*, 710 F.3d 454, 465 (2d Cir. 2013) is inapplicable because there, the Second Circuit reversed a district court for improperly invoking the *Affiliated Ute* presumption. (Reply Br. at 10.)  *Levitt* did reverse the district court, but because no "duty" had been established such that a duty to disclose existed. 710 F.3d at 465.  *Levitt*'s articulation of the reliance principle, as cited, is in no way lessened because in that particular case the facts failed to establish a duty to disclose.

the relationship, and that reliance on material omissions
is presumed.").

*Id.*

Applying these established principles, because the CAC
specifies that the "federal securities allegations are based not
on Defendants' pre-Class Period statements, . . . but on the
material omissions concerning NASDAQ's known system problems,"
and that the "affirmative statements are identified
[independently] in order to demonstrate that Defendants had a
duty to correct," the December 16 Opinion determined that the
federal securities claim involved "primarily a failure to
disclose," and reliance could be presumed under the *Affiliated
Ute* doctrine. (December 16 Opinion at 85 (citing *Wilson*, 648
F.2d at 93 (presumption of reliance applies where the complaint
does not "rest[] primarily on affirmative statements" but on
material omissions, upon which "reliance as a practical matter
is impossible to prove"); *Smith Barney*, 290 F.R.D. at 47
(same)).)[7]


Aside from their incorrect application of *Wilson*,

---

[7] Nor does Defendants' cited Fifth Circuit precedent, *Abell v. Potomac Ins.
Co.*, 858 F.2d 1104, 1119 (5th Cir. 1988), stating that the *Affiliated Ute*
presumption should be invoked in cases where "the complaint is grounded
primarily in allegations that the defendant has failed to disclose any
information whatsoever" prove inconsistent with the December 16 Opinion, in
which Plaintiffs' allegations supporting the presumption of reliance are
related not to Defendants' prior statements, but "primarily" to their
omissions regarding the system failures. *Id.*

Defendants offer no other basis or cited precedent for why the Court's application was incorrect, or why any doubt exists as to the appropriate legal standard.  What is left are intellectually challenging issues arising in a difficult and complex litigation, but not a situation warranting certification of an interlocutory appeal under § 1292(b). *See German,* 896 F. Supp. at 1398 (certification "is not intended as a vehicle to provide early review of difficult rulings in hard cases"); *see also Ntsebeza v. Daimler A.G. (In re South African Apartheid Litig.),* 624 F.Supp.2d 336, 339 (S.D.N.Y.2009) ("Interlocutory appeal is . . . not intended as a vehicle to provide early review of difficult rulings in hard cases.").

Because Defendants fail to show any unsettled or inconsistent application of law with respect to either challenged issue, Defendants' disagreement with the Court's application of established precedent to the facts presented is insufficient to show any substantial basis for a difference of opinion or to justify § 1292(b) relief. *See Wasau Bus. Ins. Co. v. Turner Constr. Co.,* 151 F. Supp. 2d 488, 491 (S.D.N.Y. 2001) ("A mere claim that the district court's ruling was incorrect does not demonstrate a substantial ground for a difference of opinion.").

35

## Conclusion

Based upon the conclusions set forth above,
Defendants' motion for interlocutory appeal is denied.

It is so ordered.

New York, NY
~~January~~ February 11 , 2014

_____
ROBERT W. SWEET
U.S.D.J.

36