UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

IN RE FACEBOOK, INC., IPO SECURITIES AND
DERIVATIVE LITIGATION,

                                                        OPINION & ORDER
                                                        MDL No. 12-2389

----------------------------------------X


A P P E A R A N C E S:


          Attorneys for Co-Lead Plaintiffs and the Class

          BERNSTEIN LITOWITZ BERGER & GROSSMAN LLP
          1285 Avenue of the Americas
          New York, NY 10019
          By:  Steven B. Singer, Esq.
               John J. Rizio-Hamilton, Esq.

          LABATON SUCHAROW LLP
          140 Broadway
          New York, NY 10005
          By:  Thomas A. Dubbs, Esq.
               James W. Johnson, Esq.
               Louis Gottlieb, Esq.
               Thomas G. Hoffman, Jr., Esq.


          Attorneys for Facebook, Inc. and
          Individual Facebook Defendants

          KIRLAND & ELLIS LLP
          601 Lexington Avenue
          New York, NY 10022
          By:  Andrew B. Clubok, Esq.
               Brant W. Bishop, Esq.

KIRLAND & ELLIS LLP
655 Fifteenth St. NW
Washington, DC 20005
By:  Susan E. Engel, Esq.
     Kellen S. Dwyer, Esq.
     Bob Allen, Esq.

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
By:  Tariq Mundiya, Esq.
     Todd G. Cosenza, Esq.
     Sameer Advani, Esq.

WILLKIE FARR & GALLAGHER LLP
1875 K Street, NW
Washington, DC 20006
By:  Richard D. Bernstein, Esq.
     Elizabeth J. Bower, Esq.

Attorneys for Underwriter Defendants

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
By:  James P. Rouhandeh, Esq.
     Charles S. Duggan, Esq.
     Andrew Ditchfield, Esq.

**Sweet, D.J.**

Pursuant to the transfer order from the United States Judicial Panel on Multidistrict Litigation (the "MDL Panel"), entered on October 4, 2012, 41 actions stemming from the May 18, 2012 initial public offering ("IPO") of Facebook, Inc. ("Facebook" or the "Company") are presently before this Court.

The instant motion relates to the consolidated securities action brought by Plaintiffs North Carolina Department of State Treasurer on behalf of the North Carolina Retirement Systems; Banyan Capital Master Fund Ltd.; Arkansas Teacher Retirement System; and the Fresno County Employees' Retirement Association; and the Named Plaintiffs' Jose G. Galvan and Mary Jane Lule Galvan (collectively, "Lead Plaintiffs" or "Plaintiffs") against Defendants Facebook, certain Facebook directors and officers (the "Individual Defendants"),[1] and underwriters of the IPO of Facebook (the "Underwriter Defendants")[2] (collectively, "Defendants" or "Facebook

---

[1] The Individual Defendants include Mark Zuckerberg ("Zuckerberg"); Sheryl K. Sandberg ("Sandberg"); David A. Ebersman ("Ebersman"); David M. Spillane ("Spillane"); Marc L. Andreessen ("Andreessen"); Erskine B. Bowles ("Bowles"); James B. Breyer ("Breyer"); Donald E. Graham ("Graham"); Reed Hastings ("Hastings"); and Peter A. Thiel ("Thiel").

[2] The Underwriter Defendants include Morgan Stanley & Co. LLC ("Morgan Stanley"); J.P. Morgan Securities LLC ("J.P. Morgan"); Goldman, Sachs & Co. ("Goldman Sachs"); Allen & Company LLC; Barclays Capital Inc.; Blaylock Robert Van LLC; BMO Capital Markets Corp.; C.L. King & Associates, Inc.; Cabrera Capital Markets, LLC; CastleOak Securities, L.P.; Citigroup Global Markets, Inc.; Cowen and Company, LLC; Credit Suisse Securities (USA) LLC;

1

Defendants"). Defendants move the Court to amend and certify the Opinion and Order entered on December 12, 2013, *In re Facebook. IPO Sec. & Derivative Litig.*, MDL No. 2389, 2013 WL 6665399 (S.D.N.Y. Dec. 12, 2013) (the "December 12 Opinion" or "Opinion"), for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), which denied Defendants' motion to dismiss the consolidated class action complaint (the "Consolidated Class Action Complaint" or "CAC") alleging federal securities claims (the "Securities Actions").

For the reasons set forth below, Defendants' motion is denied.

## I.   Prior Proceedings and Facts

On September 20, 2012, the MDL Panel held a hearing to determine whether the pending 41 filed actions should be transferred to the Southern District of New York. On October 4, 2012, the MDL Panel issued a transfer order, finding that the

---

Deutsche Bank Securities Inc.; E*TRADE Securities LLC; Itaú BBA USA Securities, Inc.; Lazard Capital Markets LLC; Lebenthal & Co., LLC; Loop Capital Markets LLC; M.R. Beal & Company; Macquarie Capital (USA) Inc.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; Muriel Siebert & Co., Inc.; Oppenheimer & Co. Inc.; Pacific Crest Securities LLC; Piper Jaffray & Co.; Raymond James & Associates, Inc.; RBC Capital Markets, LLC; Samuel A. Ramirez & Company, Inc.; Stifel, Nicolaus & Company, Incorporated; Wells Fargo Securities, LLC; The Williams Capital Group, L.P; and William Blair & Company, L.L.C.

"Southern District of New York is an appropriate transferee district for pretrial proceedings in this litigation," reasoning that "[m]uch of the relevant discovery will be located in New York . . . ." *In re Facebook. IPO Sec. & Derivative Litig.*, MDL No. 2389, 2012 WL 4748325, at *3 (Oct. 4, 2012). The cases were assigned to this Court for coordination or consolidation of the pretrial proceedings. *Id.*

Of the 41 actions presently before the Court due to the MDL Panel's transfer order, 30 of these actions allege violations of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act") against movants and various underwriter defendants. On December 6, 2012, this Court issued an opinion, *In re Facebook. IPO Sec. & Derivative Litig.*, 288 F.R.D. 26 (S.D.N.Y. 2012), which consolidated the actions alleging violations of the Securities Act and Exchange Act into the Securities Actions and Lead Plaintiffs were appointed.[3]  The class actions against the NASDAQ

---

[3] The Securities Actions include: *Brian Roffe Profit Sharing Plan v. Facebook, Inc.*, No. 12-cv-4081 (filed 5/23/12); *Twining v. Facebook, Inc.*, No. 12-cv-4099 (filed 5/23/12); *Goldrich Cousins P.C. 401(k) Profit Sharing Plan & Trust v. Facebook, Inc.*, No. 12-cv-04131 (filed 5/23/12); *Braun v. Facebook, Inc.*, No. 12-cv-4150 (filed 5/24/12); *Alexander v. Facebook, Inc.*, No. 12-cv-4157 (filed 5/24/12); *Lightman v. Facebook, Inc.*, No. 12-cv-4184 (filed 5/25/12); *Reichenbaum v. Facebook, Inc.*, No. 12-cv-4194 (filed 5/25/12); *Lazard v. Facebook, Inc.*, No. 12-cv-4252 (filed 5/30/12); *Gregorczyk v. Facebook, Inc.*, No. 12-cv-4291 (filed 5/31/12); *Brinckerhoff v. Facebook, Inc.*, No. 12-cv-4312 (filed 6/1/12); *Goldberg v. Facebook, Inc.*, No. 12-cv-4332 (filed 6/1/12); *Eannarino v. Facebook, Inc.*, No. 12-cv-4360 (filed 6/4/12); *Mamula v. Facebook, Inc.*, No. 12-cv-4362 (filed 6/4/12); *Leitner v.*

OMX Group Inc. and The NASDAQ Stock Market LLC (collectively
"NASDAQ") alleging federal securities (the "NASDAQ Securities
Actions") and negligence claims (the "NASDAQ Negligence
Actions") (collectively, the NASDAQ Actions") were also
consolidated. The cases alleging derivative claims (the
"Derivative Actions") are currently not consolidated, with
individual plaintiffs in the Derivative Actions having brought
forth separate actions.

Lead Plaintiffs for the Securities Actions filed the
Consolidated Class Action Complaint on February 28, 2013. The
CAC alleges violations of Sections 11, 12(a)(2) and 15 of the
Securities Act.

Defendants filed a motion to dismiss the Securities
Actions on April 30, 2013. Defendants' motion was denied in the

---

*Facebook, Inc.*, No. 12-cv-4551 (filed 6/11/12); *Savitt v. Facebook, Inc.*, No.
12-cv-4648 (filed 6/13/12); Sexton v. Facebook, No. 12-cv-4777 (filed
6/19/12); and *Loomis v. Facebook, Inc.*, No. 12-cv-5511 (filed 7/17/12), which
were filed in this District. The Securities Actions also include: *Spatz v.
Facebook, Inc.*, No. 12-cv-2662; *Chang v. Facebook, Inc.*, No. 12-cv-2680;
*Gregory v. Facebook, Inc.*, No. 12-cv-2815; *Lapin v. Facebook, Inc.*, No. 12-
cv-3195; *DeMois, Jr. v. Facebook, Inc.*, No. 12 cv-3196; *Lazar v. Facebook,
Inc.*, No. 12-cv-3199; *Shierry v. Facebook, Inc.*, No. 12-cv-3200; *Cuker v.
Facebook, Inc.*, No. 12-cv-3201; *Lieber v. Facebook, Inc.*, No. 12-cv-3202;
*Stokes v. Facebook, Inc.*, No. 12-cv-3203; *Ahrendtsen v. Facebook, Inc.*, No.
12-cv-3212; and *Ilicks v. Facebook, Inc.*, No. 12-cv-3353, which were filed in
the Northern District of California and transferred to this District. In
addition, actions by plaintiffs Lawrence Corneck and Eugene Stricker under
the Exchange Act include: *Corneck v. Morgan Stanley & Co. LLC, J.P. Morgan
Securities LLC, and Goldman Sachs & Co.*, No. 12-cv-4215 (filed 5/25/12);
*Eugene Stricker v. Morgan Stanley & Co LLC, J.P. Morgan Securities LLC, and
Goldman Sachs & Co.*, No. 12-cv-4763 (filed 6/18/12).

December 12 Opinion. Defendants filed a motion to amend and certify the December 12 Opinion for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) on January 10, 2014. This motion was heard and marked full submitted on February 5, 2014.

## II.  The Applicable Standard

Section 1292(b) provides for certification of an order for interlocutory appeal when the court determines: "(1) that such order involves a controlling question of law (2) as to which there is a substantial ground for difference of opinion and (3) that an immediate appeal from [that] order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The proponents of an interlocutory appeal have the burden of showing that all three of the substantive criteria are met. *See Casey v. Long Island R.R.*, 406 F.3d 142, 146 (2d Cir. 2005). "These three prerequisites create a significant hurdle to certification, and the barrier is only elevated by the mandate that section 1292(b) be 'strictly limited' because 'only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *McNeil v. Aguilos*, 820 F. Supp. 77, 79 (S.D.N.Y. 1993) (Sotomayor, J.). "[E]ven where the three legislative criteria of section § 1292(b) appear

5

to be met, district courts retain 'unfettered discretion to deny certification' if other factors counsel against it." *Transp. Workers Union of Am., Local 100 v. NYC Transit Auth.*, 358 F. Supp. 2d 347, 351 (S.D.N.Y. 2005) (internal citations omitted). Such unfettered discretion can be for "any reason, including docket congestion" and "the system-wide costs and benefits of allowing the appeal," *Klinghoffe v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990).

The Second Circuit has noted that "interlocutory appeals are strongly disfavored in federal practice," and movants cannot invoke the appellate process "as a vehicle to provide early review [even] of difficult rulings in hard cases," *In re Adelphia Commc'ns Corp.*, Nos. 02-41729 (REG), 07 Civ. 9999(NRB), 2008 WL 361082, at *1 (S.D.N.Y. Feb. 7, 2008). District Courts must accordingly "exercise great care in making a § 1292(b) certification," *Wausau Bus. Ins. Co. v. Turner Constr. Co.*, 151 F. Supp. 2d 488, 491-92 (S.D.N.Y. 2001) (citing *Westwood Pharm., Inc. v. Nat'l Fuel Gas Dist. Corp.*, 964 F.2d 85, 89 (2d Cir.1992)), ensuring that § 1292(b) "be strictly construed." *Id.* at 491 (internal quotations marks and citations omitted); *see also In re Ambac Fin. Grp. Sec. Litig.*, 693 F. Supp. 2d 241, 282 (S.D.N.Y. 2010) (certification of a non-final order pursuant to 28 U.S.C. § 1292(b) is an extraordinary

6

procedure only granted in "exceptional circumstances."); *Lidle v. Cirrus Design Corp.*, No. 08 Cv. 1253(BSJ)(HBP), 2010 WL 4345733, at *1 (S.D.N.Y. Oct. 29, 2010) ("[T]he power to grant an interlocutory appeal must be strictly limited to the precise conditions stated in the law. . . . [o]nly exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.").

## III. Defendants' Fail To Satisfy The High Threshold Required For § 1292(b) Certification

Defendants contend that a certification for interlocutory appeal is appropriate with respect to two questions: (1) In the absence of an extreme departure from prior reported results, does Item 303 of Regulation S-K require an issuer to disclose the extent to which a known (and disclosed) trend allegedly appears to be affecting intra-quarter revenues; and (2) In the absence of an extreme departure from prior reported results, is a warning that a trend "may" affect future reported revenue misleading simply because the trend appears to be affecting intra-quarter revenues?

It is initially noted that the issues posed by

Defendants relating to Item 303 are challenges that relate to the sufficiency of Plaintiffs' pleadings in the CAC, which "are not generally the appropriate subjects of interlocutory review, as 'a reversal [on interlocutory appeal] at most could lead only to a remand for repleading, with possibilities of further interlocutory appeals thereafter.'" *In re Manhattan Inv. Fund Ltd.*, 288 B.R. 52, 56 (S.D.N.Y. 2002) (quoting *Gottesman v. General Motors Corp.*, 268 F.2d 194, 196 (2d Cir. 1959)); *see also Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*, 381 F.3d 717, 728 (7th Cir. 2004) (interlocutory appeal is not intended as a "second bite at the apple" that allows the moving party to reargue issues that the court has already addressed and rejected). Furthermore, the issues raised by Defendants' are a repeat of the arguments Defendants unsuccessfully raised in its motion to dismiss, and a motion for certification of an interlocutory appeal may not be used to simply "repeat arguments made in [a] motion to dismiss." *Grus*, 2012 WL 3306166, at *4. Regardless, Defendants fail to satisfy the required elements under § 1292(b).

> A. *Defendants Fail To Present "Exceptional Circumstances" Necessary To Grant Interlocutory Appeal Or Show That An Immediate Appeal Would Materially Advance The Ultimate Termination Of The Litigation*

Although the last of the three factors for 1292(b) certification for interlocutory appeal, "[c]ourts place particular weight on . . . whether immediate appeal will materially advance the ultimate termination of the litigation." *Florio v. City of New York, N.Y.*, No. 06 Civ. 6473(SAS), 2008 WL 3068247, at *1 (S.D.N.Y. Aug. 5, 2008); *Transp. Workers*, 358 F. Supp. 2d at 350; *see also*, *Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865-66 (2d Cir. 1996) ("The use of § 1292(b) is reserved for those cases where an intermediate appeal may avoid protracted litigation."); *Lerner v. Millenco, L.P.*, 23 F. Supp. 2d 345, 347 (S.D.N.Y. 1998) ("The Court of Appeals has emphasized the importance of the third consideration in determining the propriety of an interlocutory appeal."). "An immediate appeal is considered to advance the ultimate termination of the litigation if that 'appeal promises to advance the time for trial or to shorten the time required for trial.'" *Florio*, 2008 WL 3068247, at *1 (quoting *In re Oxford Health Plans, Inc.*, 182 F.R.D. 51, 53 (S.D.N.Y. 1998)). Defendants' motion does not meet this factor.

Defendants advance three points they contend supports § 1292(b) certification will materially advance the ultimate termination of the litigation: (i) An interlocutory appeal may allow this case to be dismissed on threshold legal issues

9

without resort to protracted class action litigation; (ii) interlocutory appeal of a controlling question of law is particularly appropriate in multidistrict securities litigation cases; and (iii) the causation issue in the Securities Actions overlaps with causation issues that are likely to arise in the NASDAQ Actions. (Defendants' Memorandum of Law in Support of Motion to Amend and Certify December 12, 2013 Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) ("Def. Br.") at 19-21.) These contentions fail to justify certification.

As an initial matter, this is not an "exceptional" case. Defendants' motion consists entirely of assertions and precedent rejected in the December 12 Opinion, and a motion for certification may not be used to simply "repeat arguments made in a motion to dismiss." *S.E.C. v. Gruss*, No. 11 Civ. 2420, 2012 WL 3306166, at *4 (S.D.N.Y. Aug. 13, 2012). While Defendants contend that certification of interlocutory appeal may allow the Securities Actions to be dismissed, obtaining reversal of an opinion denying a motion to dismiss will *always* contain the possibility of a dismissal and is not an "exceptional circumstance" that "justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475

10

(1978).

In any event, a dismissal on appeal of both issues would not end the multidistrict litigation. The Second Circuit regularly denies interlocutory appeals at such preliminary stages where, as here, the appeal could at most lead only to a remand for repleading. *In re Manhattan*, 288 B.R. at 56. Plaintiffs' Item 303 and affirmative misrepresentations claims and the issues raised by Defendants involve applications of law to an extremely specific set of facts. *See Panther Partners v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 122 (2d Cir. 2012) ("Item 303's disclosure obligations, like materiality under the federal securities laws' anti-fraud provisions, do not turn on restrictive mechanical or quantitative inquiries."); *In re Noah Educ. Holdings, Ltd. Sec. Litig.*, No. 08 Civ. 9203(RJS), 2010 WL 1372709, at *7 (S.D.N.Y. Mar. 31, 2010) ("Whether or not a statement is materially misleading is a 'fact-specific' inquiry."). Using § 1292(b) to resolve questions concerning the application of law to facts is problematic for the termination of a litigation, as such questions "are generally not suitable for certification under § 1292(b)." *Freeman v. Nat'l Broadcasting Co., Inc.*, No. 85 CIV 3302 (LBS), 1993 WL 524858, at *1 (S.D.N.Y. Dec. 15, 1993). Even if the December 12 Opinion is certified and reversed, the fact-specific nature of the legal

11

issues at hand would, at most, compel a remand for repleading, which would delay the entire action. *See Degulis v. LXR Biotechnology, Inc.*, Nos. 95 Civ. 4204 (RWS), 1997 WL 20832, *7 (S.D.N.Y. Jan. 21, 1997) (no certification of an order under § 1292(b) where "appellate reversal of the adequacy of the pleadings . . . would result only in granting leave to replead, and would thus delay consideration of the merits").

Furthermore, certification here may not dispose of all issues, which would not streamline discovery. Plaintiffs' Item 303, material misrepresentations and Rule 408 claims are all predicated upon the same underlying factual events, and discovery will significantly overlap. If any of the claims are not dismissed on appeal, the litigation will continue to advance in substantially the same manner as if the interlocutory appeal had never occurred. *See Westwood Pharms. V. Nat'l Fuel Gas Distrib.*, 964 F.2d 85, 88 (2d Cir. 1992) (cautioning against the certification of questions in cases where "many of the same factual issues . . . would still have to be litigated"); *Isra Fruit Ltd. v. Agrexco Agr. Export Co. Ltd.*, 804 F.2d 24, 26 (2d Cir. 1986) (where two issues are "closely related," even if one "were dismissed at this stage in the litigation, there is scant basis for believing that trial of the latter claims would be concluded with any appreciable saving of time."); *Sussman v.*

12

*I.C. System, Inc.,* 2013 WL 5863664, at *3 (S.D.N.Y. Oct. 30, 2013) (despite parties disagreeing on whether discovery will overlap, court held that in light of the overlapping factual allegations underlying plaintiff's [two claims], discovery as to the claims is likely to overlap).

Notably, Defendants have not raised as a question justifying § 1292(b) certification Plaintiffs' claim under Rule 408 of SEC Regulation C. While Defendants contend that the December 12 Opinion's holding on Rule 408 was "explicitly based on the Court's Item 303 and misrepresentation rulings," (Def. Br. at 6, n.2), Rule 408 is an independent basis of liability, and the December 12 Opinion did not state that its holding with respect to Rule 408 was dependent on Defendants' liability under the other alleged claims. In addition, Defendants' contention that certification under § 1292(b) is for an "order" and not "questions" is not supported by the normal practice of certifying questions for interlocutory review. *See, e.g.*, *American Intern. Group, Inc. v. Bank of America Corp.*, 712 F.3d 775, 777 (2d Cir. 2013) ("This is an interlocutory appeal of a question certified by the United States District Court for the Southern District of New York . . . under 28 U.S.C. § 1292(b)"); *Joseph v. Athanasopoulos*, 648 F.3d 58, 61 (2d Cir. 2011) ("The court . . . and certified for interlocutory appeal the question:

13

'Does *res judicata* bar Plaintiff's Title VII and ADA claims?'."); *Stein ex rel. Stein v. Barthelson*, 419 Fed. App'x 67, 69 (2d Cir. 2011) ("The district court then stayed further proceedings and certified two questions for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) . . . .").

As the Second Circuit has noted, it is "quite unlikely" that an immediate appeal will materially advance the termination of the litigation where discovery as to the challenged claims "appears likely to overlap to a considerable extent." *Isra Fruit Ltd.,* 804 F.2d at 25-26. Instead, Plaintiffs "may well benefit from the economies of coordinated discovery and other pretrial proceedings conducted in the multidistrict class action." *In re NASDAQ Mkt. Makers Antitrust Litig.,* 938 F. Supp. 232, 234-35 (S.D.N.Y. 1996). Contrary to Defendants' assertions that interlocutory review would further efficiency, an appeal at this stage would likely cause needless cost and delay. *See In re Blech Sec. Litig.*, No. 94-7696, 2003 WL 134988, at *3 (S.D.N.Y. Jan. 17, 2003) (holding that interlocutory appeal would not "promote the efficient litigation of this case, but [would] only serve to delay it" because, among other reasons, there remained another claim against the defendant); *see also Gruss*, 2012 WL 3306166, at *2 ("It does not normally advance the interests of sound judicial administration or

14

efficiency to have piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case, instead of having the trial judge, who sits alone and is intimately familiar with the whole case, revisit a portion of the case if he or she has erred in part and that portion is overturned following the adjudication of the whole case.") (quoting *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir. 1991)); *McNeil*, 820 F. Supp. at 80 ("Since the chances are overwhelming that the [movant] would not prevail in an interlocutory appeal, certification would far more likely delay the case than hasten its disposition.").

Thus, while Defendants second argument contends that interlocutory appeal of a controlling question of law is appropriate in multidistrict securities litigation cases, interlocutory appeal of highly fact-specific applications of law to fact in these "big" cases alleging violations of the securities laws is particularly inappropriate. "The institutional efficiency of the federal court system is among the chief concerns underlying Section 1292(b)." *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000) (hereinafter *Credit Bancorp II*); *Narragansett Elec. Co. v. American Home Assur. Co.*, 921 F. Supp. 2d 166, 196 (S.D.N.Y. 2013); *In re Adelphia Commc'ns Corp.*, No. 06 CIV 4983(JGK), 2008

15

WL 5453738, at *1 (S.D.N.Y. Dec. 31, 2008). Interlocutory review for such "big" securities cases often involves disagreements not on the applicable law but "whether the court's application of the decided and governing case law to the relevant facts is appropriate. . . . [S]uch issues were [not] intended for certification under § 1292." *See Abortion Rights*, 552 F. Supp. at 366 (citing *Link v. Mercedes-Benz of North America, Inc.*, 550 F.2d 860, 863 (3d Cir.), *cert. denied*, 431 U.S. 933, 97 S. Ct. 2641, 53 L. Ed. 2d 250 (1977)).

Indeed, Second Circuit interlocutory review of motion to dismiss decisions in securities cases is rarely granted. Interlocutory review is strictly reserved for exceptional cases and is especially rare in the early stages of litigation. Securities actions in the motion to dismiss stage often cannot be resolved by pure questions of law, and resolution of pure questions of law by the appellate court does not obviate subsequent applications of fact to the determined law. The Second Circuit has routinely denied § 1292(b) motions at the preliminary stages of a litigation and only four times in the last thirteen years entertained a Section 1292(b) appeal from an order denying a motion to dismiss in a federal securities class action. In these four instances, the Second Circuit has granted review almost exclusively on threshold issues such as

16

jurisdiction, standing and statutes of limitations. *See W.R. Huff. Asset Mgmt. Co. v. Deloitte & Touche,* LLP, 549 F.3d 100 (2d Cir. 2008) (appeal of an investment adviser's standing to assert claims on behalf of clients); *Litzler v. CC Invs., L.D.C.,* 362 F.3d 203 (2d Cir. 2004) (appeal concerning the statute of limitations under Section 16 of the Securities Exchange Act of 1934); *Fed Hous. Fin. Agency v. UBS Americas Inc.,* 712 F.3d 136 (2d Cir. 2013) (reviewing the Federal Housing Finance Agency's standing to bring claims on behalf of Fannie Mae and Freddie Mac and the timeliness of its claims); *but see Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.,* 531 F.3d 190 (2d Cir. 2008) (appeal concerning pleading of scienter against a corporate defendant).[4] These threshold issues differ from those in the instant motion, as finding against plaintiffs in threshold issues necessitates dismissal of the action.[5] This is not true for the issues in this motion.

Allowing interlocutory review on an undeveloped record

---

[4] *Teamsters Local 445* involved questions concerning individual and composite scienter and whether "statements made to investors were misleading." 531 F.3d at 196-97. Plaintiffs in the case was subject to the heightened pleading standards of the PSLRA, a standard more akin to a threshold issue than the negligence alleged by Plaintiffs in this action.

[5] Threshold questions of law were also at issue in several of the cases granting § 1292(b) certification cited by Defendants. *See In re Lloyd's American Trust Fund Litigation,* No. 96 CIV. 1262(RWS), 1997 WL 458739, at *4 (S.D.N.Y. Aug. 12, 1997) (finding questions regarding forum-selection clauses and indispensible parties appropriate for interlocutory appeal); *In re WorldCom,* 2003 WL 22953644, at *4-9 (granting certification under 1292(b) for whether Securities Act claims can be removed under 28 U.S.C.A. § 1452).

17

at the motion to dismiss stage on a non-threshold issue of a complex multidistrict class action would serve only to impede institutional efficiency by "prolong[ing] judicial proceedings, add[ing] delay and expense to litigants, burden[ing] appellate courts, and present[ing] issues for decisions on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions." *In re World Trade Ctr. Disaster Site Litig.*, 469 F. Supp. 2d 134, 144 (S.D.N.Y. 2007) (quoting *Koehler*, 101 F.3d at 865-66); *see also In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2013 WL 4784682, at *4 (E. D. Mich. Sept. 06, 2013) ("Moreover, the Court recognizes that judicial economy interests weigh against an interlocutory appeal. This multi-district litigation involves numerous other Defendants and allegations of price-fixing of numerous automotive component parts. The Court finds that affording the appellate court the opportunity to address all of the issues at one time at the conclusion of the litigation will facilitate a speedier resolution of this matter than reviewing a portion of the litigation at this time."); *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042, 2013 WL 4009023, at *5 (E. D. Mich. 2013) (noting in the complex multidistrict litigation action that "[t]he interests of judicial economy and the need to avoid piecemeal litigation weigh against an interlocutory appeal" and "judicial economy is best served by delaying appeal

18

until all the issues can be confronted by the appellate court in a unified package"); *Gruss*, 2012 WL 3306166, at *2; *cf. Trans. Workers*, 385 F. Supp. 2d at 350 (allowing interlocutory appeal on an issue of first impression where the court "heard evidence and issued a final decision, on a full factual record"). Denying certification at such early stages avoids needless and unnecessary delay and expense, while a factually complete record is fully developed, and allows the appellate court review of the legal issues supported by a complete record. *See, e.g., Mills v. Everest Reins. Co.*, 771 F. Supp. 2d 20, 273 ("Courts have frowned upon allowing an interlocutory appeal of a denial of summary judgment. Instead, courts prefer to let the trial resolve the outstanding issues."); *Maryland Cas. Co. v. W.R. Grace & Co.,* 128 F.3d 794, 797-98 (2d Cir. 1997) (dismissing interlocutory appeal because trial would resolve many outstanding issues); *Parkinson v. April Industries, Inc.,* 520 F.2d 650, 654 & n. 3 (2d Cir. 1975) ("[T]rial judges are constantly confronted with interlocutory decisions, which, if erroneous, may create unnecessary and time-consuming consequences. . . . For example, an order denying a motion for summary judgment . . . [is] not immediately appealable even though the entry of an erroneous order may require additional expense and effort on the part of both litigants and the district court.").

19

Defendants' third contention that the causation issue in the Securities Actions overlaps with causation issues that are likely to arise in the NASDAQ Actions and the discovery and other proceedings in the NASDAQ Actions may be stayed as NASDAQ appeals the immunity ruling misconstrues § 1292(b)'s third prong. Defendants are not parties to the NASDAQ Actions, which allege claims against NASDAQ and related defendants based on technical issues with NASDAQ's electronic trading platform. (*See generally*, Consol. Am. Class Action Compl. (ECF No. 95).) While causation issues in the Securities Actions may overlap with the NASDAQ Actions, no reason is given as to how any inefficiencies may arise even if the Second Circuit exercises pendant jurisdiction over the NASDAQ Actions. Such inefficiencies are insufficient to meet the third prong of § 1292(b), as discovery issues related to causation is neither an "exceptional circumstance" that justifies interlocutory review nor an issue that would "materially advance the ultimate termination of the litigation."

In sum, certification of the December 12 Opinion for interlocutory appeal would allow a piecemeal approach to the issues in the Securities Actions that could later be corrected via repleadings, and such an approach would delay consideration

20

of the merits and impede judicial efficiency. *Koehler,* 101 F.3d at 865 ("it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals."). This is particularly true in this case, where a full evidentiary record would undoubtedly support complicated issues of law. Given judicial economy considerations, Defendants' fail to show "exceptional circumstances" "justify[ing] a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Transp. Workers Union v. N.Y. City Transit Auth.*, 05-8005-mv (2d Cir. Mar. 8, 2006) (unpublished order) (alterations in original) (citations and quotations omitted).

Defendants have the burden of showing that all three of the substantive § 1292(b) criteria are met, and denial of the motion would be appropriate even if the first and second criteria were not met. *See Casey v. Long Island R.R.* 406 F.3d 142, 146 (2d Cir. 2005). However, pertinent analysis regarding the other two criteria is made below.

## B. *The December 12 Opinion Does Not Involve Controlling Questions of Law*

The next factor in determining whether to certify an order for Section 1292(b) appeal is whether the order involves a

controlling question of law. *See* 28 U.S.C. § 1292(b). "In determining whether a controlling question of law exists the district court should consider whether: reversal of the district court's opinion could result in dismissal of the action; reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action; or, the certified issue has precedential value for a large number of cases." *Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784(WHP), 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013) (quoting *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001)). The impact an appeal will have on other cases need not be large, but it "is a factor that [the court] may take into account." *Klinghoffe*, 921 F.2d at 24.

A Section 1292(b) appeal requires "a 'pure' question of law that the reviewing court 'could decide quickly and cleanly without having to study the record.'" *In re Worldcom*, 2003 WL 21498904, at *10 (quoting *Ahrenholz v. Bd. of Trs. of Univ. of Illinois*, 219 F.3d 674, 676-77 (7th Cir. 2000)). As previously noted, "[q]uestions regarding application of the appropriate law to the relevant facts are generally not suitable for certification under § 1292(b)." *Freeman*, 1993 WL 524858, at *1; *see also Abortion Rights*, 552 F. Supp. at 366; *see also Benfield v. Mocatta Metals Corp.*, 91 Civ. 8255 (LJF), 1993 WL

22

148978, at *7 (S.D.N.Y. May 5, 1993) (determination of when statute of limitations accrued involved application of the appropriate legal standard to the facts alleged and did not involve a controlling question of law). "Similarly, mixed questions of law and fact are not appropriate for certification under § 1292(b)." *Freeman*, 1993 WL 524858, at *2; *see also Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 371-72 (S.D.N.Y. 2008) (denying certification pursuant to Section 1292(b) when the question "would require the Court of Appeals to consider mixed questions of law and fact"); *SEC v. First Jersey Sec., Inc.*, 587 F. Supp. 535, 536 (S.D.N.Y. 1984) (motion for certification denied because "appeal would necessarily present a mixed question of law and fact"); *Weisman v. Darneille*, 78 F.R.D. 671, 674 (S.D.N.Y. 1978) (certification inappropriate since basis of court's order involved mixed questions of law and fact); *Stone v. Patchett*, No. 08 CV 5171(RPP), 2009 WL 1544650, at *2 (S.D.N.Y. June 3, 2009) ("[T]he questions presented for interlocutory appeal by plaintiffs would require the Second Circuit to review this Court's application of the law to the facts presented by the parties. Under these circumstances, such questions do not present issues of pure law and therefore are not appropriate for interlocutory review."). "The antithesis of a proper Section 1292(b) appeal is one that turns on whether there is a genuine

23

issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case." *Mills v. Everest Reins. Co.*, 771 F. Supp. 2d 270, 275-76 (S.D.N.Y. 2009) (citing *McFarlin v. Conseco Servs.*, 381 F.3d 1251, 1259 (11th Cir. 2004)).

As a threshold matter, Defendants' posed questions do not present any "pure" question of law that the Second Circuit could answer "quickly and clearly without having to study the record." *Gruss*, 2012 WL 3306166, at *2 (internal quotation marks omitted). Although technically the question of whether there is a controlling issue of law is distinct from the question of whether certification would materially advance the ultimate termination of the litigation, in practice the two questions are closely connected." *Credit Bancorp II*, 103 F. Supp. 2d at 227 (citing *Duplan Corp. v. Slaner*, 591 F.2d 139, 148 n. 11 (2d Cir. 1978)); *Public Interest Research Group of New Jersey, Inc. v. Hercules, Inc.*, 830 F. Supp. 1549, 1557 (D.N.J. 1993); Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3930 (1996)). Plaintiffs' claims are predicated on very specific set of facts, and the December 12 Opinion's holdings were intensely fact-specific. Whether Defendants violated the securities laws in the events leading up the IPO is a "fact-specific inquiry," and inappropriate for interlocutory

24

review as "Section 1292(b) is not . . . a mechanism 'for securing early resolution of disputes concerning whether the trial court properly applied the law to the facts.'" *Monaghan v. SZS 33 Associates, L.P.*, 153 F.R.D. 60, 64 (S.D.N.Y. 1994) (quoting *Abortion Rights Mobilization, Inc. v. Regan*, 552 F. Supp. 364, 366 (S.D.N.Y. 1982)).

Also previously noted, reversal would not terminate the Securities Actions. Plaintiffs will likely have the chance to amend the CAC even if dismissal were to occur, and if any of Lead Plaintiffs' claims were to survive appeal, given the overlap on the issues, the proceedings subsequent to any dismissal will not be materially affected in complexity or scope. *See Pereira v. Cogan*, 265 B.R. 32, 34 (S.D.N.Y. 2001) (noting that certification is "inappropriate when the 'remaining claims in the lawsuit [are] closely related, and no appreciable savings in time would be realized by an appeal'") (quoting *Isra Fruit*, 804 F.2d at 25-26); *cf. ABN Amro Verzekeringen BV v. Geologistics Ams., Inc.*, Nos. 01 Civ. 5661(DC), 02 Civ. 1238(DC), 2003 WL 21543529, at *3 (S.D.N.Y. Jul. 9, 2003) (holding that certification would speed the ultimate resolution of the matter where plaintiffs represented to the court that they would not pursue any of their claims if the Second Circuit affirmed the court's decision). Plaintiffs' Rule 408 claims

25

would also survive reversal by the Circuit Court, as the issue was not posed as a question for § 1292(b) certification.

Defendants contend that immediate review is warranted because the December 12 Opinion is likely to have widespread effects on the capital markets. Defendants identify three precedential effects from the December 12 Opinion: (i) the Opinion compels companies to provide updates whenever a disclosed trend or risk appears to be having an intra-quarter impact on revenues; (ii) disclosure of revised internal projections to the underwriters of an IPO could constitute the basis for potentially requiring the company to disclose intra-quarter revenue information to the public; (iii) the December 12 Opinion's finding on misrepresentation is in contravention to numerous courts having rejected any effort to find liability for cautionary statements about future reported results. (Def. Br. at 7-9.) Defendants contend that interlocutory review is necessary in order to ease any uncertainty regarding any inconsistencies between the Opinion and the SEC's disclosure regime or other case law in the Southern District. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 78 (2006) ("The magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated."); *Colonial Realty Corp.*

26

*v. Bache & Co.*, 358 F.2d 178, 180 (2d Cir. 1966) ("[W]e granted leave under § 1292(b) . . . in order to eliminate any doubt as to our ability to reach an issue of general importance under the securities laws.").

Precedential value is not "per se sufficient to meet the 'controlling issue of law' standard." *Credit Bancorp II*, 103 F. Supp. 2d at 227 (citing *Klinghoffer*, 921 F.2d at 24 (observing that precedential value is factor to be taken into account but is not requirement); *Oxford*, 182 F.R.D. at 54 (observing that some district courts have held that precedential value alone renders issue "controlling" but disagreeing with that view and holding it to be only a factor)). The "impact that an appeal will have on other cases is a factor" that may be considered, but it is not and need not be the decisive factor. *Klinghoffer*, 921 F.2d at 24.

The contention that the December 12 Opinion will have extreme precedential effects is unsupported. While the December 12 Opinion will have some precedential value, this is true for all opinions. Nonetheless, the facts of this case are highly unique. *See Multi-Juice, S.A. v. Snapple Beverage Corp.*, No. 02 Civ. 4635, 2003 WL 21998970 (S.D.N.Y. Aug. 21, 2003) (holding that "reversal of this Court's opinion would not have

27

precedential value for a large number of cases, because this
Court's determination was based on a fact-specific analysis that
would likely not apply in future cases"). The holdings in the
December 12 Opinion were narrow, and Defendants have cited no
evidence to support their suggestion that the capital markets
have been or will be disrupted by the Opinion. The uniqueness of
this case undermines Defendants' contention that the December 12
Opinion opens the door for issuers and underwriters to be
subject to suit for not providing "intra-quarter updates in
regular SEC filings." (Defendants' Reply Memorandum of Law in
Support of Motion to Amend and Certify December 12, 2013 Order
for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) ("Reply
Br.") at 10-11.) "[I]t is rather speculative to say that the
ruling has precedential value for a large number of cases when
those cases have yet to be brought." *Primavera Familienstifung
v. Askin*, 139 F. Supp. 2d 567, 573 (S.D.N.Y. 2001).

The extent the December 12 Opinion imposes any new
duties on companies is questionable, particularly with respect
to Defendants' first contention as to whether companies must
provide updates whenever a disclosed trend or risk appears to be
having an intra-quarter impact on revenues. The December 12
Opinion explicitly did not impose a general duty to make intra-
quarter disclosures. *See* December 12 Opinion at *19 ("[a]

28

company has no general 'obligation to disclose the results of a
quarter in progress . . . .'"). The Opinion merely recognized
that this principle is not absolute, that "intra-quarter updates
may be required if intervening events trigger a duty to
disclose," and "disclosures under Item 303 were required to be
accurate and complete as of the time [the] Registration
Statement became effective." *Id.* Moreover, even when these two
situations apply, updated disclosures are required only where
the issuer has identified a material trend. *Id.* at \*19. In its
questions posed for § 1292(b) certification, Defendants admit an
"extreme departure from prior reported results" would impose a
duty to disclose, acquiescing to the possibility that a
contravening duty may require disclosures even if it arises
intra-quarter. (*See* Def. Br. at 4.)

Defendants' second contention is similarly
unpersuasive as to the scale of the December 12 Opinion's
precedential impact. As noted in the Opinion, "Facebook's choice
to make the Herman calls to a select group of investors just a
few days before its IPO does not, by itself, trigger a
disclosure obligation." December 12 Opinion at \*19. The Opinion
is explicit and did not hold that disclosure of revised internal
projections to the underwriters of an IPO by itself could
constitute the basis for potentially requiring the company to

29

disclose intra-quarter revenue information to the public. In any case, Defendants' assertion that Facebook's disclosures to the Syndicate Analysts was "industry practice" is highly fact-intensive, *see id.*, and is not a basis for establishing a controlling question of law. *See Adkins v. Stanley*, No. 12 Civ. 7667(HB), 2013 WL 6585389, at *3 (S.D.N.Y. Dec. 13, 2013) ("The 'question of law' certified for interlocutory appeal 'must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record.'") (quoting *Century Pac.*, 574 F. Supp. 2d at 371).

Defendants' third contention, that the December 12 Opinion's finding on misrepresentation is in contravention to holdings of other courts having rejected any effort to find liability for cautionary statements about future reported results, is an issue addressed in the December 12 Opinion. *See* December 12 Opinion at *24 (distinguishing *In re Noah*, 2010 WL 1372709, at *7, and *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 362 (S.D.N.Y. 2008)). As the Opinion noted, "[c]ourts in this Circuit have held that a company's purported risk disclosures are misleading where the company warns only that a risk may impact its business when that risk has already materialized." December 12 Opinion at *21-22. Mere disagreement between cases is not sufficient for finding a controlling

30

question of law. "The fact that there is [] some level of disagreement among the courts does not mean . . . that the standards of 1292(b) are necessarily satisfied." *Credit Bancorp II*, 103 F. Supp. 2d at 227 (denying certification even where the Court cited contrary authority in a "but see" citation) (citing *S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 457, 465 (S.D.N.Y. 2000)). Indeed, Defendants' contention reiterates its main arguments in its motion to dismiss, which is not appropriate for § 1292(b). *Gruss*, 2012 WL 3306166, at *4; *see also Hoffenberg v. U.S.*, No. 00-1686, 2004 WL 2338144, at *5 (S.D.N.Y. Oct. 18, 2004) (denying certification where movant reasserts his previous allegations that were rejected by the court's opinion). Defendants' contentions regarding the misrepresentation holding in the Opinion does not demonstrate the precedential value the Opinion will arguably have.

In the end, the impact the highly fact-specific holdings in the Opinion will have is unsupported by Defendants' contentions, and the precedential value of the Opinion is insufficient "to warrant 1292(b) certification in light of the circumstances of this case." *Credit Bancorp II*, 103 F. Supp. 2d at 227. As such, and given that an interlocutory appeal would not present a "pure" question of law, Defendants fail to establish the existence of a controlling question of law.

31

C. *The December 12 Opinion's Holdings On Item 303 Does Not Present A Substantial Ground For Difference Of Opinion; The Opinion's Holdings On Misrepresentation Does Pose A Substantial Ground For Difference Of Opinion But Is Not Sufficient For Certification*

A substantial ground for difference of opinion exists when "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Capitol Records, LLC v. Vimeo, LLC*, Nos. 09 Civ. 10101(RA), 09 Civ. 10105(RA), 2013 WL 6869648, at *10 (S.D.N.Y. Dec. 31, 2013) (quoting *In re Enron Corp.*, No. 06 Civ. 7828(SAS), 2007 WL 2780394, at *1 (S.D.N.Y. Sept.24, 2007)). The standard is met when a party seeking certification shows there is "genuine doubt as to whether the district court applied the correct legal standard in its order." *Consub Del. LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007), *aff'd*, 543 F.3d 104 (2d Cir. 2008), *abrogated in part on other grounds by Shipping Corp of India, Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009). Where the decision under review is in conflict with other decisions within the same district substantial ground for difference of opinion may exist. *See, e.g.*, *Glatt v. Fox Searchlight Pictures, Inc.*, No. 11 Civ. 6784(WHP), 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013) ("[I]ntra-district split and decisions from other circuits show

32

a substantial basis exists for difference of opinion"); *Gulino v. Board of Educ. of City School Dist. of City of New York*, 907 F. Supp. 2d 492, 526 (S.D.N.Y. 2012) (same).

### 1) There Is No Substantial Ground For Difference Of Opinion On Item 303.

The Court's application of Item 303 in the December 12 Opinion presents no substantial ground for difference of opinion that warrants § 1292(b) certification. The Opinion found that Item 303 places a duty on an issuer "to disclose any trend, event or uncertainty that is 'known and existing at the time of the IPO' that 'was reasonably likely to have a material impact" on the issuer's financial condition'" and "to disclose 'whether, and to what extent' that known trend, event or uncertainty that 'might reasonably be expected to materially impact . . . future revenues'" even if such an trend, event or uncertainty arises intra-quarter. December 12 Opinion, at *17 (quoting *Panther Partners*, 681 F.3d at 121). In arguing that a substantial ground for a difference of opinion exists, Defendants contend that the December 12 Opinion conflicts with decisions in this District that have specifically rejected a duty under Item 303 to disclose interim revenue information. *See In re Noah*, 2010 WL 1372709, at *6-7 (finding plaintiff did not adequately plead

33

facts demonstrating a trend sufficient for Item 303 liability
and that this "conclusion [was] further bolstered by the SEC's
financial reporting regulations, which, at least in the absence
of an extreme deviation from past performance, do not require
publicly traded companies to disclose interim financial data");
*In re Turkcell Iletisim Hizmetler A.S. Sec. Litig.*, 202 F. Supp.
2d 8, 13 (S.D.N.Y. 2001) (plaintiffs' allegation that a drop in
operating income that occurred in an interim quarter completed
ten days before IPO rejected because it was inconsistent with
"the disclosure structure set out by the SEC and the case law").
Defendants further contend that the Opinion is in conflict with
cases in this district that refused to find an obligation to
disclose financial results from an "interim" quarter absent an
"extreme departure from the range of results which could be
anticipated based on currently available information." *In re
Turkcell*, 202 F. Supp. 2d at 12 (quoting *Shaw v. Digital
Equipment Corp.*, 82 F.3d 1194, 1210 (1st Cir. 1996)); *see also
In re N2K, Inc. Sec. Litig.*, 82 F. Supp. 2d 204, 208 (S.D.N.Y.
2000) *aff'd*, 202 F.3d 81 (2d Cir. 2000) (same); *In re Focus
Media Holding Ltd. Litig.*, 701 F. Supp. 2d 534, 542-44 (S.D.N.Y.
2010) (finding an extreme departure from the range of results
which could be anticipated based on currently available
information for an intra-quarter financial result resulted in

34

securities law violations).[6]

        At the core of Defendants' contention is whether an
identified Item 303 trend can trigger a duty to disclose that
trend, including the extent to which that trend is impacting
revenues, if the trend is identified in an interim quarter. This
issue was a question of first impression after *Litwin v.
Blackstone Group, L.P.,* 634 F.3d 706, 716 (2d Cir. 2011), and
*Panther Partners*, two Second Circuit cases found controlling in
the December 12 Opinion. However, "[t]he 'mere presence of a
disputed issue that is a question of first impression, standing
alone, is insufficient to demonstrate substantial ground for
difference of opinion.'" *U.S. ex rel. Colucci v. Beth Israel
Medical Center*, No. 06 Civ. 5033(DC), 2009 WL 4809863, at *1
(S.D.N.Y. Dec. 15, 2009) (quoting *In re Flor*, 79 F.3d 281, 284
(2d Cir. 1996)). Instead, "[i]t is the duty of the district
judge [faced with a motion for certification] to analyze the
strength of the arguments in opposition to the challenged ruling
when deciding whether the issue for appeal is truly one on which
there is a *substantial* ground for dispute." *Id.* (emphasis in
original). Defendants have not shown such a substantial ground.

---

[6] The Circuit Court in *DeMaria v. Andersen*, 318 F.3d 170 (2d Cir. 2003)
rejected a duty to disclose interim financial information in the prospectus
after evaluating the facts based on a materiality standard. *Id.* at 180.
*DeMaria* did not involve an alleged failure to disclose a trend under Item
303.

As an initial matter, almost all of the district court cases cited by Defendants predate *Litwin* and *Panther Partners*. At the same time, *Litwin* and *Panther Partners* did not explicitly overrule those cases.

The cases noted by Defendants refused to recognize a duty to disclose the results of a quarter in progress except only in instances of extreme departure of prior reported results; almost all alleged insufficient disclosures of a company's financial results. *See In re Turkcell*, 202 F. Supp. 2d at 12 (plaintiff alleged defendant company failed to disclose its financial information for the recently completed quarter); *In re N2K*, 82 F. Supp. 2d at 207-08 (plaintiffs alleged that defendants were required to include interim financial data). By contrast, Plaintiffs allege omission of a material trend, not financial data, and the extent of an impact such a trend would have. The exception to the "extreme departure" cases is *Noah*, in which the court refused to recognize an Item 303 duty to disclose intra-quarter rising costs because the court reasoned that "cost . . . is only one step removed from . . . a prominent financial metric." *In re Noah*, 2010 WL 1372709, at *7. *Noah* predates *Litwin* and *Panther Partners*, and the Circuit cases necessarily controlled the analysis in the December 12 Opinion.

36

There may be a substantial ground for disagreement on whether *Litwin* and *Panther Partners* overruled these cases *sub silentio*. But *Litwin* held that a "disclosure obligation" is "trigger[ed]" under Item 303 where a known trend is "reasonably expected" to "materially affect" revenue. 634 F.3d at 721-22. In doing so, *Litwin* applied a materiality standard rather than the "extreme departure" standard of *Turkcell*, *N2K* and *Focus Media* even though one of the omissions alleged occurred three months before the defendant company's IPO and was revealed to analysts two months before. *Id.* at 710, 711-12. This period of time would not, under the "extreme departure" cases, trigger a disclosure duty. *See In re N2K*, 82 F. Supp. 2d at 207 (finding no disclosure obligation for 1998 first quarter financial data with April 15, 1998 IPO); *In re Turkcell*, 202 F. Supp. 2d at 12 (the "two circumstances under which issuers must update the financial information provided in a prospectus" are "financial statements that are more than 135 days old as of the effective date" and "interim financial information when the interim results represent an extreme departure from the range of results which could be anticipated based on currently available information" (quotation marks omitted)); *In re Focus Media*, 701 F. Supp. 2d at 542-44 (finding defendant corporation complied with 135-day SEC Regulation S-X rule and there was no "extreme departure" in

37

the interim quarter). *Panther Partners* similarly found a disclosure duty where the material trend was identified three months before the offering which became more pronounced in the weeks leading up to the offering. 681 F.3d at 116-17. Indeed, while Regulation S-X's 135-day rule provides a general duty, "it is not the only operative SEC regulation. The SEC's general regulations expressly provide that '[i]n addition to the information expressly required to be included in a registration statement, there shall be added such further material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not misleading.'" *DeMaria*, 318 F.3d at 180 (quoting 17 C.F.R. § 230.408). *Litwin* and *Panther Partners* provide clarification as to when the materiality standard should be used and supersedes the 135-day and "extreme departure" rules. In both cases, the trends' materialization in an interim quarter was of no issue.[7]

Defendants' attempt to delineate between when Item 303 triggers a disclosure duty and whether Item 303, once triggered,

---

[7] Defendants' argument that "[a]t most, *Litwin* and *Panther Partners* require an issuer to disclose an ongoing trend expected to have a material *future* impact" that this is different from the December 12 Opinion's holding "that an issuer is required to disclose a revenue impact it is allegedly 'currently experiencing' during a quarter in progress at the time of an IPO," (Def. Reply at 3), neglects that Facebook's May 8, 2012 revenue projection cut both second quarter and year 2012 *projected* revenues, and thus revealed a current trend that had a material *future* impact in the second quarter and year 2012, December 12 Opinion, at *8.

also requires an issuer to disclose the current impact the trend
is having on revenues during a quarter in progress confounds the
issue. (Def. Reply at 4.) While the December 12 Opinion draws
from dicta in *Litwin* and *Panther Partners*, Defendants' reading
of *Litwin* and *Panther Partners* ignores the Circuit Court
"emphasiz[ing]" that "the key information that plaintiffs assert
should have been disclosed is whether, and to what extent, the
particular known trend, event, or uncertainty might have been
reasonably expected to materially affect" the defendant company.
*Panther Partners*, 681 F.3d at 121 (quoting *Litwin*, 634 F.3d at
718-19). In any event, the financial statements and results at
issue in *Turkcell*, *N2K* and *Focus Media* are distinct from
disclosures on the extent a material trend is having or will
have on a company.

Defendants cite to *Arfa v. Mecox Lane Ltd.*, No. 10
Civ. 9053, 2012 WL 697155 (S.D.N.Y. Mar. 5, 2012), as a decision
after *Litwin* that rejected a duty to disclose intra-quarter
financial statements. *Id.* at *9-10. However, *Arfa* merely notes
that there is no general obligation to disclose the results of a
quarter in progress. *Id.* at *9 n.1. The prospectus at issue in
*Arfa* also quantified the allegedly undisclosed trends, which
this Court found adequate. *See id.* at *9-10.

39

Defendants have not provided any other cases that have reviewed intra-quarter disclosures post-*Litwin*, and none of the cases cited were determined after *Panther Partners*. While there exists a "disputed issue that is a question of first impression" on Item 303, *Penn. Pub. Sch. Employees' Ret. Sys. V. Bank of Am. Corp.*, 874 F. Supp. 2d 341, 371 (S.D.N.Y. 2012) (quoting *Flor*, 79 F.3d at 284), and the cases allegedly in conflict with the December 12 Opinion represent "difficult" issues, being merely a "difficult ruling" is not an adequate reason for interlocutory appeal under § 1292(b), *Ntsebeza v. Daimler A.G. (In re South African Apartheid Litig.)*, 624 F. Supp. 2d 336, 339 (S.D.N.Y. 2009) ("Interlocutory appeal is . . . not intended as a vehicle to provide early review of difficult rulings in hard cases."). Given such, there is no true substantial ground for dispute, and § 1292(b) relief is not justified for Defendants' proposed question regarding Item 303. *See Wasau Bus. Ins. Co. v. Turner Constr. Co.*, 151 F. Supp. 2d 488, 491 (S.D.N.Y. 2001) ("A mere claim that the district court's ruling was incorrect does not demonstrate a substantial ground for a difference of opinion.").

### 2) There Is Substantial Grounds For Difference Of Opinion For Material Misrepresentation

The December 12 Opinion held that Facebook's

40

"purported risk warnings misleadingly represented that" an effect on revenue from increased mobile usage "was merely possible when, in fact, it had already materialized." December 12 Opinion at *22. Defendants' cautionary language was used "as a sword to impose liability." *In re FBR*, 544 F. Supp. 2d at 361. As the Opinion recognized, other cases in this District have chosen not to recognize liability from such cautionary language; these cases held that words like "may" and "could" that warn of a potential impact on future reported revenues could not be used as a sword. *See, e.g.*, *DeMaria*, 318 F.3d at 181-82 (even though the company warned that it "may incur operating losses in the future," it "can hardly be said that, by having not been explicitly told of the company's actual first quarter losses, a reasonable investor would have been misled") (internal quotations omitted); *In re Noah*, 2010 WL 1372709, at *7-8 (prospectus said "could" but the "forward-looking recitation of risks facing [Defendant] did not imply that none of these risks . . . would affect [Defendant's] most recent [unreported] fiscal quarter"); *In re FBR*, 544 F. Supp. 2d at 360-63 (rejecting plaintiff's argument that the company's warning that "any failure to comply [with securities regulations] could have a material effect on our operating results" misleadingly "implied that [the company] had complied with its regulatory obligations"); *see also In re Leapfrog Enters., Inc. Sec.*

41

*Litig.*, 527 F. Supp. 2d 1033, 1048 (N.D. Cal. 2007) (rejecting claim that "defendants should have stated that the adverse factors 'are' affecting financial results rather than 'may' affect financial results"). On the other hand, courts have also held that "half-truths," or "literally true statements that create [] materially misleading impression[s]" are actionable under the federal securities laws. *Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 130 (2d Cir. 2011) (quoting *SEC v. Gabelli*, 653 F.3d 49, 57 (2d Cir. 2011)); *see also*, *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996) ("[E]ven apparently specific risk disclosures like those in [a defendant company's] prospectus are misleading if the risks are professionally stamped in internal undisclosed analyses . . . as significantly greater or more certain than those portrayed in the prospectus."); *In re Van der Moolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388, 400, 415 (S.D.N.Y. 2005) (statements purporting to warn that a company's business "could" be negatively impacted "if" it failed to comply with industry regulations were materially misleading where the company was violating industry regulations at the time it issued those purported warnings); *Dodona I, LLC v. Goldman, Sachs & Co.*, 847 F. Supp. 2d 624, 646 (S.D.N.Y. 2012) ("Since the Offering Circulars contained affirmative representations regarding the risks of investing, . . . Defendants had a duty to

42

ensure that those statements were accurate and complete."); *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 495 (S.D.N.Y. 2011) ("To be 'meaningful,' a 'cautionary statement must discredit the alleged misrepresentations to such an extent that the 'risk of real deception drops to nil.'" (quoting *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1033 (S.D. Cal. 2005))).

Since "there is conflicting authority on the issue," a substantial ground for difference of opinion on the misrepresentation issue exists. *Capital Records*, 2013 WL 6869648, at *10. Nonetheless, an interlocutory appeal would not materially advance the ultimate termination of this litigation and the issues involved do not involve controlling questions of law. Such conflicting authority is insufficient to warrant a Section 1292(b) appeal.

43

## IV.  Conclusion

Based upon the conclusions set forth above, Defendants' motion for interlocutory appeal is denied.

It is so ordered.

New York, NY
March 7 , 2014

ROBERT W. SWEET
U.S.D.J.

44