UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X

IN RE FACEBOOK, INC., IPO SECURITIES AND
DERIVATIVE LITIGATION,

                                           MDL No. 12-2389

-----------------------------------------X

ROBERT LOWINGER,

                    Plaintiff,

                                           13 Civ. 4016 (RWS)
        - against -
                                               OPINION
MORGAN STANLEY & CO. LLC, J.P. MORGAN
SECURITIES LLC, GOLDMAN SACHS & CO., and
FACEBOOK, INC.,

                    Defendants.

-----------------------------------------X

A P P E A R A N C E S:

                Attorneys for the PLAINTIFF
                ABRAHAM, FRUTCHTER & TWERSKY, LLP
                One Penn Plaza, Suite 2805
                New York, NY 10119
                By:  Jeffrey S. Abraham, Esq.
                     Mark S. Hamill, Esq.
                     Philip T. Taylor, Esq.


                Attorneys for DEFENDANTS
                DAVIS POLK & WARDWELL, LLP
                450 Lexington Avenue
                New York, NY 10017
                By:  James P. Rouhandeh, Esq.
                     Charles S. Duggan, Esq.
                     Andrew Ditchfield, Esq.

**Sweet, D.J.**

This case arises out of the litigations stemming from the May 18, 2012 initial public offering ("IPO") of Facebook, Inc. ("Facebook"). Pursuant to the transfer order from the United States Judicial Panel on Multidistrict Litigation (the "MDL Panel"), entered on October 4, 2012, 41 actions relating to this underlying event are presently before this Court.

In the instant motion, Plaintiff Robert Lowinger ("Plaintiff" or "Lowinger") has moved pursuant to Local Civil Rule 6.3 for reconsideration of the conclusions reached by this Court in the Opinion and Order dated May 2, 2014. *See In re Facebook, Inc., IPO Sec. and Deriv. Litig.*, 986 F. Supp. 2d 544 (S.D.N.Y. 2014) (the "Opinion"). The Opinion granted the motion to dismiss of Defendants Morgan Stanley & Co. LLC ("Morgan Stanley"), J.P. Morgan Securities LLC ("J.P. Morgan"), and Goldman Sachs & Co. ("Goldman Sachs" or "Goldman") (collectively, the "Lead Underwriters") against the complaint filed by the Plaintiff (the "Complaint").[1] In the alternative, Plaintiff has moved for leave to amend the Complaint.

---

[1] The Complaint seeks disgorgement of "short-swing" profits allegedly earned by the Lead Underwriters and Facebook, Inc. ("Facebook") from underwriting activities performed in connection with the IPO under Section 16(b) of the Securities Exchange Act of 1934 ("Exchange Act").

For the reasons set forth below, Plaintiff's motions are denied.

## Prior Proceedings

The procedural history of this litigation has been detailed extensively in various opinions by this Court. *See, e.g.*, *In re Facebook, Inc., IPO Sec. & Deriv. Litig*, 986 F. Supp. 2d 487, 492-93 (S.D.N.Y. 2013). Familiarity with the general background of this case is provided in the Opinion and is assumed.

With respect to the instant action, the Complaint alleges that Plaintiff is a Facebook shareholder and that, on September 12, 2012, he made a demand on Facebook that it seek disgorgement of the profits obtained by the Lead Underwriters based on the facts alleged in the Complaint. (Compl. ¶ 47.)

When Facebook declined to bring suit, the instant action was filed on June 12, 2013. (Compl. ¶ 49.)

On October 16, 2013, the Lead Underwriters moved to dismiss the Complaint. The Opinion granted the Lead Underwriters' motion.

On May 16, 2014, Plaintiff filed the instant motion seeking reconsideration of the Opinion. This motion was marked fully submitted on June 11, 2014.

## The Applicable Legal Standards

*Motions for Reconsideration*

The standards governing motions under Local Rule 6.3 along with Fed. R. Civ. P. 59(e) and 60(b) are the same, and a court may grant reconsideration where the party moving for reconsideration demonstrates an "intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Schoolcraft v. City of New York*, 298 F.R.D. 134, 136 (S.D.N.Y. 2014) (quoting *Henderson v. Metro. Bank & Trust Co.*, 502 F. Supp. 2d 372, 375–76 (S.D.N.Y. 2007)); *see also Parrish v. Sollecito,* 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) ("Reconsideration may be granted to correct clear error, prevent manifest injustice or review the court's decision in light of the availability of new evidence.") (citing *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992)).

Reconsideration of a court's prior order under Local Rule 6.3 or Fed. R. Civ. P. 59(e) or 60(b) "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Ferring B.V. v. Allergan, Inc.,* No. 12 Civ. 2650(RWS), 2013 WL 4082930, at *1 (S.D.N.Y. Aug. 7, 2013) (quoting *Sikhs for Justice v. Nath,* 893 F. Supp. 2d 598, 605 (S.D.N.Y. 2012)). Accordingly, the standard of review applicable to such a motion is "strict." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995).

The burden is on the movant to demonstrate that the Court overlooked controlling decisions or material facts that were before it on the original motion, and that might "'materially have influenced its earlier decision.'" *Anglo Am. Ins. Group v. CalFed, Inc.,* 940 F. Supp. 554, 557 (S.D.N.Y. 1996) (quoting *Morser v. AT&T Info. Sys.,* 715 F. Supp. 516, 517 (S.D.N.Y. 1989)); *see also Analytical Surveys, Inc. v. Tonga Partners, L.P.,* 684 F.3d 36, 52 (2d Cir. 2012) ("[T]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."). A party seeking reconsideration may neither repeat "arguments already briefed, considered and decided," nor "advance new facts, issues or arguments not previously presented to the Court." *Schonberger v.*

*Serchuk,* 742 F. Supp. 108, 119 (S.D.N.Y. 1990) (citations omitted).

The reason for the rule confining reconsideration to matters that were "overlooked" is to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Polsby v. St. Martin's Press, Inc.,* No. 97-690(MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) (citation and quotation marks omitted). Motions for reconsideration "are not vehicles for taking a second bite at the apple, ... and [the court] [should] not consider facts not in the record to be facts that the court overlooked." *Rafter v. Liddle,* 288 Fed. App'x 768, 769 (2d Cir. 2008) (citation and quotation marks omitted). Thus, a court must narrowly construe and strictly apply Local Rule 6.3, so as to avoid duplicative rulings on previously considered issues, and to prevent the rule from being used as a substitute for appealing a final judgment. *See In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.,* 08 M.D.L. No. 1963, 2009 WL 2168767, at *1 (S.D.N.Y. Jul. 16, 2009) ("A motion for reconsideration is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved.") (citation and quotation omitted).

*Leave to Amend*

6

Leave to amend "should [be] freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). "The standard governing motions to amend is a 'permissive' one that is informed by a 'strong preference for resolving disputes on the merits.'" *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 440 (S.D.N.Y. 2012) (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011). There is a "relaxed standard" for motions to amend. *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999). "[I]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *First Interregional Equity Corp. v. Haughton*, 91 Civ. 0143 (RWS), 1993 WL 361576, at *2 (S.D.N.Y. Sept. 16, 1993) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "[A]bsent undue delay, bad faith, undue prejudice, or futility," the Rule 15(a)(2) "mandate" should be heeded upon "the informed, careful judgment and discretion of the Trial Judge." *Crawford v. Recovery Partners*, 12 Civ. 8520, 2014 WL 1695239, at *1 (S.D.N.Y. Apr. 28, 2014) (quoting *Foman*, 371 U.S. at 182 and *Freeman v. Continental Gin Co.*, 381 F.2d 459, 468 (5th Cir. 1967).

**Controlling Facts or Decisions Were Not Overlooked And Clear Error Did Not Occur**

Plaintiff contends that the Opinion: (1) overlooked key allegations relating to the liability of all the Lead Underwriters; (2) overlooked certain allegations with respect to the claims asserted against Goldman Sachs; and (3) misapprehends the available case law and SEC rules. None of these arguments rise to the standard of correcting a clear error or preventing manifest injustice.

As an initial matter, the majority of Plaintiff's arguments do not raise any issues overlooked by the Opinion. Instead, Plaintiff reasserts points that were addressed in the Opinion, which, in motions for reconsideration, is "generally [to] be denied." *See Analytical Surveys,* 684 F.3d at 52 ("[T]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.").

*The Opinion Did Not Overlook Allegations Relating To Liability of Lead Underwriters*

Plaintiff contends that the Opinion overlooked key allegations regarding the Lead Underwriters when finding that they did not constitute a group under Section 13(d) of the Exchange

Act. However, Opinion did not overlook the contentions Plaintiff relies upon as grounds for reconsideration.

Plaintiff urges reconsideration because the Opinion erred in noting that the Lead Underwriters were under no "reciprocal agreement" to not sell shares of Facebook common stock they owned prior to the IPO. (Pl. Mem. at 1.) Plaintiff also contends that the Opinion erred when it "acknowledge[d] that the [lock-up] agreement[s] of the Selling Shareholders[2] 'not to sell or otherwise dispose of' Facebook common stock for periods following the IPO would constitute a proper [Section 13(d)] group action" if not for Goldman Sachs "directly [selling] stock during the restricted periods," but that "open market trading does not mean that Goldman Sachs was free to sell Facebook stock which Goldman Sachs had acquired prior to the IPO." (Id. at 1-2 (emphasis removed).)

The Opinion did not contain any statement that "acknowledges" that the alleged commitment by each Selling Shareholder "not to sell or otherwise dispose of" Facebook common stock following the IPO would constitute group action for purposes of Section 13(d). The Opinion stated that lock-up agreements by

---

[2] "Selling Shareholders" are Facebook shareholders who sold shares of the company's common stock in the IPO.

themselves are insufficient to establish a Section 16(b) group. *See* Opinion, 986 F. Supp. 2d at 553 (citing *Chechele v. Scheetz*, 819 F. Supp. 2d 342, 348-49 (S.D.N.Y. 2011), *aff'd*, 466 F. App'x 39 (2d Cir. 2012)). The Opinion's notation that the Lead Underwriters were "under no reciprocal agreement" not to sell Facebook stock, Opinion, 986 F. Supp. 2d at 552, is entirely consistent with the allegations in the Complaint, which contains no allegation that the Lead Underwriters had made any such agreement. Plaintiff's assertion in this motion that the Selling Shareholders were free to sell stock acquired on the secondary market does not support Plaintiff's claim that the Lead Underwriters combined in any way with the Selling Shareholders.

Plaintiff contends that while the Opinion found that lock-up agreements "did not create any kind of 'single unit'" as the Selling Shareholders and Lead Underwriters "acted independently in relation to the acquiring or selling the Facebook stock prior to, during and following the IPO," the Opinion failed to take into account that Goldman Sachs was a Lead Underwriter as well as a seller and holder of Facebook stock. (Pl. Mem. at 2-3.)

However, Plaintiff's assertion that Goldman Sachs was a Selling Shareholder is a new assertion made by the Plaintiff in this motion for reconsideration. Reconsideration motions are not

"a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys*, 684 F.3d at 52 (internal quotation marks omitted). While *Analytical Surveys* involved an effort by the defendant after judgment had been entered to seek reconsideration, the case involved reconsideration under Rule 59, and the standard is the same whether it is for reconsideration of a motion to dismiss or summary judgment. *Compare Analytical Surveys*, 684 F.3d at 52, *with Childers v. New York and Presbyterian Hosp.*, Nos. 13 Civ. 5414(LGS) & 13 Civ. 5899(LGS), 2014 WL 2815676, at *20 (S.D.N.Y. June 23, 2014) (noting in the reconsideration of a motion to dismiss that "[a] party seeking reconsideration is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings" (citing *Wechsler v. Hunt Health Sys., Ltd.*, No. 94 Civ. 8294, 2004 WL 2210261, at *2 (S.D.N.Y. Sept. 30, 2004))). Plaintiff impermissibly raises this contention in this instant motion.

In any event, Plaintiff's argument provides no support for his claim that Lead Underwriters combined with the Selling Shareholders for the purpose of acquiring, holding, voting or disposing of Facebook stock. The Opinion's holding that "the lock-

11

up agreements did not create any kind of 'single unit,'" Opinion,
986 F. Supp. 2d at 553, was not premised on the assertion "that
one cannot be both a distributor of stock in an IPO ... on the one
hand, and a seller and holder of stock ... on the other hand."
(Pl. Mem. at 2-3.) Instead, the Opinion rejected Plaintiff's
contention that the lock-up agreements caused the Lead
Underwriters to form a "single unit" with the Selling Shareholders.
Opinion, 986 F. Supp. 2d at 553. As noted in the Opinion, "lock-
up agreements by themselves are not sufficient to create joined
liability under the statute" or to establish alignment of purpose
among the alleged group members. Opinion, 986 F. Supp. 2d at 553
(citing *Scheetz*, 819 F. Supp. 2d at 348-49). Goldman's actions to
sell Facebook shares on the open market does not provide any
"factual content" or "supporting allegations" to demonstrate any
alignment of interests between the Lead Underwriters and Selling
Shareholders *See Scheetz*, 819 F. Supp. 2d at 349.


        Plaintiff further contends that the Opinion's finding
that "[t]he lock-up agreements ... did not confer any combined
benefit on the parties" was also an error as it "assisted
marketability by assuring investors that the Selling Shareholders'
remaining holdings would not be immediately sold into the market."
(Pl. Mem. at 3 (citing Opinion, 986 F. Supp. 2d at 352-353).)
Plaintiff contends that the lock-up agreements were instrumental

to the IPO, which benefitted both the Selling Shareholders and the Lead Underwriters. (*Id.*)

Nonetheless, the Selling Shareholders and Lead Underwriters had separate and distinct objectives and roles in connection with the IPO. The fact that two groups benefitted from an IPO does not mandate an inference of coordination and concerted action for Section 16(b) purposes. An opposite conclusion would compel the finding of a Section 16(b) group on virtually every underwritten securities offering.

Plaintiff also argues that the Opinion erred as the result of an impermissible inference against Plaintiff, despite that in deciding a motion to dismiss "all reasonable inferences" should be drawn "in plaintiff's favor." (Reply at 3 (citing *In re Giant Interactive, Inc. Sec. Litig.*, 643 F. Supp. 2d 562, 568 (S.D.N.Y. 2009)). None of the factual allegations *compel* or even *support* the finding of coordination or alignment of interests between the alleged group members. Instead, Plaintiff's primary support is the lock-up agreements, which do not by themselves provide the necessary factual allegations to allege a claim under Section 16(b). *See Scheetz*, 819 F. Supp. 2d at 348-49. As such, Plaintiff has not raised any overlooked facts or controlling law or any clear error that justifies granting his motion.

13

*The Opinion Did Not Overlook Allegations Relating To Goldman Sachs*

Plaintiff contends that the Opinion overlooked allegations pertaining to Goldman that "demonstrates" Goldman's membership of a group with the Selling Shareholders. (Reply at 4.) Plaintiff points to its allegation that Goldman was not "any less bound to the terms of the lock-up agreements than any other Selling Shareholder" (*id.*), and that "the absence of divergent interests or treatment between defendant Goldman Sachs, on the one hand, and the other selling Shareholders, on the other hand, demonstrates that they ... were, in fact, members of a single group ... subject to 16(b) liability" (*id.*).

As an initial matter, this argument was raised for the first time in Plaintiff's motion for reconsideration. Consequently, rejection of this argument is appropriate given its impermissible timing. *See Childers*, 2014 WL 2815676, at *20.

Furthermore, allegations that shareholders who executed separate lock-up agreements are similarly situated in goals or interests does not plead the existence of a Section 13(d) group; additional evidence is required to support such findings. *See*

*Scheetz*, 819 F. Supp. 2d at 348-49 ("In the absence of additional evidence, however, other courts have rejected allegations of group conduct based solely on the existence of parallel lock-up agreements with a third party .... Plaintiff appears to concede that the Lock-Up Agreements, standing alone, are not enough to allege the existence of a shareholder group. The Court agrees." (internal citations omitted)). Mere absence of divergent interests does not demonstrate that purported members of a group have combined for one of the specific purposes enumerated by the statute and SEC regulations. As such, Plaintiff's contentions fails to plausibly support an inference that Goldman and the Selling Shareholders had an agreement to act together for one of the statutory or regulatory purposes. *See CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP*, 654 F.3d 276, 284 (2d Cir. 2011) (reversing district court's finding that defendants had formed a group because the court "did not explicitly find a group formed for the purpose of acquiring CSX securities").

*The Opinion Did Not Commit Clear Errors in Law*

Plaintiff contends that the Opinion contained errors of law: First, in misapplying Second Circuit precedent in finding that "the existence of a lock-up agreement, 'standing alone,' is insufficient to establish a Section 16(b) group," (Pl. Mem. at 5

15

(quoting Opinion, 986 F. Supp. 2d at 553)); and second, in noting

that lock-up agreements in connection with IPOs are "standard

industry practice" which weighs against finding the formation of

a group in this action, (id. (quoting Opinion, 986 F. Supp. 2d at

553)). Plaintiff previously presented in its brief in opposition

to the motion to dismiss each of the cases cited in this instant

motion. That the Opinion rejected Plaintiff's interpretation of

those cases illustrates that Plaintiff seeks "a second bite at the

apple," an impermissible basis for reconsideration. *Analytical

Surveys*, 684 F.3d at 52.


     With regards to Plaintiff's contention that the Opinion

misconstrued Second Circuit precedent when it applied *Chechele v.

Scheetz* (id.), the Opinion is consistent with Second Circuit

precedent. In *Scheetz*, the district court held that allegations

that individual shareholders had entered into separate lock-up

agreements were insufficient by themselves to plead a claim that

they had formed a Section 16(b) group absent supporting allegations

that they had agreed to act together for the purpose of holding or

disposing of the issuer's stock. *See* 819 F. Supp. 2d at 348-49.

The Second Circuit affirmed the district court's decision. *See* 466

F. App'x at 41. Absent clear guidance to the contrary, *Scheetz* and

the Second Circuit's affirmation of the case is dispositive. The

Opinion followed such precedent in noting that the plausibility of

a group inference in the context of lock-up agreements "stands and falls with the factual content of the *supporting allegations*." Opinion, 986 F. Supp. 2d at 553 (quoting *Scheetz*, 819 F. Supp. 2d at 349) (emphasis in original).

Plaintiff contends that the lock-up agreements at issue here are distinguishable from those in *Scheetz* because they "had a discrete and clearly defined objective" (Pl. Mem. at 5) "to control the supply of Facebook shares available to the market, which, in turn, was expected to provide support for the trading price of Facebook common stock" (Compl. ¶ 16). However, what matters for purposes of Section 16(b) is whether the purported group members combined for one of enumerated purposes. Complaints that lack allegations pleading a combination for such purpose must be dismissed. *See Scheetz*, 819 F. Supp. 2d at 349; *Quintel*, 249 F.3d at 126-27.

Plaintiff has erroneously relied on *Morales v. Quintel Entertainment, Inc.*, 249 F.3d 115 (2d Cir. 2001), and *Schaffer v. CC Investments LDC*, NO. 99 Civ. 2821 (VM), 2002 WL 31869391 (S.D.N.Y. Dec. 20, 2002). The Second Circuit in *Quintel* did recognize that lock-up provisions can constitute supplemental evidence of a "mutual agreement," *see Quintel*, 249 F.3d at 126, but the Circuit Court explicitly stated that it "need not decide,

17

and [does] not purport to decide whether such lock-up provisions, considered in isolation, would suffice to establish such an agreement, *id.* at 127. Instead, liability was found "in light of the other facts." *Id.* at 126. Similarly, in *Schaffer*, the district court based its ruling on the lock-up agreements *and* "other evidence of agreement ... with which the lock-up provision [was] considered in toto." 2002 WL 31869391, at *8 n.7.

As to Plaintiff's assertion that the Opinion erred insofar as it relied upon lock-up agreements being "standard industry practice" in IPOs, Plaintiff asserts that "the SEC permits this 'standard industry practice' only where the underwriters act in good faith" (Pl. Mem. at 5), but that the Lead Underwriters did not do so. Plaintiff notes that there are categories of group activity exempt from Section 13(d) reporting requirements and Section 16(b) liability, including the blanket exemptions in SEC Rules 13d-5(b)(2) and 16a-1(a)(1) and the good faith exemption in 16a-7(a). (*Id.* at 6.)

Plaintiff's argument relies on the notion that underwriters in a public offering are always subject to Section 16(b) liability unless they demonstrate that one of the exemptions established under the SEC's rules applies. This contention is belied by the controlling precedents which make clear that

18

Plaintiff is required to allege facts showing a combination for one of the enumerated statutory purposes, and that the mere existence of a lock-up agreement is insufficient for such a showing. *See Scheetz*, 819 F. Supp. 2d at 349. SEC Rules 16a-7 and 13d-3(d)(4) confer a good faith exemption to underwriters, but consideration of whether Section 16(b) applies and liability thereunder must be given even if these exemptions are not met. *See Chechele v. Sperling*, 12-1769-CV, 2014 WL 3377164, at *6-7 (2d Cir. July 11, 2014) (upholding dismissal of Section 16(b) claim where agreements were not subject to total exemption and defendants did not purchase or sell shares on call options). Consequently, Plaintiff's contentions raised in the instant motion do not permit granting reconsideration.

**Leave To Amend the Complaint Is Denied**

The Opinion dismissed the Complaint against the Lead Underwriters for its failure to plead sufficient allegations to demonstrate the existence of a group for Section 16 liability, Opinion, 986 F. Supp. 2d at 553-54, and against Goldman as "there is no allegation in the Complaint as to Goldman's ownership status." *Id.* at 555. Notwithstanding the lenient standard for a leave to amend, "[a] plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court

of appeals how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA v. Giftports, Inc.*, No. 12-4174-cv, 2014 WL 3408570, at *9 (2d Cir. July 15, 2014); *see also Berger v. Apple REIT Ten, Inc.*, 563 Fed. App'x 81 (2d Cir. 2014) (affirming district court's denial of plaintiff's request for leave to amend "because the plaintiffs had not explained what new allegations they would add that might cure the deficiencies in the complaint"). As Plaintiff has not identified any new facts or allegations that would permit survival of his Section 16(b) claim or how an amended complaint may differ from the Complaint, Plaintiff's motion for leave to amend is denied.

## Conclusion

Based on the conclusions set forth above, Plaintiff's motions for reconsideration and leave to amend are denied.

It is so ordered.

Dated:     New York, New York
           ~~August~~   , 2014
              9-1-

Robert W. Sweet, U.S.D.J.