**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE FACEBOOK, INC. IPO SECURITIES
AND DERIVATIVE LITIGATION

MDL No. 12-2389 (RWS)

---

This document relates to:  NASDAQ Actions

---

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**CONSENT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

---

EC.58443.1

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 4

      A.    The Litigation ........................................................................................ 4

      B.    The Proposed Settlement .................................................................... 6

ARGUMENT ......................................................................................................... 6

    I.    THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY
         APPROVED ................................................................................................ 6

      A.    Standards for Preliminarily Approving the Proposed Settlement .............. 6

      B.    The Proposed Settlement is the Result of Arm's-Length
            Negotiations By Highly Experienced Counsel ........................................... 7

      C.    The Proposed Settlement Falls Within the Range of Possible
            Approval ................................................................................................ 8

          1.    The Complexity, Expense and Likely Duration of the
                 Litigation Supports Approval of the Settlement ............................. 9

          2.    The Reaction of the Class to the Settlement ................................. 10

          3.    The Stage of the Proceedings ........................................................ 10

          4.    The Risk of Establishing Liability and Damages ......................... 11

          5.    The Risk of Maintaining the Class Action Through Trial ........... 12

          6.    The Ability of Defendants to Withstand a Greater Judgment ....... 12

          7.    The Range of Reasonableness of the Settlement in Light of
                 the Best Possible Recovery and the Attendant Risks of
                 Litigation ....................................................................................... 12

    II.    THE CLASS SHOULD BE CERTIFIED TO EFFECUTATE THE
         SETTLEMENT ........................................................................................ 13

      A.    The Proposed Class Satisfies the Requirements of Rule 23(a) ................ 14

          1.    Numerosity .................................................................................... 14

          2.    Commonality ................................................................................. 15

EC.58443.1

3. Typicality ..................................................................... 16

4. Adequacy of Representation ......................................... 16

B. The Proposed Class Satisfies the Requirements of Rule 23(b)(3) ............ 17

1. Common Questions of Law and Fact Predominate in This Action.......................................................................... 18

2. A Class Action is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Controversy.............. 19

III. CO-LEAD COUNSEL SHOULD BE APPOINTED CLASS COUNSEL .......... 20

IV. THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE .......................... 21

V. THE PROPOSED FORM OF NOTICE WILL PROVIDE THE BEST NOTICE PRACTIABLE UNDER THE CIRCUMSTANCES ............................ 22

VI. THE CLAIMS ADMINSTRATOR AND PROOF OF CLAIM METHODOLOGY IS PROPER............................................................ 23

VII. IT IS APPROPRIATE TO SCHEDULE A FAIRNESS HEARING ................... 23

VIII. PROPOSED SCHEDULE OF EVENTS .............................................. 24

CONCLUSION ...................................................................................... 25

EC.58443.1

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)............................................................................... 18, 19, 22

*Bano v. Union Carbide Corp.,*
  273 F.3d 120 (2d Cir. 2001)................................................................................ 8

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974) *abrogated by Goldberger v. Integrated Res., Inc.,*
  209 F.3d 43 (2d Cir. 2000).................................................................. 2, 7, 9, 11

*D'Amato v. Deutsche Bank,*
  236 F.3d 78 (2d Cir. 2001)............................................................................. 11

*Damassia v. Duane Reade, Inc.,*
  250 F.R.D. 152 (S.D.N.Y. 2008) .................................................................... 20

*Diaz v. Eastern Locating Serv., Inc.,*
  No. 10 Civ. 4082(JCF), 2010 WL 2945556 (S.D.N.Y. July 22, 2010) ........... 20

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974)........................................................................................ 22

*Fields v. Oliver's Stores, Inc.,*
  No. 87 CIV. 0894 (WK), 1992 U.S. Dist. LEXIS 18280 (S.D.N.Y. Mar. 23, 1992) ....... 22

*Flores v. One Hanover, LLC,*
  No. 13 Civ. 5184(AJP), 2014 WL 2567912 (S.D.N.Y. June 9, 2014) ........... 12

*Freeland v. AT&T Corp.,*
  238 F.R.D. 130 (S.D.N.Y. 2006) .................................................................... 15

*Gordon v. Hunt,*
  117 F.R.D. 58 (S.D.N.Y. 1987) ...................................................................... 22

*Hicks v. Stanley,*
  No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y.  Oct. 24, 2005)........... 9

*In re "Agent Orange" Prod. Liab. Litig.,*
  818 F.2d 145 (2d Cir. 1987)............................................................................ 15

*In re "Agent Orange" Prod. Liab. Litig.,*
  611 F. Supp. 1396, 1411 (E.D.N.Y. 1985))
  *aff'd in part, rev'd in part,* 818 F.2d 179 (2d Cir. 1987).................................. 22

EC.58443.1

*In re Advanced Battery Techs., Inc. Sec. Litig.,*
    298 F.R.D. 171 (S.D.N.Y. 2014) .................................................................. 11

*In re Alloy, Inc., Sec. Litig.,*
    No. 03 Civ. 1597(WHP), 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ........................... 9

*In re Am. Bank Note Holographics Inc.,*
    127 F. Supp. 2d 418 (S.D.N.Y. 2001).......................................................... 21

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,*
    No. MDL 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)............................................. 9

*In re Austrian & German Bank Holocaust Litig.,*
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)
    *aff'd. sub nom. D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001)............................................................... 7, 8, 12

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.,*
    909 F. Supp. 2d 259 (S.D.N.Y. 2012).......................................................... 13

*In re Citigroup Inc. Sec. Litig.,*
    965 F. Supp. 2d 369 (S.D.N.Y. 2013).......................................................... 11

*In re Currency Conversion Fee Antitrust Litig.,*
    No. 01 MDL 1409, M21-95, 2006 WL 3253037 (S.D.N.Y. Nov. 8, 2006) ...................... 6

*In re Drexel Burnham Lambert Grp, Inc.,*
    960 F.2d 285 (2d Cir. 1992).................................................................. 17

*In re Elan Sec. Litig.,*
    385 F. Supp. 2d 363 (S.D.N.Y. 2005).......................................................... 11

*In re Exxon Valdez,*
    229 F.3d 790 (9th Cir. 2000) ................................................................. 8

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
    No. 02-CV-3400 (cm)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ............... 8, 12

*In re Global Crossing Sec. & ERISA Litig.,*
    225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................... 10, 12

*In re Initial Pub. Offering Sec. Litig.,*
    243 F.R.D. 79 (S.D.N.Y. 2007) .............................................................. 14

*In re Initial Pub. Offering Sec. Litig.,*
    471 F.3d 24 (2d Cir. 2006)................................................................... 13

v

*In re Marsh & McLennan Cos. Inc. Sec. Litig.*,
 No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)........................... 13

*In re Marsh ERISA Litig.*,
 265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................................ 8

*In re Med. X-Ray Film Antitrust Litig.*,
 No. CV-93-5904, 1997 WL 33320580 (E.D.N.Y. Dec. 26, 1997) ...................................... 2

*In re MetLife Demutualization Litig.*,
 262 F.R.D. 205 (E.D.N.Y. 2009) ........................................................................................ 8

*In re MetLife Demutualization Litig.*,
 689 F. Supp. 2d 297 (S.D.N.Y. 2010).............................................................................. 12

*In re NASDAQ Market-Makers Antitrust Litig.*,
 169 F.R.D. 493 (S.D.N.Y. 1996) ...................................................................................... 16

*In re NASDAQ Market-Makers Antitrust Litig.*,
 176 F.R.D. 99 (S.D.N.Y. 1997) .......................................................................................... 6

*In re Nigeria Charter Flights Contract Litig.*,
 233 F.R.D. 297 (E.D.N.Y. 2006) ...................................................................................... 19

*In re NTL, Inc. Sec. Litig.*,
 No. 02 Civ. 3013 LAK AJP, 2006 WL 330113 (S.D.N.Y. Feb. 14, 2006) ..................... 13

*In re NYSE Specialists Sec. Litig.*,
 260 F.R.D. 55 (S.D.N.Y. 2009) ........................................................................................ 15

*In re Oracle Sec. Litig.*,
 No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994) ............................... 21

*In re Oxford Health Plans, Inc. Sec. Litig.*,
 191 F.R.D. 369 (S.D.N.Y. 2000) ...................................................................................... 15

*In re PaineWebber Ltd. P'ships Litig.*,
 171 F.R.D. 104 (S.D.N.Y. 1997) aff'd 117 F.3d 721 (2d. Cir. 1997) ................... 8, 12, 22

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
 163 F.R.D. 200 (S.D.N.Y. 1995) .................................................................................. 7, 13

*In re SCOR Holding (Switzerland) AG Litig.*,
 537 F. Supp. 2d 556 (S.D.N.Y. 2008).............................................................................. 16

*In re Sumitomo Copper Litig.*,
 189 F.R.D. 274 (S.D.N.Y. 1999) .................................................................................. 8, 13

vi

*In re Veeco Instruments, Inc. Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ........................................................................... 14, 16

*In re Visa Check/Mastermoney Antitrust Litig.*,
    192 F.R.D. 68, 88 (E.D.N.Y. 2000) ........................................................................... 19

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ........................................................................................ 14

*In re Vivendi Universal, S.A. Sec. Litig.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) ................................................................................ 19

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06 Civ. 11515(WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ......................... 9

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ................................................................................ 16

*Klein v. PDG Remediation, Inc.*,
    No. 95 Civ. 4954(DAB), 1999 WL 38179 (S.D.N.Y. Jan. 28, 1999) .............................. 10

*Maley v. Del. Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y 2000) ......................................................................... 21

*Marisol A. v. Guilani*,
    126 F.3d 372 (2d Cir. 1997) ........................................................................................ 15

*McLaughlin v. American Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008) ........................................................................................ 19

*Melwani v. Jain*,
    No. 02 CIV. 1224(DF), 2004 WL 936814 (S.D.N.Y. Apr. 29, 2004) ............................... 8

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002) ...................................................................................... 18

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ........................................................................................ 13

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ........................................................................................ 16

*Robinson v. Metro-North Commuter R.R. Co.*,
    267 F.3d 147 (2d Cir. 2001) ........................................................................................ 15

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) ......................................................................... 10

EC.58443.1

*TBK Partners, Ltd. v. W. Union Corp.,*
  675 F.2d 456 (2d Cir. 1982)...................................................................... 8

*The NASDAQ Stock Mkt., LLC & NASDAQ Execution Servs., LLC* Rel.
  No. 69, 655, 2013 WL 2326683 (May 29, 2013) ............................................ 11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
  396 F.3d 96 (2d Cir. 2005)...................................................................... 13

*Weigner v. City of New York,*
  852 F.2d 646 (2d Cir. 1988)...................................................................... 22

## Other Authorities

6 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 18:27 (4th ed. 2002)........... 19

7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice &*
  *Procedure* § 1778 (3d ed. 2010) ...................................................................... 18

*Manual For Complex Litigation (Fourth)* § 21.63 (2004)............................................ 7

*Manual for Complex Litigation*, (Third) § 30.41 (1995) ............................................ 7

## Rules

Fed. R. Civ. P. 23(a) ...................................................................... 14

Fed. R. Civ. P. 23(a)(2) ...................................................................... 15

Fed. R. Civ. P. 23(b)(3)(D) ...................................................................... 19

Fed. R. Civ. P. 23(c)(2) ...................................................................... 22

Fed. R. Civ. P. 23(g) ...................................................................... 20

Rule 23(a) ...................................................................... 17

Rule 23(a)(2) ...................................................................... 15

Rule 23(a)(3) ...................................................................... 16

Rule 23(a)(4) ...................................................................... 16

Rule 23(b)(1)-(3) ...................................................................... 17

Rule 23(b)(3) ...................................................................... 17, 19, 22

Rule 23(g) ...................................................................... 3, 20

EC.58443.1

Lead Plaintiffs, T3 Trading Group, LLC, Avatar Securities, LLC, Philip Goldberg, Steve

Jarvis, Atish Gandhi, Colin Suzman, Meredith Baily, and Faisal Sami (collectively, "Lead

Plaintiffs" or "Plaintiffs") respectfully submit this memorandum of law in support of their

consent motion for preliminary approval of settlement and requesting entry of the [Proposed]

Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval

Order"), attached as Exhibit A to the Stipulation of Settlement dated May 22, 2015 (the

"Stipulation") and submitted concurrently herewith (*see* Exhibit A to the Declaration of Vincent

R. Cappucci ("Cappucci Decl.").[1]

## INTRODUCTION

Lead Plaintiffs seek the Court's preliminary approval of a proposed settlement (the

"Settlement") on behalf of all persons and entities that entered retail pre-market and aftermarket

orders to purchase and/or sell the common stock of Facebook, Inc. ("Facebook") on May 18,

2012, and who suffered monetary losses as a result of the conduct alleged in the Consolidated

Amended Class Action Complaint ("CAC") (ECF No. 95), including persons and entities

alleging (i) claims for violations of the federal securities laws; and (ii) claims for common law

negligence (the "Class" or "Class Members").  The Settlement was reached after approximately

three years of hotly contested litigation, months of negotiations (including an all-day meditation)

and is the result of good faith, arm's-length negotiations among experienced counsel.  The

Settlement provides a compromise between the merits of the Class Members' claims and the

substantial expense and uncertainty that the parties would face were they to continue litigating

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings given to them in the Stipulation.

the Consolidated Nasdaq Actions.  Pursuant to the Stipulation, the Nasdaq Defendants[2] or their

insurers will provide a $26,500,000.00 cash payment (the "Settlement Fund") to pay the claims

of Class Members, as well as attorneys' fees and expenses.[3]

      "Preliminary approval of settlements should be given if the settlement is the result of

serious, informed and non-collusive negotiations and the proposed settlement has no obvious

deficiencies. . . ."  *In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1997 WL 33320580,

at *6 (E.D.N.Y. Dec. 26, 1997).  Here, the Court must determine whether the proposed

Settlement falls "within the range of possible approval."  The Settlement satisfies this standard.

The Settlement – negotiated at arm's-length by experienced counsel on both sides – is not just

adequate, but an excellent resolution at an early stage of this complex case.  Moreover, viewing

the Settlement in light of the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448

(2d Cir. 1974) *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000),

further supports preliminary approval of the Settlement.  (*See infra* Section I.)

      The Court must also determine that the proposed Class satisfies the requirements of Rule

23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.  As set forth in Section II

below, the proposed Class satisfies these requirements.  Additionally, as set forth in Section III,

Lead Plaintiffs respectfully submit that Entwistle & Cappucci LLP, Finkelstein Thompson LLP

and Lovell Stewart Halebian Jacobson LLP (collectively, "Co-Lead Counsel"), appointed by the

---

[2] The Nasdaq Defendants or "Defendants" are The NASDAQ OMX Group, Inc. ("Nasdaq"), The NASDAQ Stock Market LLC (the "Exchange"), Robert Greifeld and Anna M. Ewing.

[3] Excluded from the Settlement Class are the Nasdaq Defendants and "their parent companies, subsidiaries, or affiliates; the officers and directors of Nasdaq and the Exchange; the legal representatives and heirs or assigns of any Nasdaq Defendant; and federal governmental entities and instrumentalities of the federal government; any judicial officer presiding over the Consolidated Nasdaq Actions and any member of his or her immediate family and judicial staff; and any person or entity that was on May 18, 2012 a member of the Exchange."  (Stipulation ¶ 1.3.)

Court as Co-Lead Counsel on December 6, 2012 (ECF No. 52), satisfy the requirements of Rule 23(g) and should be appointed as Class Counsel.

To provide a fair distribution of the Net Settlement Fund among Class Members who submit timely and valid Proof of Claim forms ("Authorized Claimants"), Co-Lead Counsel, in conjunction with a financial expert approved by Lead Plaintiffs, devised a Plan of Allocation of Net Settlement Fund among Class Members ("Plan of Allocation") pursuant to which the Net Settlement Fund will be paid to Authorized Claimants.  (Exhibit B to the Cappucci Decl.)  Lead Plaintiffs respectfully submit that the Plan of Allocation is fair and reasonable warranting preliminary approval.  (*See infra* Section IV.)

Lead Plaintiffs authorized preparation of a settlement Notice (Exhibit 1 to the Preliminary Order), Proof of Claim form (Exhibit 2 to the Preliminary Order) and Publication Notice (Exhibit 3 to the Preliminary Order) to provide all Class Members with notice of the Settlement.  As discussed below in Section V, Lead Plaintiffs request that the Court approve the proposed form of Notice and Publication Notice, which Lead Plaintiffs respectfully submit will provide the best notice practicable under the circumstances.  Lead Plaintiffs have selected The A.B. Data Group, Ltd. ("AB Data" or "Claims Administrator") to serve as the claims administrator for the Settlement, and Lead Plaintiffs request that the Court approve this retention. (*See infra* Section VI.)

Finally, as discussed in Section VII below, Lead Plaintiffs respectfully request that the Court schedule a hearing (the "Settlement Fairness Hearing") to determine whether to enter the Order and Final Judgment.  Lead Plaintiffs also respectfully propose a schedule of events to facilitate the Settlement process and to ensure due process is given to Class Members.  (*See infra* Section VIII.)

## BACKGROUND

### A.      The Litigation

This case arose from the initial public offering ("IPO") of Facebook, Inc. ("Facebook"), one of the largest and most highly anticipated IPOs in history.  Nasdaq, a global publicly-traded company, operated the Exchange on which Facebook was to be listed.

Before the commencement of public trading in Facebook shares, Nasdaq and the Exchange experienced system issues that Lead Plaintiffs allege were caused by the faulty testing and design of their computer systems, causing Lead Plaintiffs and Class Members significant losses.  Lead Plaintiffs further allege that, prior to the IPO, the Nasdaq Defendants were well aware of system flaws that rendered the Exchange incapable of handling the enormous volume of orders placed before the commencement of open market trading, and that the manifestation of these flaws, as well as the Nasdaq Defendants' failure to disclose these known problems or correct the system flaws, damaged Class Members.

Lead Plaintiffs, through Co-Lead Counsel, have diligently and zealously prosecuted the Consolidated Nasdaq Actions in the time since.  While not permitted formal discovery, Lead Plaintiffs engaged in an extensive fact-finding and research effort resulting in the comprehensive CAC exhaustively setting forth their claims.  When Defendants moved to dismiss the CAC – arguing that:  (i) all of the alleged misconduct fell within the scope of Nasdaq's delegated regulatory functions protected under the doctrine of absolute immunity; (ii) the CAC failed adequately to allege a claim under Section 10(b) of the Exchange Act; and (iii) the negligence claims were barred by the economic loss doctrine under New York law – Plaintiffs overcame

EC.58443.1

that motion, permitting a subset of claims to go forward.[4]  (*See* ECF No. 171.)  Subsequently, Plaintiffs defeated Defendants' efforts to convince this Court to certify certain non-immunity questions for interlocutory appeal.  (ECF No. 206.)  Plaintiffs also fully briefed an appeal before the United States Court of Appeals for the Second Circuit (the "Second Circuit"), addressing this Court's immunity determination, as well as its decision that Plaintiffs' state-law claims were not barred by the economic loss doctrine and that Plaintiffs had adequately pled the reliance element of their federal securities fraud claim.  Oral argument on that appeal was just weeks away when the parties reached the resolution currently being presented to the Court.

The Settlement itself arose out of arms-length negotiations spanning over a year.  While cordial and professional, the negotiations were vigorous discussions in which each party's counsel represented their clients' interests zealously.

Discussions to resolve the Consolidated Nasdaq Actions began prior to this Court's ruling on Defendants' motion to dismiss the CAC, and failed entirely at that stage.  The parties re-engaged their efforts following Defendants' appeal to the Second Circuit, and those efforts included an all-day mediation on July 31, 2014 before David Geronemus of JAMS.  To aid in those discussions, Nasdaq agreed to produce certain trading data related to the trading of Facebook common stock on May 18, 2012, and Plaintiffs engaged the services of an independent expert to analyze that data.  Through this analysis, Plaintiffs were able to accurately assess the extent of damages that may be available if they succeeded on their claims.

While that mediation proved unsuccessful, the parties continued their efforts over the following months and – after many phone calls, in-person meetings, and other communications –

---

[4] This Court did grant immunity as to claims arising from acts or failures to act in the course of supervising the public trading market after completion of the IPO auction, such as a failure to halt the public trading, but denied the motion to dismiss in all other material respects.

reached an agreement in principle to settle the case in April, 2015, and executed the Stipulation on May 22, 2015.

### B.     The Proposed Settlement

In accordance with the Stipulation, if the Settlement is approved by the Court, the Nasdaq Defendants or their insurers will pay $26,500,000.00 into the Settlement Fund (*See* Stipulation ¶ 3.1.)  Interest earned on the Settlement Fund shall become and remain part of the Settlement Fund.  (*See id.*)  Of the Settlement Fund, $750,000.00 is expected to be used to cover the costs of notice and administration of the Settlement (the "Notice and Administration Fund").  In exchange for the Settlement, Class Members will release all Settled Claims against the Released Parties, as set forth more fully in the Stipulation.  (*See id.* ¶¶ 2.2-2.3.)  Additional terms of the Settlement are set forth in detail in the Stipulation.

### ARGUMENT

## I.     THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.     Standards for Preliminarily Approving the Proposed Settlement

Under Rule 23(e), "a court must determine whether the terms of the proposed settlement warrant preliminary approval.  In other words, the court must make 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate."  *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, M21-95, 2006 WL 3253037, at *5 (S.D.N.Y. Nov. 8, 2006) (citation omitted); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Preliminary approval of a proposed settlement is the first step in a two-step process required before a class action may be settled. . . . In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice.") (citations

EC.58443.1

omitted).[5]

In deciding whether to preliminarily approve the Settlement, the Court is to determine whether the Settlement is the product of "serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the *range* of possible approval." *Id.* (emphasis added) (citing *Manual for Complex Litigation*, (Third) § 30.41 (1995)); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 163 F.R.D. 200, 210 (S.D.N.Y. 1995).

As set forth below, the negotiations here were conducted at arm's-length by experienced counsel on both sides, and the substantial cash payment makes this settlement fall well within the range of possible approval. Based upon these facts, preliminary approval is warranted, and, as will be demonstrated in detail at the final Fairness Hearing, this settlement is a "fair, reasonable, and adequate" settlement of the Class' claims. *See Grinnell Corp.*, 495 F.2d at 463.

### B. The Proposed Settlement is the Result of Arm's-Length Negotiations By Highly Experienced Counsel

In the circumstances presented here – where highly experience and informed counsel on both sides worked to obtain the best possible result for their clients – the settlement enjoys a "presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173 (S.D.N.Y. 2000) *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) *aff'd* 117 F.3d 721

---

[5] Parties seeking to settle a class action proceed in two steps. First, they seek preliminary approval of the proposed settlement as well as certification of the proposed settlement class and approval of a proposed notice plan. Second, in the event such approval is granted, the parties provide notice in accordance with the court-approved plan and schedule and appear at a final approval hearing at which arguments and evidence may be presented in support of and in opposition to the settlement. The Court may then approve the settlement. *See Manual For Complex Litigation (Fourth)* § 21.63 (2004).

(2d. Cir. 1997) ("So long as the integrity of the arm's length negotiation process is preserved, a strong initial presumption of fairness attaches to the proposed settlement."). Additionally, "great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (cm)(PED), 2010 WL 4537550, at *13 (S.D.N.Y. Nov. 8, 2010).

"[B]oth counsel for plaintiffs and defendants attest that all negotiations leading up to the settlement were conducted at arm's length." *Austrian*, 80 F. Supp. 2d at 174. The parties arrived at a settlement agreement only after engaging in extensive negotiations and discussions spanning over a year, including an all-day mediation. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 141 (S.D.N.Y. 2010) (approving settlement as procedurally fair in light of mediation). Given the thoroughness of the negotiations, Plaintiffs and Co-Lead Counsel have "been able to accurately assess the merits of their positions and to determine what is a reasonable settlement." *In re MetLife Demutualization Litig.*, 262 F.R.D. 205, 208 (E.D.N.Y. 2009) (approving preliminary settlement agreement). The proposed settlement reached in this case, properly negotiated at arm's-length, therefore enjoys a presumption of fairness.[6]

### C.   The Proposed Settlement Falls Within the Range of Possible Approval

The Second Circuit has identified the following nine factors that courts should consider in deciding whether to approve a proposed class action settlement:

---

[6] The Settlement of this action also comports with the public policy of encouraging negotiated settlement of private disputes. Indeed, there is a strong judicial policy that favors the negotiated resolution of litigation. *See TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982); *see also Melwani v. Jain*, No. 02 CIV. 1224 (DF), 2004 WL 936814, at *6 (S.D.N.Y. Apr. 29, 2004) ("Settlement of complex lawsuits is a welcome development.") (citation omitted). This is especially true with respect to class actions. *See Bano v. Union Carbide Corp.*, 273 F.3d 120, 129-30 (2d Cir. 2001) (quoting *In re Exxon Valdez*, 229 F.3d 790, 795 (9th Cir. 2000)); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y. 1999).

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks
> of establishing liability; (5) the risks of establishing damages; (6)
> the risks of maintaining the class action through the trial; (7) the
> ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement fund in light of the best
> possible recovery; [and] (9) the range of reasonableness of the
> settlement fund to a possible recovery in light of all the attendant
> risks of litigation.

*Grinnell*, 495 F.2d at 463.  Although each of the applicable *Grinnell* factors supports preliminary

approval of the Settlement, at this stage, the Court need only determine that the Settlement falls

within a range of possible approval to preliminarily approve the Settlement.  *See In re Warner*

*Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515(WHP), 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20,

2008) (citation omitted).

### 1.    The Complexity, Expense and Likely Duration of the Litigation Supports Approval of the Settlement

Courts within the Second Circuit have consistently recognized that investor class actions

are "notorious" for their complexity, expense and duration.  *In re AOL Time Warner, Inc. Sec. &*

*"ERISA" Litig.,* No. MDL 1500, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *see also*

*Hicks v. Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *6 (S.D.N.Y.  Oct. 24, 2005);

*In re Alloy, Inc., Sec. Litig.*, No. 03 Civ. 1597(WHP), 2004 WL 2750089, at *2 (S.D.N.Y. Dec.

2, 2004).  The Consolidated Nasdaq Actions more than fit that description:  this case has already

involved extensive litigation over difficult questions of law, and an appeal to the Second Circuit.

Rejection of the Settlement will result in continuation of the appeal to the Second Circuit,

extensive motion practice, significant discovery, appeals over class certification, and a protracted

trial – all at enormous cost, risk, and delay for Class Members.  Accordingly, the Settlement,

which Lead Plaintiffs believe is in the best interests of the Class, enables a resolution of the

Action and ensures a recovery for the Class while conserving the parties' and the Court's

resources. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 259-60 (S.D.N.Y. 2003).

### 2.   The Reaction of the Class to the Settlement

Notice regarding the Settlement has not yet been distributed.  If there are any objections to the Settlement, Co-Lead Counsel will address these objections in connection with Lead Plaintiffs' motion for final approval of the Settlement.

### 3.   The Stage of the Proceedings

This factor is intended to assure the Court "that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them." *Klein v. PDG Remediation, Inc.*, No. 95 Civ. 4954(DAB), 1999 WL 38179, at *2-3 (S.D.N.Y. Jan. 28, 1999) (quotation omitted).  "Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) (citations omitted).

Here, more than three years after the filing of the CAC, Plaintiffs fully understand the strengths and weaknesses of their claims.  Co-Lead Counsel have conducted an extensive investigation of the legal and factual issues involved in this case, involving all publicly available information about Plaintiffs' claims and the trading data that the Nasdaq Defendants provided necessary to calculate class-wide damages.  Co-Lead Counsel's investigation has included extensive review of, and active participation in, the proceedings before the Securities and Exchange Commission ("SEC") to amend Nasdaq Stock Market Rule 4626(b)(3) (the "Accommodation Plan").  Pursuant to the Accommodation Plan, Nasdaq compensated Nasdaq Stock Market member firms for losses on certain types of transactions in Facebook shares on May 18, 2012 for which such member firms, in turn, were required to certify that they passed such compensation pertaining to customer orders on to their customers.  Co-Lead Counsel also

10

reviewed the findings and conclusions of the SEC enforcement proceeding related to the system failures during the Facebook IPO.  *See The NASDAQ Stock Mkt., LLC & NASDAQ Execution Servs., LLC* Rel. No. 69, 655, 2013 WL 2326683 (May 29, 2013).  Co-Lead Counsel thus have "sufficient information to make an informed judgment on the reasonableness of the settlement proposal."  *See In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 370 (S.D.N.Y. 2005); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2001) (approving settlement without formal discovery when parties engaged in an "extensive exchange of documents").  Accordingly, the negotiations resulting in the Settlement were based upon an adequate understanding of the challenges that the remaining claims face.

### 4.    The Risk of Establishing Liability and Damages

The fourth and fifth *Grinnell* factors concern "the obstacles plaintiffs face[d] in pursuing a final judgment in their favor."  *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 382 (S.D.N.Y. 2013).  In the context of investor litigation, establishing liability and damages is "particularly difficult."  *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014).

While Plaintiffs believe their claims have a strong chance of success, Plaintiffs are also aware of the significant risks inherent in all litigation, and in complex litigation in particular.  In this instance, the Nasdaq Defendants' appeal as of right, pending before the Second Circuit, raises a question of first impression as to the applicability of SRO immunity to automated trading system failures, the outcome of which is far from certain.  The immunity claim is coupled with other challenges to the Class' federal securities and state-law negligence claims.  An adverse decision on appeal of any of these issues could end, or severely cripple, the litigation for the Class and raise the very real risk that the Class will ultimately recover nothing.  Given these risks, the *Grinnell* factors weigh heavily in favor of settlement, which provides certain relief to

11

the Class "without subjecting them to the risks, complexity, duration, and expense of continuing litigation." *Global Crossing*, 225 F.R.D. at 456-57.

### 5. The Risk of Maintaining the Class Action Through Trial

While Lead Plaintiffs strongly believe that class certification is appropriate, the risks of certification and of maintaining a class through trial are significant in any action. The substantial risks associated with achieving and maintaining class certification clearly weigh heavily in favor of preliminary approval of the settlement, which avoids the "risk, expense, and delay" inherent in such a process. *Flores v. One Hanover, LLC*, No. 13 Civ. 5184(AJP), 2014 WL 2567912, at *5 (S.D.N.Y. June 9, 2014).

### 6. The Ability of Defendants to Withstand a Greater Judgment

Although the Nasdaq Defendants may be able to withstand a greater judgment than provided for by the Settlement, courts recognize that "the defendant's ability to pay is much less important than other factors, especially where 'the other Grinnell factors weigh heavily in favor of settlement approval.'" *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339-40 (S.D.N.Y. 2010); *Austrian*, 80 F. Supp. 2d at 173, n.9.

### 7. The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The Nasdaq Defendants have agreed to a Settlement of $26,500,000. At this preliminary stage, the Settlement need only fall within a range of possible approval. That range is determined by how the Settlement "relates to the strengths and weaknesses of the case." *Flag Telecom*, 2010 WL 4537550, at *20. The determination of a settlement "is not susceptible of a mathematical equation yielding a particularized sum." *PaineWebber*, 171 F.R.D. at 130. In evaluating the reasonableness of this Settlement, the Court should recognize "the uncertainties of

12

law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Here, the Settlement provides for a substantial, immediate cash payment in a legally and factually complex case. Given the already protracted nature of the litigation in its early stages, the Settlement is eminently reasonable in light of the attendant risks and delay should the case continue – indeed, it is an excellent result. *See In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.,* 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *5 (S.D.N.Y. Dec. 23, 2009) ("[I]n evaluating the settlement of a securities class action, [courts] have long recognized that such litigation is notably difficult and notoriously uncertain.") (quoting *Sumitomo*, 189 F.R.D. at 281). Accordingly, in considering the totality of the facts and circumstances in connection with the Consolidated Nasdaq Actions, Lead Plaintiffs respectfully submit that the Settlement is within the range of reasonableness and should be preliminarily approved.

## II.    THE CLASS SHOULD BE CERTIFIED TO EFFECUTATE THE SETTLEMENT

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see also Prudential*, 163 F.R.D. at 209 ("[T]here is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.") (citations omitted). For courts considering class certification, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in deciding whether to grant certification. *In re NTL, Inc. Sec. Litig.*, No. 02 Civ. 3013 LAK AJP, 2006 WL 330113, at *4 (S.D.N.Y. Feb. 14, 2006) (quotation omitted). "Nevertheless, district courts must undertake a rigorous analysis to ensure that Rule 23's requirements have been satisfied." *Id.* (quotation omitted); *In re Initial*

13

*Pub. Offering Sec. Litig.*, 471 F.3d 24, 33 (2d Cir. 2006) (same).  Any doubts as to whether a

class should be certified should be resolved "in favor of allowing the class to go forward."  *In re*

*Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 237 (S.D.N.Y. 2006).  "[T]he question is not

whether the plaintiff or plaintiffs . . . will prevail on the merits, but rather whether the

requirements of Rule 23 are met."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124,

133 (2d Cir. 2001) (quotation omitted).

### A.       The Proposed Class Satisfies the Requirements of Rule 23(a)

To certify the Class under Rule 23, the Court must determine:  (1) the Class is so

numerous that joinder of all members is impracticable ("numerosity"); (2) questions of law or

fact common to the Class exist ("commonality"); (3) the claims or defenses of the representative

parties are typical of the claims or defenses of the Class ("typicality"); and (4) the representative

parties will fairly and adequately protect the interests of the Class ("adequacy of

representation").  *See* Fed. R. Civ. P. 23(a).  The Class satisfies these requirements.

### 1.       Numerosity

Satisfying the numerosity requirement of Rule 23(a)(1) requires a showing that "the class

is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a).  Plaintiffs do

not have to provide a specific number of all class members, but rather may rely on reasonable

inferences from the facts to demonstrate that joinder is impractical.  *See In re Initial Pub.*

*Offering Sec. Litig.*, 243 F.R.D. 79, 84 (S.D.N.Y. 2007) ("[P]recise calculation of the number of

class members is not required, and it is permissible for the court to rely on reasonable inferences

drawn from available facts.").  Regardless of the precise number of class members, "numbers in

excess of forty generally satisfy the numerosity requirement."  *Id.*

On May 18, 2012, approximately 567 million shares of Facebook common stock were

traded after the Facebook IPO.  Upon information and belief, there are thousands of Class

14

Members that participated in such trading.  Joinder of the likely thousands of geographically

dispersed Class Members would be impracticable, therefore, satisfying the numerosity

requirement of Rule 23(a)(1).  *See In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369,

374 (S.D.N.Y. 2000).

### 2.    Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."

Fed. R. Civ. P. 23(a)(2).  Common issues of law or fact do not have to be identical among class

members.  Instead, Lead Plaintiffs must demonstrate only that "plaintiffs' grievances share a

common question of law or fact."  *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147,

155 (2d Cir. 2001) (quoting *Marisol A. v. Guilani*, 126 F.3d 372, 376 (2d Cir. 1997)).  In fact, a

"single common legal or factual question will suffice" to satisfy Rule 23(a)(2).  *Freeland v.*

*AT&T Corp.*, 238 F.R.D. 130, 140 (S.D.N.Y. 2006); *see also In re "Agent Orange" Prod. Liab.*

*Litig.*, 818 F.2d 145, 166-67 (2d Cir. 1987).

The questions of law and fact common to Class Members include:

- whether the Nasdaq Defendants violated the federal securities laws as alleged in the CAC;
- whether the Nasdaq Defendants' alleged negligence adversely affected and damaged Class Members; and
- whether the Class Members have sustained damages as a proximate result of NASDAQ's alleged wrongdoing.

The CAC sets forth an alleged "common course of conduct" that has "affect[ed] all

members" of the Class, causing them damage.  *Oxford*, 191 F.R.D. at 374-75.  Accordingly,

Class Members' claims arise from the same operative facts and share the same legal theories,

thus satisfying Rule 23(a)(2)'s commonality requirement.  *See, e.g.*, *In re NYSE Specialists Sec.*

*Litig.*, 260 F.R.D. 55, 70 (S.D.N.Y. 2009) (common issues as to violations of federal securities

15

laws, misrepresentations and omissions of material fact, scienter, and damages satisfy commonality).

### 3.    Typicality

Rule 23(a)(3)'s typically requirement is satisfied when a plaintiff demonstrates that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re SCOR Holding (Switzerland) AG Litig.*, 537 F. Supp. 2d 556, 571 (S.D.N.Y. 2008) (quotation omitted).  Typicality does not require that Lead Plaintiffs and class members' situations be identical.  *See Veeco*, 235 F.R.D. at 238.  Rather, the typicality requirement is satisfied when "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class."  *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003).  "[M]inor variations in the fact patterns underlying individual claims" will not defeat a finding of typicality under Rule 23(a)(3).  *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993).

Like other Class Members, Lead Plaintiffs' claims arise from placing buy and/or sell orders for Facebook common stock after the IPO unaware that the Exchange allegedly had significant system issues affecting the proper trading of Facebook common stock.  Any difference that may exist in the amount of damages recoverable by each Class Member does not render Lead Plaintiffs' claims atypical.  *See In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 510 (S.D.N.Y. 1996).  Accordingly, typicality is satisfied.

### 4.    Adequacy of Representation

The adequacy requirement of Rule 23(a)(4) is satisfied where the representative parties fairly and adequately represent the interests of the class.  Fed. R. Civ. P. 23(a)(4).  "[A]dequacy

of representation is measured by two standards.  First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation.  Second, the class members must not have interests that are 'antagonistic' to one another."  *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

No conflict exists among claims of the Lead Plaintiffs and Class Members.  To the contrary, Lead Plaintiffs and Class Members have a strong and identical interest in establishing the Nasdaq Defendants' liability.  Lead Plaintiffs placed buy and/or sell orders for Facebook common stock on the Exchange on May 18, 2012 and were injured by the Nasdaq Defendants' alleged wrongful conduct as detailed in the CAC.

Lead Plaintiffs have demonstrated their ability and willingness to prosecute the Consolidated Nasdaq Actions on behalf of the Class.  They have actively litigated this case through their investigation and defense of the CAC, and have retained attorneys with extensive experience in the area of complex class action litigation.  There can be no legitimate dispute that the Court-appointed Co-Lead Counsel are capable of prosecuting the Consolidated Nasdaq Actions and, as conclusive proof of their adequacy, they have secured the proposed Settlement for Class Members.

Accordingly, the interests of the Class will be fairly and adequately protected.

**B.      The Proposed Class Satisfies the Requirements of Rule 23(b)(3)**

In addition to meeting the four prerequisites of Rule 23(a), the proposed class action must also be "maintainable" under one of the three categories found in Rule 23(b)(1)-(3).  Lead Plaintiffs seek to certify the proposed Class under Rule 23(b)(3).  A Rule 23(b)(3) class action may be certified if the Court finds:  (1) that questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) that a class

17

action is superior to other available methods for the fair and efficient adjudication of the controversy. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

### 1.     Common Questions of Law and Fact Predominate in This Action

The predominance inquiry "tests whether [the proposed class is] sufficiently cohesive to warrant adjudication by representation." *Id.* at 623.   Common questions of law or fact predominate if they represent a significant aspect of the case and can be resolved for all class members in a single adjudication.   7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778 (3d ed. 2010).   Moreover, the Second Circuit has stated that "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

The common questions raised here (discussed *supra* in Section II.A.2), predominate over individual questions because the Nasdaq Defendants' alleged wrongful conduct affected all Class Members in the same manner – *i.e.*, through failing to disclose allegedly known system issues that thwarted the proper and orderly trading after Facebook's IPO on May 18, 2012.   Additional common questions include:

- whether statements made by the Nasdaq Defendants to the investing public before and during the Facebook IPO misrepresented and/or omitted material facts and whether the Nasdaq Defendants had a duty to correct and/or update such statements;

- whether the Nasdaq Defendants omitted material facts concerning Nasdaq's technology and trading platforms, including its IPO Cross system, in connection with the Facebook IPO;

- whether the Nasdaq Defendants owed duties to Class Members to exercise reasonable care in the handling of the commencement of trading of Facebook common stock after the Facebook IPO;

- whether the Nasdaq Defendants were negligent in failing to fulfill their duties to the Plaintiffs and members of the Class; and

EC.58443.1

- whether Class Members have sustained damages as a proximate result of the Nasdaq Defendants' alleged wrongdoing.

Here, common questions such as these predominate over any individual questions.[7]

Moreover, as stated above, all Class Members suffered the same harm, and assert the same legal theories, based upon a common nucleus of alleged facts. *See In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 90-91 (S.D.N.Y. 2007) (predominance satisfied by allegations of defendants' false and misleading statements, scienter, reliance, and causation).

### 2. A Class Action is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Controversy

The superiority requirement compels the Court to balance factors of fairness and efficiency, and the merits of a class action against alternative available methods of adjudication.[8] *In re Nigeria Charter Flights Contract Litig.*, 233 F.R.D. 297, 301 (E.D.N.Y. 2006). Where a class action is a superior method, the interests of class members in individually controlling the prosecution of separate claims will be generally outweighed by the efficiency of the class mechanism, and each individual claim will be too small to make most individual suits practical. *In re Visa Check/Mastermoney Antitrust Litig.*, 192 F.R.D. 68, 88 (E.D.N.Y. 2000) ("without class certification," it is highly likely that many plaintiffs "will lose any practical means of obtaining damages for defendants' allegedly illegal conduct").

---

[7] The potential need to prove each Class Member's actual losses does not defeat predominance. *See McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008) (citing 6 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 18:27 (4th ed. 2002)) ("A particularly significant aspect of the Rule 23(b)(3) approach is the recognition that individual damages questions do not preclude a Rule 23(b)(3) class action when the issue of liability is common to the class.").

[8] Any manageability problems that may have existed here – and Lead Plaintiffs know of none – are eliminated by the proposed Settlement. As explained in *Amchem Products, Inc. v. Windsor*, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." 521 U.S. at 620.

EC.58443.1

This is a unique, complex class action, with thousands of Class Members.  The class action device is the only viable method by which the overwhelming majority of persons injured by the Nasdaq Defendants' alleged wrongful conduct may obtain a remedy; each member of the Class is likely to possess a claim that is too small to warrant filing a separate action. Accordingly, a class action is the superior method of adjudicating the Consolidated Nasdaq Actions.

## III.    CO-LEAD COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Rule 23(g) requires the Court to consider "the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's knowledge of the applicable law, and . . . the resources counsel will commit to representing the class." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 23(g)).  As the Court recognized in appointing Entwistle & Cappucci LLP, Finkelstein Thompson LLP and Lovell Stewart Halebian Jacobson LLP as Co-Lead Counsel, the firms have substantial experience prosecuting securities class actions and other complex litigation.  Co-Lead Counsel have prosecuted the Consolidated Nasdaq Actions for approximately three years, and have dedicated substantial resources to prosecuting this case in the best interests of the Class, directly resulting in this Settlement.  *See, e.g.*, *Diaz v. Eastern Locating Serv. Inc.*, No. 10 Civ. 4082(JCF), 2010 WL 2945556, at *3 (S.D.N.Y. July 22, 2010) ("The work that Class Counsel has performed both in litigating and settling this case demonstrates their commitment to the class and to representing the class's interests.").  Accordingly, Lead Plaintiffs respectfully submit that Co-Lead Counsel satisfy the requirements of Rule 23(g) and should be appointed as Class Counsel.

EC.58443.1

**IV.     THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE**

A plan of allocation is held to the same standards as a settlement, that is, it must be fair and adequate. *See Maley v. Del. Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y 2000) (citation omitted).  "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994).  Where, as here, a plan of allocation is recommended by experienced and competent class counsel, and supported by an independent damages expert, "[a]n allocation formula need only have a reasonable, rational basis." *Maley*, 186 F. Supp. 2d at 367. (citation omitted).

The proposed Settlement provides for distributions to Authorized Claimants and from the Net Settlement Fund pursuant to the Plan of Allocation.  The proposed Plan of Allocation for the Settlement is based on Lead Plaintiffs' theory of damages informed by consultation with damages experts and others.  The Plan of Allocation seeks to disburse the monies from the Net Settlement Fund to Authorized Claimants who have recognized losses based upon their purchases and sales of Facebook common stock on May 18, 2012.  In formulating this Plan of Allocation, Co-Lead Counsel have taken into account the Nasdaq Defendants' Accommodation Plan, approved by the SEC, which accounts for certain categories of losses for purchases and sales of Facebook common stock due to the Exchange's system issues on the day of Facebook's IPO.  (*See* Plan of Allocation ¶ 3(b).)  There is no reason to doubt the fairness of the proposed Plan of Allocation for purposes of preliminary approval.  Even at the final-approval stage, "[a]n allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by 'experienced and competent' class counsel." *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001).  Lead Plaintiffs submit that

the proposed Plan of Allocation is "rationally based on legitimate considerations," *PaineWebber*,

171 F.R.D. at 131 (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1411

(E.D.N.Y. 1985)) (citation omitted) *aff'd in part, rev'd in part*, 818 F.2d 179 (2d Cir. 1987), and

treats Class Members fairly.  Accordingly, the Court should preliminarily approve the Plan of

Allocation.

## V.   THE PROPOSED FORM OF NOTICE WILL PROVIDE THE BEST NOTICE PRACTIABLE UNDER THE CIRCUMSTANCES

In a settlement class maintained under Rule 23(b)(3), class notice must meet the

requirements of both Federal Rules of Civil Procedure 23(c)(2) and 23(e).  *See Weigner v. City of*

*New York*, 852 F.2d 646, 654 (2d Cir. 1988); *Fields v. Oliver's Stores, Inc.*, No. 87 CIV. 0894

(WK), 1992 U.S. Dist. LEXIS 18280, at *3 (S.D.N.Y. Mar. 23, 1992).  Under Rule 23(c)(2),

notice to the class must be "the best notice practicable under the circumstances, including

individual notice to all members who can be identified through reasonable effort."  *Amchem,* 521

U.S. at 617 (citing Fed. R. Civ. P. 23(c)(2)).  The notice must also indicate an opportunity to opt

out, that the judgment will bind all class members who do not opt out, and that any member who

does not opt out may appear through counsel.  Fed. R. Civ. P. 23(c)(2); *Eisen v. Carlisle &*

*Jacquelin*, 417 U.S. 156, 173 (1974); *Gordon v. Hunt*, 117 F.R.D. 58, 61 (S.D.N.Y. 1987).

AB Data, the proposed Claims Administrator, in conjunction with Lead Plaintiffs and Co-

Lead Counsel, will disseminate notice to Class Members by mailing the Settlement Notice, Proof

of Claim, and Plan of Allocation, and publishing the Publication Notice.[9]  The Settlement Notice

will inform Class Members of, among other things:  (i) the terms of the Settlement; (ii) the

procedure for participating in the Settlement, including the applicable date to submit a valid

---

[9] The Claims Administrator will also review all submitted claim forms, calculate Authorized Claimants' Recognized Claims, and distribute the Net Settlement Fund pursuant to the Plan of Allocation.

EC.58443.1

Proof of Claim; (iii) the procedure and applicable date for requesting exclusion from the

Settlement; (iv) the procedure and applicable date for submitting objections to the Settlement; (v)

the maximum amount of attorneys' fees and expenses to be sought in Co-Lead Counsel's

forthcoming application for an award of attorneys' fees and expenses; and (vi) the date of the

Settlement Fairness Hearing.

## VI.    THE CLAIMS ADMINSTRATOR AND PROOF OF CLAIM METHODOLOGY IS PROPER

Lead Plaintiffs respectfully request the appointment of AB Data to serve as the Claims

Administrator of the Settlement.  AB Data is one of the best-regarded firms providing claims

administration services in the country.[10]  It has administered hundreds of class action settlements

over the past two decades.  It has administered many notable securities settlements, including

those in the *General Electric*, *FLAG Telecom Holdings Limited*, *Lehman Brothers*, and *MF

Global* litigations.  Further, AB Data works for both defendants and plaintiffs without taking

sides, and considers itself accountable to the Court directly, and bound by the Court's orders and

instructions.

As Claims Administrator, AB Data will be responsible for, among other things, mailing

the Notice to Class Members, reviewing Proof of Claim forms submitted by Class Members, and

compiling a schedule for distribution to Class Members.  Co-Lead Counsel are confident that AB

Data will adequately fulfill its duties.

## VII.    IT IS APPROPRIATE TO SCHEDULE A SETTLEMENT FAIRNESS HEARING

Under Rule 23(e), a class action may not be settled, compromised or dismissed without

the approval of the Court.  To that end, Lead Plaintiffs respectfully request that the Court hold a

Settlement Fairness Hearing, at which time the Court will determine whether to enter the

---

[10] A copy of AB Data's current firm resume is attached as Exhibit C to the Cappucci Decl.

[Proposed] Order and Final Judgment (attached as Exhibit B to the Stipulation).  At the

Settlement Fairness Hearing, the Court will also rule upon any objections to the Settlement as

well as additional matters, including:  (i) whether to finally certify the Class; (ii) whether the

proposed Settlement is fair, reasonable and adequate; (iii) whether the Plan of Allocation is fair,

reasonable and adequate; and (iv) whether Co-Lead Counsel's application for an award of

attorneys' fees and reimbursement of expenses should be approved.  As set forth in the

Preliminary Approval Order, Lead Plaintiffs respectfully request that the Court schedule the

Settlement Fairness Hearing to address these issues.

## VIII.   PROPOSED SCHEDULE OF EVENTS

Lead Plaintiffs respectfully propose the following schedule:

| Event | Date |
|---|---|
| Deadline for mailing Notice and Proof of Claim forms attaching Plan of Allocation ("Notice Date") | 14 calendar days after entry of the Preliminary Approval Order (*See id.* at ¶ 8). |
| Deadline for publishing summary Publication Notice | 24 calendar days after entry of the Preliminary Approval Order (*See id* at ¶ 9). |
| Filing briefs in support of final approval of Settlement, Plan of Allocation, and Co-Lead Counsel's application of attorneys' fees and reimbursement of expenses | July 29, 2015 – *i.e.*, 42 calendar days before the Settlement Fairness Hearing (*See id.* at ¶ 5). |
| Deadline for requests for exclusion from or objections to the Class | August 12, 2015 – *i.e.*, 28 calendar days before the Settlement Fairness Hearing (*See id.* at ¶¶ 12, 14). |
| Filing of reply memoranda in support of final approval of Settlement, Plan of Allocation, and Co-Lead Counsel's application for attorneys' fees and reimbursement of expenses | September 2, 2015 – *i.e.*, 7 calendar days before the Settlement Fairness Hearing (*See id.* at ¶ 5). |
| Settlement Fairness Hearing | September 9, 2015. |
| Deadline for submitting Proof of Claim forms | August 26, 2015 (*See id.* at ¶ 11(a)). |

This schedule is similar to those used in numerous class action settlements and provides

due process for putative Class Members with respect to their rights concerning the Settlement.

Plaintiffs respectfully request that the Court schedule the Settlement Fairness Hearing

24

approximately ninety (90) calendar days after entering the Preliminary Approval Order in order

to allow for sufficient time for, among other things:  (i) mailing the Notice and Proof of Claim

forms; (ii) publishing the Publication Notice; (iii) filing motions in support of final approval of

the Settlement and Plan of Allocation, and for application of for attorneys' fees and

reimbursement of expenses; and (iv) addressing any requests for exclusions or objections that

may be made by Class Members.

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court enter the

accompanying [Proposed] Order Preliminarily Approving Settlement and Providing for Notice.

Dated:  May 22, 2015                    Respectfully Submitted,


*/s/ Vincent R. Cappucci*
Vincent R. Cappucci, Esq.
Jordan A. Cortez, Esq.
Alexander F. Schlow, Esq.
**ENTWISTLE & CAPPUCCI LLP**
280 Park Avenue, 26th Floor West
New York, NY 10017
Telephone:  (212) 894-7200
Facsimile:  (212) 894-7272

***Lead Counsel for NASDAQ
Securities Actions***

*/s/ Douglas G. Thompson, Jr.*
Douglas G. Thompson, Jr., Esq.
Michael G. McLellan, Esq.
**FINKELSTEIN THOMPSON LLP**
1077 30th Street, Suite 150
Washington, D.C. 20007
Telephone: (202) 337-8000
Facsimile: (202) 337-8090

25

_/s/ Christopher Lovell_
Christopher Lovell, Esq.
Victor E. Stewart, Esq.
**LOVELL STEWART HALEBIAN**
**JACOBSON LLP**
61 Broadway, Suite 501
New York, NY 10006
Telephone: (212) 608-1900
Facsimile: (212) 719-4677

**_Co-Lead Counsel for NASDAQ Negligence_**
**_Actions_**

26