**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE FACEBOOK, INC. IPO SECURITIES AND DERIVATIVE LITIGATION | MDL No. 12-2389 (RWS)<br><br>This document relates to the Consolidated Securities Action: |

| | |
|---|---|
| No. 12-cv-4081 | No. 12-cv-4763 |
| No. 12-cv-4099 | No. 12-cv-4777 |
| No. 12-cv-4131 | No. 12-cv-5511 |
| No. 12-cv-4150 | No. 12-cv-7542 |
| No. 12-cv-4157 | No. 12-cv-7543 |
| No. 12-cv-4184 | No. 12-cv-7544 |
| No. 12-cv-4194 | No. 12-cv-7545 |
| No. 12-cv-4215 | No. 12-cv-7546 |
| No. 12-cv-4252 | No. 12-cv-7547 |
| No. 12-cv-4291 | No. 12-cv-7548 |
| No. 12-cv-4312 | No. 12-cv-7550 |
| No. 12-cv-4332 | No. 12-cv-7551 |
| No. 12-cv-4360 | No. 12-cv-7552 |
| No. 12-cv-4362 | No. 12-cv-7586 |
| No. 12-cv-4551 | No. 12-cv-7587 |
| No. 12-cv-4648 | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STRIKE THE EXPERT REPORT OF ANINDYA GHOSE, PH.D.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 3

ARGUMENT ........................................................................................................................ 5

    I.   Ghose's Report Fails to Meet Fed. R. Evid. 702's "Fit" Requirement ............................ 6

        A.  Ghose's Opinion Contradicts Second Circuit Law, This Court's Prior
        Holdings, And Facebook's Own Instructions In The Prospectus ....................... 8

        B.  Ghose's Opinion Is Speculative And Irrelevant ............................................. 11

        C.  At Best, Ghose's Opinion Raises Common Issues ...................................... 13

    II.  Ghose's Report Fails to Meet Fed. R. Evid. 702's Reliability Requirement ................... 14

CONCLUSION .................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Adesina v. Aladan Corp.*,
  438 F. Supp. 2d 329 (S.D.N.Y. 2006)..............................................................................5, 6

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002)..............................................................................................14

*Barber v. United Airlines, Inc.*,
  17 F. App'x 433 (7th Cir. 2001).........................................................................................14

*Children's Broad. Corp. v. Walt Disney Co.*,
  245 F.3d 1008 (8th Cir. 2001) ..........................................................................................14

*Daubert v. Merrell Dow Pharms., Inc.*,
  43 F.3d 1311 (9th Cir.1995) ................................................................................................7

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993).........................................................................................................5, 6

*DiBella v. Hopkins*,
  403 F.3d 102 (2d Cir. 2005)................................................................................................7

*E.E.O.C. v. Freeman*,
  778 F.3d 463 (4th Cir. 2015) ............................................................................................14

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  986 F. Supp. 2d 487 (S.D.N.Y. 2013)........................................................................ *passim*

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)...........................................................................................................14

*Hebert v. Lisle Corp.*,
  99 F.3d 1109 (Fed. Cir. 1996)..............................................................................................7

*Hutton Contracting Co., Inc. v. City of Coffeyville*,
  2004 WL 2203449 (D. Kan. Sept. 24, 2004) .......................................................................8

*IBEW Local 90 Pension Fund v. Deutsche Bank AG*,
  2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013) ......................................................................6

*KB Home v. Antares Homes, Ltd.*,
  2007 WL 1893370 (N.D. Tex. June 28, 2007) .....................................................................7

*Litwin v. Blackstone Grp., L.P.*,
  634 F.3d 706 (2d Cir. 2011)................................................................................................8

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
2014 WL 1013835 (S.D.N.Y. Mar. 17, 2014) ........................................................................2

*N.J. Carpenters Health Fund v. Rali Series 2006-Q01 Trust*,
477 F. App'x 809 (2d Cir. 2012) .........................................................................................11

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
2013 WL 6839093, (S.D.N.Y. Dec. 27, 2013) ....................................................................13

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
709 F.3d 109 (2d Cir. 2013)...........................................................................................1, 8

*Noskowiak v. Bobst SA*,
2005 WL 2146073 (E.D. Wis. Sept. 2, 2005) ......................................................................7

*In re Novatel Wireless Sec. Litig.*,
846 F. Supp.2d 1104 (S.D. Cal. 2012) .................................................................................7

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*,
277 F.R.D. 97 (S.D.N.Y. 2011) .........................................................................................13

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004)...................................................................................7

*Straumann Co. v. Lifecore Biomedical Inc.*,
278 F. Supp. 2d 130 (D. Mass. 2003) ..................................................................................8

*In re Time Warner Inc. Sec. Litig.*,
9 F.3d 259 (2d Cir. 1993)...................................................................................................15

*U.S. Gypsum Co. v. Lafarge N. Am. Inc.*,
670 F. Supp. 2d 737 (N.D. Ill. 2009) ...................................................................................7

*United States v. Ford*,
481 F.3d 215 (3d Cir. 2007)..................................................................................................6

*United States v. Wintermute*,
443 F.3d 993 (8th Cir. 2006) ...............................................................................................7

*Werth v. Makita Elec. Works, Ltd.*,
950 F.2d 643 (10th Cir. 1991) .............................................................................................7

*Williamson Oil Co. v. Phillip Morris USA*,
346 F.3d 1287 (11th Cir. 2003) ...........................................................................................7

**Rules and Statutes**

Fed. R. Civ. P. Rule 23 ......................................................................................................11

Fed. R. Evid. 702 ...................................................................................2, 5, 6, 14

Fed. R. Evid. 702(d).......................................................................................14

## PRELIMINARY STATEMENT

In opposition to Plaintiffs' class certification motion, Defendants have proffered the report of Professor Anindya Ghose. A-1358-1430.[1] Ghose, a self-proclaimed expert in "information diffusion"—who has never been qualified as an expert in this "discipline" by any court—opines that "news about Facebook's mobile revenue impact was 'broadly disseminated' in the traditional, online, and social media prior to the IPO." Class Cert. Opp. at 4. Defendants try to use the Ghose report to lend an aura of empirical rigor and credibility to their argument that investors may have somehow gained "actual knowledge" of Facebook's revenue cuts through media speculation that the Company specifically disavowed, which supposedly defeats predominance for the purposes of class certification. Ghose's report should be stricken, or, at a minimum, given no weight, for numerous reasons.

*First*, the essence of Professor Ghose's opinion is that investors should have looked to, and relied on, third-party speculation outside the prospectus in determining whether to buy stock in Facebook's IPO. This premise directly contravenes controlling Second Circuit law. *See, e.g.*, *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 126-27 (2d Cir. 2013) (media speculation cannot form the basis of an "actual knowledge" defense). It also contradicts Facebook's own instruction that investors should disregard this speculation precisely because it was unreliable and not attributable to Facebook itself—as well as the Court's holding that "a reasonable investor will not be charged to regard press reports as a reliable source of

---

[1] Herein, all emphasis is added unless otherwise indicated. "Ex. __" refers to exhibits appended to the declarations of Salvatore J. Graziano dated December 23, 2014 (which contains Exhibits 1-44) and June 16, 2015 (which contains Exhibits 45-[__]). "Class Cert. Opp" refers to Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("Class Cert. Opposition"). "A_" refers to pages of the Appendix to the Declaration of Adam B. Stern submitted with Defendants' Class Cert. Opposition.

information after having read such advice." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 522 (S.D.N.Y. 2013). Even worse, the Court has already reviewed many of the articles on which Ghose relies for his opinion and concluded—as Facebook itself warned—that they were vague, speculative, and unreliable. *Facebook*, 986 F. Supp. 2d at 501-02. As such, Ghose's report fails to meet the requirement under Federal Rule of Evidence 702 that expert testimony "fit" the relevant facts and law of the case at bar.

*Second*, the law is clear that the issue raised by Ghose's report – whether investors can be charged with actual knowledge of the misrepresented and omitted information based upon the supposed "broad dissemination" of publicly available media speculation – is one that is common to the Class and subject to generalized proof. *See, e.g.*, *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, 2014 WL 1013835, at *8 (S.D.N.Y. Mar. 17, 2014). Again, this renders the Ghose report irrelevant and unhelpful because it cannot meaningfully inform the predominance inquiry.

*Third*, Ghose's purported conclusions are so vague, limited and uncertain that they are meaningless. For instance, Ghose offers no opinion about whether a significant number of investors actually knew the pertinent information at issue here, and, thus, his opinions cannot, and do not, defeat predominance. Indeed, Ghose makes no effort to identify any appreciable number of investors in the IPO and the information on which they actually relied. Viewed generously, his conclusions amount to speculation about the publicly-available information on which he "imagined" investors "could have" relied. Guesswork about what investors "could have" or "might have" done is not proper expert opinion.

*Finally*, Ghose's methodology is wholly unreliable. Among other things, his analysis fails to take into account a number of key—but inconvenient—facts that go to the heart of whether investors relied on the speculative media reports that pervade his opinion. For example, Ghose

chose to categorically ignore any "positive" news about Facebook. Ghose was also unaware that the Underwriters, whom he assumed acted as "information hubs," or conduits for information omitted from the registration statement and prospectus, signed uniquely restrictive non-disclosure agreements ("NDAs") prohibiting them from attributing their model revisions to Facebook. And he ignored: (1) the effect of the financial press' characterizations of his cherry-picked media reports as "rumor"; (2) the impact of the Company's admonitions not to rely on information outside the prospectus; and (3) the fact that the market reacted with shock and surprise when the truth was finally revealed, which would not have occurred if the relevant information was widely known, as he contends.

As explained further herein, the Ghose report should be stricken. It provides no basis to decline to certify the Class or alternative Subclasses.

## FACTUAL BACKGROUND

Throughout their opposition to Plaintiffs' class certification motion, Defendants rely on the Expert Report of Anindya Ghose, a purported expert in "information diffusion." *See, e.g.*, Class Cert. Opp. at 3-4, 16-17, 26-29, 46-49, 53. No court has ever qualified Ghose as an expert in this field. Ex. 104 at 27:4-8. In his report, Ghose opines that "information and commentary regarding Facebook's mobile revenue impact was widespread amongst professional advisors, investors, financial media, and portions of the general public who were interested in the Facebook IPO." Ghose Rep. at ¶9. Ghose opines that this information was disseminated through four "channels": direct "modes" of communication; "traditional media"; online media, such as blogs; and "social media," specifically Twitter. *Id*. at ¶¶10-13.

To identify the information that he claims was "diffused" throughout these "channels," Ghose performed a Google search and then selected from over 1,000 returned results those third-party media reports and social media posts that in his "opinion were pertinent to this case" --

approximately 30 results. *Id*. at ¶75; Ex. 104 at 36:2-13, 37:12-38:4. Simply put, Ghose cherry-picked the reports that he thought favored Defendants. Among other things, Ghose chose to ignore analyst reports as a whole, and disregard positive and conflicting news about Facebook's revenue growth opportunities with respect to mobile ads. Ex. 104 at 149:24-151:6.

Ghose does not opine that certain members of the Retail Subclass had access to or relied on different information than other members of the Subclass. Ghose also does not purport to have performed any investigation or analysis to determine what information investors in Facebook actually ***did*** rely on, and, specifically, whether any investors afforded the third-party media reports on which he relies any weight. *See, e.g.*, *id*. at 85:8-22 (admitting he was not offering an opinion about "whether [particular information is] important or not [to investors]"), 118:7-119:6 (characterizing the question of whether investors relied on the reports he cites as a purely legal one).

At the same time, Ghose speculated that Facebook investors *would* rely on such reports because he assumed they behaved like retail Internet shoppers in selecting sources of information on which to rely. *Id*. at 39:12-46:11. He admitted that he has ***never*** studied "information diffusion" in connection with the purchase and sale of securities (*id*. at 40:14-23), and that he had not seen a single sworn statement or document in which an investor claimed to have relied on social media in making an investment decision in Facebook (*id*. at 130:11-20). Ghose's report does not purport to address any of the other "many sources of information" (*id*. at 129:5-12), apart from third-party media reports on which he claims investors rely, or weight these sources (or otherwise distinguish between them) according to the credibility assigned to them by market participants.

Significantly, Ghose admitted that ***none*** of the third party media reports on which he relies disclosed the information communicated by Cipora Herman to the Syndicate Underwriters—i.e.,

the fact that Facebook itself had determined that increasing mobile usage had negatively impacted its revenues, and the magnitude of that impact. *Id.* at 57:12-18. This is a meaningful failure because that information, of course, is what Facebook was required to disclose. *See Facebook*, 986 F. Supp. 2d at 508, 513-14. At his deposition, Ghose could not even identify all the underwriters with whom Herman spoke, let alone determine whether, how or to whom they communicated that information after receiving it. Ex. 104 at 51:6-52:21, 58:1-60:11; *see also id.* at 68:4-69:14, 70:13-71:6 (opinion that Morgan Stanley and Goldman Sachs disclosed some or all of Herman's communications to their sales forces is based strictly on what Ghose "would imagine" and ultimately acknowledging he had no basis for that claim), 74:1-74:25 (admitting that contrary to the representations made in his report, Ghose did not actually know whether a Bank of America analyst communicated certain information to investors).

While Ghose opines that the Underwriters could have acted as "information hubs" for disseminating information (*see, e.g.*, Ghose Rep. ¶¶28-30), he was unaware that the Underwriters had signed NDAs with Facebook providing that no material financial information shared with the Underwriters—such as Facebook's revenue cuts—could be attributed to Facebook. Ex. 104 at 81:6-82:6. Ghose also acknowledged that none of the "Tweets" he cited actually purported to disclose nonpublic information about Facebook's own internal model revisions. *Id.* at 135:12-145:4.

## ARGUMENT

As the proponents of Ghose's report, Defendants must establish its admissibility by a preponderance of the evidence. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n.10 (1993). The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which embodies three distinct substantive restrictions on the admission of expert testimony: "qualifications, reliability, and fit." *Adesina v. Aladan Corp.*, 438 F. Supp. 2d 329, 341

(S.D.N.Y. 2006); *see also Daubert*, 509 U.S. at 589-595. These requirements apply at the class

certification stage. *See, e.g.*, *IBEW Local 90 Pension Fund v. Deutsche Bank AG*, 2013 WL

5815472, at *12 (S.D.N.Y. Oct. 29, 2013) (applying Fed. R. Evid. 702 to determine admissibility

of expert testimony proffered at the class certification stage).

Ghose's opinion fails to satisfy Rule 702's "fit" requirement because it proceeds from

assumptions that violate controlling law and its conclusions are not helpful in determining whether

the Class should be certified. Likewise, Ghose's "methodology," which consists of little more

than selectively regurgitating speculative news reports, "Tweets," and "blog posts," is unreliable

because it fails to account for countervailing evidence, control for confounding variables, and

makes no effort to explain how and why the market reacted with surprise and shock when the truth

Defendants' omissions concealed was finally revealed.

## I.     Ghose's Report Fails to Meet Fed. R. Evid. 702's "Fit" Requirement

The Court should strike Ghose's report because it fails to meet Fed. R. Evid. 702's "fit"

requirement. "For expert testimony to 'fit,' the testimony must have a valid 'connection to the

pertinent inquiry' and be 'sufficiently tied to the facts of the case so that it will aid the jury in

resolving a factual dispute.'" *Adesina* 438 F. Supp. 2d at 342 (quoting *Daubert*, 509 U.S. at 591-

92). In other words, the "fit" requirement can only be satisfied where the expert "produce[s]

conclusions that have a debatable connection to the question in issue." *United States v. Ford*, 481

F.3d 215, 220 n. 6 (3d Cir. 2007). As the Supreme Court explained, "[t]his condition goes

primarily to relevance. Expert testimony which does not relate to any issue in the case is not

relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (internal quotations omitted).

Accordingly, "[f]ederal judges must therefore exclude proffered scientific evidence under Rules

702 and 403 unless they are convinced that it speaks ***clearly and directly*** to an issue in dispute in

the case, and *that it will not mislead* the jury." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1321 n.17 (9th Cir.1995) (internal citations omitted).

It follows that where an expert's opinions are inconsistent with, misapply, or simply do not speak to the relevant legal standards governing disposition of the case, the expert's testimony fails to meet the "fit" requirement and is, therefore, inadmissible. *See DiBella v. Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005) (affirming exclusion of expert witness because the expert's opinion did not speak to the relevant legal standard for liability); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 544 (S.D.N.Y. 2004) (excluding opinion that defendants' conduct violated norms of medical ethics because the opinion improperly conflated legal liability and ethical culpability); *see also United States v. Wintermute*, 443 F.3d 993, 1001 (8th Cir. 2006) (expert's "proffered testimony misrepresented the government's burden of proving materiality, and *by misconstruing the legal question at issue, the testimony was not relevant*"); *Williamson Oil Co. v. Phillip Morris USA*, 346 F.3d 1287, 1323 (11th Cir. 2003) (expert testimony "could not have aided a finder of fact to determine whether appellees' behavior was or was not legal" because the expert did not apply the relevant legal standard); *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996) ("*Incorrect statements of law are no more admissible through 'experts' than are falsifiable scientific theories*"); *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 650 (10th Cir. 1991) (trial court properly excluded expert "testimony which was based upon the *wrong legal standard*").[2]

---

[2] *See also In re Novatel Wireless Sec. Litig.*, 846 F. Supp.2d 1104, 1107 (S.D. Cal. 2012) (excluding expert opinion that was "based on a loss causation standard that is incompatible with that set forth by" controlling law); *U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 737, 744 (N.D. Ill. 2009) (excluding expert opinion that "applied a legally incorrect standard for proving damages under the CFAA"); *KB Home v. Antares Homes, Ltd.*, 2007 WL 1893370, at * 9-10 (N.D. Tex. June 28, 2007) (explaining that expert testimony had been excluded where expert's "opinions [were] not formed based on the correct legal standards"); *Noskowiak v. Bobst SA*, 2005 WL 2146073, at *5 (E.D. Wis. Sept. 2, 2005) (expert opinion premised on an incorrect legal standard inadmissible because "testimony should not be a source of confusion by invoking a legal standard,

## A. Ghose's Opinion Contradicts Second Circuit Law, This Court's Prior Holdings, And Facebook's Own Instructions In The Prospectus

Ghose's opinion turns on the claim that investors should have gleaned information unlawfully omitted from Facebook's registration statement and prospectus from a cherry-picked selection of third-party media reports by various television "talking heads," "Tweets," "blog posts," and general "whisper down the lane" "word of mouth" spread through what he calls "nodes" of social or business networks. But the proposition that investors can be charged with knowledge of the truth concealed by Defendants' omissions on the basis of such information directly contradicts black letter Second Circuit law. As the Second Circuit has repeatedly held—and as this Court held in its motion to dismiss opinion—"[t]here are serious limitations on a corporation's ability to charge its stockholders with knowledge of information omitted from a document such as a ... prospectus on the basis that the information is public knowledge and otherwise available to them." *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 718 (2d Cir. 2011) (quoting *Kronfeld v. Trans World Airlines, Inc.*, 832 F.2d 726, 736 (2d Cir. 1987)). Put another way, "'sporadic news reports ... should ***not*** be considered part of the total mix of information that would clarify or place in proper context ... representations' that were contained in materials ***that the company provided 'directly***.'" *Royal Bank of Scotland*, 709 F.3d at 126-27 (quoting *United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1199 (2d Cir.1993)) (emphasis added); *see also Facebook*, 986 F. Supp. 2d at 521-22 (recognizing these principles and applying them to this case).

---

which entails a different set of issues than those operative in the present controversy"); *Hutton Contracting Co., Inc. v. City of Coffeyville*, 2004 WL 2203449, at *12-13 (D. Kan. Sept. 24, 2004) (expert opinion inadmissible where, contrary to controlling law, expert improperly assumed the relevance of certain facts); *Straumann Co. v. Lifecore Biomedical Inc.*, 278 F. Supp. 2d 130, 135 (D. Mass. 2003) (expert testimony excluded where it was "based on an erroneous legal standard").

The reason this well-established legal principle exists is to ensure that, consistent with the Securities Act's reporting requirements, issuers include all important company information *in the prospectus and registration statement*. Were it otherwise, issuers could attempt to evade their disclosure obligations by excluding legally required information from their offering documents and then putting the onus on investors to go "figure it out" based on third-party speculation. Ghose's opinion incorrectly assumes investors are required to sift through, and rely on, myriad speculative, and often contradictory "Tweets" and blog posts to chase down information that Facebook consciously chose to omit and misrepresent in the prospectus. But, as the Second Circuit has held, that is anathema to the disclosure regime embodied in the Securities Act of 1933. For this reason alone, Ghose's opinion is contrary to established law and must be stricken.

Moreover, the assumption at the heart of Ghose's report—that investors should have relied on information outside Facebook's prospectus—contradicts the Company's express warnings *not* to rely on such information, and this Court's holding that investors would not have regarded such information as reliable in light of this warning. The Facebook Prospectus expressly instructed investors to disregard media speculation and "rely *only* on the information contained in this prospectus in determining whether to purchase our shares of Class A common stock," rather than outside media reports. Ex. 41 at 31; *see also Facebook*, 986 F. Supp. 2d at 522. Facebook cautioned investors that outside media reports were *not reliable* because they include "coverage that is *not directly attributable to statements made by our officers and employees*, that *incorrectly reports* on statements made by our officers or employees, or that *is misleading* as a result of omitting information provided by us, our officers, or employees." Ex. 41 at 31. Morgan Stanley also made these specific admonitions in its sales memorandum for retail investors. Ex. 68 at MS_FB_00110140. As Goldman Sachs' 30(b)(6) representative testified, the reason that investors

were instructed to disregard anything outside the Prospectus was because "[t]his document reflects the company's disclosure of their business" and "***anything that's material that an investor would need to know to make the investment***" was "***supposed to be contained in the prospectus***"—precisely the reason the law rejects Ghose's premise. Ex. 47 at 137:13-138:12.

In light of Facebook's warnings, this Court specifically held that "[a] reasonable investor will not be charged to regard press reports as a reliable source of information after having read such advice." *Facebook*, 986 F. Supp. 2d at 522. Yet, Ghose's opinion attempts to do just that, and charge investors with knowledge based on press reports and similar information. For that reason, his report contradicts the Company's own instructions and the Court's holding in this case, and must be stricken.

In addition, even if such media speculation could be used to charge investors with actual knowledge, which it cannot as a matter of law, the reports at issue were mere rumor, and cannot meet the standard for actual knowledge under the Securities Act. The Court has already evaluated a number of the reports Ghose relies on at the motion to dismiss stage, and concluded that the information in the market purportedly concerning Facebook's revenue outlook was vague, speculative and unreliable. *Facebook*, 986 F. Supp. 2d at 501-02. Indeed, one of the very articles Ghose himself cites specifically collectively characterizes the articles forming the basis of Ghose's opinion as based on "***rumor***" and wrote: "In summary, ***nobody really knows anything***" about whether Facebook's revenues were weakening. A-1254. Yet another article reported on the "conflicting reports" in the media and found there was "wild ***spinning*** on both sides of the issue."

A-1272. Ghose's opinion does nothing to undermine the soundness of this Court's previous assessment about what those reports did and did not convey to the market.[3]

In short, none of the information in Ghose's report conveyed the relevant information—*i.e.*, that Facebook had determined that mobile usage had negatively impacted its revenues and the magnitude of the impact—and thus, it cannot meet the extremely high standard for showing actual knowledge. *See N.J. Carpenters Health Fund v. Rali Series 2006-Q01 Trust*, 477 F. App'x 809, 813 (2d Cir. 2012) ("The statutory language leaves no ambiguity: For the knowledge affirmative defense to succeed on the merits, the defendant must show the purchaser's **actual knowledge of the specific untruth or omission**."); *see also* cases cited in Pls. Opening Br. at 28-29 & Reply Br. at 14.

Because controlling law, including the prior decisions of this Court, makes clear that investors cannot be charged with "actual knowledge" based on the rumor and speculation on which Ghose's opinion is based, his opinion is irrelevant to the question of class certification, and, indeed, legal liability in this case generally. As such, Ghose's opinion does not meet Rule 702's "fit" requirement and should be stricken.

## B. Ghose's Opinion Is Speculative And Irrelevant

Ghose's opinion also fails to meet Fed. R. Evid. 702's "fit" requirement because it is so qualified and speculative that it is irrelevant to the question of whether Fed. R. Civ. P. Rule 23's

---

[3] While Ghose opines on the import and meaning of the third party media items he cites—specifically, whether they disclosed that Facebook revised its own internal revenue projection or that mobile substitution was already affecting Facebook's revenues (*see, e.g.*, Ghose Rep. at ¶10)—he possesses no expertise that would justify privileging his reading and interpretation of those items over the Court's. More importantly, Ghose is clearly unqualified to determine whether any particular media items were in any way curative of the false statements made here, particularly since Ghose declined, as he must, to opine on the materiality of those items. Ex. 104 at 53:23-54:5.

predominance requirement is satisfied. Ghose does not offer any opinion about whether a significant number of investors actually knew the pertinent information at issue here. During his deposition, Ghose could not identify **anyone** (other than the Underwriters) to whom Facebook communicated the information in Ms. Herman's May 9, 2012 script. *See* Ex. 104 at 56:9-57:6. When Ghose was asked at his deposition whether Morgan Stanley or Goldman Sachs "disclosed to investors that Ms. Herman had telephoned them and provided information on Facebook's mobile revenue estimates," he responded, "No. ***I do not know . . . exactly what the underwriters told . . . which investors***." *Id*. at 65:11-20. Ghose also admitted that he is not aware of ***any*** individual retail investors who received the revised revenue models at issue in this case. *Id*. at 127:22-128:19. While Ghose also suggests that Facebook's Revised S-1 disclosed the information at issue in this case (Ghose Rep. at ¶39), the Court has already found that this was not the case and that the Revised S-1 was itself misleading. *Facebook*, 986 F. Supp. 2d at 510-12. Ghose's report is irrelevant because his opinion does not support the proposition for which Defendants cite it: that members of the Class had actual knowledge of the truth concealed by Defendants' omissions.

Further, Ghose's purported conclusions amount to speculation about the information on which investors "could have" relied. Thus, they do not support an inference that there is a tangible and meaningful risk that individualized inquiries will be required here. *See, e.g.*, Ghose Rep. at ¶¶52 (speculating that "***it is possible***" that an individual read an email to another individual), 55 (opining that certain individuals "could" have passed on certain information, without any evidence that they did pass it on, or even believed it was worth passing on), 117 (opining about the number of individuals – not necessarily investors – "who ***could potentially*** have been exposed to the articles"); Ex. 104 at 79:3-80:5 (opining that attribution of downward revenue revisions to

Facebook was disseminated to investors based on nothing more than the fact that Ghose "can *imagine* that that is likely to have been the case" and that he "would imagine that's how it happened").

Indeed, as Ghose admitted at his deposition, he made no effort to identify the investors in the IPO and the information on which they actually relied. At bottom, Ghose simply counted up the number of speculative Tweets or re-Tweets on a given topic. He did not cite a single report or Tweet authored by Facebook or any Defendant; he did not perform a single analysis demonstrating that any Facebook investors actually viewed the reports on which he relies as credible; and he did not analyze or opine as to what retail investors did or did not actually know. He simply layered assumption upon assumption to arrive at his desired conclusion. That is not viable expert opinion—it is rank guesswork and should be disregarded.

**C.    At Best, Ghose's Opinion Raises Common Issues**

Ghose's opinion does not support the conclusion that only certain members of the Class had actual knowledge of Defendants' misstatements and omissions, while others did not, and thus cannot support an inference that individualized inquiries will be necessary here. The third-party media speculation on which Ghose relies was all publicly available. The law is clear that the issue of whether investors can be charged with actual knowledge of the information omitted from Facebook's registration statement and prospectus based upon the supposed "broad dissemination" of media reports is one that is common to the Retail Subclass. See *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 119 (S.D.N.Y. 2011) ("[T]o the extent Defendants argue that actual knowledge can be inferred from the slew of newspaper articles and public reports they have submitted to the Court, this again is an issue subject to generalized proof."); *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 2013 WL 6839093, at *4 (S.D.N.Y. Dec. 27, 2013) (holding that "publicly available news stories do not create individualized knowledge," and,

even "assuming that news reports provided some knowledge to investors, this information is 'subject to generalized proof'"); *DLJ*, 2014 WL 1013835, at \*8 ("Since the information was public, the knowledge inquiries for the investors in the 2006-5 and 2007-2 Offerings may be different, but they would not be individualized." (emphasis in original)). Thus, again, the Ghose report cannot inform the disposition of Plaintiffs' motion for class certification and must be stricken.

## II.    Ghose's Report Fails to Meet Fed. R. Evid. 702's Reliability Requirement

The Court should also strike Ghose's report because it is unreliable under Fed. R. Evid. 702. Under Fed. R. Evid. 702(d), expert testimony is admissible only if the expert has "reliably applied the principles and methods to the facts." The Second Circuit has cautioned that "[i]n deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002).

An opinion, like Ghose's, that is based on a cherry-picked, incomplete rendering of the facts in the record, or that fails to account for unfavorable facts is unreliable. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *E.E.O.C. v. Freeman*, 778 F.3d 463, 469 (4th Cir. 2015) ("[C]ourts have consistently excluded expert testimony that 'cherry-picks' relevant data," and collecting cases); *Barber v. United Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001) (expert properly excluded where he "cherry-picked the facts he considered to render an expert opinion" and ignored unfavorable data); *Children's Broad. Corp. v. Walt Disney Co.*, 245 F.3d 1008, 1018 (8th Cir. 2001) (excluding expert testimony where expert ignored relevant evidence that was less favorable to his client).

Ghose's report is unreliable because he failed to consider numerous facts that severely undermine his claim that retail investors would have actually relied on the media speculation he cites. *First,* Ghose's analysis improperly assumes that on average, investors would view all sources of information as equally reliable. Ghose makes no effort to distinguish the reliability of information about Facebook coming from the Company itself, versus rumors "re-Tweeted" by an individual, written about on a "blog," or otherwise conveyed by the media. Ghose admitted at his deposition that this assumption was unfounded. *See* Ex. 104 at 115:13-19 ("I wouldn't necessarily characterize [information coming Facebook and information coming from Twitter] as equally important.").

While Ghose conveniently turned a blind eye to this key issue, as noted above, under the securities law, there is an important distinction between the reliability of information that the issuer itself discloses, and that third parties such as analysts and the media publish. *See* authorities cited *supra* at 8; *see also In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 265 (2d Cir. 1993) ("investors tend to discount information in newspaper articles and analyst reports when the author is unable to cite specific, attributable information from the company"). That distinction is particularly critical here, where investors received information from the Company itself instructing them ***not*** to rely on the reports Ghose cites.

*Second*, Ghose ***selectively chose to ignore*** information that was unhelpful to his conclusions. For instance, Ghose all too conveniently chose to ignore all positive news about Facebook—and one can only assume he did so because it undermined his opinion. *See* Ex. 104 at 149:24-151:6 ("***I did not deem it necessary to look at the positive – any potential positive news*** . . .."). And he chose not to include information contained in analyst reports in his "analysis," thus privileging Tweets and blog posts over them.

Worse yet, Ghose's attempted justification for his obvious cherry-picking exposes his profound failure to apply, or even articulate, a coherent and consistent methodology: Ghose admitted that he made the unsupported and, frankly, absurd assumption that market participants making an investment decision seek out and rely on the ***same*** sources of information as "consumers mak[ing] a purchase determination for products and services on the Internet." Ex. 104 at 38:13-40:13. In other words, Ghose's opinion turns on his unsupported claim that an investor making investment decisions involving potentially very large sums looks, and lends ***equal weight***, to the same sources of information as a teenager surfing the Internet to buy a new pair of sneakers.

*Third*, Ghose also failed to analyze, or even consider, the impact of numerous critical facts on investors' willingness to rely on the third party media reports cited in his opinion. Specifically, Ghose failed to consider: (1) the Company's ***own instructions*** to investors to disregard the same media reports on which his opinion is based; (2) the numerous news reports that called the speculative press articles on which he relies simply "rumor"; and (3) the fact that the Underwriters had signed NDAs that precluded them from attributing their model revisions to Facebook, (Ex. 104 81:6-82:6). Ghose's selective and biased rendering of the record gives an incomplete and inaccurate picture of the "total mix" of information in the marketplace, and fatally undermines the reliability of his conclusions.

*Finally*, Ghose was unable to explain why, if the truth was widely known prior to the IPO, the market reacted with shock when the truth was disclosed on May 21 and 22. When it was revealed that Facebook and the Underwriters had lowered their revenue estimates, analysts and the financial press characterized these revelations as "shock[ing]," a "bombshell" that "buyers deserve to be outraged about," and pointedly reported that Facebook had engaged in "selective disclosure of critical ***non-public*** information." Compl. at ¶¶161-70 (ECF No. 71). And, in response to this

news, Facebook's stock plummeted by 18% on May 21 and 22, 2012, on extremely high trading volume. Ghose makes no effort to reconcile these facts with his claim that this news had already been widely disseminated to the market. *See* Ex. 104 at 212:4-216:15.

Accordingly, Ghose's analysis is fatally flawed and his opinion is, therefore, unreliable.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court strike the Ghose report, or, at a minimum, give it no weight in adjudicating Plaintiffs' class certification motion.

Dated: June 16, 2015
New York, New York

BERNSTEIN LITOWITZ
BERGER & GROSSMANN LLP

By: _____
Max W. Berger
Salvatore J. Graziano
John J. Rizio-Hamilton
1285 Avenue of the Americas
New York, NY 10019
Tel: (212) 554-1400
Fax: (212) 554-1444

*Co-Lead Counsel For Lead Plaintiffs And The Proposed Class*

Thomas A. Dubbs
James W. Johnson
Thomas G. Hoffman, Jr.
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477

*Co-Lead Counsel For Lead Plaintiffs, Proposed Class Representative Sharon Morley And The Proposed Class*

Steven E. Fineman
Nicholas Diamand
LIEFF CABRASER
HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Tel: (212) 355-9500
Fax: (212) 355-9592

*Additional Counsel For Additional Named Plaintiffs And Proposed Class Representatives Jose G. Galvan And Mary Jane Lule Galvan*

Frank R. Schirripa
HACH ROSE SCHIRRIPA
& CHEVERIE LLP
185 Madison Ave
New York, New York 10016
Tel: (212) 213-8311
Fax: (212) 799-0028

*Additional Counsel For Proposed Class Representatives Eric Rand, And Paul And Lynn Melton*