

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

IN RE FACEBOOK, INC. IPO SECURITIES AND
DERIVATIVE LITIGATION,                             MDL No. 12-2389
                                                        OPINION

----------------------------------------X

A P P E A R A N C E S:

Attorneys for Lead Plaintiffs
in Consolidated Nasdaq Actions

ENTWISTLE & CAPPUCCI LLP
280 Park Avenue
26 Floor West
New York, NY 10017
By:  Vincent R. Cappucci, Esq.
     Jordan A. Cortez, Esq.
     Alexander F. Schlow, Esq.

FINKELSTEIN THOMPSON LLP
1077 30th Street
Washington, D.C. 20007
By:  Douglas G. Thompson, Esq.
     Michael G. McLellan, Esq.

LOVELL STEWART HALEBIAN JACOBSON LLP
61 Broadway, Suite 501
New York, NY 10006
By:  Christopher Lovell, Esq.
     Victor E. Stewart, Esq.

Attorneys for Defendants NASDAQ
OMX Group, Inc., The NASDAQ Stock
Market LLC, Robert Drifeld and
Anna M. Ewing

BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
By:  William A. Slaughter, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/9/15

1

Stephen J. Kastenberg, Esq.
Paul Lantieri III, Esq.

Attorneys for Intervenors Facebook, Inc.
and Individual Facebook Defendants

KIRKLAND & ELLIS LLP
655 Fifteenth St. NW
Washington, DC 20005
By:  Susan E. Engel, Esq.

KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
By:  Andrew B. Clubok, Esq.
     Brant W. Bishop, Esq.
     Nathaniel Kritzer, Esq.
     Adam B. Stern, Esq.

WILKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
By:  Tariq Mundiya, Esq.
     Todd G. Cosenza, Esq.
     Sameer Advani, Esq.

WILLKIE FARR & GALLAGHER LLP
1875 K Street, NW
Washington, DC 20006
By:  Richard D. Bernstein, Esq.
     Elizabeth J. Bower, Esq.

Attorneys for Intervenor Underwriter
Defendants in the Facebook Action

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
By:  James R. Rouhandeh
     Charles S. Duggan
     Andrew Ditchfield

**Sweet, D.J.,**

Lead Plaintiffs T3 Trading Group, LLC, Avatar Securities, LLC, Philip Goldberg, Steve Jarvis, Atish Gandhi, Colin Suzman, Meredith Bailey, and Faisal Sami (collectively, "Lead Plaintiffs" or "Plaintiffs"), on behalf of themselves and the Class, have moved pursuant to Federal Rule of Civil Procedure 23(e) for final approval of a proposed settlement resolving all claims asserted in the Consolidated Nasdaq Actions, for approval of the proposed Plan of Allocation of Net Settlement Fund Among Class Members (the "Plan of Allocation"), and for an award of attorney's fees and reimbursement of expenses. For the reasons set forth below, the motions are granted.

**Prior Proceedings**

The procedural history and factual background of this litigation has been detailed extensively in various opinions by this Court. See, e.g., In re Facebook, Inc., IPO Sec. & Deriv. Litig., 986 F.Supp.2d 487, 492-93 (S.D.N.Y.2013); see also In re Facebook, Inc., IPO Sec. & Derivative Litig., 288 F.R.D. 26, 31-34 (S.D.N.Y. 2012). Familiarity with the general background of this case as provided in the Court's previous opinions is assumed.

3

The instant action concerns disputes between retail investors and NASDAQ over losses allegedly resulting from technical systems issues that occurred when investors attempted to purchase or sell Facebook stock on the day of the Facebook IPO (the "Consolidated Nasdaq Actions" or "Nasdaq Actions"). The Plaintiff Class includes all persons and entities that entered retail pre-market and aftermarket orders to purchase and/or sell the common stock of Facebook on May 18, 2012, and who suffered monetary losses as a result of the conduct alleged in the Complaint (the "Class" or "Plaintiffs"). Decl. of E. Schachter Re Mailing of Notice, Ex. A at 5 ("Notice").

In exchange for release of all claims against Defendants in the Consolidated Nasdaq Action, the proposed settlement would provide a $26,500,000 cash payment to an interest-bearing escrow account for the benefit of the Class. Pls.' MOL at 1; Joint Decl. of V. Cappucci and C. Lovell in Supp. Pls.' Mot., Ex. A at 3.1. ("Stip."). $750,000 of the payment will be transferred to the Plaintiffs' Settlement Administration account to cover costs associated with administration and class notice. Stip. at 3.1-3.2. The Net Settlement, less court approved fees and expenses, shall be distributed among recognized claims in three categories with independent methods of calculation: (1) pre-opening orders

4

to sell Facebook common stock at a price of $42 or less that did not execute or that executed later in the day at a price less than $42; (2) pre-opening orders to purchase Facebook common stock that were executed at a price of $42 but for which confirmations were delayed until later in the day; and (3) continuous market purchases of Facebook common stock executed before 1:50:10 p.m. on May 18, 2012. Notice at 9-10. Initially, 50% of the Net Settlement Fund will be allocated to the first claim category, 40% to the second, and 10% to the third. Notice ¶ 15. If all claims in either category 1 or category 2 are resolved, the remainder of the remainder of the money allocated to the fully resolved category of claims transfers to the unresolved category. Id. Only in the event that all category 1 and 2 claims are resolved will any remainder be transferred to pay category 3 claims. Id. In the event all claims are paid in full, the remainder of the Net Settlement Fund will be distributed to claimants *pro rata*. Id. The Nasdaq Defendants maintain their denial of all wrongdoing and liability. Stip. at 2.

In their motion for final approval, Plaintiffs included a Proposed Order and Final Judgment ("Proposed Order 1"). On August 19, 2015, the Plaintiffs in the Facebook Action ("Facebook Plaintiffs") filed an opposition to Proposed Order 1

requesting three revisions be made the judgment reduction provision (paragraph 11) therein. Facebook Action Pls.' Obj. ("Facebook Pls.' Obj."). First, with regard to Paragraph 11 subsection (b), that the judgment reduction provision must be limited to "common damages." Facebook Pls.' Obj. at 2. Second, with regard to Paragraph 11 subsection (c), that the clause of the judgment reduction provision reducing future judgments by "any greater amount available under any applicable law" be stricken on the grounds it is impermissibly vague. Id. Third, with respect to the last sentence of Paragraph 11, that a final clause be added indicating that the judgment reduction provision shall not apply to any judgment relating to damages incurred on a date other than May 18, 2012. Id.

Oral argument on the fairness of the proposed settlement was heard on September 16, 2015. The Facebook Plaintiffs confirmed during argument that they were willing to withdraw the third proposed revision. After conferring with counsel for the Facebook Plaintiffs, the Lead Nasdaq Plaintiffs submitted a letter to the Court on October 21, 2015 stating that the Nasdaq Parties agree Proposed Order 1 is appropriate for entry, but also submitting two new orders ("Proposed Order 2" and "Proposed Order 3"). Pls.' Oct. 21, 2015 Letter; see also Exs. A-B. Proposed Orders 2 and 3 both add mutually agreeable clarifying

6

language to Paragraph 11 subsection (c), satisfying the Facebook Plaintiffs' objections to that subsection. Id. Proposed Order 2, the preferred Order of the Nasdaq Parties and the Facebook Defendants, does not include the "common damages" limitation, and the Facebook Plaintiffs object to its approval. Id. at 2, Ex. A. Proposed Order 3, which the Nasdaq Parties consent to (but do not prefer) and the Facebook Plaintiffs but not the Facebook Defendants accept, adds the "common damages" limitation. Id. at 2, Ex B. By letter to the Court dated October 22, 2015, the Facebook Defendants continued to object to the inclusion of "common damages." Facebook Def. Intervenor's Oct. 22, 2015 Letter. By letter to the Court dated October 23, 2015, the Facebook Plaintiffs formally requested Proposed Order 3 be entered. Facebook Pls.' Oct. 23, 2015 Letter. Though the judgment reduction provision remains at issue (specifically, the inclusion of the "common damages" element), no party objects to the content of the settlement.

The matter is now deemed fully submitted.

## I. The Proposed Settlement is Approved

Under Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled,

7

voluntarily dismissed, or compromised only with the court's approval." F.R.C.P. 23(e). Court approval must be premised on a hearing and subsequent finding that the settlement is "fair, reasonable, and adequate" and not a product of collusion. F.R.C.P. 23(e)(3); Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005) (citing Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000)). There is a "strong judicial policy in favor of settlements, particularly in the class action context." Wal-Mart, 396 F.3d at 116 (citations omitted). "Courts determine the fairness of a settlement by looking both at the terms of the settlement and the negotiation process leading up to it." In re Telik, Inc. Sec. Litig., 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008).

## A. The Settlement is Procedurally Fair

Class action settlements are entitled to a "presumption of fairness, adequacy, and reasonableness" when "reached in arms's-length negotiations between experienced, capable counsel after meaningful discovery." Wal-Mart, 396 F.3d at 116 (citations omitted). Procedural fairness is apparent here. The parties are represented by highly experienced, fully informed, and capable counsel. Settlement negotiations have taken place over the course of the year since Plaintiffs' claims were sustained

8

by this Court's decision partially denying Defendants' motion to dismiss on December 12, 2013. Pls.' MOL at 6. Formal mediation was conducted with a neutral JAMS mediator, and settlement was reached on the eve of argument before the Second Circuit on appeal of that Order. Id. Accordingly, the proposed settlement is procedurally fair.

## B. The Settlement is Substantively Fair

Courts in this Circuit examine substantive fairness, adequacy, and reasonableness by analyzing the proposed settlement through the lens of the nine factors set forth in City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds,* Goldberger v. Integrated Res., Inc., 209 F.3d 43, 48 (2d Cir.2000)). The Grinnell factors are: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the

9

settlement fund in light of all the attendant risks of litigation. In re Telik, 576 F. Supp. 2d at (citing Wal-Mart, 396 F.3d at 117 (quoting Grinnel, 495 F.2d at 463)).

## 1. Complexity, Expense, and Likely Duration of Litigation

As a general rule, securities class actions are "notably difficult and notoriously uncertain" to litigate. In re Michael Milken & Assocs. Sec. Litig., 150 F.R.D. 46, 53 (S.D.N.Y.1993) (quoting Lewis v. Newman, 59 F.R.D. 525, 528 (S.D.N.Y.1973)). In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig., 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012). As a class action, the complexity, expense involved, and likely duration of this case are all of a high degree. Moreover, Defendants' appeal to the Second Circuit concerned a matter of first impression regarding the Nasdaq Exchange's eligibility for immunity as a self-regulatory organization. Before even reaching the merits, the threshold issues in this case alone are of unique complexity, and thus likely to involve a great deal of both time and expense in this matter. As such, this factor leans in favor of settlement approval.

## 2. Reaction of the Class to the Settlement

10

"It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." In re Bear Stearns, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) (quoting In re Am. Bank Note Holographics, Inc., 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001).

Objection to this settlement has been extremely limited. Of the 645,626 notices mailed, three objections have been submitted,[1] one of which applies solely to Plaintiffs' motion for attorney's fees, and one of which provides no basis for objection. Pls.' Reply Mem. of Law at 4 ("Reply"). Three objections amounts to less than .0005% of the Class.

---

[1] Anthony Bongiorni objects only to an award of Attorney's Fees, not to any substance of the settlement. Supp. Decl. of V. Cappucci, Ex. C: Objection #1 Objection ID 26334755 Aug. 3, 2015 ("Bongiorni Letter"); Reply at 4. Maria Crompton's objection stems from an issue with her broker-dealer having allegedly failed to cancel her order, and states no basis for her objection to this settlement other than the "entire proceeding" being "a circus and mismanaged." Supp. Decl. of V. Cappucci, Ex. C: Objection #2 Objection ID 26334790 Aug. 29, 2015. Such vague and limited objections "are insufficient to weigh against a finding that the proposed settlement is fair and reasonable, and can be overruled without engaging in a substantive analysis." In re Bear Stearns, 909 F. Supp. 2d at 264 n.3. Michael J. Rinis objects on three grounds: (1) Rinis' not having been notified of the amount of settlement relative to the Plaintiff class' overall damages claim; (2) excessiveness of attorney's fees not to exceed 1/3; and (3) failure of the Notice to inform him regarding the process for an attorney's fee award. Supp. Decl. of V. Cappucci, Ex. C: Objection #3 Objection ID 26334801 Aug. 19, 2015 ("Rinis Letter").

11

Given the limited objections and otherwise "unanimously
positive" reaction of the class to the settlement, this factor
leans in favor of settlement approval. See Pls. MOL at 8.

### 3. *Stage of Proceedings and Amount of Discovery*

"In considering this factor, the question is whether the
parties had adequate information about their claims such that
their counsel can intelligently evaluate the merits of
plaintiff's claims, the strengths of the defenses asserted by
defendants, and the value of plaintiffs' causes of action for
purposes of settlement." In re Bear Stearns, 909 F. Supp. 2d at
267 citations and internal quotation marks omitted).

This matter was settled on the evening of argument before
the Second Circuit, and after more than three years of
litigation. Pls.' MOL at 9-10. In preparing for and engaging
in extensive motion practice and argument before this Court and
in fully preparing and filing the necessary papers for the
appellate challenge to this Court's decision on the motion to
dismiss, the parties engaged in extensive factual and legal
investigation of this matter. See e.g., id. at 10-11. As a
result of this work, the parties had sufficiently adequate

12

information to intelligently evaluate the merits of the claims, strengths of the defenses, and value of the causes of action.

This factor weighs in favor of settlement approval.

### *4. Risks of Establishing Liability*

Plaintiffs' case against Defendants was hardly assured. As discussed, the threshold question of the Nasdaq Exchange's immunity raised the risk of barring all liability for Nasdaq, and thus all recovery for Plaintiffs. Pls.' MOL at 13. Had the Second Circuit affirmed this court's decision finding immunity did not apply, Defendants indicated they intended to file a writ of certiorari with the Supreme Court. Id. Notwithstanding this Court's opinion, either the Second Circuit and/or the Supreme Court could rule that liability cannot be established in this case.

Defendants' immunity claims were not the only obstacles to establishing liability. Open questions on appeal existed as to whether the Class could invoke the presumption of reliance under Affiliated Ute Citizens of Utah v. United States, and whether the New York doctrine of economic loss barred Plaintiffs' negligence claims. Id. at 13; see generally 406 U.S. 128

13

(1972). Furthermore, this case turns on the design, testing, promotion, and ultimate technical functioning of Nasdaq's exchange software systems on the days leading up to and the day of the Facebook IPO. Pls.' MOL at 14-15. Multiple types of experts will therefore be required not only for the securities issues in this case, but also for purposes of establishing the software failures, causation for the crashes, software systems planning, and all the related information technological aspects of the design, testing, and execution of Nasdaq's systems. "When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured." In re Bear Stearns, 909 F. Supp. 2d at 267 (collecting citations).

Because Plaintiffs' ability to establish the liability of Defendants is "far from certain," this factor weighs in favor of settlement approval. See id.

### 5. Risk of Establishing Damages

The unique factual circumstances of this case give rise to multiple arguments to oppose or limit Plaintiffs' damages recovery in this matter given the unique factual background of this case. Defendants may argue the majority of damages

14

sustained in trading Facebook stock on the day of the IPO were sustained by the Exchange's member firms who are not part of the Class. Defendants may further argue damages are limited by the fact that Facebook stock stabilized after the release of the delayed confirmations for premarket orders as of 1:50pm. Given this Court's ruling, Defendants may also seek to limit damages to pre-market orders for the IPO. In short, even if Plaintiffs are able to successfully vault the hurdle of liability, the fact and amount of damages is far from clear. "[D]amages would be subject to a battle of the experts, with the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount Plaintiffs' losses. Under such circumstances, a settlement is generally favored over continued litigation." In re Bear Stearns, 909 F. Supp. 2d at 268 (citations and internal quotation marks omitted).

Given the uncertainty of a damages award, this factor weighs in favor of approval.

### 6. Risks of Maintaining the Class

If Plaintiffs' were to move for class certification, Defendants would almost certainly oppose. Even if the motion was granted, Defendants could seek interlocutory review pursuant

15

to Federal Rule of Civil Procedure 23(f). This issue, like most of the others in this case, is likely to devolve in to a battle of the experts and by no means suggests a certain, or even likely, result. The risk of maintaining a class throughout this long and protracted litigation weighs in favor of settlement approval.

## 7. *Ability of Defendants to Withstand Greater Judgment*

Plaintiffs concede that Nasdaq may be able to withstand greater judgment in this case. Pls.' MOL at 16. Given Nasdaq's market capitalization is valued at $9.83 billion, that fact is apparent.[2] Because Nasdaq could likely withstand a judgment of greater than $26.5 million, this factor weighs against approval of settlement. However, while relevant to settlement approval, the ability of defendants to withstand greater judgment does not alone suggest the settlement is unfair or unreasonable. In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000) aff'd sub nom. D'Amato v. Deutsche Bank, 236 F.3d 78 (2d Cir. 2001); In re PaineWebber Ltd. Partnerships Litig., 171 F.R.D. 104, 129 (S.D.N.Y. 1997) aff'd sub nom. In re

---

[2] See Google Finance: Nasdaq Inc.
https://www.google.com/finance?q=NASDAQ%3ANDAQ&sq=Nasdaq&sp=2&ei=bdc3VoCvGsT-igKNg6vwBg.

16

PaineWebber Inc. Ltd. Partnerships Litig., 117 F.3d 721 (2d Cir. 1997).

## 8. *Range of Reasonableness of Settlement Fund in Light of Best Possibly Recovery*

"The determination of whether a given settlement amount is reasonable in light of the best possibly recovery does not involve the use of a mathematical equation yielding a particularized sum.  Instead, there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  In re Bear Stearns, 909 F. Supp. 2d at 269 (S.D.N.Y. 2012)(citations and quotation marks omitted).

This settlement amounts to 22-27% of Plaintiffs' estimated $182.3 million in damages before reduction for trading by the Exchange's member firms.  Pls.' MOL at 18.  "The fact that the settlement amount may equal but a fraction of potential recovery does not render the settlement inadequate.  Dollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  In re Agent Orange Prod. Liab.

17

Litig., 597 F. Supp. 740, 762 (E.D.N.Y. 1984) aff'd sub nom. In
re Agent Orange Prod. Liab. Litig. MDL No. 381, 818 F.2d 145 (2d
Cir. 1987).

Courts have routinely approved smaller awards relative to
the best possible recovery in similarly complex cases.  See
e.g., In re Bear Stearns, 909 F. Supp. 2d at 269 (approving
recovery of under 12%).  The aforementioned significant issues
to establishing liability and damages in this case make a
favorable outcome particularly difficult to foresee with any
degree of certainty. See supra §§ I(B)(1), (4)-(6).  Under the
circumstances of such a high degree of uncertainty and the
likelihood that this litigation would drag on for years, a
recovery of approximately 25% of Plaintiffs' best-case damages
award now is well within the range of reasonableness.  See
Grinnell, 495 F.2d at 455n.2 (stating "[i]n fact there is no
reason, at least in theory, why a satisfactory settlement could
not amount to a hundredth or even a thousandth part of a single
percent of the potential recovery.").

This factor weighs in favor of settlement approval.

## 9. *Range of Reasonableness of Settlement Fund in Light of Attendant Risks of Litigation*

As reasoned herein, there are unsettled questions of law and valid arguments creating legitimate risk that Plaintiffs may be unable to establish liability, damages, or both. See supra §§ I(B)(1), (4)-(5). There are also real risks that the Plaintiffs may be unable to maintain a class through trial. Id. at §I(B)(6). Finally, the settlement represents a substantial recovery reached through a fair process with the aid of an experienced and impartial mediator, and guided and argued by competent and well-informed counsel. Id. at §§I(A), (B)(8). Taking the full context of this case in to account, the proposed settlement amount of $26,500,000 falls within the range of reasonableness. This factor weighs in favor of approval.

With the exception of Nasdaq's ability to withstand a greater judgment, all factors militate in favor of settlement approval. Moreover, the factor of ability to withstand judgment does not alone make the settlement unfair or unreasonable. In re Austrian & German Bank Holocaust Litig., 80 F. Supp. at 178; In re PaineWebber, 171 F.R.D. at 129. Therefore, on balance, the settlement is substantively fair, adequate, and reasonable.

Taking in to account the foregoing analysis, and in the light of the fact that settlement of class action litigation is generally favored by the courts, the proposed settlement is hereby approved.   See Wal-Mart, 396 F.3d at 116-17.

## II.   Approval of the Plan of Allocation

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate.... An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." In re Bear Stearns, 909 F. Supp. 2d at 270 (citing In re WorldCom, Inc. Sec. Litig., 388 F.Supp.2d 319, 344 (S.D.N.Y.2005) (internal citations and quotation marks omitted)); accord Maley v. Del Global Technologies Corp., 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002). Furthermore, when "recommended by experienced and competent class counsel," "an allocation formula need only have a reasonable, rational basis." Maley, 186 F. Supp. 2d at 367.

The Plan of Allocation in this case was prepared by experienced and competent counsel, supported by an independent economic and damages expert.  Pls.' MOL at 19; see supra §I(A). It allocates the Net Settlement Fund based on each claimant's

20

recognized loss from purchase and sale of Facebook stock on the
day of its IPO, and takes in to account Nasdaq Stock Market Rule
4626(b)(3), the Rule pursuant to which Nasdaq compensated Nasdaq
Stock Market member firms for some losses to which the
Settlement applies (amounts the firms were required to certify
were passed on to customers). Pls.' MOL at 20; Notice at 8-9.  A
court-approved claims administrator will determine each
authorized claimant's share of the settlement based on each
claimant's defined recognized claim.  Pls.' MOL at 20; see also
Joint Decl. of V. Cappucci and C. Lovell in Supp. Pls.' Mot.,
Ex. D; see also Notice at 5, 11.  The settlement funds will be
distributed on a *pro rata* basis, and reduced by any
reimbursements provided by Exchange member firms.  Pls.'s MOL at
20-21; Notice at 8-9.  Moreover, the classes of claims are
organized in order of merit, based on consultation with the
damages expert, giving priority to compensation of the strongest
claims over the weakest.  Id.

For the foregoing reasons, and given that no substantive
objection to the Plan of Allocation of the Settlement Fund has
been made,[3] the Plan is fair and reasonable.

---

[3] Of the three objections made, one was to attorney's fees, one
was without basis, and the last concerned only attorney's fees
and the content of the Notice. See supra n.1.

### III.   The Judgment Reduction Provisions are Approved With "Common Damages" Language

All parties to this action consent to the current wording

of Paragraph 11 of Proposed Order 3,[4] with one exception.   See

supra Prior Proceedings.   The issue is whether subclause (b) of

the judgment reduction provision should include the phrase

"common damages."   The relevant part of Paragraph 11 reads as

follows, with the contentious language in brackets:

> Notwithstanding any other provision of the Order and Final
> Judgment, any final verdict or judgment that may be
> obtained by or on behalf of a Covered Plaintiff against a
> Non-Settling Defendant arising out of or related in any way
> to the transactions, facts, matters, or occurrences alleged
> in the CAC, . . . shall be reduced by the greater of (a)
> the amount that corresponds to the percentage of the
> responsibility of the Nasdaq Defendants for damages awarded
> to the Covered Plaintiff(s) in the unsettled action (b) the
> amount paid by or on behalf of the Nasdaq Defendants to the
> Covered Plaintiff(s) [for common damages], or (c) solely
> with respect to any claim asserted by a Covered Plaintiff
> against a Non-Settling Defendant under foreign law or the
> law of a state other than New York, any greater amount
> available under applicable law.

---

[4] Proposed Order 1 is the original, lacking mollifying language
addressing objections to other aspects of Paragraph 11.   Dkt.
314, Ex. B.   Proposed Order 2 resolves most objections but does
not include the "common damages" language.   Dkt. 365, Ex. A.
Proposed Order 3 identically resolves most objections but adds
"common damages" language.   Dkt. 365, Ex. B.   All three Proposed
Orders are before the Court.   See Pls.' Oct. 21 2015 Letter at
2. Proposed Order 1, to which objections were been made, is moot
given the parties have reached mutually agreeable terms with
respect to all objections except those related to "common
damages."

Compare Pls.' Oct. 21 2015 Letter, Ex. A with id., Ex. B
(emphasis added).

The Nasdaq Parties "believe that the final Order may (and
therefore should) be entered without adding the phrase," but
consent to entry of the alternative version including "common
damages." Id. at 2.  The Facebook Action Plaintiffs object to
entry of the Order without the phrase, and approve only entry of
the Order with the phrase.  Letter of J. Rizio-Hamilton and J.W.
Johnson Oct. 23, 2015.  Facebook Action Defendants object to
entry of the Order with the phrase, and approve only entry of
the Order without the phrase.  Letter of R.D. Bernstein Oct. 22,
2015 ("Bernstein Letter").

The Private Securities Litigation Reform Act ("PSLRA")
provides, "A covered person who becomes jointly and severally
liable for damages in any private action may recover
contribution from any other person who, if joined in the
original action, would have been liable for the same damages."
15 U.S.C.A. § 78u-4(f)(8).  In other words, only common damages
are eligible for offset.  In re Refco, Inc., No. 05 CIV. 8626
(GEL), 2007 WL 57872, at *5 (S.D.N.Y. Jan. 9, 2007) ("The PSLRA
and the common law require that nonsettling defendants receive
judgment credit for settlement of common damages").

Facebook Defendants argue Refco supports rejection of the
"common damages" limitation because, in that case, the Honorable
Gerard E. Lynch denied approval.  Bernstein Letter at 2.
However, in reasoning, Refco supports the position that judgment
reduction provisions (such as the one at issue in this case) can
*only* apply to common damages, and denied approval on the grounds
that dual recovery under more than one legal theory for the same
damages violates that rule as embodied in the PSLRA.  See Refco,
2007 WL 57872 at *2-6.  It cannot be true that the settlement is
unfair to the Facebook Defendants on the grounds that the
judgment reduction provision limits offset for Non-Settling
Defendants (in other words, the Facebook Defendants) pursuant to
the PSLRA.  See id. at *2-3 ("[T]he PSLRA in essence requires
that nonsettling defendants receive a judgment credit according
to the 'capped proportionate share' formula" which "is
acceptable because it ensures that a judgment credit is at least
the amount of the settlement for common damages and therefore
complies with the one satisfaction rule."  (citations and
internal quotation marks omitted)).

The Facebook Defendants argue, essentially, that the
provision is unnecessary on the grounds that common damages do
exist here.  Bernstein Letter at 1.  However, addition of the

"common damages" language does not preclude offset to the extent the Facebook Defendants are entitled to it. Even if some common damages exist, the addition of the language makes clear that, pursuant to the relevant law, non-settling defendants are entitled to an appropriate reduction. Thus, the Facebook Defendants are sufficiently on notice as to the law of the case such that the "measure of predictability" required under Denney v. Deutsche Bank Ag is satisfied.[5] 443 F.3d 253 (2d Cir. 2006).

For all the reasons described above, the Settlement and Proposed Order 3 are fair and reasonable to the Nasdaq parties. Moreover, because all Nasdaq parties agree the judgment reduction provision of Proposed Order 3 is fair and reasonable, and because the "common damages" language of Proposed Order 3 entitles non-settling defendants to judgment reduction consistent with the applicable law, that Order is likewise fair and reasonable to non-settling defendants.

---

[5] Furthermore, the Facebook Defendants "do not ask the Court to specify the amount of a *pro tanto* judgment reduction." Bernstein Letter at 1. It is therefore unclear how entry of the Proposed Order without the "common damages" language would provide any more clarity with regard to offset than entry of the Proposed Order with the language.

25

## IV. The Requested Attorney's Fees, Expenses, and Incentive Awards are Approved as Reasonable in Part

Co-Lead Counsel for Plaintiffs have moved for an award of attorney's fees in the amount of 33% of the Settlement Fund, $268,380.58 in expenses incurred in prosecuting the Consolidated Nasdaq Actions, and a $1,250 incentive award for each Lead Plaintiff. Co-Lead Counsel's Mem. of Law in Supp. Mot. for Award of Atty's Fees at 1 ("Atty's Fees MOL"). For the reasons set forth below, the request for fees in the amount of 33% of the Settlement Fund and request for incentive awards are granted. The request for expenses is granted in the sum of $266,523.69.

### A. Attorney's Fees

"The Second Circuit has authorized district courts to employ a percentage-of-the-fund method when awarding fees in common fund cases, although the Circuit has encouraged district courts to cross-check the percentage fee against counsel's 'lodestar' amount of hourly rate multiplied by hours spent. It bears emphasis that whether calculated pursuant to the lodestar or the percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances."

26

In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151,
163 (S.D.N.Y. 2011) (citing Goldberger v. Integrated Res., Inc.,
209 F.3d 43, 47 (2d Cir.2000) (citations and quotation marks
omitted.)  "The trend in this Circuit is toward the percentage
method."  Wal-Mart Stores, 396 F.3d at 121.  Furthermore, the
Second Circuit has found "no need to compel district courts to
undertake the cumbersome, enervating, and often surrealistic
process of lodestar computation."  Goldberger, 209 F.3d 43, 49-
50 (2d Cir. 2000) (citation and quotation marks omitted).

    The following factors are utilized to determine the
reasonableness of an award of attorney's fees: "(1) the time and
labor expended by counsel; (2) the magnitude and complexities of
the litigation; (3) the risk of litigation; (4) the quality of
representation; (5) the requested fee· in relation to the
settlement; and (6) public policy considerations."  In re Giant
Interactive Grp., 279 F.R.D. at 164 (collecting citations).

### 1. *Time and Labor Expended by Counsel*

    Counsel for the Class and their para-professionals have
devoted 14,378.64 hours in litigation in this action, nearly ten
thousand hours beyond what this Court has previously described
as a "herculean effort by any measure."  In re Bear Stearns, 909

F. Supp. 2d at 271; Atty's Fees MOL at 8. Their time was spent conducting extensive investigation and prosecuting this matter, including but not limited to: interviews and extensive investigation in to Nasdaq's communications and systems operations, analysis of relevant SEC filings, enforcement proceedings, and participation in proceedings to amend Nasdaq Stock Market Rule 4626(b)(3), analysis of the hundreds of filings in this litigation, consultation with damages experts and analysis of damage models and reports, preparation of a 139 page Class Action Complaint and analysis of some 700 more pages of exhibits, preparation and defense for numerous motions including the appealed motion to dismiss, preparation and participation in all the concomitant elements of the appeal to this Court's decision on the motion to dismiss, and preparation, participation, and negotiation in mediation and settlement discussions. Id. at 8-10.

Counsel's hours spent yield a lodestar of $8,576,998, and the amount requested yields multiplier just shy of 1.02. See id. at 8. Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion

that a 33% fee award in this matter is reasonable.

## *2. Magnitude and Complexities of Litigation*

As set forth in Section I(B)(1), (4)-(6) of this opinion,
the Nasdaq Actions are exceptionally complex on the legal,
factual, and technical levels.  Id.  This case presents matters
of first impression to this Circuit, and relates to potentially
hundreds of thousands of claims.  Id.  Accordingly, the
magnitude and complexities of litigation in this matter militate
in favor of approving Co-Lead Counsel's requested fees.

## *3. Risk of Litigation*

As set forth above, the risk of litigation was substantial
in this case.  See id.  Furthermore, Counsel undertook to
represent the Class on a contingent-fee basis, facing a very
real possibility of obtaining no compensation whatsoever in this
highly complex matter.  See Atty's Fees MOL at 11.  For these
reasons, this factor weighs in favor of approving Co-Lead
Counsel's requested fees.

29

## *4. Quality of Representation*

Co-lead Counsel in this matter are recognized as having substantial experience and expertise in prosecuting complex class actions. See id. at 15. Their due diligence and prosecution of this case have been of an exceptionally high quality throughout, as evidenced by Plaintiffs' survival of the motion to dismiss and the fact that Counsel obtained the settlement at issue just before argument at the Second Circuit. This factor weighs in favor of approving Co-Lead Counsel's requested fees.

## *5. Requested Fee in Relation to the Settlement*

Co-Lead Counsel's requested fee of 33% is at the height of the range indicated in their notice to potential Class Members. See Notice at 7. At least two class members object on this basis. Mr. Bongiorni argued that recovery was near certain in light of the fact that securities class actions are "virtually always settled," citing Goldberger. Bongiorni Letter. However, Goldberger is distinguishable from this case. The Nasdaq Actions represent the first of their kind against a national securities exchange for losses resulting from trading in a listed security as a result of technical systems issues. See

30

Pls.' MOL at 1. Because no such case has ever been litigated, as discussed above, this matter involved issues of first-impression that could have precluded recovery altogether. Indeed, that Counsel for all parties were fully prepared to argue this matter to the Second Circuit demonstrates that the risk that recovery would be barred was very much real.

Mr. Bongiorni similarly argues that an award of 25% was rejected in Goldberger, and thus 33% is uncalled for in this case. Mr. Rinis agrees, calling a fee award of one-third "clearly excessive and overreaching" and requesting an award "in the neighborhood of half as much or about 16.5 percent." Rinis Letter. "What constitutes a reasonable fee is properly committed to the sound discretion of the district court." Goldberger, 209 F.3d at 47. Furthermore, an award of 33% is not unheard of or even rare in the wake of Goldberger as Mr. Bongiorni's argument might imply. See e.g., In re IMAX Sec. Litig., No. 06 CIV. 6128 NRB, 2012 WL 3133476, at *7 (S.D.N.Y. Aug. 1, 2012) (finding an award of 33% of a $12 million settlement reasonable); see also In re Blech Sec. Litig., No. 94 CIV. 7696 (RWS), 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002) (finding an award of 33-1/3% reasonable). A fee award of one-third of the Settlement Fund "is well within the range accepted by courts in this circuit." Becher v. Long Island Lighting Co.,

31

64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (citations omitted).

Given similar awards in this Circuit are well within the range of reasonableness, Co-Lead Counsel's request is not an unreasonable amount.  Furthermore, Counsel's lode-star comprises 98% of the fee requested, before including the ongoing work that will be required in this case.  Being "intimately familiar with the nuances of th[is] case" which are particularly complex, for the reasons set forth at length above, the Court finds the 33% request to be reasonable in relation to the sizeable settlement of $26,500,000.  See Goldberger, 209 F.3d at 47.

### 6. Public Policy Considerations

An award of 33% of the Settlement Fund, of which Co-Lead Counsel's lodestar comprises 98%, rewards and incentivizes plaintiff's counsel for taking on and vigorously prosecuting this highly uncertain action.  Public policy militates in favor of such incentives, which encourage attorneys "to enforce federal antifraud securities laws [as] an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 313, 127 S. Ct. 2499, 2504, 168 L.

Ed. 2d 179 (2007) (citations omitted).  Thus, this factor weighs
in favor of fee approval.

Given that all factors weigh in favor of approval and all
objections made are unpersuasive, Co-Lead Counsel's request for
an award of attorney's fees in the amount of 33% of the
Settlement Fund is granted as reasonable.

## B. Expenses and Costs

"It is well-settled that attorneys may be compensated for
reasonable out-of-pocket expenses incurred and customarily
charged to their clients, as long as they were incidental and
necessary to the representation of those clients."  In re Bear
Stearns, 909 F. Supp. 2d at 272 (citations omitted).  Class
counsel request reimbursement of $268,380.58,[6] representing

---

[6] Entwistle & Cappucci LLP spent $256,004.46 on expenses itemized
as follows: $778.47 on appellate printing; $121,742.50 on
experts; $1,029.09 on mailing fees; $597.58 on filing fees and
court costs; $96,619.33 on legal research; $15,334.02 on
mediation fees; $875.00 on press releases; $401.30 on process
service; $4,834.20 on copies; $395.04 on telephone/fax costs;
$264.92 on transcripts, and $3,133.01 on travel.  Decl. of V.
Cappucci in Supp. App. for Atty's Fees, Ex. E, Ex. 2, Dkt. 314-6
at 10.  Lovell Stewart Halebian Jacobson LLP spent $7,799.57 on
expenses itemized as follows [sic]: $1,825.22 on expenses;
$515.70 on mailing; $350 on filing fees; $122.98 on meals and
ent[ertainment]; $261.04 on meeting expense; $226.97 on office
supplies; $3,255.82 on research; $128.97 on taxis; $31.05 on
taxis and transportation; $101.02 on teleconferences; $779.20 on

expenses incurred and interest thereon.  Atty's Fees MOL at 22.
Counsel have provided declarations and itemizations of the
incurred expenses.  See id. Ex. E, Ex. 2.; id. Ex. F, Ex. 2.
$121,742.50 of the total amount was spent on expert witness
fees, an understandable fact in a matter turning on so many
expert issues.  See supra §I(B)(4)-(6), (8)-(9).

All of the itemized expenses itemized by Entwistle and
Cappuci are of a type that are necessary to the process of
litigation, and for which reimbursement is generally granted.
See supra n.6.  Reimbursement for the $256,004.46 of expenses
spent by Entwistle and Cappucci is therefore granted.

Lovell Stewart's expense list is less transparent.  See id.
Specifically, the first line item in the list of "NASDAQ FB
Expenses from Inception" is for "expenses" in the amount of
$1,825.22.  This redundant general category gives the Court no
information on which to judge its necessity or whether the
charges were incidental to representation.  Without such
information, this amount cannot be properly awarded.  See In re
Indep. Energy Holdings PLC Sec. Litig., 302 F. Supp. 2d 180, 183
(S.D.N.Y. 2003) (citation omitted).  The remaining line items

---

telephone; $81.60 on transcript; and $120 on travel. Id. Ex. F,
Ex. 1, Dkt. 314-7 at 9.

are of the type necessary to the process of litigation, and for which reimbursement is generally granted. See supra n.6. Therefore, $5,974.35, the amount spent less the "expenses" category, is awarded for Lovell Stewart's expenses.

The bare sum of all of Co-Lead Counsel's listed expenses totals $263,804.03. With interest, $268,380.58 has been requested. The $4,576.55 difference amounts to 1.734829% interest. This interest rate well within the range of reasonableness.[7] Applied to the $261,978.81 approved as reasoned above, $4,544.88 is awarded in interest for a total of $266,523.69 in justified reasonable costs and expenses.

### C. Lead Plaintiff Incentive Awards

"Courts in this Circuit routinely award ... costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in

---

[7] As a point of reference for what constitutes a reasonable interest rate, the federal minimum required to consider payment on behalf of another as a mid-term loan rather than a pure gift was between 1.65% and 1.67%. See Internal Revenue Service Applicable Federal Rates for October 2015, Table 1, available at https://apps.irs.gov/app/picklist/list/federalRates.html.

the first place." In re Bear Stearns, 909 F. Supp. 2d at 272-73
(citing Hicks v. Stanley, No. 01 civ. 10071(RJH), 2005 WL
2757792, at *10 (S.D.N.Y. Oct. 24, 2005)).

Counsel has requested incentive awards in the amount of
$1,250 for the Class representatives. For collecting and
producing relevant documentation and information, participating
in litigation, reviewing pleadings, and approving settlement,
this is a modest amount. See Atty's Fees MOL at 23. Such
awards encourage the public policy goal of private prosecution
securities frauds as described above. See Tellabs, Inc. v.
Makor Issues & Rights, Ltd., 551 U.S. 308, 313, 127 S. Ct. 2499,
2504, 168 L. Ed. 2d 179 (2007) (citations omitted); see also
supra §IV(A)(6). Moreover, no objections to the incentive
awards have been made. Id. Accordingly, the incentive awards
are approved as reasonable.

**Conclusion**

For the foregoing reasons, the motion for final approval of the settlement and plan of allocation is granted. The motion for an award of attorney's fees, expenses, and incentive awards is granted as detailed above.

It is so ordered.

New York, NY
November $\mathcal{G}$, 2015

ROBERT W. SWEET
U.S.D.J.

37