```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

IN RE FACEBOOK, INC. IPO, SECURITIES        12 MDL 2389 (RWS)

AND DERIVATIVE LITIGATION

                                            OPINION
------------------------------------X
```

A P P E A R A N C E S:

    Attorneys for the NASDAQ Defendants

    BALLARD SPAHR LLP
    1735 Market Street, 51st Floor
    Philadelphia, PA 19103
    By:  William A. Slaughter, Esq.
        Stephen J. Kastenberg, Esq.
        Paul Lantieri III, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/24/15

**Sweet, D.J.**

The NASDAQ OMX Group Inc., The NASDAQ Stock Market LLC, Robert Greifeld, and Anna M. Ewing (collectively, the "NASDAQ Defendants") have moved the Court to withdraw and vacate its December 12, 2013 opinion partially denying their motion to dismiss, in light of a recent settlement with the Plaintiffs. For the reasons set forth below, the motion is denied.

**Prior Proceedings**

This action, which concerns allegations of negligence and securities fraud in and around the initial public offering of Facebook, Inc., was transferred to this court by an Order of the United States Judicial Panel on Multidistrict Litigation on October 4, 2012. (See Dkt. No. 1.) On December 6, 2012, the Court consolidated ten actions relating to alleged torts committed by NASDAQ, appointing lead plaintiffs (the "NASDAQ Plaintiffs" or the "Plaintiffs") and lead counsel. See In re Facebook, Inc. IPO Sec. & Deriv. Litig., 288 F.R.D. 26, 41-44 (S.D.N.Y. 2012).

On April 30, 2013, the NASDAQ Plaintiffs filed their Consolidated Amended Class Action Complaint (Dkt. No. 95),

2

alleging violations of the Securities Exchange Act of 1934, SEC Rule 10b-5, and common-law negligence.[1] On July 2, 2013, the NASDAQ Defendants filed their motion to dismiss. (Dkt. No. 126.) The motion was heard and marked fully submitted on October 3, 2013.

On December 12, 2013, the Court issued its Opinion on the motion to dismiss, granting the motion in part and denying it in part. In re Facebook, Inc., IPO Sec. & Deriv. Litig., 986 F. Supp. 2d 428 (S.D.N.Y. 2013). The Opinion held, *inter alia*, that because the absolute immunity afforded to Self-Regulated Organizations ("SROs") such as NASDAQ applies only when the activity at issue relates to the SRO's regulatory duties, the Plaintiffs' claims that NASDAQ was negligent in designing, promoting, and testing its trading software were not barred. See id. at 450-454. The Court similarly ruled that statements made prior to the IPO touting NASDAQ's reliability and technological capability could be actionable under the Exchange Act because NASDAQ was advertising itself rather than engaging in regulatory activity. Id. at 456-57.

On December 30, 2013, the NASDAQ Defendants moved the Court *inter alia*, to certify an interlocutory appeal pursuant to 28

---

[1] A fuller account of the Consolidated Amended Class Action Complaint's allegations, and the happenings before and after its filing, can be found in the Court's December 12, 2013 Opinion. In re Facebook, Inc. IPO Sec. & Deriv. Litig., 986 F. Supp. 2d 428, 437-48 (S.D.N.Y. 2013).

3

U.S.C. § 1292(b). (Dkt. No. 177.) The Court noted that its rulings on SRO immunity were appealable as of right, In re Facebook, 986 F. Supp. 2d at 474, but denied the motion for interlocutory appeal of additional issues. Id. at 487. The NASDAQ Defendants filed their notice of appeal on February 14, 2014. (Dkt. No. 207).

The Second Circuit set oral argument on the appeal for Thursday, May 7, 2015. (See 2d Cir. Dkt. No 14-457cv.) On April 23, 2015, two weeks before the appeal was to be heard, the parties announced that they had reached a settlement agreement in principle. (Dkt. No. 271.) The next day, the NASDAQ Defendants moved to hold their appeal in abeyance, and the motion was granted on April 27, 2015. (See 2d Cir. Dkt. No 14-457cv.) This Court preliminarily approved the settlement on June 25, 2015 (Dkt. No. 297), and a fairness hearing was held on September 16, 2015. The Court granted final approval of the settlement by an Opinion dated November 9, 2015. In re Facebook, Inc. IPO Sec. & Deriv. Litig., No. 12 MDL 2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015).

On August 12, 2015, the NASDAQ Defendants filed the instant motion to vacate, asking the Court to withdraw its Opinion on the motion to dismiss. (Dkt. No. 315.) Pursuant to the terms of the settlement, the Plaintiffs have agreed not to oppose the motion. (See Br., Dkt. No. 316, at 1.) The motion to vacate

4

was heard on September 16, 2015, as part of the overall settlement fairness hearing.  (See Dkt. No. 328.)

**Applicable Standard**

Federal Rule of Civil Procedure 60(b) allows district courts to relieve a party from an earlier judgment, order, or proceeding "[o]n motion and just terms."  Where the motion to vacate is based on a settlement, the decision is governed by the Supreme Court's opinion in U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, in which the Court held that "mootness by reason of settlement does not justify vacatur of a judgment under review," but that courts may equitably grant the relief when "extraordinary circumstances" merit it.  513 U.S. 18, 29 (1994); see also Leser v. U.S. Bank Nat'l Ass'n, No. 09 Civ. 2362, 2014 WL 2154993, at *2 (E.D.N.Y. May 22, 2014).[2]

However, "equity will ordinarily disentitle a party to vacatur where mootness results from settlement."  ATSI Comm'ns. Inc. v. Shaar Fund, Ltd., 547 F.3d 109, 111 (2d Cir. 2008).  As the Second Circuit has noted, this is because of equitable considerations that weigh strongly against vacatur, including

---

[2] Although U.S. Bancorp concerned vacatur of an appellate decision, the principles are also applicable to motions to vacate district court decisions, despite the different precedential rules involved.  See ATSI Comm'ns. Inc. v. Shaar Fund, Ltd., 547 F.3d 109, 111 (2d Cir. 2008); see also U.S. Bancorp, 513 U.S. at 28.

5

"(i) that judicial precedents enjoy a presumption of correctness, (ii) that society benefits from the resolution of legal questions through orderly procedures, and (iii) that when a case is settled, the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur." Microsoft Corp v. Bristol Tech., Inc., 250 F.3d 152, 154 (2d Cir. 2001) (citations and quotations omitted) (citing U.S. Bancorp, 513 U.S. at 25-27, 29). Due to these factors, "[w]hen a judgment is mooted by settlement, vacatur is usually not justified because the social value in preserving precedents is not outweighed by equitable considerations." Id. (quoting Major League Baseball Props. V. Pac. Trading Cards, Inc., 150 F.3d 149, 151 (2d Cir. 1998)).
In determining whether exceptional circumstances exist to support vacatur, courts consider whether there are public or private interests present in a case that counterbalance the significant considerations that weigh in favor of letting a decision stand. See Leser, 2014 WL 2154993, at *3.

**The Motion is Denied**

In this case, the NASDAQ Defendants argue that vacatur is warranted due to the "unprecedented" nature of the Court's

6

ruling, particularly on the issue of when exchanges may be held liable in tort, despite SRO immunity. (See Br., Dkt. No. 316, at 3.) They are "concerned that the Court's decision may be read broadly to expand the potential liability of national securities exchanges and to expose such exchanges to the risk of loss far beyond their ability to absorb, with concomitant risks to the stability of the Nation's financial markets, including Nasdaq." (Id.) The contention that an opinion should be vacated because it could have significant precedential value is at odds with U.S. Bancorp, which was predicated in part on the recognition that judicial precedents are "presumptively correct and valuable to the legal community as a whole." U.S. Bancorp, 513 U.S. at 26. As Justice Scalia's opinion noted for the unanimous Court, these precedents "are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by vacatur." Id. at 26-27. When the NASDAQ Defendants point out that SRO immunity is a matter of "considerable significance," (Br., Dkt. No. 316, at 3.), this is an argument against vacatur, not in favor of it.

These public interest considerations were taken into account in the December 12, 2013 Opinion. As the Court noted then, SROs are "private companies that carry out government functions," and immunity therefore attaches only to their regulatory aspects. See In re Facebook, 984 F. Supp. 2d at 453

7

(citing Opulent Fund, L.P. v. Nasdaq Stock Mkt., Inc., No. C-07-3863, 2007 WL 3010573, at *6 (N.D. Cal. Oct. 12, 2007)). As securities exchanges "have converted from non-profit mutual associations owned by their members to for-profit publicly traded corporations owned by shareholders . . . . an irreconcilable conflict has arisen, rendering independence unattainable in the context of an exchange regulating its own, for-profit business conduct." Id. Recognizing this inherent problem, the Court concluded that an SRO's immunity must be narrowly cabined to its regulatory functions; otherwise "every time an exchange committed a negligent or unlawful act independent of its regulatory authority, it could . . . retroactively try to immunize itself from damages for [] non-immune conduct." Id. Having weighed the public interests involved, the Court concluded that "[w]hile the doctrine of SRO immunity must continue to ensure regulatory independence, it cannot be applied to allow blanket protection for exchanges when they fail to exercise due care in their pursuits of profit." Id. The NASDAQ Defendants do not address these public interest considerations in their arguments for vacatur.

By settling this action, the NASDAQ Defendants relinquished the opportunity to have the Opinion overturned on appeal, and now seek to vacate the Opinion collaterally. See U.S. Bancorp, 513 U.S. at 27 ("to employ the secondary remedy of vacatur as a

8

refined form of collateral attack on the judgment would - quite apart from any considerations of fairness to the parties - disturb the orderly operation of the federal judicial system."). As the NASDAQ Defendants acknowledge, they have "foregone their right to have review of those issues." (Br. at 3.) "Where mootness results from settlement, [] the losing party has voluntarily forfeited his legal remedy by the orderly processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. The judgment is not unreviewable, but simply unreviewed by his own choice. The denial of vacatur is merely one application of the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks." U.S. Bancorp, 513 U.S. at 25; see also Hudson v. Harris, No. 09 Civ. 1417, 2011 WL 867024, at *11 (N.D.N.Y. Mar. 10, 2011) (denying vacatur when the settling party was "effectively attempting to contract away [a] prior unfavorable decision."). In the absence of extraordinary circumstances that would justify withdrawing the December 12, 2013 Opinion, the motion to vacate is denied.

It is so ordered.

Dated: New York, New York
       November 24, 2015

_____
Robert W. Sweet
U.S.D.J.