**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE FACEBOOK, INC. IPO
SECURITIES AND DERIVATIVE
LITIGATION

MDL No. 12-2389 (RWS)

This document relates to the
Consolidated Securities Action:

No. 12-cv-4081  No. 12-cv-4763
No. 12-cv-4099  No. 12-cv-4777
No. 12-cv-4131  No. 12-cv-5511
No. 12-cv-4150  No. 12-cv-7542
No. 12-cv-4157  No. 12-cv-7543
No. 12-cv-4184  No. 12-cv-7544
No. 12-cv-4194  No. 12-cv-7545
No. 12-cv-4215  No. 12-cv-7546
No. 12-cv-4252  No. 12-cv-7547
No. 12-cv-4291  No. 12-cv-7548
No. 12-cv-4312  No. 12-cv-7550
No. 12-cv-4332  No. 12-cv-7551
No. 12-cv-4360  No. 12-cv-7552
No. 12-cv-4362  No. 12-cv-7586
No. 12-cv-4551  No. 12-cv-7587
No. 12-cv-4648

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION TO BIFURCATE TRIAL**

## TABLE OF CONTENTS

Page

Table of Authorities ..........................................................................................................ii

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................... 2

III.    ARGUMENT ........................................................................................................ 4

        A.      The Trial of This Action Should Be Bifurcated........................................ 4

                1.      Courts Have Consistently Recognized that a Bifurcated Trial Is the
                        Superior Method of Adjudication for Securities Class Actions.................. 4

                2.      Bifurcation Will Be More Convenient for the Jurors and Will
                        Avoid Undue Prejudice to the Parties ........................................................ 6

        B.      Evidence Relating to Individualized Issues Should Be Excluded from
                Phase One........................................................................................................ 9

                1.      *ICN/Viratek* and *WorldCom* Offer a Compelling Explanation for
                        the Need to Exclude Individualized Issues from Phase One of a
                        Bifurcated Trial ........................................................................................ 10

                2.      Individualized Issues Should Be Excluded from Phase One to
                        Avoid Juror Confusion and Prejudice ....................................................... 13

        C.      The Structure of Phase Two Should Await the Phase One Verdict..................... 14

III.    CONCLUSION.................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barnes v. Osofsky*,
    373 F.2d 269 (2d Cir. 1967)...................................................................13

*Biben v. Card*,
    789 F. Supp. 1001 (W.D. Mo. 1992) .........................................................5

*Cromer Fin. Ltd. v. Berger*,
    00 CIV. 2284 (DLC), 00 CIV. 2498 (DLC), 2002 U.S. Dist. LEXIS 13002
    (S.D.N.Y. July 16, 2002) .......................................................................14

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
    2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000)...........................................13

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    312 F.R.D. 332 (S.D.N.Y. 2015) .......................................................2, 3, 7

*In re ICN/Viratek Sec. Litig.*,
    No. 87 Civ. 4296, 1996 WL 34448146 (S.D.N.Y. July 15, 1996) ................. *passim*

*Jaffe Pension Plan v. Household Int'l, Inc.*,
    756 F. Supp. 2d 928 (N.D. Ill. 2010) ........................................................5

*Jaffe Pension Plan v. Household*,
    No. 02 Civ. 5983, 2005 WL 3801463 (N.D. Ill. Apr. 18, 2005) ..................12

*Jaroslawicz v. Engelhard Corp.*,
    724 F. Supp. 294 (D.N.J. 1989) ...............................................................6

*In re JDS Uniphase Sec. Litig.*,
    02-cv-1486 CW (EDL) (N.D. Cal. Oct. 9, 2007 ......................................9, 12

*Knapp v. Ernst & Whinney*,
    90 F.3d 1431 (9th Cir. 1996) ...................................................................5

*In re Lucent Tech. Inc. Sec. Litig.*,
    No. 00 Civ. 621(JAP), 2002 WL 32818345 (D.N.J. May 9, 2002).................12

*In re Petrobras Sec. Litig.*,
    862 F.3d 250 (2d Cir. 2017)......................................................................5

*In re Vesta Ins. Grp. Inc. Sec. Litig.*,
No. 98-CV-01407 (KOB), (N.D. Ala. Aug. 20, 2008) ...........................................................12

*In re Vivendi, S.A. Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016)......................................................................................................5

*In re Vivendi Universal, S.A. Sec. Litig.*,
284 F.R.D. 144 (S.D.N.Y. 2012) ........................................................................................2, 15

*In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512 (S.D.N.Y. 2011),
*aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ..........................5

*In re WorldCom Inc. Sec. Litig.*,
No. 02 Civ. 3288 (DLC), 2005 WL 408137 (S.D.N.Y. Feb. 22, 2005) .................5, 11-12, 13

**Rules**

Fed. R. Civ. P. 42(b) ...................................................................................................................1, 4, 9

Fed. R. Evid. 403 .......................................................................................................................10, 14

**Other Authorities**

9A Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc. Civ. § 2388 (3d ed.
2017) .........................................................................................................................................10

2 J. Weinstein & M. Berger, *Weinstein's Evidence* § 403.04 (Matthew Bender &
Company ed., 2017)..................................................................................................................14

8 James Wm. Moore et al., *Moore's Fed. Prac.* § 42.20[5][a] (3d ed. 2017) ...............................4

*Manual for Complex Litigation* § 21.5 (4th ed. 2004) ...................................................................4

McCormick, *Evidence* § 185 (West 2d ed. 1972) ........................................................................14

Rubenstein, William B., *Newberg on Class Actions* § 11.8 (5th ed. 2017)...................................4

Section 9, S. 875; Section 9, H.R. 4314, 73d Cong., (1st Sess. 1933)...........................................13

## I.    INTRODUCTION

In accordance with Rule 42(b) of the Federal Rules of Civil Procedure, Plaintiffs respectfully submit this Memorandum in support of their motion to:

1)    Bifurcate the trial of this action (the "Action") into two phases—one phase for common questions ("Phase One") and, if necessary, a separate, subsequent phase for individualized issues ("Phase Two"); and

2)    Exclude from Phase One all evidence and argument pertaining to any individualized issues.

The bifurcated trial structure proposed below has been adopted in virtually every securities class action that has gone to trial because it is the most efficient way to structure a securities class action trial and poses the least risk of prejudice and juror confusion. Indeed, directly on-point case law from the Southern District of New York holds that a court should bifurcate the trial of a securities class action into separate phases for common questions and individualized issues, and that all argument and evidence concerning individualized issues— including the trial testimony of the Class Representatives and their investment managers— should be excluded from the first phase of the trial.

In accordance with this practice, Plaintiffs propose that Phase One should include only the trial of common questions:

1)    Common questions for which Plaintiffs bear the burden of proof, i.e., common questions pertaining to falsity, materiality, and damages per share; and

2)    Common questions for which Defendants bear the burden of proof, i.e., common questions pertaining to Defendants' affirmative defenses of due diligence, negative causation, and class-wide "actual knowledge."[1]

---

[1] Specifically, the only common question of "actual knowledge" that is susceptible to class-wide treatment is the question of whether the members of the Institutional Investor Subclass had "actual knowledge" based solely on their knowledge of the Syndicate Analysts' May 2012 revisions to their revenue models for Facebook. Plaintiffs anticipate that Defendants will agree that evidence concerning "actual knowledge" of members of the Retail Investor Subclass should be reserved for Phase Two of the trial.

This bifurcated trial structure is particularly appropriate here, where Defendants have asserted that there are individualized issues pertaining to their "actual knowledge" defense and, in response, this Court has already held that "[i]t is administratively feasible . . . to manage Defendants' actual knowledge questions" by addressing common questions of "actual knowledge" at summary judgment and in the first phase of trial, and by addressing subjective, individualized issues of "actual knowledge" in a subsequent phase of litigation, if necessary. *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 351 (S.D.N.Y. 2015) (hereinafter "Class Certification Order") (citing *In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. 144 (S.D.N.Y. 2012)).

## II.   BACKGROUND

The success or failure of this Action may largely turn on the trial of numerous common questions, which will involve the presentation of substantial evidence that is common to each member of the Class.

Indeed, in granting Plaintiffs' motion for class certification in this Action, this Court held that "the existence of *large common questions with common answers* in this matter cannot be disputed":

> Notwithstanding any unique facts as to any Plaintiff, *the success or failure of any and all investor claims necessarily turns on several determinative liability questions* the Court has sustained in its Opinion on Defendants' motion to dismiss: (1) Was "Defendants' duty under Item 303 . . . triggered before the Registration Statement became effective" because "Facebook was aware of the material negative impact on Facebook's revenues the Company had suffered as a result of increasing mobile usage and the Company's product decisions ten days before the IPO?" . . . . (2) Did the risk warnings in the IPO Prospectus misleadingly represent that Facebook's revenue cut was merely possible when in fact the trend had already materialized? . . . . (3) Did Rule 408 of SEC Regulation C require Facebook to disclose the "known financial effects related to increasing mobile usage and certain product decisions?" . . . . *The evidence necessary to answer these questions will be the same as to every Plaintiff, and the answer for any one must necessarily apply to all others.*

*Id.* at 341-42 (emphasis added).

As with many other large and complex class-action trials, however, if Plaintiffs are successful in this first phase of trial, a second phase of trial in this Action would involve the presentation of evidence concerning individualized issues. *See id.* at 351. For example, Defendants argue that individualized issues exist because some class members are subject to an "actual knowledge" defense based on individual communications. *Id.* at 344.

At the class-certification stage, the Court reasoned, "It is undeniable that Defendants have shown that a large number of plaintiffs and potential class members had varying degrees of knowledge about mobile's negative impact on Facebook's revenue, Facebook's revised projections given that impact, the Syndicate Analyst's Revised Projections given Facebook's report of that impact, or some combination thereof." *Id.* at 346. The Court further reasoned that "for each individual with any degree of knowledge—whether or not that knowledge is found on the merits to preclude that particular plaintiff's claim—is a subjective inquiry for each and every investor." *Id.*

Ultimately, the Court held that Defendants' subjective individual arguments could be adequately managed in a second phase of trial:

> **[I]ndividualized actual knowledge can be adequately managed post-trial through an individualized phase involving separate jury trials if necessary. This is the most efficient way to manage both the predominant common questions and the individualized questions in this case without overwhelming the common adjudication with individualized issues and vice versa.**

*Id.* at 351 (emphasis added).

At that time, the Court stated that "[t]he specific procedures for management through adequate notice and the claim process can be resolved when those matters are properly before the Court." *Id.*

With this Motion, Plaintiffs seek to establish the management of these issues before trial.

## III.    ARGUMENT

### A.    The Trial of This Action Should Be Bifurcated

This Court should exercise its plenary authority under Fed. R. Civ. P. 42(b) to bifurcate

the trial of this securities class action into two phases. Phase One proceedings will address

common questions of liability and damages per share. Then, following the disposition of Phase

One, Phase Two proceedings, if necessary, will address individualized issues, including

individualized issues of "actual knowledge."[2]

### 1.    Courts Have Consistently Recognized that a Bifurcated Trial Is the Superior Method of Adjudication for Securities Class Actions

The "superior method of adjudication" for trials in securities class actions such as this

Action is to bifurcate the trial into one phase that addresses "common" questions that "affected

the entire group" and that "appl[y] in the same manner to the claims of all the class members,"

while reserving "individualized" issues for a second phase of trial. Rubenstein, William B.,

*Newberg on Class Actions* § 11.8 (5th ed. 2017); *see also Manual for Complex Litigation* § 21.5

(4th ed. 2004) ("In jury cases, the court may consider trying common issues first, preserving

individual issues for later determination."); 8 James Wm. Moore et al., *Moore's Fed. Prac.*

§ 42.20[5][a] (3d ed. 2017) ("Not only does the court have discretion to bifurcate claims or

issues traditionally considered to be divisible, such as liability and damages, but also, to separate

for trial virtually any other issue that it thinks proper.").

Courts in this District have consistently recognized that this tried and tested approach has

proven, time and again, to be the most efficient and effective format available for adjudicating

---

[2] Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Rule 42(b) further provides, "[w]hen ordering a separate trial, the court must preserve any federal right to a jury trial." Bifurcated proceedings on common and individual issues do not violate the Seventh Amendment, even when different juries are empaneled for each phase. *See In re ICN/Viratek Sec. Litig.*, No. 87 Civ. 4296, 1996 WL 34448146, at *2 (S.D.N.Y. July 15, 1996).

complex securities class actions. *See, e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 584-85, 585 n.63 (S.D.N.Y. 2011), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) (collecting cases and finding that courts in securities class actions have "consistently recognized" that individualized issues "can and should be addressed after a class-wide trial"). For example, the trial in the *Vivendi* case was bifurcated, and phase one of the trial resulted in a partial jury verdict for plaintiffs that was affirmed by the Second Circuit. *See In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016); *see also In re Petrobras Sec. Litig.*, 862 F.3d 250, 274 (2d Cir. 2017) ("In addition to modifying class definitions and issuing class-wide rulings, district courts can, for example, bifurcate the proceedings to home in on threshold class-wide inquiries."); *In re WorldCom Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2005 WL 408137, at *2 (S.D.N.Y. Feb. 22, 2005) (bifurcating securities class action trial); *In re ICN/Viratek Sec. Litig.*, No. 87 Civ. 4296, 1996 WL 34448146, at *1 (S.D.N.Y. July 15, 1996) (same).

Indeed, District Courts presiding over securities class action trials across the country also have agreed that bifurcation is the most appropriate course of action. *See, e.g.*, *Jaffe Pension Plan v. Household Int'l, Inc.*, 756 F. Supp. 2d 928, 930 (N.D. Ill. 2010) (reserving individualized issues for a second phase of the trial); Ex. 1, Defendants' Opposition to Lead Plaintiffs' Motion *in Limine* at 12, *In re JDS Uniphase Sec. Litig.*, 02-cv-1486 CW (EDL) (N.D. Cal. Sept. 25, 2007), ECF No. 1504 (defendants acknowledged that testimony from lead plaintiffs and their advisors should be admitted only in second phase of trial);[3] *Knapp v. Ernst & Whinney*, 90 F.3d 1431, 1435 (9th Cir. 1996) (noting that, at plaintiff's request, "the case was bifurcated into a trial of class-wide issues to be followed, if necessary, by a second-stage proceeding to adjudicate individual issues of reliance and damages"); *Biben v. Card*, 789 F. Supp. 1001, 1003 (W.D. Mo.

---

[3] References in the form "Ex. __" are to the exhibits to the accompanying Declaration of Thomas G. Hoffman, Jr.

1992) (bifurcating trial into separate phases for common and individualized issues); *Jaroslawicz v. Engelhard Corp.*, 724 F. Supp. 294, 302-03 (D.N.J. 1989) (same). There is absolutely no reason to depart from this common wisdom in this case.

> ### 2. Bifurcation Will Be More Convenient for the Jurors and Will Avoid Undue Prejudice to the Parties

It is essential that the jurors' task be made as manageable as possible so that they can adequately perform their truth-seeking function.

In *ICN/Viratek*, Judge Wood held that "bifurcation of the jury trial in this action into two trials, to separately address class-wide issues and individual reliance issues, is proper." 1996 WL 34448146, at *1. Judge Wood reasoned that bifurcation would "significantly further the 'convenience' of the jurors":

> The First Trial will be about four weeks long. If the defendants are held liable at the First Trial, there will likely be some delay between the First and Second Trials . . . . Accordingly, recognizing that the jury at the First Trial will already have served for about a month, I will empanel a different jury for the Second Trial.

*Id.* at *2.

Judge Wood further reasoned that, because she would empanel separate juries for the two trials, bifurcation would "avoid prejudice to the parties" by clarifying both the distinction between common and individual issues and the type of evidence relevant to each type of issue:

> Each jury will have to consider only one of these types of evidence; the purpose for which each type of evidence may be used will be very clear. The jury at the First Trial will consider only common issues; the jury at the Second Trial will consider only individual issues. ***In my view, this clarity of presentation will avoid the prejudice to either side or both sides that jury confusion might create.***

*Id.* at *2.[4]

---

[4] Moreover, Judge Wood specifically noted that bifurcation would avoid prejudice to the ***defendants***, stating that "if a Second Trial is necessary, defendants will avoid potential prejudice arising from the fact that the jury that held them liable at the First Trial will not be the same jury that considers individualized

Here, too, as this Court has previously noted, bifurcation "is the most efficient way to manage both the predominant common questions and the individualized questions in this case without overwhelming the common adjudication with individualized issues and vice versa." Class Certification Order, 312 F.R.D. at 351.

Indeed, bifurcation is particularly appropriate here because Phase One of the trial will already be quite complex. The Facebook initial public offering was one of the largest IPOs in American history; in addition to the economic evidence relevant to negative causation and damages that normally attends complex securities class actions such as this Action, the jurors in this case will be required to contend with various complex issues, ranging from due diligence, industry custom and practice with respect to IPOs, the financial impact of increasing mobile usage of Facebook on the Company's advertising revenues, and trading issues on NASDAQ related to Defendants' negative-causation defense. As a testament to the analytical density of this Action, the parties have generated hundreds of pages of expert reports, analyses, and exhibits, and 13 days of expert deposition testimony.

Indeed, due to the unusual complexity of this Action, the Court granted Defendants additional time to depose one of Plaintiffs' expert witnesses. *See* Ex. 2, Oral Argument Hearing Minute Entry, *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. 12-MD-2389 (S.D.N.Y. Mar. 9, 2017). In seeking that Order, Defendants argued that additional deposition time was warranted in light of the "magnitude" of this Action and the "extensive merits discovery record." *See* Ex. 3, Reply in Further Support of Letter Motion from Defendants at 2, *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. 12-MD-2389 (S.D.N.Y. Feb. 23, 2017) ECF No. 461. Defendants further argued that the "standard period [of seven hours of deposition time] is

*( . . . continued)*
reliance issues at the Second trial." *Id.* In this Section 11 case, of course, the individual issues will concern actual knowledge, not reliance.

inadequate for a fair examination" of the witness regarding various complex issues. *See* Ex. 4,

Letter Motion from Defendants at 3, *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. 12-

MD-2389 (S.D.N.Y. Feb. 16, 2017) ECF No. 453. The list of issues that Defendants cited just as

to that one expert illustrates the complexity of the common questions to be tried in Phase One,

including:

- Industry custom and practice in allocating stock to institutional and retail investors in technology IPOs, and how stock was allocated to institutional and retail investors in the Facebook IPO;

- How the allocation of stock to retail and institutional investors affected demand for Facebook stock and the offering price for the IPO;

- How issuers typically forecast their results and how Facebook provided earnings guidance to equity analysts employed by members of the underwriting syndicate;

- How institutional investors would have viewed Facebook's near-term expected revenue guidance;

- The impact of Facebook's revenue adjustments on its valuation, and the pricing of the IPO relative to that valuation;

- Whether Facebook's revisions to its revenue guidance required Facebook to make additional disclosures, and the adequacy of the additional disclosures made by Facebook;

- Institutional investors' demand for allocations of stock in the Facebook IPO relative to other IPOs and the relationship between the indications of interest expressed by investors and their actual demand for Facebook stock;

- Customary objectives of underwriters and issuers for post-IPO trading of new stock issues, industry custom and practice in setting the price of stock in an IPO, and how Facebook and the underwriters set the price for Facebook's IPO;

- Industry custom and practice in allocating shares among different types of institutional investors and how stock was allocated among different institutional investors in the Facebook IPO; and

- How different types of investors would behave in trading Facebook stock in the market after the IPO and how they responded to press reports following the IPO.

*Id.* at 1-2.

The above is only a partial list of the class-wide issues on which **one** expert witness will opine in Phase One—during which the parties will seek to admit the testimony of a total of **eleven** expert witnesses.

If evidence and testimony concerning individualized issues is also included, then—in addition to testimony from scores of fact and expert witnesses on class-wide issues—the jury will likely need to hear testimony from the eight Class Representatives and the investment advisors for the Class Representatives, representing more than a dozen additional witnesses. Plaintiffs submit that will make for an overly long, burdensome, and potentially confusing trial for the jurors.

Thus, in accordance with Rule 42(b) and the widespread practice adopted by district courts presiding over trials in securities class actions, Plaintiffs respectfully request that the Court bifurcate the trial in this Action.

### B.    Evidence Relating to Individualized Issues Should Be Excluded from Phase One

Courts regularly bifurcate securities class action trials, trying issues that are common to the Class separately from individualized issues, for the precise reason that trying individualized issues together with common issues poses a substantial risk of prejudice and juror confusion. *See, e.g.*, *ICN/Viratek*, 1996 WL 34448146, at *1 (denying defendants' motion to subpoena trial testimony of plaintiffs during Phase One of trial); Ex. 5, Amended Minute Order at 2*, In re JDS Uniphase Sec. Litig.*, 02-cv-1486 CW (EDL) (N.D. Cal. Oct. 9, 2007) ECF No. 1692 (amended minute order granting plaintiffs' motion *in limine* to exclude "evidence and argument relating to the named plaintiffs and their financial advisors" from Phase One on grounds that the evidence and argument were "irrelevant to issues of class-wide proof," *In re JDS Uniphase Sec. Litig.*, 02-cv-1486 CW (EDL), 2007 WL 5150075 (N.D. Ca. Sept. 18, 2007)).

Here too, Plaintiffs request that individualized issues be excluded from Phase One and reserved for resolution during a later phase of the trial under Fed. R. Evid. 403, which provides that a court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* 9A Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc. Civ. § 2388 (3d ed. 2017) ("A separate trial also may be ordered to avoid prejudice, as when evidence admissible only on a certain issue may prejudice a party in the minds of the jury on other issues; this desire to avoid prejudice has been recognized in many cases.").

> 1. ***ICN/Viratek* and *WorldCom* Offer a Compelling Explanation for the Need to Exclude Individualized Issues from Phase One of a Bifurcated Trial**

In *ICN/Viratek*, the defendants argued that the class representatives' testimony regarding the circumstances of their stock trades was "relevant" to, *inter alia*, whether defendants' allegedly fraudulent misrepresentations and omissions were material to the Class's investment decisions. *ICN/Viratek*, 1996 WL 34448146, at *3. However, Judge Wood reasoned that, because "the jury is to determine materiality with respect to what a ***reasonable*** investor would consider important—not with respect to what an ***actual (or typical)*** investor would consider important," "any testimony by the individual class representatives at [Phase One] would be either irrelevant, or marginally relevant but overly confusing to the jury . . . ." *Id.* at *2.

The defendants further argued that "the class representatives' subjective testimony regarding whether they considered defendants' alleged fraudulent statements material" was nonetheless "relevant to the objective question whether a reasonable investor would have done so," noting that Judge Wood held at the class-certification stage that the class representatives' claims were typical of the other class members' claims. However, Judge Wood reasoned that she

had "held only that the class representatives' claims were sufficiently typical of those of the other class members to allow class certification—on the theory that (1) the class representatives would zealously represent other class members (as, in my view, they have done), and, similarly, that (2) the class representatives would not be likely to suffer conflicts of interest with other class members." *Id.* She further reasoned that a class representative's being typical under Rule 23 is not the same as either being identical to the other class members, or being objectively reasonable. *See id.* at *3.

Judge Wood therefore concluded that "the class representatives' materiality testimony [was] of marginal relevance, if any":

> It is arguable that, as defendants contend, a sampling of actual investors' views on materiality has some minimal probative value to show what a reasonable investor would view as material. However, it is also arguable (and, in my view, far more plausibly so) that, as the Class contends, such a sampling is ***entirely irrelevant***— because, for materiality purposes, the "reasonable investor" is equivalent to the market itself.

*Id.* at *4.

Judge Wood held that "even accepting defendants' argument that the class representatives' testimony has some slight relevance, such a sample has little, if any, probative value, and that value is greatly outweighed by the potential for jury confusion" and prejudice to absent class members. *Id.* Accordingly, she granted the plaintiffs' motion to preclude the class representatives from testifying during Phase One of the trial, and denied the defendants' motion to subpoena the class representatives to testify during Phase One. *See id.* at *4.

Similarly, in *WorldCom*, Judge Cote granted the plaintiffs' motion "to exclude evidence from the plenary trial [i.e., Phase One] relating to the individualized issues of the class representatives." *WorldCom*, 2005 WL 408137, at *1, *4-5. Relying on Judge Wood's opinion in *ICN/Viratek*, Judge Cote granted the plaintiffs' motion "because the evidence from the named

plaintiffs and their financial advisors has marginal relevance to the issues to be tried in the plenary trial [i.e., Phase One], and because that limited relevance is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the jury . . . ." *Id.* at *5 (citing Fed. R. Evid. 403).

Judge Cote further reasoned that defendants sought to use evidence concerning the named plaintiffs to confuse the jurors and distract them from the defendants' conduct:

> The Lead Plaintiff has shown that there is a significant danger that the defendants seek to use the evidence about the named plaintiffs to divert the jury's attention from the serious issues before them, including an evaluation of what the defendants themselves did and did not do. ***The claims to be tried at the plenary trial are brought against the defendants, not against the named plaintiffs. The individualized issues regarding class members, including the named plaintiffs, will be reserved for proceedings that follow.***

*Id.*

Thus, Judge Cote held, "Testimony from the named plaintiffs and their financial advisors is inadmissible at the plenary trial [i.e., Phase One]." *Id.* at *2; *see also* Ex. 6, Order On Lead Plaintiff's Motions *in Limine* at 1, *In re Vesta Ins. Grp. Inc. Sec. Litig.*, No. 98-CV-01407 (KOB), (N.D. Ala. Aug. 20, 2008), ECF No. 458 (granting plaintiffs' motions *in limine* to (1) preclude testimony of absent class members during the plenary class-wide proceeding and (2) preclude evidence and argument concerning individual reliance during class-wide proceeding); Ex. 5, Amended Minute Order at 2*, In re JDS Uniphase Sec. Litig.*, ECF No. 1692 (granting plaintiffs' motion *in limine* to exclude "evidence and argument relating to the named plaintiffs and their financial advisors" from Phase One, *JDS Uniphase*, 2007 WL 5150075).[5]

---

[5] Other courts have gone even further, delaying any discovery concerning individualized issues until after the resolution of class-wide issues. *See Jaffe Pension Plan v. Household*, No. 02 Civ. 5983, 2005 WL 3801463, at *4 (N.D. Ill. Apr. 18, 2005) (delaying discovery concerning individual claimants' reliance); *In re Lucent Tech. Inc. Sec. Litig.*, No. 00 Civ. 621(JAP), 2002 WL 32818345, at *2 (D.N.J. May 9, 2002) (delaying discovery concerning plaintiffs' investment history on the grounds that

Plaintiffs seek the same ruling in this case.

>    **2.**   **Individualized Issues Should Be Excluded from Phase One to Avoid Juror Confusion and Prejudice**

Here, as in *ICN/Viratek* and *WorldCom*, evidence relating to the individualized issues of the Class Representatives and their financial advisors, or any class members, is potentially prejudicial and, at best, marginally relevant to the resolution of common questions during Phase One. Accordingly, that evidence should be reserved for Phase Two.

For example, jurors not familiar with Section 11 standards might not approve of Class Representatives or other class members who—having no legal duty to do so—may not have read the offering documents or conducted any research before investing in the Facebook IPO. Indeed, in *WorldCom*, Judge Cote expressed concern that jurors "may be critical of the named plaintiffs and their financial advisors for not doing more research." 2005 WL 408137, at *4. That concern is only heightened in a Section 11 action such as this Action, where Plaintiffs are not required to perform any due diligence at all. *See Barnes v. Osofsky*, 373 F.2d 269, 272 (2d Cir. 1967) ("Both the House and Senate versions of the present § 11, in identical language, established a conclusive presumption of reliance upon the registration statement by 'every person acquiring any securities specified in such statements and offered to the public.") (citing Section 9, S. 875; Section 9, H.R. 4314, 73d Cong. (1st Sess. 1933)); *see also In re Dreyfus Aggressive Growth Mut. Fund Litig.*, 2000 WL 1357509, at *6 (S.D.N.Y. Sept. 20, 2000) (citing cases and holding that "the fact that a particular class representative never read [the offering documents] is irrelevant" because "Sections 11 and 12 of the Securities Act impose liability without regard to whether the buyer relied on the misrepresentation or omission").

---

*( . . . continued)*
"individualized rebuttal proceedings may be pursued to determine whether a claimant may recover, once the matter of liability has been adjudicated").

Plaintiffs respectfully submit that any evidence that could cause the jury to believe that the particular circumstances of one or more of the Class Representatives or class members disqualify them from any recovery would be unfairly prejudicial to the Class and, therefore, has no place in Phase One. At the very least, a jury hearing about subjective, individualized issues concerning one or just a few Class Representatives or class members may unfairly give too much weight to that testimony and potentially bind the entire Class on that basis. *See* Fed. R. Evid. 403, Adv. Comm. Notes (evidence is unfairly prejudicial if it has an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"); 2 J. Weinstein & M. Berger, *Weinstein's Evidence* § 403.04 (Matthew Bender & Company ed., 2017) (evidence which "may cause a jury to base its decision on something other than the established propositions in the case" should be excluded under Rule 302); McCormick, *Evidence* § 185 (West 2d ed. 1972) (evidence may be excluded based on "the probability that the proof and the answering evidence that it provokes may create a side issue that will unduly distract the jury from the main issues").

Thus, Plaintiffs respectfully request that the Court exclude from Phase One all evidence concerning individualized issues—including the trial testimony of the Class Representatives and their investment managers.

### C.     The Structure of Phase Two Should Await the Phase One Verdict

It is proper to defer any decision as to the nature and form that Phase Two might take until ***after*** Phase One is complete, because Phase One "can reasonably be expected to clarify further the legal and factual positions of the parties and place the parties in a better position to define any relevant legal issues that require [additional] proceedings . . . ." *Cromer Fin. Ltd. v. Berger*, 00 CIV. 2284 (DLC), 00 CIV. 2498 (DLC), 2002 U.S. Dist. LEXIS 13002, at *5 (S.D.N.Y. July 16, 2002).

Indeed, if Phase Two proceedings are necessary, the *Vivendi* case will provide a helpful model with respect to their structure. In the *Vivendi* case, the court held a jury trial on common questions in late 2009. After a jury verdict in favor of the plaintiffs in the Phase One trial, the plaintiffs submitted proposed procedures for a subsequent phase of trial regarding individualized issues. After hearing from both sides, the court established a detailed procedure that employed interrogatories and a special master to assist in the process. *See Vivendi*, 284 F.R.D. at 157.

Thus, as in *Vivendi*, Plaintiffs respectfully submit that it would be sensible for the Court to await a jury verdict in Phase One and additional briefing by the Parties before determining the precise contours and scope of Phase Two.

**III.    CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion to Bifurcate Trial and structure the trial of this Action in the manner proposed above.

Dated: September 29, 2017                    **LABATON SUCHAROW LLP**


                                             ___/s/ Thomas A. Dubbs_____
                                             Thomas A. Dubbs
                                             James W. Johnson
                                             Thomas G. Hoffman, Jr.
                                             140 Broadway
                                             New York, New York 10005
                                             Tel: (212) 907-0700
                                             Fax: (212) 818-0477

                                             *Co-Lead Counsel for Lead Plaintiffs, Class*
                                             *Representative Sharon Morley and the Class*

                                             Max W. Berger
                                             Salvatore J. Graziano
                                             John J. Rizio-Hamilton
                                             Jonathan Uslaner
                                             Jai Chandrasekhar
                                             **BERNSTEIN LITOWITZ BERGER**
                                             **& GROSSMANN LLP**
                                             1251 Avenue of the Americas
                                             New York, New York 10020
                                             Tel: (212) 554-1400
                                             Fax: (212) 554-1444

                                             *Co-Lead Counsel for Lead Plaintiffs*
                                             *and the Class*

                                             Steven E. Fineman
                                             Nicholas Diamand
                                             **LIEFF CABRASER**
                                             **HEIMANN & BERNSTEIN, LLP**
                                             250 Hudson Street, 8th Floor
                                             New York, New York 10013
                                             Tel: (212) 355-9500
                                             Fax: (212) 355-9592

                                             *Additional Counsel for Named Plaintiffs and Class*
                                             *Representatives Jose G. Galvan and Mary Jane*
                                             *Lule Galvan*

Frank R. Schirripa
**HACH ROSE SCHIRRIPA**
**& CHEVERIE LLP**
185 Madison Avenue
New York, New York 10016
Tel: (212) 213-8311
Fax: (212) 799-0028

*Additional Counsel for Class Representatives Eric*
*Rand, and Paul and Lynn Melton*